**No. 26-2892**

***In the***

# United States Court of Appeals

***for the***

# Ninth Circuit

---

WINSTON TAYLOR LLP,

*Appellant*,

– v. –

APPLE INC.,

*Defendant-Appellee.*

---

On appeal from a final judgment of the
United States District Court for the Northern District of California
Case No. 5:24-cv-6920 (District Judge Eumi K. Lee)

---

**APPELLANT'S OPENING BRIEF**

---


JEFF WILKERSON
*Winston Taylor LLP*
*300 S. Tryon Street*
*Charlotte, NC 28202*
*(704) 350-7700*

MICHAEL B. KIMBERLY
*Winston Taylor LLP*
*1901 L Street NW*
*Washington, DC 20036*
*(202) 282-5000*

*Counsel for Appellant*
*Winston Taylor LLP*

## TABLE OF CONTENTS


Introduction ........ 1

Jurisdiction ........ 4

Issue Presented ........ 4

Statement ........ 4

- A. Legal background ........ 4
- B. Factual background ........ 7
- C. Procedural background ........ 10
  - 1. Commencement of Musi's lawsuit ........ 10
  - 2. Revelations during limited discovery ........ 13
  - 3. The district court's sanctions order ........ 17

Summary of the Argument ........ 20

Standard of Review ........ 24

Argument ........ 24

- A. The district court applied far too demanding a legal standard ........ 25
  - 1. The district court considered a single sentence fragment in isolation rather than in the context of the full complaint ........ 25
  - 2. The district court wrongly concluded that an inference cannot support an allegation of an admission of knowledge ........ 28
- B. Alternatively, the sanctions order turns on facts that are clearly erroneous ........ 32
- C. An affirmance would chill zealous advocacy ........ 35

Conclusion ........ 39

# TABLE OF AUTHORITIES

## Cases

*Brubaker v. City of Richmond*,
943 F.2d 1363 (4th Cir. 1991) ........ 25

*California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987) ........ 30

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ........ 37

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ........ 24, 35

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003) ........ 28

*Forrest Creek Associates, Ltd. v. McLean Savings & Loan*,
831 F.2d 1238 (4th Cir. 1987) ........ 26

*Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*,
790 F.3d 1369 (Fed. Cir. 2015) ........ 31

*Guenther v. Lockheed Martin Corp.*,
972 F.3d 1043 (9th Cir. 2020) ........ 33

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ........ 37–38

*In re California Bail Bond Antitrust Litigation*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021) ........ 37

*Jensen Electric Co. v. Moore, Caldwell, Rowland & Dodd, Inc.*,
873 F.2d 1327 (9th Cir. 1989) ........ 4

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010) ........ 25–26, 31

*Lake v. Gates*,
130 F.4th 1064 (9th Cir. 2025) ........ 36

*Lucas v. Duncan*,
574 F.3d 772 (D.C. Cir. 2009) .............................................. 29, 34

*MGIC Indemnity Corp. v. Moore*,
952 F.2d 1120 (9th Cir. 1991) .................................................... 25

*Mohammed v. Union Carbide Corp.*,
606 F. Supp. 252 (E.D. Mich. 1985) ............................................. 5

*Morris v. Wachovia Securities, Inc.*,
448 F.3d 268 (4th Cir. 2006) ....................................................... 30

*Navarro-Ayala v. Hernandez-Colon*,
3 F.3d 464 (1st Cir. 1993) ..............................................26, 28, 31

*Operating Engineers Pension Trust v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) ......................... 1, 4, 6–7, 24, 37–38

*Paulino v. Harrison*,
542 F.3d 692 (9th Cir. 2008) ....................................................... 29

*Rattagan v. Uber Technologies, Inc.*,
2019 WL 3891714 (N.D. Cal. 2019) ............................................. 38

*Riverhead Savings Bank v. National Mortgage Equity Corp.*,
893 F.2d 1109 (9th Cir. 1990) ...................................................1, 6

*Rounseville v. Zahl*,
13 F.3d 625 (2d Cir. 1994) .......................................................... 35

*Smith v. Our Lady of the Lake Hospital, Inc.*,
960 F.2d 439 (5th Cir. 1992) ....................................................... 30

*Storey v. Cello Holdings, LLC*,
347 F.3d 370 (2d Cir. 2003) ........................................................ 26

*Strom v. United States*,
641 F.3d 1051 (9th Cir. 2011) ..................................................... 25

*Szabo Food Service, Inc. v. Canteen Corp.*,
823 F.2d 1073 (7th Cir. 1987) ....................................................... 6

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1990) (en banc) ............................... 29, 38

*Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146 (9th Cir. 2002) .................................................... 37

*Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363 (9th Cir. 1992) ....................................................1, 6

*United National Insurance Co. v. R&D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001) ......................................3, 7, 25, 37

*United States v. Arteaga*, 117 F.3d 388 (9th Cir. 1997) ...................................................... 29

*United States v. Felix-Gutierrez*, 940 F.2d 1200 (9th Cir. 1991) .................................................... 29

*United States v. Garner*, 663 F.2d 834 (9th Cir. 1981) ...................................................... 28

*United States v. Santos*, 553 U.S. 507 (2008) ............................................................ 29

*Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33 (1st Cir. 2005) ........................................... 25, 28, 38

**Other authorities**

Fed. R. Civ. P. 8(b)(1) ......................................................................... 34

Fed. R. Civ. P. 11(b) ..........................................................5, 24–25

Fed. R. Civ. P. 11(c) ............................................................... 5, 24

Fed. R. Civ. P. 11 advisory committee's note ................................... 35

Fed. R. Civ. P. 56(c)............................................................................ 34

5A Federal Practice and Procedure Civil § 1331 (4th ed. Apr. 2026 update) ......................................................... 5

5A Federal Practice and Procedure Civil § 1332 (4th ed. Apr. 2026 update) ...................................................... 5–6

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* (1989)................................................................................. 26

Carl Tobias, *Reconsidering Rule 11*,
46 U. Miami L. Rev. 855 (1992) ........................................................ 6

Charles M. Yablon, *The Good, the Bad, and the Frivolous Case: An Essay on Probability and Rule 11*,
44 UCLA L. Rev. 65 (1996) ............................................................. 6

## INTRODUCTION

The attorneys and leadership of Winston Taylor LLP take seriously their obligation to be candid, truthful, and forthright in pleadings filed on behalf of their clients. Candor in litigation is arguably the first and most fundamental obligation lawyers bear as officers of the Court. And we acknowledge that, on exceptionally rare occasions, it is possible that mistakes by attorneys (even Winston attorneys) may warrant sanctions under Rule 11. If and when they do, we are prepared to accept the consequences and commit to being better. But, respectfully, this is not one of those cases. It isn't even close.

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Because Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories" (*Riverhead Savings Bank v. National Mortgage Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990) (cleaned up)), "sanctions are reserved for the rare and exceptional case where" an allegation or legal theory "is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose" (*Unigard Security Insurance Co. v. Lakewood Engineering and Manufacturing Corp.*, 982 F.2d 363, 370 (9th Cir. 1992) (cleaned up)).

The sanctioned allegation does not meet that description. It was well supported by evidence and made for a proper purpose.

The underlying lawsuit concerns a contract dispute between Musi Inc. and Apple, which arose after Apple removed Musi's popular music app from the Apple App Store. (The Musi app is an iPhone application that provides users an enhanced interface to listen to and sort YouTube music content.) Although Apple told Musi its removal was based on a particular complaint by YouTube, evidence has since revealed that the removal actually followed discussions by Apple with YouTube, Sony Music Entertainment, and the National Music Publishers' Association, among others.

The district court's imposition of Rule 11 sanctions in this case—and its assessment of nearly $184,000 in attorneys' fees as punishment—came down to just five words appearing in the first paragraph of the operative complaint:

> Indeed, Apple later stated that it relied on "evidence" provided by the National Music Publishers' Association ("NMPA")—not by YouTube—that Musi was violating YouTube's Terms of Service. But Apple *knew* that this "evidence" was false, ***as it has since admitted***, and it did not disclose this so-called "evidence" to Musi until this litigation.

2-ER-199 (¶ 1) (second emphasis added). The "evidence" referenced in this allegation is a letter from the National Music Publishers' Association to Apple asserting that Musi was violating the terms of service for YouTube's "application programming interface," or API. Winston's allegation on behalf of Musi that Apple "admitted" to knowing that the assertion was "false" was grounded in evidence: An Apple employee admitted at deposition that she had

been informed by an employee of Sony Music Entertainment that Musi was no longer using the YouTube API. Assuming it credited the information, Apple thus knew that Musi was *not* violating the terms of service for YouTube's API, and its employee admitted to that knowledge. What's more, the complaint later furnished the complete context for the allegation. Yet the district court imposed sanctions all the same. It held that Winston had a sufficient factual basis to allege that Apple *knew* Musi was not using YouTube's API but that it utterly lacked any basis for characterizing the Apple employee's testimony as an *admission* of that knowledge.

Even now, Winston stands by its characterization of the relevant testimony. To be sure, it might have been more complete to allege that "Apple knew that this 'evidence' was false, as it has since admitted *it was told*." But whatever one might say about the omission of the words "it was told," it does not render the allegation sanctionably baseless.

As this Court has said, Rule 11 sanctions are not proper if the complaint's allegations have "*some* plausible basis," even "quite a weak one." *United National Insurance Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001). The allegation here met that requirement and more. To hold otherwise—to hold that a district judge may sanction a party for drawing inferences from deposition testimony with which the judge simply disagrees—would be to construe Rule 11 "so as to conflict with the primary duty of an attorney to

represent his or her client zealously." *Operating Engineers*, 859 F.2d at 1344. That is not the law. Respectfully, the Court should reverse the district court's sanctions order as an abuse of discretion.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332. It dismissed the case and entered the sanctions order on March 16, 2026. 1-ER-17, 2-ER-36. The court entered judgment on April 1, 2026 (1-ER-6) and set the amount of the sanction on April 15, 2026 (1-ER-5). *See Jensen Electric Co. v. Moore, Caldwell, Rowland & Dodd, Inc.*, 873 F.2d 1327, 1329 (9th Cir. 1989) (Rule 11 sanctions order not final or appealable until the specific amount of the fee award is set). Winston timely filed a notice of appeal on April 29, 2026 (3-ER-468). This Court's jurisdiction is invoked under 28 U.S.C. § 1291.

## ISSUE PRESENTED

Did the district err when it imposed Rule 11 sanctions on Winston for alleging in the opening paragraph to its complaint that "Apple knew that this 'evidence' was false, as it has since admitted," rather than "Apple knew that this 'evidence' was false, as it has since admitted it was told."

## STATEMENT

### A. Legal background

**1.** Rule 11 provides in relevant part that, "[b]y presenting to the court a pleading," counsel "certifies that to the best of [his or her] knowledge, infor-

mation, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support" or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b), (b)(3).

Rule 11(c)(1) authorizes sanctions for violations of paragraph (b), specifying that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

**2.** Rule 11's prevailing standard for sanctions was first adopted in a 1983 amendment to the civil rules. *See* 5A Fed. Prac. & Proc. Civ. § 1331 (4th ed. April 2026 update); *see also Mohammed v. Union Carbide Corp.*, 606 F. Supp. 252, 260–61 (E.D. Mich. 1985) (recounting history). As then amended, the Rule imposed the same basic standard that prevails today, requiring counsel for a party to make a "reasonable inquiry" into the operative facts and relevant law before signing his or her name to a pleading. *Id.* It further specified that his or her signature constituted a certification that the pleading was, among other things, "well grounded in fact." *Id.* Like the current version, the 1983 version authorized sanctions for a lawyer's violation.

The introduction of this new standard for Rule 11 sanctions was met with substantial concern. *See generally* 5A Fed. Prac. & Proc. Civ. § 1332 (4th

ed. April 2026 update). In particular, many members of the bench and bar worried that a liberal imposition of sanctions might chill vigorous advocacy and encourage lawyers to "play it safe" rather than zealously develop their clients' claims and narratives in litigation. *Id.*

Early cases thus emphasized that the purpose of the grounded-in-fact standard was to discourage opportunistic plaintiffs from filing suit and using discovery "as the sole means of finding out whether you have a case." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987); *see also* Carl Tobias, *Reconsidering Rule 11*, 46 U. Miami L. Rev. 855, 872–73 (1992) (similar). The Rule was intended, in other words, to prevent only those allegations that are frivolous and truly unfounded; it was not meant to discourage low-probability claims or allegations based on creativity or inference. *See generally* Charles M. Yablon, *The Good, the Bad, and the Frivolous Case: An Essay on Probability and Rule 11*, 44 UCLA L. Rev. 65 (1996).

The prevailing standard today reflects this background: "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers*, 859 F.2d at 1345. It is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories" (*Riverhead Savings*, 893 F.2d at 1115 (cleaned up)), and sanctions "are reserved for the rare and exceptional case where" an allegation "is clearly frivolous" or "brought for an improper purpose" (*Unigard Security*, 982 F.2d at 370 (cleaned up)). *See*

*also Operating Engineers*, 859 F.2d at 1344 ("Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously."). Averments with *any* evidentiary basis, even "a weak one," are not a proper subject of sanctions. *United National*, 242 F.3d at 1117.

**B. Factual background**

Musi is a Canadian software company whose primary product was the Musi app, an iOS-based mobile application that provided users with enhanced functionality to interact with publicly available YouTube content through its own "augmentative interface." 2-ER-199 (¶ 2). For its entire existence, the Musi app was available for download exclusively through the Apple App Store, an online marketplace for iPhone applications. *Id.*

Apple informed Musi that it was removing the app in response to a July 29, 2024, notice from YouTube stating that Musi was "violating YouTube Terms of Service." 2-ER-217, 239. Apple provided no other details.

YouTube had previously complained about the Musi app to Apple. In fact, Musi and YouTube had engaged in intermittent communications regarding such complaints since at least 2015. 3-ER-453 (¶ 6). But those complaints had not previously led to Musi's permanent removal from the App Store. For example, YouTube Legal submitted a complaint regarding Musi in August 2020, suggesting that the Musi app violated YouTube's API terms of service (TOS). 2-ER-167–68. Musi, copying Apple, responded that "Musi ceased all

use of the YouTube API in 2016 and no longer uses any of the YouTube API Services." 2-ER-166. In another example, in May 2021, after YouTube filed a complaint questioning whether Musi's functionality violated YouTube's terms of service (2-ER-160, 189), Musi responded—through its outside counsel at Winston—by explaining how the Musi app worked and attempting to address YouTube's stated concerns (3-ER-286–88).

Neither Musi nor Winston received a response to the May 2021 letter until March 2023, when Apple sent a new, standard "App Store Notice" to Musi stating simply that YouTube Legal had complained of "YouTube TOS Violations." 2-ER-94–95. In response, Winston emailed Apple explaining that YouTube's claims were "unsubstantiated" and that Musi had communicated with YouTube in an attempt to resolve this matter, referring back to the 2021 letter.[1] 2-ER-93. Apple forwarded this email to YouTube. *Id.* And when YouTube still did not respond for more than two weeks, Apple warned

---

[1] Apple argued below that Musi's responses to this 2023 YouTube complaint and to the later 2024 complaint—both of which referenced Musi's prior communications with YouTube—were misleading because the last substantive letter was Musi's May 2021 correspondence to YouTube, not any more recent letters after the 2023 and 2024 complaints. *E.g.*, 2-ER-118–19. Apple even suggested this was a ground on which additional sanctions could be granted, despite that Musi's letters were not pleadings signed and filed in court. *Id.* In any event, Musi's 2023 and 2024 emails did not state when prior communications with YouTube had occurred (2-ER-138–41, 225–27), and Musi's complaint stated plainly that the prior communication referenced was the 2021 letter (2-ER-200 (¶ 5)).

YouTube that it would "conclude that the matter has been resolved" unless YouTube provided a response. 2-ER-91. YouTube never did so. Apple therefore concluded that the matter had been "resolved" and reinstated the Musi app to the App Store. 2-ER-46–47 (Tr. 49:14–50:2).[2]

In July 2024, YouTube filed a final complaint with Apple, which Apple forwarded to Musi in August 2024. 2-ER-217–18. Musi responded via counsel, in an email again explaining that it believed YouTube's assertions were unsubstantiated and that it had attempted to communicate with YouTube about claimed Terms of Service violations. 2-ER-227.

Apple forwarded this email to YouTube and, on September 6, 2024, YouTube Legal emailed Apple and Musi stating that Musi in fact had not contacted YouTube (apparently not considering the May 2021 letter) and asking Apple to "proceed with removing this app from the App Store." 2-ER-226. Winston responded the same day (copying Apple), offering to discuss YouTube's concerns at its convenience. 2-ER-229. YouTube never responded. Instead, on September 18, Apple again instructed Musi to communicate with

---

[2] According to an Apple attorney, YouTube later told Apple that it did not receive the 2023 communications. While she did not "recall exactly what their reason was," it appears to have been that the relevant emails "weren't going to the right places." 2-ER-77 (Tr. 128:2–14). This explanation is dubious. YouTube sent and received emails from the same email address both before and after the 2023 communications. *E.g.*, 2-ER-64, 226. But in any event, YouTube did not respond in 2023.

YouTube or face removal. 2-ER-234–35. Winston responded on September 19 (2-ER-233–34), and again on September 24 (2-ER-233), noting both times that it had contacted YouTube on September 6. But on September 24, and with no further response or explanation from YouTube, Apple removed Musi from the App Store. 2-ER-239.

### C. Procedural background

#### *1. Commencement of Musi's lawsuit*

With its business on the line, Musi moved quickly. It filed the underlying action against Apple eight days later, asserting claims of breach of contract and breach of the implied covenant of good faith and fair dealing. 3-ER-455-67. Its theory at the time was that Apple had improperly removed the Musi app "based upon an unsubstantiated third-party complaint, and in violation of the parties' contractual agreements," including the Apple Developer Program License Agreement (the Developer Agreement). 3-ER-456 (¶ 1).

Because every day offline threatened irreparable harm, Musi moved for a preliminary injunction one week after the complaint, seeking to compel Apple to reinstate the Musi app to the App Store pending resolution of the litigation. 3-ER-428. Musi argued that Apple's removal was arbitrary, unreasonable, and a contractual breach, and that Musi was irreparably harmed because the App Store was the only viable means for Musi to reach its consumers. 3-ER-439.

When Apple opposed the motion for a preliminary injunction, the facts at the heart of this appeal began to come into focus. For the first time, Apple revealed a series of complaints and communications that Musi had not previously known about.

*First*, Apple stated that the July 29, 2024, YouTube complaint "came after a phone call between Apple and YouTube on July 15, 2024, during which YouTube asserted that Musi's use of YouTube's API to stream content from YouTube violated the platform's Terms of Service." 3-ER-300. This was the first time Musi learned about this phone call or the specific nature of any alleged TOS violations underlying the 2024 complaint. *See* 2-ER-245 (n.1) (order denying preliminary injunction) ("Apple did not disclose this phone call to Musi until Apple filed its opposition to Musi's Motion."). This explanation also was a puzzle to Musi because (again) it did not use YouTube's API to stream content from YouTube. *See* 2-ER-282–83 (¶¶ 16–17).

*Second*, Apple explained that it had received complaints from other music-industry entities regarding the Musi App. Apple described a complaint from the International Federation of the Phonographic Industry (IFPI); an April 2024 communication from a "representative" of a major music company following up on a previous complaint; and a September 11, 2024, letter from the National Music Publishers' Association (NMPA) apparently submitted in support of YouTube's July 2024 complaint. 3-ER-299–301. According to

Apple, on September 18, 2024, after it received these communications and confirmed "with YouTube that its dispute with Musi had not been resolved," Apple emailed Musi warning that it would be removed if it did not resolve the dispute *with YouTube*. 3-ER-301; 2-ER-234–35. Apple had not previously informed Musi that it was subject to removal for anything other than YouTube's complaint, and it "did not disclose the NMPA letter to Musi until Apple filed its opposition." 2-ER-246 (n.3); *accord* 2-ER-266–67.

The newly disclosed NMPA letter made no sense to Musi. It accused Musi of "leech[ing] its content offerings from YouTube's Application Programming Interface ('API') to avoid paying copyright licensing fees," and branded Musi a "repeat offender" based on a supposed prior "removal from Google Play." 2-ER-193. But Musi had never been offered on the Google Play Store, let alone removed from that platform. 2-ER-282–83 (¶ 16). And Musi did not use YouTube's API to stream content and was thus not subject to YouTube's API Terms of Service. 2-ER-282–83 (¶¶ 16–17).

The district court ultimately denied Musi's motion for a preliminary injunction, concluding that Musi was not likely to succeed on the merits because the Developer Agreement afforded Apple "broad discretion to remove applications 'at any time, with or without cause,'" and that Musi had not shown, on the limited record then before the court, that Apple acted unreasonably or in bad faith. 2-ER-248. But recognizing that Apple's belated disclosures may

have changed the playing field, the court granted Musi leave to amend its complaint "in light of new information that Apple had relied on to oppose the motion for a preliminary injunction." 2-ER-23. To that end, the court also ordered a period of limited, expedited discovery. 2-ER-259 (Tr. 46:16–21).

#### *2. Revelations during limited discovery*

During the limited discovery period, Apple produced thousands of pages of documents and, despite Apple's objections, Musi was permitted to depose two key Apple employees: Singh, Apple's YouTube relationship manager; and Evan-Karimian, in-house senior legal counsel for Apple responsible for the decision to remove the Musi app. 2-ER-240.

***a. Apple's admission that it was told in April 2024 that Musi was not using YouTube's API.*** As relevant to this appeal, discovery revealed that, in April 2024, Walker, an executive at Sony Music Entertainment (SME), bypassed the usual app-dispute process and emailed Miles, Apple's Senior Legal Director, regarding Musi. 2-ER-187. In that email, Walker asked whether Apple "might be able to help" SME to "identify a path forward in [its] efforts to have the Musi App removed." *Id.* Walker explained that SME had "worked with YouTube to remove API access from Musi," but the app continued to reach SME content through other "technological means." *Id.*

The implication was ineluctable: Walker's email informed Apple that Musi was *not* using YouTube's API and was instead continuing to reach SME

content through other "technological means." *Id.*

When asked about this email at deposition, Apple in-house lawyer Evan-Karimian confirmed that "[a]t this point in 2024, individuals at Apple were told that Google had removed the API access from Musi but the app was still somehow using Google's services in a way that was more difficult for Google to action is what it says." 2-ER-134 (Tr. 111:10–15).

Documents produced by Apple showed that Walker's April 2024 email had been forwarded to various in-house attorneys at Apple, including Evan-Karimian, Cameron (a Senior Director of App Store Legal), and Windom (Apple's Chief Counsel of Content and Services). 2-ER-103–07. The email chain culminated in a May 24, 2024, email from Windom to Cameron stating, "please try to get [a] meeting set up." 2-ER-103.

***b. The July 15 call and other complaints.*** Eventually, Singh set a call between YouTube and Apple for July 15, 2024. On the call, Cameron informed YouTube that "Apple had been receiving complaints about the Musi app" from "the music industry" and "asked YouTube if they wanted to continue with the complaint." 2-ER-150–51 (Tr. 50:24–51:7); *see also* 2-ER-152–53 (Tr. 57:19–58:8). YouTube told Apple it was concerned about violations of YouTube's "API guidelines" or "API violations," but YouTube did not share the nature of any such violations, even after Apple asked (and, it might be inferred, Apple asked because it already knew from Walker that the Musi app was not using

YouTube's API). *See* 2-ER-48–53 (Tr. 51:21–52:23, 96:12–22, 100:2–15); *see also* 2-ER-72. After the call, Evan-Karimian emailed YouTube Legal the full dispute history and asked whether they "would like to re-open [their] claim" against Musi. 2-ER-64.

The record confirmed that other music-industry complaints had been made but had ultimately been resolved without adverse action against Musi. For example, beginning in 2023, IFPI complained to Apple that the Musi app infringed on its members' copyrights and circumvented YouTube's technical protective measures. *See* 3-ER-376–78, 408–13. But Apple later informed IFPI that it "will consider this matter closed at this time" due to IFPI's failure to provide documentation supporting its claim (3-ER-367), though the dispute eventually continued.

Discovery also uncovered an email from October 2, 2024—a week after Musi's removal from the App Store and the same day Musi sued Apple. Apple's Miles emailed Walker at SME to report "that Apple has removed Musi from the App Store," candidly noting that "[t]his one was complex process-wise." 2-ER-80–81. Walker responded that SME was "really happy to hear about that" and thanked Apple "for all [its] help and support." 2-ER-81.

***c. The amended complaint.*** Grounded in this (and other) discovery—and drawing on Apple's own documents and sworn testimony—Musi filed an amended complaint on March 31, 2025. 2-ER-198. The amended complaint

set out the facts regarding the NMPA letter; Apple's outreach to YouTube; the history of music-industry complaints against the Musi app; and Apple's admission that, months before, it had been told by Walker that Musi was not using YouTube's API. 2-ER-198–214.

Based on these facts, Musi sharpened its theory: Its new thesis was that Apple had acted in bad faith by removing the Musi app for purportedly violating YouTube's API terms of service. Apple knew—it had been informed by Walker in plain terms—that Musi was not using YouTube's API. And at deposition, Apple attorney Evan-Karimian admitted that, indeed, "individuals at Apple were told" before the removal that Musi could not access YouTube's API and was using other means to access YouTube content. 2-ER-134 (Tr. 111:10–15).

Musi summarized its theory in the first paragraph of the first amended complaint:

> In truth, Apple was acting to appease music-industry players with whom Apple had other commercial dealings. Indeed, Apple later stated that it relied on "evidence" provided by the [NMPA]—*not* by YouTube—that Musi was violating YouTube's Terms of Service. But Apple *knew* that this "evidence" was false, as it has since admitted, and it did not disclose this so-called "evidence" to Musi until this litigation. Specifically, Apple's post hoc justification for removing the Musi app—that Musi was violating YouTube's Terms of Service . . .—was something that Apple *knew* to be false. Indeed, Apple knew months before the removal—it had learned from the very music-industry players it was acting to appease—that Musi was *not* using YouTube's API.

2-ER-199 (¶ 1). Other paragraphs of the complaint provided more complete, consistent factual context. For instance, paragraph 9 alleged that the NMPA letter "was littered with falsehoods, including factual claims that Apple *knew* to be false." 2-ER-201. And paragraph 11 explained:

> Apple's purported reasoning for removing the Musi app—that Musi had failed to resolve allegations that it was violating the YouTube API Terms of Service—is and was a façade. In fact, Apple knew, as it had been told several months prior by music-industry players, that Musi did not and could not use YouTube's API. Thus, Apple did not and could not have reasonably believed in good faith that its basis for removing the Musi app was justified. To the contrary, Apple itself orchestrated, in bad faith and for the benefit of its friends in the music industry, a basis for removing the Musi app under false pretenses.

2-ER-202.

### *3. The district court's sanctions order*

**a.** While its motion to dismiss Musi's amended complaint was pending, Apple moved for Rule 11 sanctions, attacking a stunningly wide range of allegations in the amended complaint. 2-ER-108. Only one of the allegations is relevant to this appeal—the allegation that "Apple knew that [the NMPA] 'evidence' was false, *as it has since admitted*." 2-ER-199 (¶ 1) (emphasis altered). Concerning that allegation, Apple summarized "Musi's theory" as follows: Apple had purported to remove Musi from the App Store "solely because of alleged violations of YouTube's API Terms of Service," but the removal was undertaken in bad faith because "Apple supposedly 'knew' Musi

was not using YouTube's API, and was not subject to YouTube's API Terms of Service." 2-ER-120. Apple noted that "Musi's primary basis for Apple's alleged knowledge is an April 11, 2024 email from [Walker] stating that SME had 'worked with YouTube to remove API access from Musi.'" *Id.* (cleaned up).

But concerning Evan-Karimian's admission that, on the basis of the Walker email, "individuals at Apple were told that Google had removed the API access from Musi but the app was still somehow using Google's services" (2-ER-134 (Tr. 111:10–15)), Apple asserted that "the cited testimony reflects nothing close to an 'unequivocal' admission that Apple 'knew' Musi was not using YouTube's API and says nothing at all about whether Apple 'knew' that Musi was not subject to YouTube's API Terms of Service." 2-ER-121. Apple then pointed to other evidence in the record ("documentation" that Musi had "submitted" to Apple) suggesting the opposite conclusion. *Id.* On the basis of this weighing of evidence, Apple accused Musi and Winston of "egregious misrepresentations of the record" for which "Musi and its counsel should be sanctioned." 2-ER-114–15.

**b.** The district court granted the motion in part. 1-ER-17. It rejected Apple's motion with respect to each challenged allegation except the single sentence fragment, "as it has since admitted." *Id.* The court concluded that that allegation "is so factually baseless that it violates Rule 11." 1-ER-10.

The court started with Apple's argument that even the allegation it *knew* Musi was not using the YouTube API was sanctionable. On that point, the court took the position that "Sony's email does not establish that Apple 'knew' that the evidence offered by the NMPA was false" because Apple could have disbelieved the email. *Id.* The court faulted Musi for "*infer[ring]* Apple's knowledge based on an assumption that the Sony email was inconsistent with the detailed evidence offered by the NMPA" and that Apple credited the Sony email over the NMPA evidence. 1-ER-10–11. On this basis, the district court criticized Musi's assertion that Apple knew Musi was not using YouTube's API as "tenuous and convoluted" and "stretch[ing] the limits of vigorous advocacy," albeit "not quite" a Rule 11 violation. 1-ER-9–11.

But concerning the allegation that Apple had *admitted* to knowing that the factual foundation of the NMPA letter was "false," the district court held that Winston had made a materially misleading allegation that no objectively reasonable attorney could have found adequately supported by the evidence. 1-ER-11. In the court's view, only an express admission in which "Apple *endorsed*" its knowledge that the NMPA letter was bunk—rendering the point an entirely "undisputed fact"—could suffice to support such an allegation. *Id.* The court concluded that "testimony merely stat[ing] that Apple received an email" categorically could not constitute a factual basis sufficient for an allegation the Apple admitted knowledge of the facts asserted in the email.

1-ER-11–12. To allege an admission on such facts was, in the district court's view, sanctionably baseless.

**c.** The district court rejected Apple's request to strike the entire pleading, instead striking only five words from the amended complaint: "as it has since admitted." 1-ER-16–17.

Despite rejecting all but one ground for sanctions, and striking only five words from the complaint, the court assessed monetary sanctions against Winston for the *full* amount of Apple's fees and costs in litigating the Rule 11 motion. 1-ER-3–5. Following further proceedings, the parties stipulated that $183,895.50 was "the amount reasonably incurred by Apple in connection with litigating its Rule 11 motion." 1-ER-3.

Neither Musi nor Winston agreed that awarding Apple its fees in connection with the Rule 11 motion, or any amount at all, was proper. The stipulation states that it was "without any agreement by Musi, its attorneys, or Winston & Strawn LLP that an award of fees was justified." *Id.* (Winston & Strawn LLP has since changed its name to Winston Taylor LLP.)

Winston timely appealed. Musi is not a party to this appeal.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in imposing Rule 11 sanctions based on a five-word sentence fragment—"as it has since admitted"—taken from the amended complaint's opening paragraph. Rule 11 is reserved for the

rare and exceptional case in which a factual allegation is utterly lacking in evidentiary support. This is not such a case. The sanctioned allegation concerned Apple's knowledge that the NMPA letter's central assertion—that Musi was violating the terms of service for YouTube's API—was false. Winston had ample basis for that allegation: Apple's own documents showed that, months before removing Musi from the App Store, Apple had been told by an employee of Sony Music Entertainment that SME and YouTube had worked to remove API access from Musi, but that Musi continued to access content through other technological means. Apple's in-house counsel admitted, in turn, that individuals at Apple had read the email. The district court nevertheless imposed sanctions because it believed Winston had gone too far by characterizing that testimony as an admission of Apple's knowledge. That conclusion rests on legal error and clearly erroneous factfinding.

**First**, the district court applied the wrong legal standard. It isolated the phrase "as it has since admitted" and evaluated it alone, even though the amended complaint itself explained precisely what Musi meant: Apple knew the NMPA letter's API accusation was false because Apple had been told by music-industry participants that Musi was not using YouTube's API at all; and Apple later admitted that its personnel had received that information.

The complaint's opening paragraph made the point expressly, alleging that Apple had "learned from the very music-industry players it was acting to

appease" that Musi was not using YouTube's API. Later paragraphs repeated that Apple "had been told several months prior" that Musi did not and could not use the API. And Evan-Karimian *admitted* at deposition that "individuals at Apple were told that Google had removed API access from Musi."

Rule 11 does not permit sanctions based on an artificially narrow parsing of one phrase divorced from its broader context. Nor does it require direct, undisputed evidence for every factual allegation, including allegations characterizing party admissions in deposition testimony. Attorneys may plead facts based on circumstantial evidence and reasonable (even weak) inferences. That is especially so as to knowledge, intent, and purpose, which are rarely proved by direct evidence. The district court's insistence on an express admission in which Apple "endorsed" Winston's theory imposed a standard far more demanding than Rule 11 permits.

**Second**, even if the district court applied the correct legal principles, its core factual finding was clearly erroneous. Walker's email did more than show that Apple received a communication from SME; it told Apple that SME had "worked with YouTube to remove API access from Musi," and that Musi was continuing to reach SME content through different "technological means" that were more difficult for Google to address. That information directly undercut the NMPA letter's assertion that Musi was stealing content through YouTube's API. Evan-Karimian then confirmed that, as of April 2024,

"individuals at Apple were told that Google had removed the API access from Musi" but that the app was still using Google's services in some other way.

It was not sanctionably baseless or materially misleading to characterize Evan-Karimian's testimony as an admission that Apple knew the NMPA letter's contrary assertion was false. In holding otherwise, the district court relied on its own preferred inferences (that Apple might not have credited Walker's email, that the NMPA letter might have supported a different view, and that an admission of being told something is not an admission of knowledge of the thing). But those are merits disputes, not grounds for Rule 11 sanctions. At most, the challenged phrase was an arguable overstatement of an evidentiary point. Rule 11 does not punish such advocacy.

**Third**, affirmance would chill the very sort of zealous, evidence-based advocacy Rule 11 is meant to preserve. Winston did not invent the challenged allegation from whole cloth, nor did it hide its factual basis. This was not a plead first, search-for-support-later complaint. It drew on Apple's documents, Apple's witness testimony, and reasonable inferences from an incomplete record on which discovery was still ongoing.

Indeed, the district court made clear that the allegation would not have been sanctionable if Winston had omitted just five words ("as Apple has since admitted")—or perhaps if it had added three words ("as Apple has since admitted it was told"). Rule 11 sanctions cannot turn on such fine distinctions.

If sanctions may be imposed whenever a district court disagrees with counsel's phraseology, lawyers will be forced to plead timidly and antiseptically rather than advocate vigorously. That is precisely the chilling effect this Court's Rule 11 precedents forbid. Rule 11 must remain limited to truly baseless allegations and abusive litigation tactics, not arguable characterizations of testimony reasonably grounded in evidence.

Because the sanctioned allegation was expanded upon in the complaint and supported by evidence and reasonable inferences drawn from evidence, the sanctions order should be reversed.

## STANDARD OF REVIEW

Decisions on Rule 11 sanctions are reviewed for abuse of discretion. A district court abuses its discretion when it bases a sanctions order "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

## ARGUMENT

Rule 11 is "aimed at curbing abuses of the judicial system." *Id.* at 397. To facilitate that worthy goal, it permits a district court to sanction an attorney (or the attorney's law firm) when the attorney files a pleading with "factual contentions" devoid of any "evidentiary support." Fed. R. Civ. P. 11(b)(3), (c). It is a "rare and exceptional case" that meets that description

(*Operating Engineers*, 859 F.2d at 1344), and with due respect to the district court, this case certainly is not one of them.

### A. The district court applied far too demanding a legal standard

The law governing Rule 11(b)(3) is well established: Allegations need only "some plausible basis" to pass muster. *United National*, 242 F.3d at 1117; *accord Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011). Sanctions are thus inappropriate unless the allegations are "utterly lacking in support." *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (quotation omitted); *accord, e.g.*, *Brubaker v. City of Richmond*, 943 F.2d 1363, 1377 (4th Cir. 1991) ("Only where *no* factual basis exists is Rule 11's factual inquiry requirement violated.").

The district court did not faithfully apply this settled rule. The sanctioned allegation had ample factual basis. And when a district court "order[s] Rule 11 sanctions despite the lack of an unfounded pleading," it "commit[s] a legal error" and thus an abuse of discretion requiring reversal. *MGIC Indemnity Corp. v. Moore*, 952 F.2d 1120, 1121 (9th Cir. 1991).

#### ***1. The district court considered a single sentence fragment in isolation rather than in the context of the full complaint***

To begin with, the district court imposed Rule 11 sanctions based on a single, five-word sentence fragment taken in isolation. But precedent and common sense alike dictate "that statements must be taken in context, and that related parts of a document must be taken together." *Young v. City of*

*Providence ex rel. Napolitano*, 404 F.3d 33, 41–42 (1st Cir. 2005) (citation omitted) (setting aside Rule 11 sanctions). The question under Rule 11 is not whether "one sentence" (let alone a sentence fragment) is "literally false." *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993) (Breyer, C.J.) (reversing Rule 11 sanctions). Courts must examine the "pleading as whole," not as an unconnected series of "individual phrases or sentences construed separately or taken out of context." *Id.* (quotations omitted); *see also, e.g.*, *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (declining to consider "fragmentary contentions" in "isolation" and instead addressing "the facts in their totality" and reversing sanctions order) (quotation omitted)).

This rule makes sense. After all, "at some level of analysis, every unsuccessful litigation paper contains an unsupported allegation or a flawed argument." *Navarro-Ayala*, 3 F.3d at 467 (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 9(D) at 133–34 (1989) (cleaned up)). Simply put, Rule 11 "does not extend to isolated factual errors" contained in complaints that are overall well-grounded. *Forrest Creek Associates, Ltd. v. McLean Savings & Loan*, 831 F.2d 1238, 1245 (4th Cir. 1987).

The question the district court should have asked was whether the "since admitted" allegation, viewed in the context of the entire amended complaint, was "utterly lacking in support." *Kiobel*, 592 F.3d at 82. And if, as the

district court rightly found, the information conveyed in Walker's email provided a sufficient factual basis to allege Apple's knowledge, then Apple's admission that it received and was aware of the Walker email was a sufficient basis to allege an *admission* of knowledge.

The fuller context of the complaint leaves no doubt on this point. Even just the first paragraph, taken as a whole, clarified what Musi meant when it said that Apple had "since admitted" it knew that the NMPA letter contained false allegations: "Apple knew months before the removal—it had learned from the very music-industry players it was acting to appease—that Musi was not using YouTube's API." 2-ER-199 (¶ 1) (emphasis omitted). Later paragraphs explained further: The NMPA's letter contained "factual claims that Apple knew to be false" because Apple "had been told several months prior by music-industry players, that Musi did not and could not use YouTube's API." 2-ER-201–02 (¶¶ 9, 11) (emphasis omitted); *see also, e.g.*, 2-ER-208 (¶ 44) (similar).

The testimony supporting that allegation was fairly characterized as an admission. Evan-Karimian stated expressly at her deposition that, by way of Walker's email, "individuals at Apple were told that Google had removed the API access from Musi but the app was still somehow using Google's services in a way that was more difficult for Google to action is what it says." 2-ER-134 (Tr. 111:10–15). It was not a Rule 11 violation to frame that testimony as

an admission of knowledge: Apple admitted to receiving information refuting the contents of the NMPA letter.

Rather than looking at this broader context, the district court scrutinized a single phrase in isolation. Such rigid and artificial parsing is a legal error. *Navarro-Ayala*, 3 F.3d at 467; *Young*, 404 F.3d at 40–42.

#### *2. The district court wrongly concluded that an inference cannot support an allegation of an admission of knowledge*

**a.** The sanctions order reflected an additional error: The district court wrongly concluded that inferences cannot supply the foundation for an allegation of a party's admission of knowledge. Even as to the predicate allegation of knowledge itself, the court repeatedly faulted Winston for what it deemed a "highly attenuated" theory requiring "several inferential steps," finding "not one of them [to be] directly supported by facts." 1-ER-10–11. In an odd tone of disapproval, the district court concluded that the amended complaint only "*infers* Apple's knowledge." 1-ER-10.

There is nothing inappropriate about basing an allegation on inferences drawn from circumstantial evidence. Even at trial, "circumstantial evidence is not inherently less probative than is direct evidence." *United States v. Garner*, 663 F.2d 834, 838 (9th Cir. 1981). "[J]uries are routinely instructed that the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90,

100 (2003) (cleaned up). This is especially appropriate as to questions of knowledge, which "must almost always be proved by circumstantial evidence." *United States v. Santos*, 553 U.S. 507, 521 (2008) (cleaned up); *accord United States v. Felix-Gutierrez*, 940 F.2d 1200, 1206 (9th Cir. 1991) ("Knowledge may be shown entirely through circumstantial evidence.").

Moreover, "[n]o rule prevents a jury from 'drawing an inference upon an inference.'" *United States v. Arteaga*, 117 F.3d 388, 399 (9th Cir. 1997). Circumstantial evidence is just "a set of facts from which another fact may be inferred." *Paulino v. Harrison*, 542 F.3d 692, 700 n.6 (9th Cir. 2008). In other words, circumstantial evidence is *evidence*, and attorneys are well within the bounds of their professional obligations to base fact theories on circumstantial evidence and inferences drawn therefrom—even including inferences on top of inferences.

If an inference is enough to prove a fact to a jury, surely it is enough to support a well-grounded allegation under Rule 11. As the D.C. Circuit has explained concerning just this point: "Inferences—which are commonly described as circumstantial evidence—are as capable of providing evidentiary support as facts—which are commonly described as direct evidence." *Lucas v. Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009) (quotation marks omitted) (vacating Rule 11 sanctions). This is particularly true at the complaint stage, where "leeway should be given to make allegations relating to an opposing

party's knowledge, purpose, or intent." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (en banc).

Thus, regardless of whether the evidence here was sufficient "to create a genuine issue for trial" on the merits, an allegation is "not so baseless that sanctions ought to be imposed" if it is supported by "circumstantial evidence, however weak." *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). On this basis, the Court in *California Architectural Building Products* reversed the imposition of Rule 11 sanctions even while affirming the district court's grant of summary judgment. Although the plaintiff's case was ultimately a loser on the merits, the complaint was grounded in "circumstantial evidence" and "not so baseless that sanctions ought to be imposed." *Id.*; *cf. Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 280 (4th Cir. 2006) (reversing sanctions where inadmissible hearsay evidence "provided some (albeit vulnerable) support for the allegation" though not enough to succeed on the merits).

**b.** The district court's contrary conclusion, which turned on a recitation of alternative inferences that a factfinder might draw (the ones the court evidently preferred), was legal error. *See, e.g.*, *Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 446 (5th Cir. 1992) (reversing Rule 11 sanctions). Alternative inferences, or even clearly conflicting evidence, only demonstrate "an issue of fact, to be established through litigation" and later decided at

summary judgment or trial. *Id.* They do not prove that an allegation is sanctionably baseless. Indeed, they have no place at all in the Rule 11 context. "[A]lthough certainly relevant to the merits of the case," potentially contradictory evidence or alternative inferences cannot, as a matter of law, "establish that the claims had no basis in fact." *Id.*

Once again, Evan-Karimian testified that "individuals at Apple were told that Google had removed the API access from Musi." 2-ER-134 (Tr. 111:10–15). Winston made a defensible inference to characterize that testimony as an admission of Apple's knowledge that Musi was not using YouTube's API and thus was not subject to the API's terms of service.

"Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Navarro-Ayala*, 3 F.3d at 467; *accord, e.g.*, *Kiobel*, 592 F.3d at 83 (a "possible overstatement" of the evidence "does not violate Rule 11"); *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1377 (Fed. Cir. 2015) ("[I]solated overstatements do not rise to the level of sanctionable misconduct under [Rule] 11.") (collecting cases). That is the most the "since admitted" allegation might be: an overstatement. It assuredly is not a "factually baseless" "misrepresent[ation]" of fact, as the district court wrongly concluded. 1-ER-11, 15.

* * *

The district court's sanctions decision—taking a sentence fragment in isolation and applying a requirement for direct evidence free from factual inferences—turned on the wrong legal standard. It mandates reversal.

### B. Alternatively, the sanctions order turns on facts that are clearly erroneous

Even if this Court concludes there was no legal error in the district court's sanctions order, it was an abuse of discretion because the district court's findings that the relevant allegations were "factually baseless" and "affirmatively misrepresent[ed]" the facts are clearly erroneous. *Id.* There was factual support for the relevant allegation.

**1.** Examined in context, there was at least "some plausible basis" for Musi's allegation. Walker's email stated plainly that SME had "worked with YouTube to remove API access from Musi," and complained that Musi nonetheless continued to "find[] ways to access [SME's] content through technological means that are more difficult for Google to action." 2-ER-187. In other words, Walker's email suggested that Musi was *not* using (and could not use) YouTube's API, and that it was instead using some different "technological means" to allow its users to access YouTube content.

Yet Apple's removal decision relied (at least in part) on a September 2024 letter from the NMPA submitted "in support of YouTube's app store complaint against Musi" "as a follow-up" to a conversation several weeks

prior. 2-ER-136 (Tr. 133:8–12) (reading NMPA's cover email). The letter purported "to share important evidence concerning Musi's abuse of YouTube's policies," and claimed that the Musi app "leeches its content offerings from YouTube's Application Programming Interface ('API') to avoid paying copyright licensing fees." 2-ER-193. The district court thus agreed with Musi and Winston that there was sufficient support for an allegation that Apple knew the NMPA letter contained false accusations. 1-ER-11. It found sanctionable only the phrase "as Apple has since admitted," describing it as materially misleading and baseless. 1-ER-11–12.

That is a clearly erroneous finding. There is no debate that an Apple witness *admitted in her deposition testimony* that, as of April 2024, "individuals at Apple were told that Google had removed the API access from Musi." 2-ER-134 (Tr. 111:10–15). And it is not baseless or misleading to characterize an admission that one *was told* something as an admission that one *knew* something. This Court has held in other contexts that a "disclosure" of information to an individual "strongly suggests that the [individual] gained knowledge of the disclosed information." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1055 (9th Cir. 2020). When coupled with other "[c]ircumstantial evidence," a disclosure typically suffices to *prove* "actual knowledge" on the merits. *Id.* at 1055–56. To make an allegation of admitted knowledge on the

basis of admitted disclosure is thus far from misleading or baseless, and the district court was clearly wrong to find otherwise.

**2.** The district court's view that the word "admitted" suggested that Apple agreed with Musi as a matter of "undisputed fact" (1-ER-11) is both wrong and irrelevant. Wrong, because allegations are only the plaintiff's perspective, and the defendant always may deny them—including when the plaintiff alleges that the defendant admitted something. *Compare* Fed. R. Civ. P. 8(b)(1), *with* Fed. R. Civ. P. 56(c). Apple denied that it made any admission because it construed Evan-Karimian's testimony differently, as was its right. And the court's view is irrelevant because, as *Lucas* holds, Rule 11 does not require a pleading to "separately identify 'fact' and 'inference'"—both are "evidentiary support" that suffices to satisfy Rule 11's candor requirement. 574 F.3d at 777–79. It was not literally false that Apple admitted it knew the NMPA's claims were mistaken.

The district court also found that Evan-Karimian's "testimony merely states that Apple received an email." 1-ER-12. In the court's view, "[a]dmitting to receiving an email is materially different from admitting to Musi's *conclusion* from the email—that Apple knowingly relied on false evidence." 1-ER-11–12. But that again ignores the full context of the relevant testimony:

> Q. Okay. So at this point in time, April 11th, 2024, Apple had been informed that YouTube had removed the API access from Musi; correct?

[Counsel]: Objection, vague.

A: At this point in 2024, individuals at Apple were told that Google had removed the API access from Musi but the app was still somehow using Google's services in a way that was more difficult for Google to action is what it says.

2-ER-134 (Tr. 111:5–15). The question thus was not simply whether Evan-Karimian admitted to receiving an email. Rather, it was whether the email's content was known to Apple. The district court may have personally disagreed with Winston's reading of that testimony, but that is not a basis for Rule 11 sanctions.

In a proper Rule 11 analysis, "all doubts are to be resolved in favor of the signer of the document that is the basis for Rule 11 sanctions." *Rounseville v. Zahl*, 13 F.3d 625, 633 (2d Cir. 1994). Here, the relevant allegation was based on clear testimony and justifiable inferences drawn from it. The district court's conclusion that there was no factual support for the allegation does not resolve doubts in Winston's favor and is clearly erroneous.

### C. An affirmance would chill zealous advocacy

Rule 11 is intended to prevent "abuses of the judicial system." *Cooter & Gell*, 496 U.S. at 397. It does not demand proof sufficient to convince a court of the truth of every factual allegation made in a complaint. And it is certainly "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11 advisory committee's notes to 1983

amendment (1983 Advisory Committee Notes). This case demonstrates why that distinction is important, and why district courts must limit Rule 11 sanctions to truly exceptional cases that present such an abuse.

The challenged allegation here does not implicate the "abusive trial tactics" that Rule 11 is designed to discourage. The district court concluded that if Winston had omitted the words "as [Apple] has since admitted," no sanctions would have been warranted. Based on the court's logic, it likely also would have sufficed if Winston had instead alleged "as [Apple] has since admitted it was told." Say nothing of the fact that Winston explained, both in the pleading and during the sanctions hearing (2-ER-38–40 (Tr. 25:1–26:6)), the exact inferences and testimony it relied upon—Rule 11 should not turn on such hairsplitting distinctions. Otherwise, the rule would be a trap for unhappy judges to spring on disfavored litigants at whim.

Adversarial justice cannot work if lawyers live in fear of sanctions each time a district court disagrees with how an allegation is phrased. Advocates are permitted to put an argumentative spin on their words, interpret evidence, and draw inferences aggressively in favor of their clients. That is foundational to how cases are pled and proven.

Winston did not pull the sanctioned allegation out of thin air. As we have shown, the allegation was grounded on documentary evidence produced by Apple and testimony given by one of its employees. It was in all respects the

result of a reasonable inquiry. *See Lake v. Gates*, 130 F.4th 1064, 1069 (9th Cir. 2025) ("To be sanctioned under Rule 11, attorneys must file a pleading which is '*both* baseless *and* without a reasonable and competent inquiry.'" (quotation omitted)). And that inquiry was still ongoing at the time the amended complaint was filed—Winston had not yet, for example, had the opportunity to depose Miles to assess her understanding and knowledge of the email she received from Walker, nor to depose Cameron, who asked for and attended the meeting with YouTube that ultimately arose out of Walker's email. *E.g.*, 2-ER-185 (Tr. 34:4–18).

None of the authorities the district court relied upon imposed sanctions under comparable circumstances. In fact, most *reversed* or *denied* an award of Rule 11 sanctions. *See United National*, 242 F.3d at 1118 (reversing Rule 11 sanctions) (cited at 1-ER-15); *Operating Engineers*, 859 F.2d at 1343–45 (reversing Rule 11 sanctions) (cited at 1-ER-15); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131–32 (9th Cir. 2002) (vacating sanctions for legal error) (cited at 1-ER-8); *Truesdell*, 293 F.3d at 1153 (vacating sanctions in light of *Christian*) (cited at 1-ER-11); *In re California Bail Bond Antitrust Litigation*, 511 F. Supp. 3d 1031, 1054 (N.D. Cal. 2021) (denying Rule 11 sanctions) (cited at 1-ER-8).

And the few cases in which sanctions were ordered or upheld involved manifestly different circumstances. *See Holgate v. Baldwin*, 425 F.3d 671,

676–77, 681 (9th Cir. 2005) (affirming sanctions for legal frivolousness where the plaintiffs' theory turned on a suspect civil-rights class comprising "consumers looking to build their dream home" and otherwise reversing award of or affirming denial of sanctions) (cited at 1-ER-9, 11); *Rattagan v. Uber Technologies, Inc.*, 2019 WL 3891714, at *4 (N.D. Cal. 2019) (imposing sanctions where the plaintiff amended his complaint to allege, falsely, that he had contracted with a different Uber entity, so as to create diversity) (cited at 1-ER-11); *see also Townsend*, 929 F.2d at 1366–67 (9th Cir. 1990) (reversing sanctions in part and affirming as to claims that had been affirmatively disproven on the merits by "undisputed evidence").

"[T]he wheels of justice would grind to a halt if lawyers everywhere were sanctioned every time they made . . . dubious factual claims." *Young,* 404 F.3d at 39–40. District courts thus must reserve sanctions only for truly unusual and exceptional cases. *Operating Engineers*, 859 F.2d at 1344. This is not such a case. Affirming sanctions in this context would chill attorneys' enthusiasm and creativity in pursuing factual theories critical to the merits of their cases. The award of sanctions should be reversed.

## CONCLUSION

For the reasons above, this Court should reverse the district court's grant of Apple's motion for sanctions.

August 21, 2026

Respectfully submitted,

/s/ *Michael B. Kimberly*

MICHAEL B. KIMBERLY
*Winston Taylor LLP*
*1901 L Street NW*
*Washington, DC 20036*
*(202) 282-5000*

JEFF WILKERSON
*Winston Taylor LLP*
*300 S. Tryon Street*
*Charlotte, NC 28202*
*(704) 350-7700*

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32 and Ninth Circuit Rule 32-1, undersigned counsel certifies that this brief:

(i) complies with the type-volume limitation of Ninth Circuit Rule 32-1 because it contains 9,005 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it is typeset in Century Supra in 14-point type.

Dated: August 21, 2026 /s/ *Michael B. Kimberly*