**No. 26-2892**

***In the***

# United States Court of Appeals

***for the***

# Ninth Circuit

---

WINSTON TAYLOR LLP,

*Appellant*,

– v. –

APPLE INC.,

*Defendant-Appellee.*

---

On appeal from a final judgment of the
United States District Court for the Northern District of California
Case No. 5:24-cv-6920 (District Judge Eumi K. Lee)

---

**APPELLANT'S EXCERPTS OF RECORD**
**VOLUME 3 OF 3**

---

JEFF WILKERSON
*Winston Taylor LLP*
*300 S. Tryon Street*
*Charlotte, NC 28202*
*(704) 350-7700*

MICHAEL B. KIMBERLY
*Winston Taylor LLP*
*1901 L Street NW*
*Washington, DC 20036*
*(202) 282-5000*

*Counsel for Appellant*
*Winston Taylor LLP*

# Exhibit 1

WINSTON & STRAWN LLP

North America Europe Asia

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

May 5, 2021

Via Electronic Email

Anthony Weibell, Esq.
Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050

Re: Your April 22, 2021 Correspondence on Behalf of YouTube re: Musi Inc. – Apple Inc. – Reference No. APP44644-F

Dear Mr. Weibell:

As you know, Winston & Strawn LLP represents Musi Inc. ("Musi") in connection with this dispute. Please correspond with me directly on this matter going forward. I write in response to your correspondence on behalf of YouTube LLC ("YouTube") dated April 22, 2021 ("Your April 22 Letter"). Your letter claims that Musi's app breaches YouTube's Terms of Service. For the reasons discussed below, we respectfully disagree.

As your client knows, Musi has been in dialogue with YouTube for more than five years now—since at least 2015—and has repeatedly expressed its commitment to offer an app that fully complies with YouTube's Terms of Service. Whenever YouTube has raised an issue with an aspect of Musi's app functionality, Musi has in good faith endeavored to either a) adjust its app functionality, or b) explain why its app is fully compliant. In this same spirit, Musi addresses in detail below each of the claims in your April 22 Letter.

Your April 22 Letter makes a series of claims that appear to be based on a misunderstanding of how the Musi app works and interfaces with YouTube. I address them each in turn.[1]

[1] You also speculate that Musi is distributing a Musi Free App APK for Android, offered at https://baixarapk.gratis/en/app/591560124/musi-simple-music-streaming ("Musi APK"). Musi has no connection with this Android app. Musi has only ever offered its app through the Apple App Store; any "Musi" apps advertised for Android / APK are not developed or distributed by Musi Inc. Musi has explained this to YouTube's representatives on multiple occasions.

First you claim that "it appears that the Musi App is accessing and using YouTube's non-public interfaces not intended for use by third parties and is using such unauthorized interfaces to access and display YouTube content and data. . . ." April 22 Letter at 1. That is not accurate. At no point does the Musi app access YouTube's non-public interfaces. Web requests are made directly from user devices to the publicly facing YouTube website. Once the website returns a response, that response is parsed by the app, on the user device, and the resulting data is either played (in the case of a video) or displayed (in the case of a search/playlist page). This is by no means a novel way of accessing the YouTube website; and is identical to the manner in which any web browser would access the YouTube website.

Thus, your claim that the Musi app violates YouTube's Terms of Service on the basis that it is accessing YouTube's non-public interfaces without authorization is unfounded. Similarly, at no point does Musi circumvent, disable, or otherwise interfere with any security measures implemented by YouTube. Musi also does not use automated means (like bots or scrapers). Rather, the Musi app allows a user to directly access the YouTube site to interact with content selected by the user. Musi does not "alter" or "modify" such content. The Musi app merely provides a user with enhanced functionality to interact with publicly available content on YouTube's website that the user is otherwise entitled to access. *See* hiQ Labs, Inc. v. LinkedIn Corp., 938 F.3d 985, 1003 (9th Cir. 2019) (while hiQ's website scraping is distinguishable from how the Musi app operates, this case makes the important distinction between content available on "public websites" like LinkedIn and "non-public or 'restricted' websites"). YouTube videos are not stored on Musi's servers, and Musi does not otherwise modify the YouTube content streamed to users.

For similar reasons, your claim that Musi violates YouTube's prohibition on use of its service for "other than personal, noncommercial use," April 26 Letter at 2, is not well founded as it is Musi's users who access YouTube. The Musi app merely allows users to access YouTube's publicly available website through a functional interface.

Finally, your claim that Musi violates YouTube's prohibition on the sale of advertising "on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales," April 22 Letter at 2, lacks merit. Musi has addressed this point several times in past correspondence with YouTube. The functionality offered by the Musi app is of sufficient value to justify Musi's advertisement sales. The Musi application is not a static video viewing application, or a bald replication of YouTube's interface. Instead, Musi offers significant functionality with an augmentative interface. A sufficient amount of information not obtained from YouTube—specifically, Musi's proprietary user interface components and proprietary organizational functionality/metadata such that YouTube content is not the "primary basis" for Musi's advertising. The Musi app also allows users to "mix" or "EQ" the audio output of videos in real time, and even offers equalizer presets (such as "Bass++" or "Acoustic"). In addition, Musi's interface allows users to

view song lyrics as they stream the videos (with a "lyrics" feature powered by the popular lyric aggregator Genius.com).

The Musi app allows users to interact with YouTube's publicly available content with added functionality. Musi's functionality only interacts with public-facing YouTube webpages; the app does not "hack," scrape, or circumvent YouTube's interface, system, or content. It allows users to access YouTube's content without modification, for that user's "personal, non-commercial use," in keeping with YouTube's Terms of Service. Musi does not store YouTube content on its servers, and YouTube content does not pass through Musi's system. Rather, content is streamed directly from YouTube to a user's device per a user's request.

In light of this clarification of how the Musi app works, we respectfully disagree that the use of the app by Musi's users violates YouTube's Terms of Service. For years, Musi has corresponded and engaged with YouTube in good faith, and Musi remains committed to an ongoing dialogue. This letter is without prejudice to any claims or defenses Musi may have, each of which is expressly reserved.

Sincerely,

/s/ Michael S. Elkin

Michael S. Elkin
WINSTON & STRAWN LLP
Attorneys for Musi Inc.

cc: Musi Inc.

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
**chris.johnstone@wilmerhale.com**

Jennifer Milici (**pro hac vice**)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
**jennifer.milici@wilmerhale.com**

Mark A. Ford (**pro hac vice**)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
**mark.ford@wilmerhale.com**

**Attorneys for Defendant Apple Inc.**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MUSI INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:24-cv-06920-EKL<br><br>DEFENDANT APPLE INC.'S OPPOSITION TO MUSI INC.'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>Judge: The Honorable Eumi K. Lee<br>Hearing Date: January 9, 2025<br>Hearing Time: 2:00 p.m.<br>Courtroom: 7 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. STATEMENT OF FACTS .......... 3
A. Musi's Agreements With Apple .......... 3
B. The Musi App And Its Removal From App Store .......... 5
III. LEGAL STANDARD .......... 9
IV. ARGUMENT .......... 11
A. Musi Has Not Demonstrated A Likelihood Of Success Or Even Serious Questions On The Merits .......... 11
1. The DPLA Grants Apple Complete Discretion To Remove Apps From App Store .......... 12
2. If Required, Apple Had "Reasonable Belief" That The Musi App Violated Third Party Rights .......... 16
B. Musi Fails to Meet Its Burden On Any Of The Remaining **Winter** Elements .......... 18
1. Musi Fails To Substantiate Irreparable Harm .......... 18
2. Musi Fails To Establish That The Balance of Equities Tips In Its Favor .......... 21
3. Musi Fails To Establish That An Injunction Is In The Public Interest .......... 23
V. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

Page(s)

Cases

**AboveGEM, Inc. v. Organo Gold Management, Ltd.**, 2019 WL 3859012 (N.D. Cal. Aug. 16, 2019) .......... 19

**Bennett v. Isagenix International LLC**, 118 F.4th 1120 (9th Cir. 2024) .......... 10

**Caribbean Marine Services Co. v. Baldrige**, 844 F.2d 668 (9th Cir. 1988) .......... 18

**Carma Developers (California), Inc. v. Marathon Development California, Inc.**, 2 Cal. 4th 342 (1992) .......... 11

**Chastain v. Howard**, 716 F. Supp. 3d 740 (N.D. Cal. Feb. 9, 2024) .......... 14

**CTIA - The Wireless Association v. City of Berkeley**, 928 F.3d 832 (9th Cir. 2019) .......... 21

**Cutting Edge Solutions, LLC v. Sustainable Low Maintenance Grass, LLC**, 2014 WL 5361548 (N.D. Cal. Oct. 20, 2014) .......... 21

**Doe v. Snyder**, 28 F.4th 103 (9th Cir. 2022) .......... 10

**Ebeid v. Facebook, Inc.**, 2019 WL 2059662 (N.D. Cal. May 9, 2019) .......... 16

**Enhanced Athlete Inc. v. Google LLC**, 479 F. Supp. 3d 824 (N.D. Cal. 2020) .......... 16

**Epic Games, Inc. v. Apple Inc.**, 559 F. Supp. 3d 898 (N.D. Cal. 2021) .......... 12, 24

**Financial & Security Products Association v. Diebold, Inc.**, 2005 WL 1629813 (N.D. Cal. July 8, 2005) .......... 23

**Frank B. Hall & Co., Inc. v. Alexander & Alexander, Inc.**, 974 F.2d 1020 (8th Cir. 1992) .......... 24

**FTC v. EDebitPay, LLC**, 695 F.3d 938 (9th Cir. 2012) .......... 13

**Garcia v. Google, Inc.**,
786 F.3d 733 (9th Cir. 2015) ..........10, 11

**Glow Industries, Inc. v. Lopez**,
252 F. Supp. 2d 962 (C.D. Cal. 2002) ..........21

**Herb Reed Enterprises, LLC. v. Florida Entertainment Management, Inc.**,
736 F.3d 1239 (9th Cir. 2013) ..........18

**hiQ Labs, Inc. v. LinkedIn Corp.**,
31 F.4th 1180 (9th Cir. 2022) ..........20

**In re Excel Innovations, Inc.**,
502 F.3d 1086 (9th Cir. 2007) ..........18

**Intango, Ltd. v. Mozilla Corp.**,
2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) ..........14, 15

**International Medcom, Inc. v. S.E. International, Inc.**,
2015 WL 7753267 (N.D. Cal. Dec. 2, 2015) ..........19

**Keezio Group, LLC v. Mommy&Me LLC**,
2024 WL 3432001 (N.D. Cal. July 16, 2024) ..........11

**Kennedy v. Meta Platforms, Inc.**,
2024 WL 4031486 (N.D. Cal. Sep. 3, 2024) ..........10

**Lag Shot LLC v. Facebook, Inc.**,
545 F. Supp. 3d 770 (N.D. Cal. 2021) ..........19

**Marder v. Lopez**,
450 F.3d 445 (9th Cir. 2006) ..........13, 14

**Mazurek v. Armstrong**,
520 U.S. 968 (1997) ..........9

**Merced Production Credit Association v. Bayer**,
222 Cal. App. 2d 793 (1963) ..........14

**Oasis West Realty, LLC v. Goldman**,
51 Cal. 4th 811 (2011) ..........11

**Putian Authentic Enterprise Management Co. v. Meta Platforms, Inc.**,
2022 WL 888659 (N.D. Cal. Mar. 25, 2022) ..........20

**Solomon v. North American Life and Casualty Insurance Co.**,
151 F.3d 1132 (9th Cir. 1998) ..........12

**Song fi Inc. v. Google, Inc.**,
108 F. Supp. 3d 876 (N.D. Cal. 2015) ....................16

**Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.**,
860 F.3d 844 (6th Cir. 2017) ....................24

**Stackla, Inc. v. Facebook Inc.**,
2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) ....................19

**Stormans, Inc. v. Selecky**,
586 F.3d 1109 (9th Cir. 2009) ....................23

**Vellejo v. Narcos Productions LLC**,
418 F. Supp. 3d 1084 (S.D. Fla. 2019) ....................13

**WeRide Corp. v. Kun Huang**,
379 F. Supp. 3d 834 (N.D. Cal. 2019) ....................23

**Winter v. Natural Resources Defense Council, Inc.**,
555 U.S. 7 (2008)....................10

# I. INTRODUCTION

Plaintiff Musi Inc. ("Musi") seeks a preliminary injunction that would force Apple to reinstate Musi's music streaming app (the "Musi app") to Apple's App Store notwithstanding Apple's express contractual right to remove the Musi app from App Store "at any time, with or without cause." But even if the governing contract required Apple to justify its removal of the Musi app (it does not), Apple's decision in this instance followed numerous, credible complaints alleging that the Musi app violates the legal rights of third parties. Those complaints include allegations of copyright infringement that have been widely publicized, and are specifically known to Musi, yet omitted from Musi's filings.

The Musi app provides users with an alternative interface to stream content from YouTube. In doing so, Musi allows users to engage with YouTube content in ways that YouTube and others have claimed are not authorized by the YouTube Terms of Service. Among other things, Musi removes YouTube advertising content and replaces it with Musi's own or allows ad-free streaming for a fee. Apple has received many complaints from third parties alleging that Musi reproduces copyrighted content from YouTube without authorization from the copyright holders and deprives artists and other rights holders of royalty revenue. In July 2023, the International Federation of the Phonographic Industry ("IFPI") submitted such a complaint on behalf of its members, alleging that Musi violates YouTube's Terms of Service and infringes its members' copyrights. Musi engaged with IFPI and Apple but failed to resolve IFPI's concerns. On at least six separate occasions between September 2023 and May 2024, IFPI demanded that Apple remove the Musi app due to copyright violations. IFPI copied Musi on those demands. IFPI member Sony Music Entertainment ("SME") likewise submitted a similar complaint against the Musi app in July 2023, which also included allegations of copyright infringement, was also shared with Musi, and also went unresolved.

In July 2024, YouTube submitted a complaint to Apple alleging that the Musi app violates YouTube's Terms of Service and requested that Apple remove the Musi app from App Store. Musi admits that YouTube repeatedly raised concerns about the Musi app's use of YouTube content and

compliance with YouTube's Terms of Service over a multi-year period. Musi nevertheless argues that YouTube refused to engage with it to resolve the dispute, but the evidence it submits to this Court does not contain any substantive communication from Musi to YouTube, does not contain any offer by Musi to change its app to resolve the dispute, and does not reference any attempt by Musi to adjudicate its dispute with YouTube in an appropriate forum.

In September 2024, the National Music Publishers' Association ("NMPA") submitted a letter in support of YouTube's complaint. NMPA asserted: "Musi is an audio streaming app that leeches its content offerings from YouTube's Application Programming Interface ('API') to avoid paying copyright licensing fees." Declaration of Violet Evan-Karimian in Support of Apple's Opposition to Motion for Preliminary Injunction ("Evan-Karimian Decl.") Ex. 6 at 1. NMPA submitted evidence in support of its contention that Musi violates YouTube's Terms of Service, including snippets of Musi's code. NMPA also requested "that the app be expeditiously removed from the Apple App Store." **Id.** at 2. On September 24, 2024, Apple removed the Musi app from App Store.

Musi now argues that Apple's decision to remove its app was supported only by a "five word complaint" from YouTube. That is false, and Musi knows that it is false. But even if it were true, Musi's claim and motion would still fail. Apple is contractually permitted to remove the Musi app for any reason, including receipt of YouTube's so-called "five word complaint," and that contractual right is not limited in any way. Apple takes no position on the dispute between Musi and YouTube, nor between Musi and the many other non-parties that have complained about the Musi app. Similarly, in ruling on Musi's motion, this Court need not (and, respectfully, should not) resolve the underlying disputes between Musi and those non-parties. What matters here is that, under the terms of the parties' contract, Apple expressly retains the right to remove apps, including the Musi app, from App Store, with or without cause.

Musi comes nowhere close to establishing any likelihood of success on the merits of its contract claims. Black letter law makes clear that conduct expressly permitted by a contract cannot support a claim for breach of that contract or of the implied covenant of good faith and fair dealing.

Case: 26-2892, 08/21/2026, DktEntry: 12.4, Page 13 of 196

Musi, therefore, is not entitled to the extraordinary remedy it seeks, and the Court should not force Apple to distribute Musi's app before a decision on the merits of Musi's claims.

Musi's motion also fails for the independent reason that Musi has not substantiated its claim that maintaining the status quo temporarily while the merits are litigated "risks Musi's extinction" or otherwise causes irreparable harm. Musi asserts that its app is still in use by its pre-existing customer base, and so Musi is presumably still earning revenue from ads. Moreover, Musi provides no evidence relating to its financial condition and no evidence that it is unable to survive until a decision on the merits in this case. In fact, public reporting suggests that Musi earned more than $100 million in advertising revenue between January 2023 and spring 2024 and employs ten people at most. If true (and Musi provides no evidence that it is not), Musi is not at imminent risk of extinction. On the other hand, Musi's argument that "Apple … faces little risk or harm" if an injunction is granted strains belief. Forcing Apple to distribute an app reportedly downloaded by millions of people and that allegedly implicates the rights of numerous non-parties would subject Apple to legal risks that it should not be compelled to bear. And if the Court accepts Musi's theory as to Apple's contractual obligations, a ruling in Musi's favor would essentially force Apple to adjudicate the merits of every allegation of infringement made against an app developer. Apple receives thousands of third-party complaints each year, and adjudicating each of those complaints would be unmanageable and would subject Apple to legal challenges from both developers and complainants for the business decisions it makes in the face of infringement complaints. Moreover, the public interest in the preservation of intellectual property rights weighs heavily against the injunction sought here, which would force Apple to distribute an app over the repeated and consistent objections of non-parties who allege their rights are infringed by the app.

The Court should deny Musi's motion.

## II. STATEMENT OF FACTS

### A. Musi's Agreements With Apple

Musi concedes that it agreed to the terms of the Apple Developer Program License Agreement ("DPLA"). ***See*** Compl. ¶ 19; Br. at 2-3. The DPLA explicitly provides Apple with

the discretionary right to delist third-party apps for download on App Store, including under § 6.3 of the DPLA, Schedule 1 (for free apps); § 7.3 of the DPLA, Schedule 2 (for paid apps); and § 7.3 of the DPLA, Schedule 3 (for paid apps distributed through Custom App Distribution). Each of these provisions states that "Apple reserves the right to cease marketing, offering, and allowing download" of covered apps "at any time, with or without cause, by providing notice of termination to You." Declaration of Jennifer A. Golinveaux in Support of Musi's Motion for Preliminary Injunction ("Golinveaux Decl.") Ex. A at 84 (DPLA, Schedule 1 § 6.3); **id.** Ex. B at 11 (DPLA, Schedule 2 § 7.3), 20 (DPLA, Schedule 3 § 7.3) (emphasis added). The DPLA, Schedule 1 goes on to state:

> Without limiting the generality of this Section 6.3, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: … (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party[.]

**Id**. Ex. A at 84 (DPLA, Schedule 1 § 6.3) (emphasis added). Both § 7.3 of the DPLA, Schedule 2 and § 7.3 of the DPLA, Schedule 3 include substantively similar provisions, though Schedules 2 and 3 also empower Apple to cease "the marketing" of covered apps, and "allowing download by End-Users" of covered apps. **Id.** Ex. B at 11, 20 (DPLA, Schedule 2 § 7.3; DPLA, Schedule 3 § 7.3).

As a third-party app developer, Musi is also subject to the Apple Developer Agreement ("ADA"), which provides that:

> Apple may terminate or suspend you as a registered Apple Developer at any time in Apple's sole discretion. If Apple terminates you as a registered Apple Developer, Apple reserves the right to deny your reapplication at any time in Apple's sole discretion. … Upon any termination or, at Apple's discretion, suspension, all rights and licenses granted to you by Apple will cease[.]

Declaration of Jennifer Milici in Support of Apple's Opposition to Motion for Preliminary Injunction ("Milici Decl.") Ex. 1 at 4 (ADA ¶ 10).

B. The Musi App And Its Removal From App Store

The Musi app streams audio and video content from YouTube. Evan-Karimian Decl. Ex. 6 at 1. Relying on YouTube's Application Programming Interface ("API"), the app allows users to watch videos and listen to audio from YouTube without any associated YouTube advertising content. **Id.** **See also** Evan-Karimian Decl. ¶ 7. Instead, users are presented with Musi's own advertisements, or can opt to pay a one-time fee for ad-free streaming. **Id.** Ex. 6 at 1.

According to public reporting, the Musi app was downloaded 8.5 million times in 2023. **See** Milici Decl. Ex. 2 at 2; **see also** Declaration of Aaron Wojnowski in Support of Musi's Motion for Preliminary Injunction ("Wojnowski Decl.") ¶ 9 (noting Musi's "massive user base"). Although Musi provides the Court no information regarding its finances or staffing, according to published reports, Musi earned $107 million in advertising revenue alone between January 2023 and May 2024. Milici Decl. Ex. 2 at 6. According to the company's LinkedIn page, Musi has, at most, ten employees. **Id**. Ex. 3 at 1. **See also** Wojnowski Decl. ¶ 4 (noting that Musi "operate[s] … with a small team headquartered in Manitoba").

Musi acknowledges that YouTube itself has raised various concerns about the Musi app, **see** Br. at 5-6, and alleges that Musi and YouTube have had multiple communications about those concerns. In fact, in its motion, Musi reveals that outside counsel for the two companies interacted about YouTube's concerns in 2021. **Id.** at 5; Declaration of Michael S. Elkin in Support of Musi's Motion for Preliminary Injunction ("Elkin Decl.") ¶ 2. Musi briefly references those communications but did not submit them for review by this Court.

Since the Musi app was first published on App Store, Apple has received more than a dozen third-party complaints regarding the app's functionality, including complaints from record labels and trade organizations within the music industry alleging that the app infringes the intellectual property rights of these organizations and their members. Evan-Karimian Decl. ¶ 3. For example, Apple received complaints from, among others, Universal Music Group and SME. **Id**. Each of these complaints was provided to Musi, as Apple's standard practice for resolving third-party

disputes is to "contact the provider of the disputed content regarding [the] claim and ask that they work with [the claimant] directly to resolve the issue." Milici Decl. Ex. 4 at 1.

In July 2023, IFPI—a worldwide organization representing the recording industry—submitted a complaint to Apple alleging that the Musi app engages in the unauthorized distribution of the copyrighted works of IFPI members ("IFPI Member Content"). Evan-Karimian Decl. ¶ 4. IFPI asserted that the Musi app circumvents YouTube's technological protection measures ("TPMs") to allow users to engage with IFPI Member Content in ways not authorized under YouTube's licensing agreements—including allowing for "background listening" (i.e., streaming YouTube audio content from a mobile device while the device is locked) and allowing for "non-video playback" (i.e., streaming YouTube audio content without the associated visual content). **Id.** Ex. 1 at 1, 6. Musi, through its counsel (Winston & Strawn LLP), responded to these complaints by asserting that it does not violate YouTube's Terms of Service. **Id.** at 3. IFPI disagreed and has repeatedly demanded that Apple remove Musi's app because, according to IFPI, the app infringes IFPI members' copyrights. **Id.** at 1, 6-7, 10-11, 17-18, 23, 29, 38. On April 15, 2024, IFPI reiterated its objections to Apple (copying counsel for Musi), and asserted:

> In light of this explanation and our continued correspondence with you regarding this app more generally, please note that we consider that Apple has the requisite knowledge of this illegal activity as referred to in Article 6 of the EU Digital Services Act. Therefore, for all these reasons please keep this complaint open and we reiterate our request that the app be removed from the App Store without further delay.
>
> In the meantime, all rights and remedies of IFPI and its members and their represented artists are reserved in full.

**Id.** at 7. Following a response from Winston & Strawn, Apple reiterated that "Apple cannot serve as arbiter for disputes among third parties," directed Musi to continue to work with IFPI on the issue, and stated that Apple "look[ed] forward to confirmation from both parties that this issue has been resolved." **Id.** at 2. IFPI responded that Musi had not resolved IFPI's objections, provided Apple with a copy of a letter sent to Musi's UK solicitors, reiterated its grounds for believing "the

Musi app is infringing [IFPI] members' rights," and urged Apple: "[W]ill you now please remove the Musi App from App Store without any further delay." **Id.** at 1.

SME, which is a member of IFPI, also submitted a complaint against the Musi app in July 2023 which included similar allegations that the Musi app was infringing SME copyrights. Evan-Karimian Decl. ¶ 6. This complaint, like the July 2023 IFPI complaint, also went unresolved. In April 2024, a representative from SME reached out to Apple to follow up on the status of that complaint. **Id**. As part of that outreach, SME stated its belief—similar to IFPI's—that Musi sourced SME content by circumventing YouTube's TPMs. **Id**.

The music industry's complaints about the Musi app have also received significant public attention. For example, a **Wired** article published in May 2024 states that the "legality" of Musi is "being questioned by record labels and music industry groups … over whether it has the rights to distribute and monetize the music users stream on its platform." Milici Decl. Ex. 2 at 3. A separate article published in July 2024 notes that the app "operat[es] in a 'gray area,'" and highlights the complaint submitted to Apple by "global music industry body IFPI." **Id.** Ex. 5 at 3.

On July 29, 2024, YouTube contacted Apple to reiterate its position from a prior complaint that Musi was violating YouTube's Terms of Service. Evan-Karimian Decl. ¶ 8. YouTube's July 29, 2024 email came after a phone call between Apple and YouTube on July 15, 2024, during which YouTube asserted that Musi's use of YouTube's API to stream content from YouTube violated the platform's Terms of Service. **Id.** ¶ 7. YouTube requested that Apple remove the Musi app from App Store. **Id**. Apple notified Musi of YouTube's complaint on August 8, 2024, informing Musi that failure to resolve the complaint directly with YouTube could result in removal of the Musi app from App Store. Elkin Decl. Ex. A.

On September 11, 2024, the National Music Publishers Association ("NMPA")—a trade organization representing American music publishers and songwriters—submitted a letter to Apple in support of YouTube's July 2024 complaint and providing what NMPA described as "important evidence concerning Musi's abuse of YouTube's policies." Evan-Karimian Decl. Ex. 6 at 1. NMPA, like the other complaining entities, outlined concerns that Musi "leeches its content

offerings from YouTube's [API] to avoid paying copyright licensing fees," and explained that Musi's "ad manipulation serves to undermine NMPA members' various YouTube licensing structures," such that Musi "diverts royalties from music publishers and songwriters to itself." **Id.** at 1-2. As an attachment to its letter, NMPA provided "NMPA's own research into Musi's technical workings," which, NMPA asserted, purportedly "confirms that Musi is indeed in violation of YouTube's Developer Policies." **Id.** at 2. The attachment to the NMPA letter provides what NMPA describes as snippets of the code underlying the Musi app as well as the network requests that occur when YouTube content is played through the Musi app. **Id.** at 4-5. NMPA argued that this evidence reflects that (1) "Musi uses YouTube's API to pull in tracks/videos," **id.** at 4, and (2) "Musi lays its own ads over YouTube's ads" using third-party advertising services, including services for advertising analytics and revenue collection, **id.** at 4-5. The NMPA letter also cites to YouTube's Developer Policies, which state, among other prohibitions, that developers may not "sell advertising … on any page or screen that contains YouTube API Data unless other data, content, or material not obtained from YouTube appears on the same page and offers enough independent value to justify such sales if the YouTube API Data were removed," and further, that developers may not "modify, interfere with, replace, or block advertisements placed or served by YouTube." Milici Decl. Ex. 6 at 23, 25.

On September 18, 2024, following the NMPA letter; the outreach from SME; and IFPI's repeated requests that Apple remove the app, and upon confirming with YouTube that its dispute with Musi had not been resolved, Apple notified Musi that "[i]f the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store." Elkin Decl. Ex. D at 2-3. Counsel for Musi responded on September 19, 2024, stating that they had been in communication with YouTube Legal—without confirmation that the matter had been resolved—and "acknowledg[ing] that Apple does not act as arbiter for disputes amongst third parties." **Id.** at 2. The September 19 response directly contradicts a September 6, 2024 message from YouTube to Apple, which states that "Musi has not reached out to us … and this app continues to violate our Terms of Service." Elkin Decl. Ex. C at 2. While Musi's counsel responded in a separate

September 6, 2024 message that he "did not receive a response to my last substantive communication [with YouTube], which detailed how Musi's service works and why it is fully in compliance with YouTube's terms in response to YouTube's questions," **id**. at 1, the only such substantive communication identified by Musi in its motion papers appears to have occurred in April 2021, Elkin Decl. ¶ 2, over three years prior to YouTube's July 2024 complaint. Musi did not submit the 2021 communications to the Court.

In sum, in 2024 alone, SME, IFPI, NMPA, and YouTube each alleged that the Musi app violates YouTube's Terms of Service. IFPI and NMPA submitted evidence in support of those allegations and alleged that their members were harmed by Musi's copyright violations. Musi responded to complaints by denying that it violates YouTube's Terms of Service. But Apple repeatedly reiterated, and Musi acknowledged, that Apple does not adjudicate disputes amongst third parties. Apple also repeatedly informed Musi that its app would be removed if it failed to resolve its dispute with YouTube.

On September 24, 2024, Apple removed the Musi app from App Store. At the time of removal, Apple explained to Musi that "Apple informed you of the claim, and of your responsibility to resolve the matter directly with the Claimant, or risk removal of your App from the App Store." Elkin Decl. Ex. E. On October 2, 2024, rather than resolving the matter with YouTube through negotiation or litigation, Musi sued Apple for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. 1. Musi then moved for a preliminary injunction requiring Apple to reinstate the Musi app on App Store. Dkt. 10.

## III. LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, **by a clear showing**, carries the burden of persuasion." **Mazurek v. Armstrong**, 520 U.S. 968, 972 (1997) (citation omitted) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

tips in his favor, and that an injunction is in the public interest." **Winter v. Nat. Res. Def. Council, Inc**., 555 U.S. 7, 20 (2008). The Ninth Circuit has "adopted a sliding-scale approach to the **Winter** factors, stating that serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the **Winter** test are also met." **Bennett v. Isagenix Int'l LLC**, 118 F.4th 1120, 1126 (9th Cir. 2024) (internal quotations, citations, and emphasis omitted). However, "if a movant fails to meet the threshold inquiry of likelihood of success on the merits (or serious questions going to them), a court may decide to deny a preliminary injunction without considering the other factors." **Id.**

Musi seeks a mandatory injunction because it asks the Court to force Apple to distribute its app through App Store. A "mandatory injunction … goes beyond simply maintaining the status quo and orders the responsible party to take action pending the determination of the case on its merits." **Doe v. Snyder**, 28 F.4th at 103, 111 (9th Cir. 2022). A movant's burden is "doubly demanding" in seeking a mandatory injunction—the movant "must establish that the law and facts **clearly favor** [its] position, not simply that [it] is likely to succeed." **Garcia v. Google, Inc.**, 786 F.3d 733, 740 (9th Cir. 2015); **see also Snyder**, 28 F.4th at 108 (even where the movant presents "extreme or very serious damage … not compensable in damages," the request may only be granted if "the merits of the case [a]re not doubtful"). In an apparent effort to avoid the mandatory injunction standard, Musi's motion requests "a preliminary injunction to **restrain** Defendant Apple Inc. from **refusing** to list or otherwise **making unavailable**," the Musi app. Br. at i (emphases added). But Musi's wordsmithing does not change the fact that its motion requests an order forcing Apple to "take affirmative action" by reinstating the Musi app, which would change the status quo. **See Garcia**, 786 F.3d at 740; **see also Kennedy v. Meta Platforms, Inc.**, 2024 WL 4031486, at *15 (N.D. Cal. Sep. 3, 2024) (explaining that plaintiffs "frame this as a prohibitory injunction to stop censorship, but it seems to be a mandatory injunction to order the defendants to publish the plaintiffs' posts, videos, speech, and other content"). While the mandatory injunction standard is appropriate here, as set forth below, Musi has failed to satisfy its burden even under the more lenient prohibitory injunction standard, and its motion should be denied.

## IV. ARGUMENT

Musi fails to meet its burden under any prong of the preliminary injunction standard. Its merits arguments fail because the parties' agreements expressly grant Apple discretion to remove apps from App Store. This fundamental and incurable deficiency in Musi's claims precludes injunctive relief. **See Garcia**, 786 F.3d at 740 ("[W]hen a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three **Winter** elements." (internal quotations omitted)); **see also Keezio Grp., LLC v. Mommy&Me LLC**, 2024 WL 3432001, at *4 (N.D. Cal. July 16, 2024) ("Because [plaintiff] has not met its burden of demonstrating likelihood of success on the merits or even serious questions going to the merits, it is unnecessary for the Court to consider the remainder of the **Winter** factors.").

In addition to failing to demonstrate that its contract claims are likely to succeed, Musi fails to demonstrate that it needs the extraordinary relief it seeks while the claims are litigated. Musi provides no information about its financial condition at all, and cannot establish that it will suffer irreparable injury during the litigation. Moreover, Musi fails to properly balance the equities, and incorrectly assumes that forcing Apple to distribute Musi's app despite repeated complaints from third parties that allege infringement of their rights poses no harm to Apple. Finally, it is not in the public interest to force Apple to distribute the Musi app over the objections of multiple non-parties, who are not before the Court, and who allege that the app infringes their legal rights.

### A. Musi Has Not Demonstrated A Likelihood Of Success Or Even Serious Questions On The Merits

Musi's claims against Apple fail because the conduct at issue—Apple's decision to remove the Musi app from App Store—is expressly permitted by the parties' contracts. Under controlling California law, conduct that is expressly permitted cannot form the basis of either a breach of contract claim or a claim for a breach of the covenant of good faith and fair dealing. **See, e.g.**, **Oasis W. Realty, LLC v. Goldman**, 51 Cal. 4th 811, 821 (2011) (requiring showing of breach); **Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.**, 2 Cal. 4th 342, 376 (1992) (holding that conduct that "was expressly permitted by the [contract] and was clearly within the parties'

reasonable expectations …. can never violate an implied covenant of good faith and fair dealing"); **see also Solomon v. North Am. Life and Cas. Ins. Co.**, 151 F.3d 1132, 1137 (9th Cir. 1998) ("[A] party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement."). To avoid this common-sense result, Musi contorts the plain language of the governing provisions beyond recognition. In doing so, Musi cites cases that not only fail to support Musi's position, but directly contradict it.

1. The DPLA Grants Apple Complete Discretion To Remove Apps From App Store

The very DPLA provisions on which Musi relies give Apple the sole and complete discretion to remove apps from App Store. Each provision provides that "Apple reserves the right to cease marketing, offering, and allowing" downloads or purchases of the developer's application "at any time, with or without cause, by providing notice of termination." Golinveaux Decl. Ex. A at 84 (DPLA, Schedule 1 § 6.3); **id.** Ex. B at 11 (DPLA, Schedule 2 § 7.3), 20 (DPLA, Schedule 3 § 7.3) (emphasis added). Reserving this right is fundamental to Apple's management of App Store. As courts have acknowledged, Apple's ability to curate which apps are available on App Store directly benefits both consumers and developers because it "provides a safe and trusted user experience on iOS, which encourages both users and developers to transact freely and is mutually beneficial." **Epic Games, Inc. v. Apple Inc.**, 559 F. Supp. 3d 898, 1038 (N.D. Cal. 2021). Musi's claims fail based on this language alone.

Musi ignores the operative first sentence of each of these provisions and focuses instead on the language that comes after. Specifically, following the clear, unambiguous grant of discretion to Apple, each provision states that—"[w]ithout limiting the generality" of rights granted in the section—the developer "acknowledge[s] that Apple may cease allowing download" of apps "in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws," that the applications "infringe … intellectual property rights of any third party." Golinveaux Decl. Ex. A at 84 (DPLA, Schedule 1 § 6.3); **id.** Ex. B at 11 (DPLA, Schedule 2 § 7.3), 20 (DPLA,

Schedule 3 § 7.3) (emphasis added). Musi reads this acknowledgement to **limit** the express right granted to Apple in the preceding sentence to act in its sole discretion. Br. at 15 (arguing that Apple may terminate an app for suspected intellectual property violations **only** if it demonstrates "reasonable belief" following "human and/or systematic" review). Musi's argument is contrary to the plain meaning of the phrase "without limiting" and contrary to basic rules of contract interpretation. The phrase "**without limiting** the generality of the foregoing" introduces terms that expand or elaborate, not terms that limit. **See Vellejo v. Narcos Productions LLC**, 418 F. Supp. 3d 1084, 1089 (S.D. Fla. 2019) ("Plaintiff argues that this clarification is a limitation, but the language at the start of the very sentence setting out the movie rights says, 'without limiting the generality of the foregoing' … Under California law, this language indicates that the rights assigned are broader than the enumerated rights that follow."); **see also FTC v. EDebitPay, LLC**, 695 F.3d 938, 943 (9th Cir. 2012) ("'[I]ncluding but not limited to' language 'is a phrase of enlargement.' It indicates an intention that enumerated examples following the phrase should not be construed as an exhaustive listing." (quoting **In re Johnny M.**, 100 Cal. App. 4th 1128, 1135 (2002))).

Musi claims that courts "have consistently effectuated statutory and/or contractual language proceeding [sic] similar phrasing," Br. at 16 (emphasis added). While difficult to discern, Musi apparently argues that courts recognize that parties have agreed to the terms that follow phrases like "without limiting the foregoing." But the issue is not whether Musi's "acknowledgement" of those terms is "effective" (it is); rather, the issue is whether the specific acknowledgement limits the right granted to Apple before it (it does not). In fact, Musi's lead case—**Marder v. Lopez**, 450 F.3d 445 (9th Cir. 2006)—illustrates that critical distinction.

**Marder** involved a contractual provision that began with a broad release of "each and every claim" arising from "any matters." 450 F.3d at 449. "Without limiting the generality of the foregoing Release," the provision also released "each and every claim" arising from the plaintiff's contributions to the movie "Flashdance." **Id.** at 454. This latter sentence encompassed "any and all arrangements (including but not limited to research, interviews, costumes, photographic sessions, assistance, services and technical advice of any kind)." **Id.** Musi observes that the Ninth

Circuit gave "effect" to the latter language in finding that the claim asserted was covered by the release for "any and all arrangements." Br. at 16. But that does not help Musi because the Ninth Circuit also held that even if the plaintiff's claim was "not covered by 'arrangements,' the instant claim would be precluded by the release relating to 'any matters.'" In other words, the Ninth Circuit in **Marder** expressly declined to read language following the phrase "**[w]ithout limiting the generality of the foregoing**" as limiting the defendants' contractual rights. **See** 450 F.3d**.** at 451-52 (emphasis in original).

Not surprisingly, **none** of Musi's cited cases read language following the phrase "without limiting the generality of the foregoing" to limit the language that came before it. **Chastain v. Howard**, 716 F. Supp. 3d 740, 744, 746-47 (N.D. Cal. 2024), Br. at 16, involved a release that covered "any and all … claim[s]" that either party had against each other **at the time of** the release and then, "without limiting the generality of the foregoing," specifically released claims under the California Family Code, "known or unknown," which arose before or **after the release.** By holding that the latter release, for claims post-dating the agreement, was not applicable, the court in **Chastain** did not in any way limit the scope of the broad release applicable to existing claims. In fact, the defendant in **Chastain** had only relied on the latter release regarding "known or unknown" claims for its unsuccessful waiver argument. **See Chastain v. Howard**, No. 22-cv-06747-PCP (N.D. Cal.), Dkt. 24 (Motion to Dismiss) at 2, 6. **See also Merced Prod. Credit Ass'n v. Bayer**, 222 Cal. App. 2d 793, 799-800 (1963) (Br. at 16) (applying statutory language providing for a mortgagee's lien over subsequently acquired livestock, without limiting the generality of the preceding provision requiring that sale contracts of covered livestock be properly recorded).

Judge Cousins's decision in **Intango, Ltd. v. Mozilla Corp.**, 2020 WL 12584274 (N.D. Cal. Aug. 25, 2020), cited by Musi, is instructive. Judge Cousins addressed a termination provision (similar to the provisions at issue in this case) that (1) expressly provided, in the first sentence, that Mozilla reserved the right "in [its] sole discretion" to remove or revoke add-ons to its software, and (2) which proceeded, in the second sentence, to state that Mozilla's right "applies, **but is not limited to**, Add-ons that, in [Mozilla's] reasonable opinion, violate [the parties'] Agreement or the

law, [or] any applicable Mozilla policy." **Id.** at *6. Musi wrongly claims that Judge Cousins dismissed the complaint only after implicitly concluding that Mozilla possessed a reasonable belief that the plaintiff had violated policies. Br. at 17. But, in fact, Judge Cousins expressly rejected the proposition that the second sentence limited the broad discretion to terminate that Mozilla reserved in the first sentence:

> [U]nder the Distribution Agreement, Mozilla may "remove or revoke access to any Listed or Unlisted Add-ons." **See** § 7. That right "is not limited to" situations where Mozilla found that the add-on violates Mozilla policy. **Id**. Thus, Intango's contention that Mozilla unreasonably found that its add-ons violated Mozilla policy or that the removal was conducted in bad faith is beside the point. The Distribution Agreement simply permits Mozilla to remove Intango's add-ons "at any time." **Id**. … [T]he express terms of the Distribution Agreement permit Mozilla to remove Intango's add-ons even if Mozilla's asserted reason for removal was pretextual. A contrary result would impermissibly impose substantive limits on Mozilla expressly disclaimed by the parties' agreement.

**Intango**, 2020 WL 12584274, at *7. The same reasoning applies here.

Indeed, interpreting the DPLA provisions to circumscribe Apple's broad discretion to remove apps "with or without cause" makes no sense in the context of the parties' overall contractual relationship. The ADA, which also governs Apple's relationship with registered developers, provides—without any limiting language whatsoever—that "Apple may terminate or suspend … a registered Apple Developer at any time in Apple's sole discretion" and that "[u]pon any termination or, at Apple's discretion, suspension, all rights and licenses granted … by Apple will cease." Milici Decl. Ex. 1 at 4 (ADA ¶ 10). While Apple has not terminated or suspended Musi's developer account, this provision renders Musi's tortured construction of the cited DPLA provisions illogical because it implies that Apple was limited in its discretion to remove the Musi app but had full discretion to terminate Musi's developer account entirely (and the Musi app along with it).

Thus, as in **Intango**, whether Apple had a "reasonable belief" that Musi violated the legal rights of third parties is "beside the point." **Intango,** 2020 WL 12584274, at *6. Apple reserved the sole discretion to remove the Musi app "with or without cause." Like **Intango**, that sole discretion is fatal to Musi's contract claim and its claim for breach of the implied covenant of good

faith and fair dealing. Apple had no obligation to further engage with Musi before removing its app. **See, e.g.**, **Song fi Inc. v. Google, Inc.**, 108 F. Supp. 3d 876, 884-85 (N.D. Cal. 2015) (dismissing plaintiff's breach of contract and implied covenant claims with prejudice where the YouTube Terms of Service authorized YouTube "to relocate or remove videos in its sole discretion" and to "discontinue any aspect of the Service at any time"); **Ebeid v. Facebook, Inc.**, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (rejecting plaintiff's argument that Facebook "failed to exercise its contractual right to remove or disprove any post in good faith" where "plaintiff [] conceded that Facebook had the contractual right to remove or disapprove any post or ad at Facebook's sole discretion"); **Enhanced Athlete Inc. v. Google LLC**, 479 F. Supp. 3d 824, 833 (N.D. Cal. 2020) (dismissing implied covenant claim where Google had "sole discretion" to determine whether plaintiff's videos "violated the Terms of Use and Community Guidelines, and to 'discontinue' service 'at any time,'" and noting that whether plaintiff "disagreed with [Google's] reasoning, or lost revenue as a result, is simply inapposite").

### 2. If Required, Apple Had "Reasonable Belief" That The Musi App Violated Third Party Rights

Even if Musi's claims did turn on whether Apple had a "reasonable belief" within the meaning of the DPLA (and they do not), Musi's claims would still fail.

Putting aside the multiple complaints Apple received about the Musi app reaching back to 2015, in 2023 and 2024 alone Apple received complaints not only from YouTube itself (including during a July 15, 2024 phone conversation between YouTube and Apple, **see supra** § II.B.), but also from multiple record labels and organizations representing the interests of record labels and musicians, urging Apple to remove the Musi app because, they argued, the app infringed copyrights and improperly siphoned off royalty revenues to which record companies and artists were entitled through YouTube distribution. Musi's contention that Apple removed its app based solely on "a five word complaint" from YouTube is, as detailed above, demonstrably false.

Musi participated in at least ten months of communication with IFPI and Apple concerning IFPI's allegations that Musi violates YouTube's Terms of Service and infringes the copyrights of

IFPI's members. Evan-Karimian Decl. Ex. 1. And following SME's outreach to Apple in April 2024 and IFPI's repeated demands that Apple remove the Musi app, YouTube renewed its own complaint to Apple. **Id.** ¶¶ 7-8. Then, on September 11, 2024, Apple received a letter from NMPA, which alleged that "[b]y removing YouTube's native advertisements in favor of its own, Musi violates YouTube's developer Agreement—as defined in Section 2 of YouTube's API Services Terms of Service." **Id.** Ex. 6 at 1. The NMPA letter further claimed that "Musi is an audio streaming app that leeches its content offerings from YouTube's [API] to avoid paying copyright licensing fees," and engages in "ad manipulation … to undermine NMPA members' various YouTube licensing structures." **Id**. NMPA also attached its "own research into Musi's technical workings" in "furtherance of YouTube's complaint" against Musi, which it argued would be "highly relevant to Apple's review of YouTube's complaint," and "hope[d] that Apple will act swiftly to avoid further harm." **Id.** at 2.

Thus, before removing Musi's app, Apple received and reviewed correspondence from multiple industry organizations and communicated directly with YouTube and others amid a backdrop of public reporting questioning the legality of Musi's business model. **See** Milici Decl. Exs. 2, 5. Musi's argument that Apple was required to conduct some unspecified other "human or systematic review" is without merit. Apple's consideration of information provided by and communications with third parties (and information available in the press) is entirely proper under the broad discretion provided by the parties' agreements. Indeed, the same DPLA provisions cited by Musi make clear that Apple may remove an app based upon an infringement notice received from a third party. Golinveaux Decl. Ex. A at 84 (DPLA, Schedule 1 § 6.3); **id.** Ex. B at 11 (DPLA, Schedule 2 § 7.3), 20 (DPLA, Schedule 3 § 7.3).

Musi's claim thus fails multiple times over—Apple has the sole discretion to remove Musi's app for any reason, and Apple had ample grounds to form a reasonable belief that Musi's app potentially infringes third party rights.

### B. Musi Fails to Meet Its Burden On Any Of The Remaining Winter Elements

Because Musi has failed to establish a likelihood of success on the merits (or any serious question as to the merits), the Court's analysis can stop here. But even setting aside the fundamental problems with the merits of Musi's claims, Musi's motion would fail under the remaining **Winter** elements. Musi has submitted no evidence demonstrating that it will suffer irreparable harm while its claims are litigated on the merits. Moreover, Musi ignores the harm to Apple that would flow from an injunction, as well as the potential harm to third parties properly considered under the public interest element. Musi cannot carry its burden under **any** of the four **Winter** elements, and its motion should be denied.

#### 1. Musi Fails To Substantiate Irreparable Harm

"A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must **demonstrate** immediate threatened injury as a prerequisite to preliminary injunctive relief." **Caribbean Marine Servs. Co. v. Baldrige,** 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). "Speculative injury cannot be the basis for a finding of irreparable harm." **In re Excel Innovations, Inc.**, 502 F.3d 1086, 1098 (9th Cir. 2007). Nor can a plaintiff satisfy this element with unsupported assertions. **See Herb Reed Enters., LLC. v. Fla. Ent. Mgmt., Inc.**, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing grant of preliminary injunction because "the district court abused its discretion by relying on 'unsupported and conclusory statements regarding harm [the plaintiff] **might** suffer.'" (emphasis in original)).

Here, the only evidence Musi cites to support its claim that it will suffer irreparable harm while the merits are litigated is a three-page declaration from Aaron Wojnowski, its co-founder and CEO. Mr. Wojnowski declares that "[u]nless the Musi app is re-listed, Musi will be forced to terminate its staff and shut its doors." Wojnowski Decl. ¶ 9. Mr. Wojnowski does not provide any factual basis for that contention and nowhere states that Musi would be forced to "shut its doors" imminently, while this litigation is pending. The declaration says nothing about Musi's financial condition, the revenue it is currently generating, or when Musi would supposedly be

"forced" to terminate its staff. Contrasting Musi's unsubstantiated claims, public reporting suggests that Musi has generated over $100 million in advertising revenue between January 2023 and Spring 2024. Milici Decl. Ex. 2 at 6. And Musi has offered no reason to believe it is not still generating substantial advertising revenue, as the Musi app apparently remains available to its existing "massive user base." **See** Br. at 11; Wojnowski Decl. ¶ 9. **See also** Milici Decl. Ex. 2 at 2 (noting that the Musi app had approximately 8.5 million downloads in 2023). Musi's own LinkedIn profile also reflects that the company employs, at most, ten people. **Id.** Ex. 3 at 1; **see also** Wojnowski Decl. ¶ 4 (noting that Musi is operated by "a small team"). In light of such evidence (which Musi either corroborates or provides no evidence to contradict), and with only a speculative and conclusory declaration to support its claims, Musi has not established that the temporary inability to "update[e] its app and acquir[e] new users" during the pendency of the litigation will force it to shutter its business entirely. **Id.** ¶ 8.

While the threat of being driven out of business may sometimes be sufficient to establish irreparable harm, the movant must substantiate that risk to prevail. **Lag Shot LLC v. Facebook, Inc.**, 545 F. Supp. 3d 770, 787 (N.D. Cal. 2021) ("Although the threat of being driven out of business may establish irreparable harm …. mere assertions that a plaintiff 'may' go out of business are insufficient."). Courts routinely deny requests for injunctive relief where, as here, the requests are supported by conclusory declarations without any underlying financial information. For example, in **Stackla, Inc. v. Facebook Inc.**, Judge Hamilton denied an injunction, holding that a CEO's declaration that the plaintiffs would "soon reach a tipping point where [they] can no longer operate" was "inherently speculative" because the plaintiffs failed to "offer any indication about their financial strength or the likelihood that they will dissolve as going concerns at any particular point in time." 2019 WL 4738288, at *5 (N.D. Cal. Sept. 27, 2019). **See also AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.**, 2019 WL 3859012, at *5 (N.D. Cal. Aug. 16, 2019) (denying injunctive relief where the plaintiff did "not offer any indication of when it would be driven out of business, or underlying financial information that would demonstrate imminent, irreparable harm"); **Int'l Medcom, Inc. v. S.E. Int'l, Inc.**, 2015 WL 7753267, at *5 (N.D. Cal. Dec.

2, 2015) (denying a preliminary injunction where the plaintiff failed to show that its "survival [was] a matter of weeks or months"). Even where plaintiffs **do** provide evidence of potential losses (which Musi has not), courts have found such evidence insufficient where it is not clear that such losses would cause plaintiffs to be "driven out of business entirely." **Putian Authentic Enter. Mgmt. Co. v. Meta Platforms, Inc.**, 2022 WL 888659, at *2 (N.D. Cal. Mar. 25, 2022). The court in **Putian** denied injunctive relief where the alleged irreparable harm—that plaintiffs' business would "immediately and entirely shut down"—was supported only by a declaration from the plaintiffs' CEO attesting that the plaintiffs stood to lose "an estimated collective $1.12 million per day" without access to Meta's advertising platform. **Id.** Because there was also evidence that plaintiffs "earned approximately $68 million in gross revenue" in the year prior, the court found that plaintiffs had "not made an adequate showing that irreparable harm is likely without injunctive relief." **Id.**

Musi primarily relies on **hiQ Labs, Inc. v. LinkedIn Corp.**, but in that case, the movant established that the defendant's cease-and-desist letter "stalled" a critical round of company financing and created "uncertainty" about the "future viability of [the] business" which caused several employees to leave the company. 31 F.4th 1180, 1189 (9th Cir. 2022) (finding "ample support" in the record to support the "credib[ility]" or plaintiff's "assertion that the survival of its business is threatened"). The movant in **hiQ Labs** further established that without the requested preliminary injunction, it would "be forced to breach its existing contracts with clients," which were essential to company survival. **Id.** Musi, by contrast, acknowledges that it still maintains its current customer base (and tellingly does not disclose the ongoing revenue that customer base provides). Br. at 11. And while it claims now to "lack[] the means of updating its app and acquiring new users" during this suit, **see** Wojnowski Decl. ¶ 8, it does not explain, let alone establish, why such a temporary interruption threatens the existence of its business.

Similarly, while "[i]n some instances, damage to reputation or goodwill, because it is difficult to calculate, qualifies as irreparable harm … broad or vague claims that the plaintiff 'may experience a loss of good will and customer confusion' … are insufficient to establish a likelihood

of irreparable harm." **Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC**, 2014 WL 5361548, at *5 (N.D. Cal. Oct. 20, 2014). Musi cites purported uncertainty and confusion by potential and current customers as to whether they will continue to have access to the Musi app, Br. at 11, as well as potential harm caused by "copycat" apps—which, according to Musi, may cause existing users to delete the Musi app on the mistaken belief that the "copycat" apps are new versions of the original, **id.** **See also** Wojnowski Decl. ¶ 10. But Musi "submits no evidence of actual customer confusion." **Cutting Edge Sols.**, 2014 WL 5361548, at *7. And the Court "cannot rely on pronouncements … grounded in platitudes but must cite evidence that irreparable injury is likely in the absence of an injunction, and that legal remedies, such as money damages, are inadequate." **Id.** (internal quotation marks omitted).

2. Musi Fails To Establish That The Balance of Equities Tips In Its Favor

In evaluating the equities, courts must "balance the interests of all parties and weigh the damage to each." **CTIA - The Wireless Ass'n v. City of Berkeley**, 928 F.3d 832, 852 (9th Cir. 2019) (affirming finding that balance of equities tipped in defendant's favor where plaintiff failed to show a likelihood of success on the merits); **see also Glow Indus., Inc. v. Lopez**, 252 F. Supp. 2d 962, 1005 (C.D. Cal. 2002) (denying preliminary injunction where, even "assuming **arguendo** that plaintiff ha[d] raised serious questions regarding the merits of its claim, the court [could not] find that the balance of hardships tip[ped] sharply in [plaintiff's] favor"). Here, the equities favor Apple. Musi's requested injunction would significantly impact Apple's ability to effectively manage the distribution of third-party apps on App Store by exposing Apple to potential litigation for the allegedly infringing conduct of an app developer and forcing Apple to adjudicate disputes between rights holders and app developers—despite Apple's contractual right to **avoid** these burdens through discretionary termination.

First, as to the Musi app specifically, an injunction forcing Apple to distribute the app would expose Apple to significant legal risks. Apple has a legitimate interest in avoiding burdensome litigation for the potentially infringing conduct of third-party developers on App Store. That legal risk is not theoretical; Apple has had to litigate a number of lawsuits alleging

direct or contributory infringement related to third-party content on Apple platforms. **See, e.g.**, **SA Music LLC v. Apple Inc.**, 3:20-cv-02965 (N.D. Cal. 2020) (copyright infringement action based on allegedly infringing recordings distributed through the Apple iTunes Store); **Pusztai v. Apple Inc.**, 3:21-cv-07995 (N.D. Cal. 2021) (copyright infringement action based on allegedly infringing third-party app distributed through App Store); **Krafton, Inc. v. Apple Inc.**, 2:22-cv-00209 (C.D. Cal. 2022) (same). Here, multiple industry groups, representing the interests of a large number of artists and other copyright holders, along with major record labels, have alleged that the Musi app infringes their rights and demanded that Apple remove it from App Store. Musi recognizes that Apple could face litigation if it continues to distribute its app, but argues that Apple "faces no risk of liability … because Musi already agreed to indemnify and hold Apple harmless with respect to any such claim via the [DPLA]." Br. at 11-12. Of course, Apple is under no obligation to take on this risk, and it is unclear that Musi **could** indemnify Apple, given Musi's contention that a temporary delisting of its app is sufficient to bring the company to the verge of extinction. **See** Wojnowski Decl. ¶¶ 8-9 (claiming that without "access to the App Store" during the pendency of the litigation, Musi will "be forced to terminate its staff and shut its doors"). And the harm to Apple is not limited to its potential "liability," but includes harm to its reputation and interests if it is alleged to have participated in contributory infringement by the numerous rights holders that have complained about Musi.

Second, if Musi prevails on its request for injunctive relief, the effect of that ruling would be to force Apple to investigate and adjudicate the merits of future disputes between developers and third parties before removing an app from App Store. App Store provides a safe and trusted place for consumers to find apps, it is not a forum for the adjudication of legal rights. Apple receives around ten thousand third-party complaints each year. Evan-Karimian Decl. ¶ 2. Adjudicating the merits of every complaint would be a hugely burdensome undertaking and would expose Apple to additional legal risks. Apple has a legitimate interest in avoiding those burdens not just for the allegedly infringing conduct of third-party developers on App Store, but also for the business decisions it makes in the face of complaints about potential infringement. This is

precisely why, as Musi's own counsel has acknowledged, "Apple does not act as arbiter for disputes amongst third parties." Elkin Decl. Ex. D at 2.

Finally, Musi's argument that the preliminary injunction "merely results in Apple being forced to do **what it has already promised to do** via the [DPLA]" is backwards. Br. at 11 (emphasis in original). **See also id.** at 12 ("Apple **chose** to arbitrarily remove the Musi app in breach of its own agreement and its duty of good faith and fair dealing[.]" (emphasis in original)). It is **Musi** that contractually agreed that Apple could remove Musi's app from App Store at any time for any reason, including for potential intellectual property infringement, **see** Golinveaux Decl. Ex. A at 84 (DPLA, Schedule 1 § 6.3); **id.** Ex. B at 11 (DPLA, Schedule 2 § 7.3), 20 (DPLA, Schedule 3 § 7.3), and it is **Musi** that now seeks an order from this Court requiring Apple to reinstate Musi's app, in violation of Apple's contractual termination rights. The equities do not support such a backwards outcome.

3. Musi Fails To Establish That An Injunction Is In The Public Interest

The preliminary relief Musi seeks is not in the public interest. "If … the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." **Stormans, Inc. v. Selecky**, 586 F.3d 1109, 1139 (9th Cir. 2009) (vacating preliminary injunction and remanding for further proceedings where the district court failed to properly consider the public interest). In this case, multiple organizations representing the interests of the music industry have raised concerns that Musi's streaming practices violate the copyrights of record labels, music publishers, recording artists, and songwriters, including, allegedly, by depriving copyright holders of the royalties to which they are entitled. **See supra** § II.B.

It is not in the public interest for the Court to force Apple to distribute an app despite widespread concerns that the app infringes the intellectual property of nonparties who are not before the Court. Indeed, an injunction requiring reinstatement of the Musi app would contravene the well-recognized interest in the protection of intellectual property rights. **See, e.g.**, **WeRide Corp. v. Kun Huang**, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019) ("Courts often find that the public

has a strong interest in protecting intellectual property rights."); **Fin. & Sec. Prods. Ass'n v. Diebold, Inc.**, 2005 WL 1629813, at *7 (N.D. Cal. July 8, 2005) (denying motion for preliminary injunction where injunction would prevent enforcement of intellectual property rights, noting that such enforcement "serves the public interest").

Furthermore, as Musi itself also notes—but misapplies—"[t]he public has an interest in … enforcing contractual rights and obligations." Br. at 13 (quoting **Abdou v. Davita, Inc**, 734 F. App'x 506, 507 (9th Cir. 2018)). **See also Frank B. Hall & Co., Inc. v. Alexander & Alexander, Inc.**, 974 F.2d 1020, 1025-26 (8th Cir. 1992) (the public interest "does not favor forcing parties to [an] agreement to conduct themselves in a manner directly contrary to the express terms of the agreement"); **S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.**, 860 F.3d 844, 853 (6th Cir. 2017) (noting that "[t]he public has a strong interest in holding private parties to their agreements" and holding that "the public's interest in enforcing private contracts weigh[ed] against the injunction"). Here, the express terms of the parties' agreements permit Apple to remove an app from App Store in its sole discretion. Yet the injunction Musi seeks would compel Apple to reinstate the Musi app, nullifying Apple's unambiguous contractual right.

Finally, as courts in this District have recognized, Apple's ability to control which apps and developers are allowed on App Store serves the public interest by "provid[ing] a safe and trusted user experience on iOS[.]" **Epic Games,** 559 F. Supp. 3d at 1038.

## V. CONCLUSION

For the foregoing reasons, Apple respectfully requests that Musi's motion for a preliminary injunction be denied.

Dated: November 15, 2024

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: ***/s/ Jennifer Milici***
Jennifer Milici (**pro hac vice**)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
**jennifer.milici@wilmerhale.com**

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
**chris.johnstone@wilmerhale.com**

Mark A. Ford (**pro hac vice**)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
**mark.ford@wilmerhale.com**

**Attorneys for Defendant Apple Inc.**

# EXHIBIT 6

# YouTube API Services - Developer Policies

**Note:** Complying with the YouTube Developer Policies (/youtube/terms/developer-policies-guide) provides guidance and examples to help you ensure that your API clients follow specific portions of the YouTube API Services Terms (/youtube/terms/api-services-terms-of-service) and Policies (/youtube/terms/developer-policies) (API TOS). The guide offers insight into how YouTube enforces certain aspects of the API TOS, but it does not replace any existing documents.

This document (the "**YouTube API Services Policies**" or "**Policies**") sets out the policies that you need to follow when accessing or using **YouTube API Services** (#definition-youtube-api-services) in your service, product, or application. These Policies help you access and use **YouTube API Services** (#definition-youtube-api-services) in ways that are consistent with YouTube's interests and that respect and foster the growth of YouTube's community of creators, viewers, content rights holders, and advertisers.

In addition to defining policies, this document explains some of the underlying principles that YouTube followed in creating these Policies. It also offers examples that demonstrate how these Policies would apply in practice.

Please note that this is a legal document and that these Policies are a component of the **Agreement** (#definition-agreement), so you must comply with them. YouTube reserves the right to change these Policies, and your continued access to, or use of, **YouTube API Services** (#definition-youtube-api-services) constitutes your agreement to and acceptance of any such changes. Policy changes, like changes to the YouTube API Services **Terms of Service** (#definition-terms-of-service), will be documented in the Terms of Service Revision History (/youtube/terms/revision-history), and you can subscribe to the RSS feed (/static/youtube/terms/feeds/api-services-terms-of-service-revision-history.xml) for that revision history to be notified of any such changes.

## I. Terminology and style

This is a legal document that specifies policies about allowed or prohibited actions. As such, it uses certain terms to specifically indicate whether you can or cannot do something. With that

in mind, the following terms are used to explain your requirements as related to these Policies:

1. The terms **must** and required refer to absolute requirements.
2. The term **must not** refers to an absolute prohibition.
3. The terms **should**, **should not**, **recommend**, and **recommended** indicate that the statement describes a general best practice. While these terms suggest certain actions or behaviors, they acknowledge that you might decide to follow a different course based on specific aspects of your use case.
4. The term **may** indicates that an action is optional and left entirely to your discretion or, depending on the context in which it is used, to YouTube's discretion.

In addition, the Definitions (#iv-definitions) section that concludes this document identifies other terms that have a very specific meaning when used in this document. For your convenience, this document uses a special style for those terms to so that you can easily identify them in context and link to their definitions.

## II. Software Development Principles

These principles underlie many of the policies in this document. Even though they might not cover every policy, if you violate or your **API Clients** (#definition-api-client) violate any of these principles, you are likely also violating the terms of the **Agreement** (#definition-agreement). That said, if local law requires you to do something other than what is stated in these policies – for example, to store data for a particular length of time – you should comply with that law.

1. **Build high-quality applications and maintain them.**

   Build stable, easy-to-use, feature-rich **API Clients** (#definition-api-client) that bring significant additional value to the YouTube ecosystem and its users. Promptly update **API Clients** (#definition-api-client) as the features offered in **YouTube API Services** (#definition-youtube-api-services) change.

2. **Be honest and transparent.**

   This principle applies to all facets of **API Clients** (#definition-api-client) and the way that they interact with users as well as with YouTube. In keeping with this principle, be clear about who you are and what your **API Client** (#definition-api-client) does. Don't engage in any deceptive activity or messaging related to your identity, your data collection, storage,

sharing, use and deletion practices, actions that your **API Client** (#definition-api-client) takes on users' behalf, or anything else. Be honest and do not mislead or confuse users in the way you use and present data.

3. **Give users control.**

   Building on the importance of transparency, this principle dictates that users must be aware of and have actively consented to the actions that an **API Client** (#definition-api-client) takes on their behalf. It means that users know about and have final authority over any actions the **API Client** (#definition-api-client) takes to insert, share, update, or delete their data. It also means that each **API Client** (#definition-api-client) must provide a privacy policy that clearly informs users about the information that the **API Client** (#definition-api-client) accesses, collects, stores, shares, and otherwise uses.

4. **Respect users' privacy.**

   Make sure that your data collection, storage, use, security, and deletion policies and practices protect users. Don't allow unauthorized access to, or use of, user data. Don't store user data indefinitely, and provide a clear, straightforward process for them to delete data in your possession. Finally, don't, and do not make attempts to, request, collect, or store users' YouTube login credentials.

5. **Be a good citizen.**

   Don't create **API Clients** (#definition-api-client) that encourage or enable people to abuse, threaten, or harass each other. Don't use, distribute, or promote viruses, spyware, malware, or other bad stuff. Don't break the law or encourage or enable others to do so. Hopefully, this is all common sense.

# III. General Developer Policies

## A. API Client Terms of Use and Privacy Policies

1. **API Clients** (#definition-api-client) must display a link to YouTube's Terms of Service (https://www.youtube.com/t/terms (https://www.youtube.com/t/terms)), and they must also state in their own terms of use that, by using those **API Clients** (#definition-api-client), users are agreeing to be bound by the YouTube Terms of Service.

2. Each **API Client** (#definition-api-client) must require users to agree to a privacy policy before users can access the **API Client's** (#definition-api-client) features and functionality. The privacy policy must:

    a. be prominently displayed and easily accessible to users at all times,

    b. notify users that the **API Client** (#definition-api-client) uses **YouTube API Services** (#definition-youtube-api-services),

    c. reference and link to the Google Privacy Policy at http://www.google.com/policies/privacy,

    d. clearly and comprehensively explain to users what user information, including **API Data** (#definition-api-data) relating to users, the **API Client** (#definition-api-client) accesses, collects, stores and otherwise uses,

    e. clearly and comprehensively explain how the **API Client** (#definition-api-client) uses, processes, and shares the user information described in section (III.A.2.e), including how the information is shared with either internal or external parties,

    f. disclose, if it does so, that the **API Client** (#definition-api-client) allows third parties to serve content, including advertisements,

    g. disclose, if it does so, that the **API Client** (#definition-api-client) stores, accesses or collects (or allows third parties to do so) information directly or indirectly on or from users' devices, including by placing, accessing or recognizing cookies or similar technology on users' devices or browsers,

    h. if the **API Client** (#definition-api-client) accesses or uses **Authorized Data** (#definition-authorized-data), explain that, in addition to the **API Client's** (#definition-api-client) normal procedure for deleting stored data, users can revoke that **API Client's** (#definition-api-client) access to their data via the Google security settings page at https://security.google.com/settings/security/permissions (https://security.google.com/settings/security/permissions), and

    i. if the **API Client** (#definition-api-client) uses **Authorized Data** (#definition-authorized-data), explain how users can contact the **API Client** (#definition-api-client) owner or developer with questions or complaints about the **Client's** (#definition-api-client) privacy practices.

## B. Maintainability and Deprecation

1. **API Clients** (#definition-api-client) must use the most recent versions of **YouTube API Services** (#definition-youtube-api-services). This means that you must be able to update **API Clients** (#definition-api-client) when newer versions of **YouTube API Services** (#definition-youtube-api-services) are released. Non-website **API Clients** (#definition-api-client), like mobile apps or installed applications, must be capable of being remotely updated to use the most recent versions of **YouTube API Services** (#definition-youtube-api-services). You must update your **API Clients** (#definition-api-client) to the most recent versions of the **YouTube API Services** (#definition-youtube-api-services) within a specified time period if required by YouTube from time to time (e.g. for critical updates).
2. When YouTube intends to make backward incompatible changes to the **YouTube API Services** (#definition-youtube-api-services), such changes will be documented in the Terms of Service Revision History (/youtube/terms/revision-history), and you can subscribe to the RSS feed (/static/youtube/terms/feeds/api-services-terms-of-service-revision-history.xml) for that revision history to be notified of any such changes.
3. You must promptly update non-deprecated **API Clients** (#definition-api-client) to use newer versions of **YouTube API Services** (#definition-youtube-api-services) as those versions are released.
4. You must update deprecated versions of your **API Clients** (#definition-api-client) to clearly indicate to users that some functions or features of **YouTube API Services** (#definition-youtube-api-services) might stop working due to the **API Clients'** (#definition-api-client) deprecated status.

## C. Implementing YouTube Features

1. **API Clients** (#definition-api-client) must also comply with the Requirements for Minimum Functionality for YouTube API Services (/youtube/terms/required-minimum-functionality) ("**RMF**"). In addition, **API Clients** (#definition-api-client) must not place any limitations on the YouTube functionality required by the RMF.

   For example, the RMF states that an **API Client** (#definition-api-client) that enables users to upload videos to YouTube must enable those users to set a title for each uploaded video. YouTube's video title field has a maximum length of 100 characters, and an **API Client** (#definition-api-client) must not set a shorter maximum length for that field.
2. Any **API Client** (#definition-api-client) feature that initiates a user action related to a YouTube resource must be:

a. clearly and unequivocally identifiable as a YouTube action,

b. distinct and not mixed with your **API Client's** (#definition-api-client) functionality, and

c. clearly initiated by the user.

Examples of YouTube resources include videos, channels, playlists, playlist items, and subscriptions. Examples of actions include playing a video, liking a video, adding a video to a playlist, and subscribing to a channel.

3. **API Clients** (#definition-api-client) that perform write operations may suggest parameter or property values, but users must have final control over the data that will be published to **YouTube Applications** (#definition-youtube-applications). Similarly, **API Clients** (#definition-api-client) must not modify user-provided values before sending them to YouTube by truncating, appending, or otherwise altering those values unless the user has explicitly consented to such changes.

   **API Clients** (#definition-api-client) that suggest values for text fields, like video titles or descriptions, must incorporate relevant keywords into those values. For example an **API Client** (#definition-api-client) that suggests video titles should not generate the same default titles for all users.

   These examples illustrate how this policy would apply to an **API Client** (#definition-api-client) that uploads videos to YouTube:

   a. The **API Client** (#definition-api-client) may suggest a video description or pre-populate the video description. However, it must not add information to the video description after it is submitted by the user and before it is sent without the user's prior consent. For example, the **API Client** (#definition-api-client) must not append the recording date, **API Client** (#definition-api-client) name, or any other text unless the user has explicitly consented to such changes.

   b. An **API Client** (#definition-api-client) may provide an option to translate a video title to other languages. However, the **API Client** (#definition-api-client) must not add any such translations without the user's consent. In addition, if the **API Client's** (#definition-api-client) default behavior is to enable the option to translate the video title, it must clearly present to the user an easy way to disable that behavior.

4. **API Clients** (#definition-api-client) must clearly indicate how user-provided data will be used on YouTube.

This policy is particularly relevant for **API Clients** (#definition-api-client) that interface with multiple services and platforms since there may be functional or labeling differences between those services and platforms.

For example, an **API Client** (#definition-api-client) enables users to add comments about videos to multiple platforms, including YouTube. Each platform uses a different name to refer to the comment text. So, if the **API Client** (#definition-api-client) labels the field "Feedback" in its comment form, it needs to clearly indicate that that value corresponds to the comment text on YouTube.

5. **API Clients** (#definition-api-client) that use search functionality provided by **YouTube API Services** (#definition-youtube-api-services) must not modify or replace the text, images, information, or other content of, the search results returned by those Services.

   For example, **API Clients** (#definition-api-client) must not merge or intermix results from sources other than YouTube and present them as YouTube search results.

6. An **API Client** (#definition-api-client) should not limit or reduce the functionality of a YouTube feature unless that limitation is a core aspect (as described in the examples below) of the **API Client** (#definition-api-client) itself and that YouTube feature is not required by the RMF ("**Permitted Feature Limitation**").

   a. **Example 1: Permitted Feature Limitation**

      The YouTube Data API service allows a video uploader to provide translations of a video's title. Generally speaking, an **API Client** (#definition-api-client) that implements this feature should allow uploaders to translate video titles to any language that YouTube supports. However, an **API Client** (#definition-api-client) that is specifically designed to teach users to speak French and that offers a range of features specific to French translations might be justified in only offering users the option to upload French translations of video titles.

   b. **Example 2: Non-permitted Feature Limitation**

      A second **API Client** (#definition-api-client) supports video uploading to YouTube and two other platforms, and all of those platforms allow the uploader to provide translations of the video's title. However, while YouTube supports more than 70 languages, the other two platforms each support half that number, and the three platforms support 25 languages in common. If the **API Client** (#definition-api-client) supports only those 25 languages for translation, then that is a non-permitted feature limitation because the limited set of language options is not a core aspect

of the **API Client** (#definition-api-client). Instead, the **API Client** (#definition-api-client) must offer the full range of languages that YouTube supports.

7. **API Clients** (#definition-api-client) with Permitted Feature Limitations must explain to users why each limitation is in place and make clear that the limitation is not imposed by YouTube. In many, if not all, cases, there are different ways that an **API Client** (#definition-api-client) could provide that information, and you should choose an appropriate method for your **API Client** (#definition-api-client). Within this explanation, an **API Client** (#definition-api-client) should provide a mechanism for users to access the full feature (such as linking to YouTube Creator Studio or providing an expandable menu within the API Client).

   In the example 1 above, the **API Client** (#definition-api-client) could explain that video uploaders can add translations for other languages in the YouTube Creator Studio and provide a link to that functionality.

8. **API Clients** (#definition-api-client) that offer features sourced from multiple services and platforms should offer feature parity to the extent that it exists across those sources, providing user choice. When **API Clients** (#definition-api-client) include features that are supported on YouTube and on other platforms, **API Clients** (#definition-api-client) must not consistently present YouTube features in a detrimental way (e.g., by only providing those features from other platforms).

   For example, suppose an **API Client** (#definition-api-client) allows users to upload videos to YouTube and three other platforms, and all of those platforms support the ability to upload captions. If the **API Client** (#definition-api-client) also supports caption uploading, then it must support that feature for YouTube.

## D. Accessing YouTube API Services

1. API Credentials

   To access or use some **YouTube API Services** (#definition-youtube-api-services), you must first use the Google Developers Console (https://console.cloud.google.com/) (https://console.cloud.google.com/ (https://console.cloud.google.com/)) to create **API Credentials** (#definition-api-credentials) for your **API Project** (#definition-api-project"). Those credentials enable Google and YouTube to link API activity to a particular **API Project** (#definition-api-project") and **API Client** (#definition-api-client).

In addition to creating **API Credentials** (#definition-api-credentials), the Developers Console might require you to provide certain other information, such as identification or contact details, before you can access or use the **YouTube API Services** (#definition-youtube-api-services) associated with those credentials. YouTube reserves the right to require you to provide additional information to continue to access or use **YouTube API Services** (#definition-youtube-api-services).

If you need to create **API Credentials** (#definition-api-credentials) to access or use a specific YouTube API service, the documentation for that service explains how to create those credentials. For example, the YouTube Data API service (/youtube/registering_an_application), YouTube Reporting API service (/youtube/reporting/guides/registering_an_application), YouTube Analytics API service (/youtube/reporting/guides/registering_an_application), and Android Player API service (/youtube/android/player/register) all document steps for creating **API Credentials** (#definition-api-credentials). Those steps generally differ slightly from one API service to another. For example:

- Some services only support authorized API requests, while others support authorized and non-authorized requests.
- Services often support multiple access scopes. Each scope specifies the resources that an **API Client** (#definition-api-client) can retrieve, insert, update, or delete on the user's behalf. Scopes enable **API Clients** (#definition-api-client) to only request access to the resources they need, and scopes also enable users to control the amount of access that they grant to those Clients.

The following policies also apply to access and use of **YouTube API Services** (#definition-youtube-api-services):

a. You must not mask or misrepresent your identity or your **API Client's** (#definition-api-client) identity when accessing or using **YouTube API Services** (#definition-youtube-api-services) or when creating an **API Project** (#definition-api-project") or **API Credentials** (#definition-api-credentials).

b. You must only use **API Credentials** (#definition-api-credentials) assigned to you and to your **API Project** (#definition-api-project") to access **YouTube API Services** (#definition-youtube-api-services). Similarly, you must not use any other means to mask or misrepresent your **API Client's** (#definition-api-client) access to, or usage of, **YouTube API Services** (#definition-youtube-api-services).

c. If your **API Client** (#definition-api-client) needs to create **API Credentials** (#definition-api-credentials) to access or use **YouTube API Services** (#definition-youtube-api-services), you must create exactly one (1) **API Project** (#definition-api-project") for that **API Client** (#definition-api-client). Those **API Credentials** (#definition-api-credentials) are intended to be used exclusively by the associated API Client, which means that you must not use that one (1) **API Project** (#definition-api-project") for multiple **API Clients** (#definition-api-client).

d. You may share your **API Credentials** (#definition-api-credentials) with agents operating solely on your behalf and under a written duty of confidentiality. However, you must not share or disclose your **API Credentials** (#definition-api-credentials) to any other third party, allow access to or use of your **API Credentials** (#definition-api-credentials) by any other third party, or embed your **API Credentials** (#definition-api-credentials) in open source projects.

2. User Authentication and Authorization

Authentication and authorization refer to the process by which users identify themselves and consent to allow an **API Client** (#definition-api-client) to access certain user-specific data. Some **YouTube API Services** (#definition-youtube-api-services) do not support access to user-specific data and therefore, do not require any authorization, others require authorization for some requests or data, and still others require authorization for all requests. For example:

- The YouTube IFrame Player API service, which lets you embed videos in a website, does not require authorization just as users do not need to log in to the YouTube website to watch a video.
- The YouTube Data API service requires authorization for some actions. For example, an **API Client** (#definition-api-client) can search for public videos but does not need user authorization to do so. However, an **API Client** (#definition-api-client) does need user authorization to upload a video to the user's YouTube channel.
- The YouTube Analytics API service and YouTube Reporting API service require authorization for all actions.

a. Authentication

i. **API Clients** (#definition-api-client) must not (and must not attempt to) obtain, proxy, request, collect, modify, cache, store, or use any information that the user provides or that YouTube displays to the user during authentication

processes, including YouTube user account login credentials like usernames and passwords.

ii. **API Clients** (#definition-api-client) must obtain user consent in accordance with the applicable laws and only request access to authorization scopes that they currently use. The access that an **API Client** (#definition-api-client) requests should have a direct and transparent benefit to users of that Client. Do not try to future-proof your access to data by asking for permissions that would enable features that you have not yet built.

For example, the YouTube Data API service supports one authorization scope that grants access to read data and another that grants access to read and write data. If a user granted an **API Client** (#definition-api-client) access to the first scope, that **API Client** (#definition-api-client) would be able to retrieve information about the current user's YouTube channel. However, if a user granted the **API Client** (#definition-api-client) access to the second scope, the **API Client** (#definition-api-client) could also upload a video to that channel.

In this scenario, an **API Client** (#definition-api-client) that does not support YouTube uploads (or other write-based actions) only needs to request access to the first authorization scope, which is more limited in the privileges it grants. Even if the **API Client's** (#definition-api-client) developer plans to eventually introduce support for write-based actions, the developer cannot future-proof the **API Client** (#definition-api-client) by requesting access to the authorization scope for writing data before the **Client** (#definition-api-client) actually supports features that require that scope.

iii. **API Clients** (#definition-api-client) should request access to authorization scopes in context whenever possible. By requesting access to user data in context, via incremental authorization, an **API Client** (#definition-api-client) enables users to more easily understand why it needs access to that data.

b. API Client Identification and Representation

i. **API Clients** (#definition-api-client) must clearly and accurately identify to the user the entity or product that is requesting access to user data and the reason for requesting that access;

ii. **API Clients** (#definition-api-client) must not mislead users when requesting access to data so that users can make an informed decision about whether to

grant access to those Clients. Users should be able to readily understand both the value of providing the data that an **API Client** (#definition-api-client) requests access to and the consequences of sharing that data.

iii. **API Clients** (#definition-api-client) must clearly and comprehensively identify to users the purposes for which they access and use user data. **API Clients** (#definition-api-client) must not use user data for secondary purposes that are not clearly disclosed to users.

Users should not be surprised to learn that an **API Client** (#definition-api-client) contains hidden features, services, or actions that are inconsistent with the **Client's** (#definition-api-client) marketed purposes.

c. Revocation

i. Every **API Client** (#definition-api-client) must provide a clearly explained and easy way for users to revoke any authorization consent they have provided to an **API Client** (#definition-api-client) to access **YouTube API Services** (#definition-youtube-api-services).

When a user revokes consent through this mechanism, the **API Client** (#definition-api-client) must programmatically revoke that token right away to communicate the change in permissions to Google. For example, an **API Client** (#definition-api-client) could use a Google API Client Library to revoke the token.

In addition, following revocation of consent through this mechanism, you and your **API Clients** (#definition-api-client) must delete all **Authorized Data** (#definition-authorized-data) that was accessed or stored pursuant to that consent. That deletion should happen as soon as possible and must take place within 7 calendar days of the revocation.

ii. As noted in section (III.A.2.i), every **API Client** (#definition-api-client) must include in its Privacy Policy a link to Google's security settings page (https://security.google.com/settings/security/permissions (https://security.google.com/settings/security/permissions)). When a user revokes consent through that page, you and your **API Clients** (#definition-api-client) must also delete all **API Data** (#definition-api-data) related to that user that was accessed or stored pursuant to such consent. To comply with this policy, your **API Clients** (#definition-api-client) will need to periodically reconfirm that its

authorization tokens are still valid and delete **API Data** (#definition-api-data) associated with users whose authorization tokens cannot be refreshed.

Based on the requirements defined in section (III.E.4) regarding stored data, all such deletions should happen as soon as possible and must take place within 30 calendar days of that revocation.

3. Usage and Quotas

YouTube may use quotas and place use restrictions to ensure that **YouTube API Services** (#definition-youtube-api-services) are accessed and used as intended and that you and your **API Clients** (#definition-api-client) do not reduce service quality or limit access for others.

If your **API Client** (#definition-api-client) reaches the quota limit for a service, you can apply for a quota extension by completing an API Compliance Audit (https://support.google.com/youtube/contact/yt_api_form) where you must specify the use case for which you need the extension. If you have been audited in the past 12 months and have been marked compliant by YouTube API Services team, you can apply for an additional quota extension (https://support.google.com/youtube/contact/yt_api_audited_developer_requests_form).

If YouTube approves the application, you must use the additional quota granted only for the approved use case. If your **API Client's** (#definition-api-client) use case changes, to use any allocated quota for the new use case, you must notify YouTube of the change by resubmitting an API Compliance Audit (https://support.google.com/youtube/contact/yt_api_form) and receive approval for the application.

If YouTube rejects the application, you can file an appeal (https://support.google.com/youtube/contact/yt_api_appeals).

4. Inactivity

YouTube reserves the right to disable or curtail your access to, or use of, specific **YouTube API Services** (#definition-youtube-api-services) if your **API Project** (#definition-api-project") has been inactive for 90 consecutive days. For example, YouTube could revoke your **API Credentials** (#definition-api-credentials), or reduce (or eliminate) your **API Project's** (#definition-api-project") quotas for specific **YouTube API Services** (#definition-youtube-api-services). If your **API Client's** (#definition-api-client) quota is reduced or eliminated, you may reapply for quota or a quota extension, and YouTube will review that

application based on YouTube's determination of your expected use of the **YouTube API Services** (#definition-youtube-api-services).

5. Contact Information

YouTube's primary means of contacting you about your **API Project** (#definition-api-project") or **API Client** (#definition-api-client) is the email address that is associated with the Google Account that you use to log in to the Google Developers Console. You must comply to any communication that YouTube sends you regarding compliance issues relating to your **API Clients** (#definition-api-client).

If users of your **API Client** (#definition-api-client) have questions about your privacy practices, and you do not have a contact address in your **API Client's** (#definition-api-client) privacy policy as discussed in section (A.2.i), YouTube may share your primary email address with those users.

6. Prohibited Access

You are prohibited from accessing or attempting to access **YouTube API Services** (#definition-youtube-api-services) via any means if your **API Credentials** (#definition-api-credentials) are suspended, revoked, or terminated, or if the Google Account you used to create those credentials is suspended or terminated, for any reason. In that case, you must not access or attempt to access **YouTube API Services** (#definition-youtube-api-services) via any means, including by creating or using a proxy to create new Google Accounts, **API Credentials** (#definition-api-credentials) or **API Projects** (#definition-api-project).

7. Undocumented Services

You must not use undocumented APIs without express permission. You must access data from YouTube API services only according to the means stipulated in the authorized documentation of that YouTube API service.

You must not reverse engineer undocumented YouTube API services or otherwise attempt to derive the underlying source code of these API services.

## E. Handling YouTube Data and Content

Aside from the permissions and rights granted in this section, you and your **API Clients** (#definition-api-client) have no further permissions or rights to **API Data** (#definition-api-data), including to temporarily stored **API Data** (#definition-api-data).

1. Audiovisual Content

You and your **API Clients** (#definition-api-client) must not, and must not encourage, enable, or require others to:

a. download, import, backup, cache, or store copies of YouTube audiovisual content without YouTube's prior written approval,

b. make content available for offline playback, or

c. use any aspect of the **YouTube API Services** (#definition-youtube-api-services) to facilitate or promote copyright infringement or the exploitation of copyright-infringing materials.

2. Data Aggregation

a. Do not aggregate **API Data** (#definition-api-data) except that you may only aggregate **API Data** (#definition-api-data) relating to YouTube channels that are under the same content owner as recognized by YouTube pursuant to content licensing agreement(s) between YouTube and such content owner. Such aggregated **API Data** (#definition-api-data) must only be viewable by that content owner.

b. Do not aggregate **API Data** (#definition-api-data) or otherwise use **API Data** (#definition-api-data) or **YouTube API Services** (#definition-youtube-api-services) to gain insights into YouTube's usage, revenue, or any other aspects of YouTube's business.

For example, suppose that two different content owners recognized by YouTube have each authorized an **API Client** (#definition-api-client) to retrieve **API Data** (#definition-api-data) on their behalf for their respective viewing. That **API Client** (#definition-api-client) may separately aggregate **API Data** (#definition-api-data) retrieved for each content owner's channels provided that such aggregation per content owner does not provide insights into YouTube's usage, revenue or any other aspects of YouTube's business. The **API Client** (#definition-api-client) must not combine **API Data** (#definition-api-data) from the different content owners.

3. Authorized Data Usage

These policies relate to your use of **Authorized Data** (#definition-authorized-data). They are relevant for any **API Client** (#definition-api-client) that writes data via an API request or retrieves data that can only be accessed via a properly authorized API request. For example, these policies apply to any **API Client** (#definition-api-client) that enables a user to

upload videos, retrieve the user's list of uploaded videos, create playlists, or comment on videos.

a. **API Clients** (#definition-api-client) must be honest and transparent about the types of user data and the purposes for which they collect, store, delete, share, safeguard, and otherwise use that data.

b. **API Clients** (#definition-api-client) must not display or allow access to **Authorized Data** (#definition-authorized-data) to anyone other than the authorizing user or agents expressly approved by that user.

c. **API Clients** (#definition-api-client) must only access, collect and use **Authorized Data** (#definition-authorized-data) in accordance with the scope of its privacy policy and user consent obtained in accordance with Section 2.

This means that an **API Client** (#definition-api-client) must prompt users to re-accept its privacy policy if the **Client** (#definition-api-client) starts to access, collect, or use **API Data** (#definition-api-data) in a way or for purposes that were not covered in the privacy policy that the user originally accepted.

d. **API Clients** (#definition-api-client) must clearly identify any actions that they take to insert, share, update, or delete data or content on the authorizing user's behalf. In addition, the user must expressly consent to those actions prior to their actual execution.

e. **API Clients** (#definition-api-client) must clearly identify the YouTube channel or content owner that is associated with any request that requires user authorization.

f. **API Clients** (#definition-api-client) must clearly identify any content visibility settings that will be set or modified by any authorized user action. In addition, **API Clients** (#definition-api-client) must not modify existing content visibility settings unless the authorizing user has expressly instructed the **API Clients** (#definition-api-client) to do so.

For example, in the YouTube Data API service, a video's privacy status can be set to `public`, `private`, or `unlisted`. If an **API Client** (#definition-api-client) supports video uploads, the **Client** (#definition-api-client) must clearly display an option for the user to choose one of those values. Similarly, if an **API Client** (#definition-api-client) supports edits to a video's metadata, the **API Client** (#definition-api-client) cannot change a video's privacy status without the user's express consent.

4. Refreshing, Storing, and Displaying API Data

Developers often need to balance the benefits of storing or caching data, such as improved performance or resource usage, with the desire to always retrieve the freshest data, which provides the best user experience possible. With that in mind, the following policies explain your requirements as well as your options in terms of storing, updating, and displaying YouTube **API Data** (#definition-api-data).

a. **API Clients** (#definition-api-client) may store authorization tokens for as long as is necessary provided that those tokens are used only for purposes consistent with the specific consent granted by an active user according to the applicable law.

b. **API Clients** (#definition-api-client) may store the following types of **Authorized Data** (#definition-authorized-data) for as long as is necessary provided that the data is used for purposes consistent with the specific consent granted by an active user according to the applicable laws:

   i. data retrieved through the YouTube Analytics API service,

   ii. data provided through the YouTube Reporting API service, or

   iii. statistics provided through other YouTube API services, such as the number of views for a video, the number of channels for a subscriber, or the number of videos in a playlist. (All of those statistics can be retrieved via the YouTube Data API service.)

   Note that even though an **API Client** (#definition-api-client) may store this data for more than 30 days, the **Client** (#definition-api-client) must still ensure every 30 days that it is still authorized by the user to access that data.

   For example, an **API Client** (#definition-api-client) may store view counts for a video for more than 30 days, but it must still verify every 30 days that its authorization to access the video uploader's data has not been revoked. The **API Client** (#definition-api-client) must also verify, every 30 days, that the video has not been deleted.

   To be clear, an **API Client** (#definition-api-client) must not store statistics retrieved as **Non-Authorized Data** (#definition-non-authorized-data) for more than 30 days. For example, an **API Client** (#definition-api-client) must not store the subscriber count for a YouTube channel for more than 30 days without authorization from the channel owner.

c. **API Clients** (#definition-api-client) may store all other types of **Authorized Data** (#definition-authorized-data) not identified in section (III.E.4.b) for as long as is necessary for the purposes of the specific consent granted by an active user and for no longer than 30 calendar days. After 30 calendar days, the **API Client** (#definition-api-client) must either delete or refresh the stored data.

d. **API Clients** (#definition-api-client) may temporarily store limited amounts of **Non-Authorized Data** (#definition-non-authorized-data) for as long as is necessary for the purposes of the **API Client** (#definition-api-client) but not longer than 30 calendar days. As in section (III.E.4.c) immediately above, this means that after 30 calendar days, the **API Client** (#definition-api-client) must either delete or refresh the stored data.

e. In all cases, **API Clients** (#definition-api-client) must use reasonable efforts to ensure that their stored **API Data** (#definition-api-data) is consistent with the current data available through **YouTube API Services** (#definition-youtube-api-services). For example, **API Clients** (#definition-api-client) should reflect metadata changes and viewcount updates as quickly as possible.

f. **API Clients** (#definition-api-client) must display the most updated **API Data** (#definition-api-data) available in their user-facing presentations, including in user interfaces, although **API Clients** (#definition-api-client) may display historical **API Data** (#definition-api-data) provided that it is presented accurately in context of time.

g. Your **API Clients** (#definition-api-client) that access or use user data must provide a way for a user to request that you delete stored data related to that user. For example, your **API Client** (#definition-api-client) could display a button to delete stored data. If the user indicates that you should delete that data, you must then delete it as soon as possible and within 7 calendar days.

The method for deleting stored data must make clear that deleting the data stored by the **API Client** (#definition-api-client) does not, in any way, affect data stored by YouTube and that to delete data on YouTube, the user needs to use a YouTube Application or an authorized **API Client** (#definition-api-client) that supports the ability to delete that data.

Similarly, **API Clients** (#definition-api-client) must respect any other means by which a user expresses an intent to prevent those Clients from accessing user data related to that user. For example, if a user deletes his account from your API Client, you must also delete any user data you have stored related to that user as soon as possible and within 7 calendar days.

h. Your **API Clients** (#definition-api-client) must not (i) replace **API Data** (#definition-api-data) with similar, independently calculated data, or (ii) access or use **API Data** (#definition-api-data) to create new or derived data or metrics. To the extent your **API Clients** (#definition-api-client) display any information, data or metrics not based on **API Data** (#definition-api-data) alongside **API Data** (#definition-api-data), your **API Clients** (#definition-api-client) must include a clear and prominent disclosure there that such information, data and metrics are not from YouTube and are part of your own product.

For example, when displaying the number of likes for a video, your **API Client** (#definition-api-client) must use the number returned in the **API Data** (#definition-api-data). You must not substitute a different number to represent likes, such as the number of users of your **API Client** (#definition-api-client) that liked the video. Similarly, you are not permitted to use the number of likes returned in the **API Data** (#definition-api-data) to calculate other metrics, such as the percentage of total likes that were made through your **API Client** (#definition-api-client) or a score that factors in likes, total views, or any other **API Data** (#definition-api-data). However, you are permitted, for example, to display the number of likes that were made through your **API Client** (#definition-api-client) as long as that number is displayed alongside the total likes returned in the **API Data** (#definition-api-data) and as long as your **API Client** (#definition-api-client) clearly communicates that the **API Client** (#definition-api-client) calculates the additional metric independently of YouTube **API Data** (#definition-api-data).

i. When your **API Client** (#definition-api-client) loads, it collects and shares some basic user data with YouTube via the YouTube embedded player to render the video thumbnail and title, determine playability and content restrictions, and for fraud and abuse reasons. Additional data is collected and shared by your **API Client** (#definition-api-client) upon video playback to customize the player on your **API Client** (#definition-api-client) and third party sites and apps. Remember that if you enable Autoplay, playback will occur without any user interaction with the player; playback data collection and sharing will therefore occur upon page load. You can limit the data shared with YouTube before a user interacts with the YouTube embedded player by setting Autoplay to `false`. As noted in the YouTube API Services Terms of Service (/youtube/terms/api-services-terms-of-service), you and your **API Clients** (#definition-api-client) must comply with all applicable laws, rules, and regulations, including privacy laws and regulations.

j. **API Clients** (#definition-api-client) must look up the Made For Kids status of each YouTube video that it embeds on its site or app by following the instructions in this guide (/youtube/v3/guides/made_for_kids_status). For each video that is designated Made For Kids, **API Clients** (#definition-api-client) must turn off tracking and make sure that all data collection with respect to that player is compliant with applicable law(s) including the U.S. Children's Online Privacy (COPPA) and E.U. General Data Protection Regulation (GDPR)). See the YouTube Help Center (https://support.google.com/youtube/answer/9528076) for more information on determining content as Made for Kids.

5. Security

You and your **API Client** (#definition-api-client) must:

a. maintain appropriate administrative, organisational, technical, and physical controls to ensure the privacy, security, and confidentiality of user data and **API Data** (#definition-api-data);

b. use only industry-standard transport encryption;

c. protect **API Data** (#definition-api-data) and any other data used in your **API Client** (#definition-api-client) from unauthorized access, use, or disclosure.

6. Scraping

You and your **API Clients** (#definition-api-client) must not, and must not encourage, enable, or require others to, directly or indirectly, scrape **YouTube Applications** (#definition-youtube-applications) or **Google Applications** (#definition-google-applications), or obtain scraped YouTube data or content. Public search engines may scrape data only in accordance with YouTube's robots.txt file or with YouTube's prior written permission.

## F. User Experience

1. YouTube Look and Feel

Innovative user experiences and user interface designs are among the most valuable contributions that **API Clients** (#definition-api-client) can provide to the YouTube community. That said, YouTube's designers and engineers put a lot of thought into designing **YouTube Applications** (#definition-youtube-applications) to ensure that those Applications provide a great user experience.

Taking both of those points into account, your **API Clients** (#definition-api-client) must not change or interfere with user interfaces in **YouTube Applications** (#definition-youtube-applications) unless you have obtained YouTube's prior written approval. You can request that approval at this form (https://support.google.com/youtube/contact/yt_api_form).

2. Branding

   a. Any **API Client** (#definition-api-client) page or feature that displays YouTube content – including, without limitation, search results, YouTube videos, channels, playlists, thumbnails, and YouTube players – must make clear to the viewer that YouTube is the source of the relevant content by displaying **YouTube Brand Features** (#definition-youtube-brand-features) in accordance with the requirements below and the YouTube Branding Guidelines (https://developers.google.com/youtube/terms/branding-guidelines (/youtube/terms/branding-guidelines)).

      In some cases, an **API Client** (#definition-api-client) might need to display **YouTube Brand Features** (#definition-youtube-brand-features) next to multiple individual content elements to make the attribution clear to the viewer. For example, an **API Client** (#definition-api-client) that displays search results from YouTube and from other sources on the same page needs to clearly identify YouTube as the source of only the search results from YouTube, including text, images, and other information pertaining to YouTube search results. The **API Client** (#definition-api-client) cannot provide one general set of attribution for all search results from various sources.

   b. Content that does not originate from YouTube must not be shown in a way that suggests that the content is originating from YouTube or in a way that can cause confusion as to the origin of that content.

   c. You and your **API Clients** (#definition-api-client) must not, and must not encourage, enable or require others to, directly or indirectly, interfere with or obscure any attribution provided by YouTube, including attribution provided via or shown in embedded YouTube players. Your **API Clients** (#definition-api-client) must display applicable **YouTube Brand Features** (#definition-youtube-brand-features) and any other YouTube-provided attribution on all types of devices.

3. Playback Integrity

Playback integrity refers to the ability to determine and measure how content and ads are served, how video playback is initiated and implemented, and how users interact with YouTube features in your **API Client** (#definition-api-client). Playback integrity is critical to the YouTube platform, as it helps protect creators' interests, including their ability to monetize their content and develop their audience.

YouTube believes that playback integrity is contingent on a user choosing to watch a video, and **API Clients** (#definition-api-client) are prohibited from providing incentives for watching videos as follows:

a. **API Clients** (#definition-api-client) must not charge users to watch content in an embedded YouTube player.

b. **API Clients** (#definition-api-client) must not otherwise gate access to a video by requiring a user to take an action other than clicking the play button to view or continue playing YouTube audiovisual content. For example, **API Clients** (#definition-api-client) must not require a user to subscribe to a channel or like a video to continue watching YouTube audiovisual content.

   For clarity, if your **API Client's** (#definition-api-client) normal functionality requires a certain action that is not specific to **YouTube API Services** (#definition-youtube-api-services), such as login or age verification, that functionality is allowed.

c. **API Clients** (#definition-api-client) must not offer or provide incentives, rewards, or other compensation to users for engaging with **YouTube Applications** (#definition-youtube-applications) (directly or indirectly) by performing actions like viewing content, liking content, sharing content, subscribing to channels, adding comments. For example, **API Clients** (#definition-api-client) must not offer features or services that trade video views for a fee or that trade video views in return for other YouTube-related or non-YouTube-related actions.

## G. Distribution and Commercial Use

You may distribute or sell **API Clients** (#definition-api-client) subject to the restrictions defined in the "Prohibited Actions" subsection below and, of course, to the other terms of the **Agreement** (#definition-agreement).

In addition, you may distribute and display YouTube audiovisual content and accompanying metadata to users through your **API Clients** (#definition-api-client) as long as those Clients comply with the **Agreement** (#definition-agreement) and, specifically, do not engage in any of the prohibited actions listed immediately below.

1. Prohibited Actions

   For specific policies in the following list that require YouTube's prior written approval, you can request that approval at this form (https://support.google.com/youtube/contact/yt_api_form).

   You and your **API Clients** (#definition-api-client) must not, and must not encourage, enable, or require others to:

   a. sell, purchase, lease, lend, convey, redistribute, or sublicense all or any portion of **YouTube API Services** (#definition-youtube-api-services), including YouTube audiovisual content;

   b. sell **YouTube API Services** (#definition-youtube-api-services) or access to any components of **YouTube API Services** (#definition-youtube-api-services) unless you obtain YouTube's prior written approval;

   c. sell advertising, sponsorships, or promotions that are placed on or within YouTube audiovisual content or the YouTube player without YouTube's prior written approval; or

   d. sell advertising, sponsorships, or promotions on any page or screen that contains **YouTube API Data** (#definition-api-data) unless other data, content, or material not obtained from YouTube appears on the same page and offers enough independent value to justify such sales if the **YouTube API Data** (#definition-api-data) were removed.

2. Permitted Actions

   All of the following commercial use cases are permitted subject to your and Your **API Clients** (#definition-api-client)' compliance with all other terms of the **Agreement** (#definition-agreement), including the prohibited actions detailed in the previous section:

   a. Selling an API Client;

   b. Promoting your own business or artistic enterprise by uploading original audiovisual content to YouTube or maintaining channel(s) on YouTube;

c. Developing ad-enabled **API Clients** (#definition-api-client), such as an ad-enabled blog or website, that use **YouTube API Services** (#definition-youtube-api-services) subject to compliance with all other terms of the Agreement, including the restrictions in section III.G.1.d;

d. Placing your own branding in an **API Client** (#definition-api-client) as long as that branding complies with the YouTube Branding Guidelines (/youtube/terms/branding-guidelines) and does not interfere with YouTube audiovisual content playback or any **YouTube Brand Features** (#definition-youtube-brand-features);

e. Selling or distributing devices that contain or run an API Client;

## H. Monitoring and Audits

YouTube reserves the right to survey, monitor, and/or audit your access to or use of **YouTube API Services** (#definition-youtube-api-services) to ensure quality, to improve YouTube products and services, and to verify your compliance with the **Agreement** (#definition-agreement). To that end, YouTube may survey users of your **API Clients** (#definition-api-client).

You and those acting on your behalf must:

1. not interfere with such surveys, monitoring efforts, or audits;
2. not obscure or conceal from YouTube your access to or use of **YouTube API Services** (#definition-youtube-api-services); and
3. upon request, and within the timeframe stated in that request, provide YouTube with account(s) necessary to access all features or functions of the current, in-production version(s) of your **API Clients** (#definition-api-client), so that YouTube may review those **API Clients** (#definition-api-client) for compliance with the **Agreement** (#definition-agreement).

YouTube may use any technical means to overcome non-compliance with these provisions.

## I. Additional Prohibitions

The policies in this section identify additional things that **API Clients** (#definition-api-client) must not do. Actions contrary to these policies would be harmful to YouTube, to the YouTube community as a whole, or to individuals or groups of individuals within that community. These policies focus on the need for you and your **API Clients** (#definition-api-client) to treat members of

the YouTube community honestly and respectfully as well as on your need to respect the integrity of YouTube's services, content, and interests.

You and your **API Clients** (#definition-api-client) must not, and must not encourage, enable, or require others to:

1. use **YouTube API Services** (#definition-youtube-api-services) to create, offer, or act as a substitute for, or substantially similar service to, any **YouTube Applications** (#definition-youtube-applications). **API Clients** (#definition-api-client) must not mimic or replicate YouTube's core user experiences by recreating features or process flows unless they add significant independent value or functionality that improves users' interactions with YouTube. For example, an **API Client** (#definition-api-client) must not recreate the browse experience from any YouTube Application without adding significant independent value to that flow.

2. misuse **YouTube API Services** (#definition-youtube-api-services) or engage in abusive behaviors related to those Services. For example, you must not automate or trigger views, uploads, comments, likes, dislikes, or other actions without the user's prior specific and express consent;

3. interfere, or attempt to interfere, in any way with the proper workings of any aspect of **YouTube API Services** (#definition-youtube-api-services), **YouTube Applications** (#definition-youtube-applications), or **Google Applications** (#definition-google-applications), including interference or disruption of the servers or networks that provide those Services or Applications;

4. modify, interfere with, replace, or otherwise disable any functionality, data, or content made available as part of, or in connection with, **YouTube API Services** (#definition-youtube-api-services). For example, you must not remove, obscure, alter, or disable any links that appear in YouTube players or in **API Data** (#definition-api-data).

5. modify, interfere with, replace, or block advertisements placed or served by YouTube or by **YouTube API Services** (#definition-youtube-api-services) including in **API Data** (#definition-api-data), YouTube audiovisual content, or YouTube players;

6. modify, build upon, or block any portion or functionality of a YouTube player;

7. separate, isolate, or modify the audio or video components of any YouTube audiovisual content made available as part of, or in connection with, **YouTube API Services** (#definition-youtube-api-services). For example, you must not apply alternate audio tracks to videos;

8. promote separately the audio or video components of any YouTube audiovisual content made available as part of, or in connection with, the **YouTube API Services** (#definition-youtube-api-services);
9. create, include, or promote features that play content, including audio or video components, from a background player, meaning a player that is not displayed in the page, tab, or screen that the user is viewing;
10. adversely affect the functionality or performance of any aspect of **YouTube API Services** (#definition-youtube-api-services), **YouTube Applications** (#definition-youtube-applications), or **Google Applications** (#definition-google-applications), including actions that interfere with or disrupt **YouTube API Services** (#definition-youtube-api-services) or the servers or networks that provide those Services;
11. confuse, deceive, defraud, mislead, misrepresent, defame, abuse, stalk, threaten, spam, surprise, or harass anyone;
12. introduce, or attempt to introduce, any viruses, worms, defects, Trojan horses, malware, spyware, adware, or other items of a destructive nature to **YouTube API Services** (#definition-youtube-api-services), **YouTube Applications** (#definition-youtube-applications), **Google Applications** (#definition-google-applications), or YouTube users and the devices they use to access those services and properties;
13. circumvent, interfere with, or render ineffective, any geographical restrictions, including IP address-based restrictions imposed by YouTube or **YouTube API Services** (#definition-youtube-api-services);
14. use any technology other than **YouTube API Services** (#definition-youtube-api-services) to access or retrieve **API Data** (#definition-api-data), including to access any portion of any YouTube audiovisual content;
15. offer an API service that allows users to access any data or functionality directly or indirectly provided by the **YouTube API Services** (#definition-youtube-api-services);
16. modify, translate, create derivative works of, reverse engineer or otherwise attempt to extract the underlying source code from any **YouTube API Services** (#definition-youtube-api-services) or from any software related to those Services;
17. use **YouTube API Services** (#definition-youtube-api-services) for any purpose or activity where the use or failure of those Services could lead to death, personal injury, or environmental

damage, such as in the operation of nuclear facilities, air traffic control systems, or life support systems;

18. infringe copyrights or exploit copyright-infringing materials;
19. engage in, promote or facilitate unlawful online gambling;
20. create, display, promote or facilitate disruptive commercial messages or advertisements; or
21. situate the YouTube player in a nested or hierarchical iframe lineage to circumvent YouTube policies or otherwise obfuscate the source of use.

## J. Child-Directed API Clients

1. If your API Client (or any part thereof) targets or directs itself to children (as defined under applicable law(s) including the U.S. Children's Online Privacy (COPPA) and E.U. General Data Protection Regulation (GDPR)) (referred to herein as a "**Child-Directed API Client**"), you and your Child-Directed API Client must:
    a. ensure that your Child-Directed API Client, including its access to and use of any YouTube API Services, is compliant with COPPA, GDPR, and any other applicable laws or regulations at all times;
    b. notify Google of the child directed nature of your Child-Directed API Client using the tools provided in here (https://support.google.com/policies/answer/9664901). Each Child-Directed API Client notified to Google using such tools or otherwise is referred to herein as a "**Known Child-Directed API Client**"; and
    c. not use personalized ads (including remarketing) to target past or current activity by any user of your Child-Directed API Client.
2. a. **For You and Your Child-Directed API Client.** You and your Child-Directed API Client will not, and must not attempt to, take any YouTube API Services write-based actions to YouTube websites, applications, services or products via your Child-Directed API Client.
    b. Notwithstanding Section III.D.1.c (API Credentials) above which requires exactly one (1) **API Project** (#definition-api-project) for each **API Client** (#definition-api-client), you can upload your own videos to your own official YouTube channel(s) via the YouTube Data API Service (not via your Child-Directed API Client or anyone else's API Client) by creating a new API Project ("**Upload Project**").

i. To upload your own videos to your own official YouTube channel(s) via YouTube Data API Service, you must (A) create one (1) new **API Project** (#definition-api-project) using the Google Developers Console (https://console.developers.google.com/) (https://console.developers.google.com/ (https://console.developers.google.com/)) (an "**Upload Project**") prior to uploading, (B) append *mfk110* as a prefix in the ID of your Upload Project, and (C) only upload from your non-Child-Directed API Client (not from your Child-Directed API Client or anyone else's API Client); and

ii. Only you can use the Upload Project, and the Upload Project must only be used to upload your own videos to your own official YouTube channel(s) via the YouTube Data API Service from your non-Child-Directed API Client (not from your Child-Directed API Client or anyone else's API Client). If you are uploading a Made for Kids video via the YouTube Data API Service from your non-Child-Directed API Client (not from your Child-Directed API Client or anyone else's API Client), you must designate the YouTube Data API Service Made for Kids parameter as "true". See here for more information on determining if content is Made for Kids (https://support.google.com/youtube/answer/9528076).

c. **For You and Users of Your Child-Directed API Client.** You and your Child-Directed API Client must not enable, encourage or require, users of your Child-Directed API Client to take YouTube API Services write-based actions (such as, but not limited to, uploading content, commenting and creating/sharing playlists). YouTube API Services write-based actions taken by users of Known Child-Directed API Clients will not be implemented on YouTube websites, applications, services and products. This means that, notwithstanding Section 9.1 (Required Notice) of the YouTube API Services Terms of Service (/youtube/terms/api-services-terms-of-service) pursuant to which users of your API Client may upload content to their YouTube channels or your YouTube channel(s), uploads from users of Known Child-Directed API Clients will not be implemented on YouTube websites, applications, services and products.

3. You and your API Client's access to, or use of, YouTube API Services can be suspended or terminated by YouTube for non-compliance with the YouTube API Services Terms of Service and Policies including non-compliance with this Section III.J.

## K. Reporting Noncompliance

If you are aware of anyone accessing or using **YouTube API Services** (#definition-youtube-api-services) in a manner that is not compliant with these policies or any other part of the **Agreement** (#definition-agreement), you may contact the YouTube API Services team to escalate the issue using this form (https://support.google.com/youtube/contact/yt_api_form) .

## IV. Definitions

"**Agreement**" means the legal documents defined and referenced in Section 2 (The Agreement) of the YouTube API Services **Terms of Service** (#definition-terms-of-service) currently located at https://developers.google.com/youtube/terms/api-services-terms-of-service (/youtube/terms/api-services-terms-of-service).

"**API Client**" means a website or software application (including a mobile application) developed by you that accesses or uses the **YouTube API Services** (#definition-youtube-api-services).

"**API Credentials**" means the credentials assigned by YouTube or Google via the Google Developer Console that each **API Project** (#definition-api-project") authenticates with to access and use the **YouTube API Services** (#definition-youtube-api-services).

"**API Data**" is defined within the definition of "**YouTube API Services** (#definition-youtube-api-services) " later in this Definitions section.

"**API Project**" means the project created in the Google Developer Console that is required for API Client(s) to access and use the **YouTube API Services** (#definition-youtube-api-services).

"**Authorized Data**" means **API Data** (#definition-api-data) that an active user expressly authorizes an **API Client** (#definition-api-client) to access or otherwise use via **User Credentials** (#definition-user-credentials).

"**Google Applications**" means Google websites, applications, services, products, pages, and other properties.

"**Non-Authorized Data**" means **API Data** (#definition-api-data) accessible by an **API Client** (#definition-api-client) without **User Credentials** (#definition-user-credentials).

"**Terms of Service**" means the YouTube API Services Terms of Service currently located at https://developers.google.com/youtube/terms/api-services-terms-of-service

(/youtube/terms/api-services-terms-of-service).

"**User Credentials**" means the credentials issued to users that users can authenticate with to permit API Client(s) to perform operations on their behalf that require authorization.

"**YouTube API Services**" means (i) the YouTube API services (e.g., YouTube Data API service and YouTube Reporting API service) made available by YouTube including those YouTube API services made available on the YouTube Developer Site (as defined below), (ii) documentation, information, materials, sample code and software (including any human-readable programming instructions) relating to YouTube API services that are made available on https://developers.google.com/youtube (/youtube) or by YouTube, (iii) data, content (including audiovisual content) and information provided to **API Clients** (#definition-api-client) (as defined above) through the YouTube API services (the "**API Data** (#definition-api-data)"), and (iv) the credentials assigned to you and your API Client(s) by YouTube or Google.

"**YouTube Applications**" means YouTube websites, applications, services, products, pages, and other properties, including **https://www.youtube.com**, **m.youtube.com**, mobile applications like the YouTube Gaming application, and so forth, but excluding **YouTube API Services** (#definition-youtube-api-services).

"**YouTube Brand Features**" means the trade names, trademarks, service marks, logos, domain names, and other distinctive brand features of YouTube.

Except as otherwise noted, the content of this page is licensed under the Creative Commons Attribution 4.0 License (https://creativecommons.org/licenses/by/4.0/), and code samples are licensed under the Apache 2.0 License (https://www.apache.org/licenses/LICENSE-2.0). For details, see the Google Developers Site Policies (https://developers.google.com/site-policies). Java is a registered trademark of Oracle and/or its affiliates.

Last updated 2024-04-18 UTC.

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Jennifer Milici (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MUSI INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:24-cv-06920<br><br>**DECLARATION OF VIOLET EVAN-KARIMIAN IN SUPPORT OF DEFENDANT APPLE INC.'S OPPOSITION TO MUSI INC.'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge: The Honorable Eumi K. Lee<br>Hearing Date: January 9, 2025<br>Hearing Time: 12:00 p.m.<br>Courtroom: 7 |

Pursuant to Civil Local Rule 7-5, I, Violet Evan-Karimian, declare as follows:

1. I am employed as Senior Legal Counsel for Apple Media Services at Apple Inc. ("Apple"). I have worked at Apple since 2012 and was promoted to my current role in or around September 2022. In my role as Senior Legal Counsel, I am responsible for, among other things, third-party complaints made to Apple regarding apps distributed through Apple's App Store. The facts stated below are based on my personal knowledge as well as on company records maintained in the ordinary course of Apple's business. If called as a witness, I could and would testify competently to the facts herein. I submit this declaration in support of Defendant Apple Inc.'s Opposition to Musi Inc.'s ("Musi") Motion for Preliminary Injunction.

2. Apple is committed to making App Store a safe and trusted place for users to download apps and a platform that respects the rights of third-party content creators. As part of this commitment, Apple maintains a process through which third parties can submit complaints to Apple if they have concerns about an app made available on App Store. Among other things, Apple makes available an on-line form for individuals and entities to formally submit an "App Store Content Dispute" if they believe their intellectual property rights are violated by an app. Apple receives, on average, more than ten thousand third-party complaints about App Store apps each year.

3. Apple has received over a dozen third-party complaints concerning Musi's app titled "Musi – Simple Music Streaming" (the "Musi app"), including complaints that the Musi app violates the intellectual property rights of those third parties. Among the organizations that have submitted third-party complaints about the Musi app are Universal Music Group ("UMG"); the Recording Industry Association of America ("RIAA"); Sony Music Entertainment ("SME"); and the International Federation of the Phonographic Industry ("IFPI").

4. Many of the third-party complaints against the Musi app concern allegations of copyright infringement. By way of recent example, the IFPI complaint submitted to Apple on July 27, 2023, asserted that the Musi app was communicating; making available to the public; reproducing; enabling others to reproduce; and/or distributing the works of IFPI members made

available on YouTube (the "IFPI Member Content") in violation of their copyrights. IFPI articulated the bases for its complaint in further communications with Musi and with Apple. Attached hereto as **Exhibit 1** is a true and correct copy of the email communications between IFPI, Musi, and Apple taking place between July 27, 2023 and May 7, 2024. Specifically, in email communications dated October 31, 2023; January 17, 2024; February 27, 2024; April 15, 2024; and May 7, 2024, IFPI outlined its position that the Musi app circumvents certain technical protection measures ("TPMs") implemented by YouTube to ensure that content made available on YouTube—including IFPI Member Content—is used only as authorized by the copyright holder. In its April 15, 2024 email to Apple, IFPI stated that "[i]n light of this explanation and our continued correspondence with you regarding this app more generally, please note that we consider that Apple has the requisite knowledge of this illegal activity as referred to in Article 6 of the EU Digital Services Act." In its email of May 7, 2024, IFPI reiterated its "good faith belief that these activities are not authorised by the relevant copyright holders" and asked that Apple "please remove the Musi App from the app Store without any further delay."

5. In the course of the email communications between IFPI, Musi, and Apple described above, both IFPI and Musi shared additional correspondence from counsel for both companies with Apple. Each of those communications discussed the specific legal objections raised by IFPI. Attached hereto as **Exhibit 2** is a true and correct copy of an October 25, 2023 letter from IFPI to counsel for Musi, shared with Apple on October 31, 2023. Attached hereto as **Exhibit 3** is a true and correct copy of a December 20, 2023 letter from IFPI to counsel for Musi, shared with Apple on February 27, 2024. Attached hereto as **Exhibit 4** is a true and correct copy of an April 17, 2024 letter from counsel for Musi to Apple, attached to Musi's email correspondence of April 17, 2024. Attached hereto as **Exhibit 5** is a May 7, 2024 letter from IFPI to counsel for Musi, shared with Apple on May 7, 2024.

6. In April 2024, a representative from IFPI member SME reached out to Apple to follow up on SME's own complaint against the Musi app submitted on July 31, 2023. The SME complaint, like the IFPI complaint, alleged that the Musi app was engaging in the unauthorized

distribution of its members' works in violation of their copyrights. In its April 2024 outreach to Apple, SME stated its belief that the Musi app sources SME music content by circumventing YouTube's Technical Protection Measures ("TPMs").

7. Following the complaints and outreach from IFPI, SME, and others, on July 15, 2024, I participated in a phone call with Apple's relationship contact at YouTube, along with in-house counsel from both YouTube and Apple, to follow up on earlier complaints YouTube itself had submitted regarding the Musi app. During this phone call, YouTube confirmed its position that the Musi app violates YouTube's Terms of Service, including by misusing YouTube's Application Programming Interface ("API"). YouTube also requested the removal of the Musi app from App Store.

8. Following the July 15 phone call, on July 29, 2024, YouTube emailed Apple reiterating its position that the Musi app was violating YouTube's Terms of Service. We promptly notified Musi of the YouTube complaint, provided Musi contact information for YouTube Legal, and stated that Apple awaited either confirmation that the complaint had been resolved or that the parties were taking steps to resolve the complaint.

9. On September 11, 2024, Apple received a letter from the National Music Publishers Association ("NMPA") submitted in support of YouTube's July 2024 complaint against the Musi app. Attached hereto as **Exhibit 6** is a true and correct copy of the September 11, 2024 letter Apple received from the NMPA. The NMPA letter described the Musi app, detailed the purported violations of the YouTube Terms of Service, and the harm NMPA's members claimed to suffer as a result.

10. Apple has periodically followed up with both YouTube and Musi. To date, however, YouTube has not confirmed to Apple that its complaint about the Musi app has been resolved.

11. Apple removed the Musi app from App Store in September 2024 following the concerns raised by YouTube as to Musi's alleged violations of the YouTube Terms of Service and misuse of YouTube's API and the objections raised by IFPI, SME, NMPA, and the other third-

party complainants within the music industry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of November 2024 in Cupertino, California.

By: [signature]
Violet Evan-Karimian

# EXHIBIT 1

**From:** **app-enforcement** App.Enforcement@ifpi.org [redacted]
**Subject:** RE: Apple Inc. (our ref# APP187194) Notice of Complaint
**Date:** May 7, 2024 at 9:02 AM
**To:** ASN AppStoreNotices@apple.com
**Cc:** app-enforcement App.Enforcement@ifpi.org, aaronwojnowski@gmail.com, support@feelthemusi.com, christian@feelthemusi.com, aaron@feelthemusi.com, apple-ios-contact@feelthemusi.com, MElkin@winston.com, herstein@pitblado.com

Dear Apple

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

**Your Reference: APP187194**

We note your comment that you cannot serve as arbiter for disputes. In this regard, please be aware that we have today sent the attached letter to the developer's UK solicitors. However, we maintain our complaint with Apple.

For the reasons explained previously, including in our last email of 15 April (below), the Musi app is infringing our members' rights by making available to the public without authorisation sound recordings, the rights in which are owned or controlled by IPFI members. Further, the application also circumvents technical protection measures (TPMs) implemented for the purpose of preventing acts which are not authorised by the right holders. We have a good faith belief that these activities are not authorised by the relevant copyright owners, their agents or the law and that the information and allegations in our complaint are accurate and complete.

Accordingly, will you now please remove the Musi App from the App Store without any further delay.

Kind regards
IFPI

---

**From:** ASN <AppStoreNotices@apple.com>
**Sent:** Thursday, April 25, 2024 9:56 PM
**To:** aaronwojnowski@gmail.com; support@feelthemusi.com; christian@feelthemusi.com; aaron@feelthemusi.com; apple-ios-contact@feelthemusi.com; MElkin@winston.com; herstein@pitblado.com
**Cc:** app-enforcement <App.Enforcement@ifpi.org>
**Subject:** Apple Inc. (our ref# APP187194) Notice of Complaint

**[This message is from an external sender. Please take care with any links or attachments]**

---

**Please include APP187194 in the subject line of any future correspondence on

Please include APP187194 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

Thank you for your response.  Unfortunately, Apple cannot serve as arbiter for disputes among third parties.  Please contact IFPI directly regarding this matter.  You can reach IFPI through: [redacted] (email: app.enforcement@ifpi.org), copied on this message.

We look forward to confirmation from both parties that this issue has been resolved.

Sincerely,

Victoria,

Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients.  This message may be an attorney-client communication protected by privilege.  If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message.  Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems.  The use of the sender's name in this message is not intended as an electronic signature under any applicable law.  Thank you.

Begin forwarded message:

**From:** "Elkin, Michael" <MElkin@winston.com>
**Subject: Apple Inc. (our ref# APP187194)**
**Date:** April 17, 2024 at 12:27:08 PM PDT
**To:** "ASN" <AppStoreNotices@apple.com>
**Cc:** "herstein@pitblado.com" <herstein@pitblado.com>

Dear App Store Notices:

We write in response to the Complainant IFPI's email to you dated April 15, 2024.

As a preliminary matter, please note that Musi has fully addressed IFPI's claims, on multiple occasions, to IFPI directly. In addition, Musi has explained several times to IFPI how the Musi app works, in response to their letters to Musi's UK solicitors. IFPI last wrote to Musi in December 2023 and Musi again responded in full on January 5th.

2024. Since its letter in January, Musi has received no further direct correspondence from IFPI. There is nothing in IFPI's recent correspondence to App Store Notices that Musi has not already fully addressed directly with IFPI.

Having taken the advice of legal counsel in the US and UK, Musi does not accept IFPI's position that the Musi app infringes IFPI's members' rights in their sound recordings in any jurisdiction, including the EU and the UK. As mentioned in our prior correspondence, the Complainant confirmed to Musi that it is not making any claims under United States law, and there are no live US-based disputes between the parties.

Musi does not accept, contrary to IFPI's assertion, that the Musi app operates in breach of YouTube's Terms of Service. It does not, and IFPI has been unable to explain which of YouTube's terms are infringed. IFPI further states that functionality offered by the app goes beyond the scope of the licenses granted by the relevant rights holders to YouTube. On the contrary, all of the functionality offered in the Musi app is also possible on YouTube's own desktop website, mobile apps, and on its mobile website accessible via every major web browser. This has specifically been explained to IFPI in Musi's January letter, to which Musi has received no reply to date.

IFPI also assert that Musi's activities amount to "unauthorised communication to the public /making available of our members'recordings under the applicable law in the EU and U.K including because the communications are to a public that was not considered by the relevant right holders when they granted their initial consent to YouTube." This is not correct. The "new public" test to which IFPI refers is not met. The Musi app limits functionality to that which is permitted under YouTube's Terms of Service. The "public" to which the Musi functionality is available is the same as that for the YouTube app. Musi merely offers a different interface.

Finally IFPI states that the Musi app circumvents YouTube's TPMs. This is also incorrect. Musi, like major web browsers, accesses and displays content by, amongst other actions, interpreting HyperText Markup Language and executing JavaScript. Whether or not a user chooses to play a certain YouTube video in Musi, or in a browser like Mobile Safari, the same HTML and JavaScript code will be interpreted and executed accordingly. Musi does not access any non-public interface or rely on any non-public resources to display videos in its app.

For the reasons given above, we would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Sincerely,

**Michael Elkin**

**Vice Chairman**

Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

D: +1 212-294-6729
F: +1 212-294-4700
Bio | VCard | Email | winston.com

WINSTON & STRAWN LLP

On Apr 16, 2024, at 6:26 PM, ASN <AppStoreNotices@apple.com> wrote:

**Please include APP187194 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

IFPI has advised that this matter is still not resolved. Please contact IFPI immediately regarding this issue. You can reach IFPI through: [redacted] (email: app.enforcement@ifpi.org).

As you know, it is your responsibility to resolve this issue directly with IFPI, and further, that you are responsible for any liability to Apple in connection with this matter. We look forward to confirmation from you and IFPI that this issue has been resolved.

If the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store.

Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Victoria,

 Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
The information in this e-mail and any attachment(s) is intended solely

for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

**From:** app-enforcement <App.Enforcement@ifpi.org>
**Subject: RE: Apple Inc. (our ref# APP187194)**
**Date:** April 15, 2024 at 2:43:20 AM PDT
**To:** 'AppStoreNotices' <AppStoreNotices@apple.com>, app-enforcement <App.Enforcement@ifpi.org>
**Cc:** "aaronwojnowski@gmail.com" <aaronwojnowski@gmail.com>, "support@feelthemusi.com" <support@feelthemusi.com>, "christian@feelthemusi.com" <christian@feelthemusi.com>, "aaron@feelthemusi.com" <aaron@feelthemusi.com>, "apple-ios-contact@feelthemusi.com" <apple-ios-contact@feelthemusi.com>, "MElkin@winston.com" <MElkin@winston.com>, "herstein@pitblado.com" <herstein@pitblado.com>

Dear James,

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

**Your Reference: APP187194**

We refer to your email and to the previous email from Mr Elkin (the developer's US lawyer) dated 1 March 2024.

Unfortunately, this matter is not resolved.

IFPI is the international trade association that

promotes the interests of the recording industry worldwide. As you are aware, our membership across IFPI and its National Groups includes some 8,000 major and independent record companies in over 70 countries. The developer of the Musi app is based in Canada, and makes the Musi service available to consumers in multiple countries, including within the EU.

Since this complaint was filed in July 2023, the developer has not changed the functionality of the Musi app in any material way. Musi continues to infringe our members' rights in their sound recordings on a huge scale, under the laws of numerous jurisdictions, including in the EU Member States and the UK.

As we have explained previously, the Musi app makes available to the public large volumes of sound recordings and music videos, the copyright in which is owned or controlled by IFPI members. The app functions, at a basic level, by allowing users to stream copyright-protected sound recordings that have been derived from YouTube, but without relevant authorisation and in breach of YouTube's terms of service. The functionality offered by the app, which includes, for example, the ability for users to stream content from a mobile device when the user's screen is locked (background listening) and experience non-video playback, goes beyond the scope of the licences that have been granted by the relevant right holders to YouTube and is not authorised. Musi's activities amount to unauthorised communication to the public /making available of our members' recordings under the applicable law in the EU and U.K including because the communications are to a public that was not considered by the relevant right holders when they granted their initial consent to YouTube.

Moreover, to provide the service that it does, the application also circumvents technical protection measures (TPMs) implemented for the purpose of preventing acts which are not authorised by the right holders.

Our members' sound recordings that can be streamed without relevant authorisation using the application include, without limitation, the further example infringements that were set out in our email of 27 February 2024 (below).

IFPI is in communication with the developer's solicitors in the UK but the parties have not reached a resolution. IFPI and its members' position remains that the app is infringing and circumvents TPMs.

In the light of this explanation and our continued correspondence with you regarding this app more generally, please note that we consider that Apple has the requisite knowledge of this illegal activity as referred to in Article 6 of the EU Digital Services Act. Therefore, for all these reasons please keep this complaint open and we reiterate our request that the app be removed from the App Store without further delay.

In the meantime, all rights and remedies of IFPI and its members and their represented artists are reserved in full.

Kind regards,
IFPI

---

**From:** AppStoreNotices <AppStoreNotices@apple.com>
**Sent:** Wednesday, April 3, 2024 12:30 AM
**To:** app-enforcement <App.Enforcement@ifpi.org>
**Cc:** aaronwojnowski@gmail.com; support@feelthemusi.com; christian@feelthemusi.com; aaron@feelthemusi.com; apple-ios-contact@feelthemusi.com; MElkin@winston.com; herstein@pitblado.com
**Subject:** Apple Inc. (our ref# APP187194)

[This message is from an external sender. Please take care with any links or attachments]

Dear [redacted],

**Please include APP187194 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from

failure to do so may prevent our system from
properly recording your response.**

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you within 14 days, we will conclude that the matter has been resolved. If at any time you wish to reopen this matter, you may send us an email with your dispute reference number in the subject line.

Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

 Apple Legal l Apple l One Apple Park Way
Cupertino, CA 95014 l
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com
Subject: [EXT] RE: Apple Inc. (our ref# APP187194)
Date: March 1, 2024 at 3:01:26 PM
To: AppStoreNotices@apple.com
Cc: herstein@pitblado.com

Dear App Store Notices:

As noted, we have been in communication directly with the Complainant on this matter over the past several months in order to attempt to resolve any dispute. As a result of those communications, the Complainant confirmed to Musi that it is not making any claims under United States law. So there are no live US-based disputes between the parties.

Moreover, Musi has repeatedly, on multiple occasions, and as recently as January 5, 2024, responded fully and promptly to the Complainant to address its concerns and explain its position that the Complainant does not have legitimate claims under relevant foreign jurisdictions. As of this date, the Complainant has not substantiated its allegation with factual proof or relevant legal precedent.

In fact, Musi has not even received a direct reply to its January 5 correspondence from the Complainant (nearly 2 months ago), nor has the Complainant outlined any additional basis for the maintenance of its claims in its recent correspondence to App Store Notices. Accordingly, we would respectfully ask you to summarily disregard any further communication by the Complainant that professes to assert a viable claim under any law – anywhere. Of course, we will continue to maintain a dialogue directly with the Complainant as we have for quite some time now.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

Michael Elkin

Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio I VCard I Email I winston.com

Begin forwarded message:

From: app-enforcement
<App.Enforcement@ifpi.org>
Date: February 27, 2024 at 5:12:25 AM CST
To: AppStoreNotices
<AppStoreNotices@apple.com>, app-enforcement <App.Enforcement@ifpi.org>, Adam Herstein <herstein@pitblado.com>
Cc:aaronwojnowski@gmail.com, support@feelthemusi.com, christian@feelthemusi.com, aaron@feelthemusi.com, apple-ios-contact@feelthemusi.com
Subject:[EXT] RE: Apple Inc. (our ref# APP187194)

Dear James,

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Your Reference: APP187194
Please can you reopen this matter, as the Musi application infringes the copyright in sound recordings and music videos which is owned or controlled by IFPI members (“IFPI Member Content”). The app does this by allowing users to stream, without relevant authorisation, copyright-

protected content that has been derived from YouTube. The application includes functionalities, such as allowing users to stream IFPI Member Content from a mobile device when the user's screen is locked and non-video playback, which are not authorised by the relevant right holders.

In addition, Musi operates by circumventing the technical prevention measures (TPMs) which YouTube has implemented to protect IFPI Member Content.

As requested, we attach further evidence of Musi's infringing activities. We attach screenshots showing the availability of the content set out below through the application.

ARTIST
SOUND RECORDING / MUSIC VIDEO
IFPI MEMBER
Harry Styles
As It Was
Sony
Music Entertainment

Please note that these are only example infringements. This are not the only infringing content that is made available through the app.

As we have explained previously, we are currently in dialogue with the developer's legal counsel. IFPI's latest letter is attached for your information. If a resolution is reached, we will let you know. But in the meantime, we should be grateful if you would reopen this matter open and we reiterate our request that the app be removed from the App Store without further delay.

With kind regards
IFPI

From: AppStoreNotices
<AppStoreNotices@apple.com>

Sent: Monday, February 19, 2024 7:29 PM
To: app-enforcement
<App.Enforcement@ifpi.org>;
herstein@pitblado.com
Cc:aaronwojnowski@gmail.com;
support@feelthemusi.com;
christian@feelthemusi.com; aaron@feelthemusi.com;
apple-ios-contact@feelthemusi.com
Subject: Apple Inc. (our ref# APP187194)

[This message is from an external sender. Please take care with any links or attachments]

**Please include APP187194 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

Please note that we only handle claims of intellectual property infringement on the App Store. Per our previous message, you were asked to provide documentation to support your infringement claim. As you have not provided the requested documentation, we will consider this matter closed at this time. Upon receipt of documentation detailing the alleged infringement in the current version of the disputed app, we will re-open this matter for further handling.

Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
Email Contact(s): aaronwojnowski@gmail.com,
support@feelthemusi.com,
christian@feelthemusi.com, aaron@feelthemusi.com,
apple-ios-contact@feelthemusi.com
-

Sincerely,

James

 Apple Legal l Apple l One Apple Park Way
Cupertino, CA 95014 l
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you
may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message
is not intended as an electronic signature under any applicable law. Thank you.

---

On Feb 1, 2024 at 3:11 AM, App.Enforcement@ifpi.org wrote:

Dear James,

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Your Reference: APP187194
We refer to your latest email. Contrary to what is stated in your email, the developer has not advised that the matter has been resolved.

Instead, both parties have explained that they are corresponding directly with one another but have not reached a resolution.

The parties have also each made clear in the email chain below their respective positions and the developer has made no relevant changes to the app since the initial report was filed.

the app since the initial report was filed.

Accordingly, please keep this matter open. As mentioned by both parties previously, if a resolution is reached, we will let you know.

The rights and remedies of IFPI and its member companies are reserved.

With kind regards
IFPI

From: AppStoreNotices
<AppStoreNotices@apple.com>
Sent: Thursday, January 25, 2024 10:28 AM
To: app-enforcement
<App.Enforcement@ifpi.org>;
herstein@pitblado.com
Cc: christian@wearedash.com;
aaronwojnowski@gmail.com; support@feelthemusi.com;
christian@feelthemusi.com;
aaron@feelthemusi.com; apple-ios-contact@feelthemusi.com;
MElkin@winston.com
Subject: Apple Inc. (our ref# APP187194)

[This message is from an external sender. Please take care with any links or attachments]

Dear Melissa,

**Please include APP187194 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

The provider below (cc'ed) has advised that they have been on contact with you and that the matter is now resolved. If you believe the matter is not resolved, please provide evidence that the current version of the app infringes your intellectual property rights.
Unless we receive such evidence within 14 days, we will consider this matter closed. You may reopen this matter at any time by sending us an email with your dispute reference number in the

subject line.

Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

 Apple Legal Apple One Apple Park Way
Cupertino, CA 95014
AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you
may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message
is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com<mailto:MElkin@winston.com>
Subject: [EXT] RE: Apple Inc. (our ref# APP187194)
Date: Jan 18, 2024 at 9:14 AM
To:
AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>
Cc: herstein@pitblado.com<mailto:herstein@pitblado.com>

Dear App Store Notices:

As noted, we have been in communication directly with the Complainant on this matter in order to attempt to resolve any dispute. We will continue to keep you updated as to the status of our communication.

It is Musi's position that the Complainant has made a number of baseless and unsubstantiated claims about Musi. Musi has made it clear to the Complainant that its claims are either unsupported by current law, or are reliant on facts that are incorrect. We would
like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<https://www.winston.com/en/professionals/elkin-michael-s<https://www.winston.com/en/professionals/elkin-michael-s>>
|
VCard<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf>>
| Email<mailto:melkin@winston.com> |
winston.com<http://winston.com>
<http://www.winston.com<http://www.winston.com>>
[Winston & Strawn LLP]

Begin forwarded message:
From: app-enforcement

<App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org>>>
Date: January 17, 2024 at 3:12:04 AM CST
To: AppStoreNotices
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>,
app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org>>>
Cc: Adam Herstein
<herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>>
Subject: [EXT] RE: Apple Inc. (our ref# APP187194)

Dear James,

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Your Reference: APP187194

Thank you for your email.

This matter has not been resolved. The parties are corresponding directly but have not reached a resolution.

The developer has made no material changes to the app and thus it continues to infringe the rights of our member companies by communicating IFPI Member Content to the public without relevant authorisation. In addition, the developer is circumventing the technical protection measures (TPMs) which YouTube has implemented to protect IFPI Member Content.

Therefore, please keep this matter open and we repeat our request that Apple removes the app

from the App Store. In the meantime, if we reach a resolution with the developer, we will let you know.

The rights and remedies of IFPI and its member companies are reserved.
With kind regards
IFPI

From: AppStoreNotices
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>
Sent: Friday, January 5, 2024 1:40 AM
To: app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org>>>;

herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>
Subject: Apple Inc. (our ref# APP187194)

Dear [redacted],

**Please include APP187194 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

According to our records, we did not receive confirmation from you that this matter had been resolved.

Please let us know the status of the dispute involving the app listed below. If we do not hear from you within 14 days, we will close this matter for our records. If at any time you wish to reopen this matter, you may send us an email with your dispute reference
number in the subject line.

Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124

Apple ID: [illegible]
-

Sincerely,

James

 Apple Legal Apple One Apple Park Way
Cupertino, CA 95014
AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you
may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message
is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>
Subject: Apple Inc. (our ref# APP187194)
Date: Nov 4, 2023 at 8:20 AM
To:
AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>
Cc:
herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>

Dear App Store Notices:

Musi received correspondence from the Complainant on October 25, 2023. Musi has communicated directly with the Complainant on November 2, 2023 in order to address its concerns and express its position that Complainant’s allegations are without merit. We will
continue to keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<https://www.winston.com/en/professionals/elkin-michael-s<https://www.winston.com/en/professionals/elkin-michael-s>>
|
VCard<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf>>
| Email<mailto:melkin@winston.com> |
winston.com<http://winston.com>
<http://winston.com<http://winston.com>>
<http://www.winston.com<http://www.winston.com>>
[Winston & Strawn LLP]

From: app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforceme

.Enforcement@ifpi.org%3cmailto:App.Enforceme
nt@ifpi.org%3cmailto:App.Enforcement@ifpi.org
%3cmailto:App.Enforcement@ifpi.org>>>>
Sent: Tuesday, October 31, 2023 9:09 AM
To: AppStoreNotices
<AppStoreNotices@apple.com<mailto:AppStore
Notices@apple.com<mailto:AppStoreNotices@ap
ple.com%3cmailto:AppStoreNotices@apple.com<
mailto:AppStoreNotices@apple.com%3cmailto:A
ppStoreNotices@apple.com%3cmailto:AppStore
Notices@apple.com%3cmailto:AppStoreNotices
@apple.com>>>>;
app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforce
ment@ifpi.org<mailto:App.Enforcement@ifpi.org
%3cmailto:App.Enforcement@ifpi.org<mailto:App
.Enforcement@ifpi.org%3cmailto:App.Enforceme
nt@ifpi.org%3cmailto:App.Enforcement@ifpi.org
%3cmailto:App.Enforcement@ifpi.org>>>>;

herstein@pitblado.com<mailto:herstein@pitblado.
com<mailto:herstein@pitblado.com%3cmailto:her
stein@pitblado.com<mailto:herstein@pitblado.co
m%3cmailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com>>>;

christian@wearedash.com<mailto:christian@wea
redash.com<mailto:christian@wearedash.com%3
cmailto:christian@wearedash.com<mailto:christia
n@wearedash.com%3cmailto:christian@weareda
sh.com%3cmailto:christian@wearedash.com%3c
mailto:christian@wearedash.com>>>;

aaronwojnowski@gmail.com<mailto:aaronwojnow
ski@gmail.com<mailto:aaronwojnowski@gmail.c
om%3cmailto:aaronwojnowski@gmail.com<mailt
o:aaronwojnowski@gmail.com%3cmailto:aaronw
ojnowski@gmail.com%3cmailto:aaronwojnowski
@gmail.com%3cmailto:aaronwojnowski@gmail.c
om>>>;

support@feelthemusi.com<mailto:support@feelth
emusi.com<mailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com<mailto:support
@feelthemusi.com%3cmailto:support@feelthemu
si.com%3cmailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com>>>;

christian@feelthemusi.com<mailto:christian@feelthemusi.com<mailto:christian@feelthemusi.com%3cmailto:christian@feelthemusi.com<mailto:christian@feelthemusi.com%3cmailto:christian@feelthemusi.com%3cmailto:christian@feelthemusi.com%3cmailto:christian@feelthemusi.com>>>;

aaron@feelthemusi.com<mailto:aaron@feelthemusi.com<mailto:aaron@feelthemusi.com%3cmailto:aaron@feelthemusi.com<mailto:aaron@feelthemusi.com%3cmailto:aaron@feelthemusi.com%3cmailto:aaron@feelthemusi.com%3cmailto:aaron@feelthemusi.com>>>;

apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com>>>;
Elkin, Michael
<MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>>
>
Subject: Re: Apple Inc. (our ref# APP187194)

Dear James,Re: Developer: Musi Inc.Provider: Musi
Inc.App<http://Inc.App>
<http://Inc.App<http://Inc.App>>
Title: Musi - Simple Music StreamingApple ID: 591560124Your Reference: APP187194Thank you for your email.Further to our email dated 9 October 2023, IFPI continues to correspond with the developer's representative, but this

Dear James,

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Your Reference: APP187194

Thank you for your email.

Further to our email dated 9 October 2023, IFPI continues to correspond with the developer's representative, but this issue remains unresolved. IFPI responded to the most recent correspondence from the developer's representative on 25 October 2023 and awaits a response. Please see our letter attached.

We will keep Apple informed of progress on this matter, particularly if we reach a resolution with the developer. However, in the meantime, as you will see from the attached letter, the app continues to infringe the rights of our member companies by communicating
IFPI Member Content to the public without authorisation. In addition, we have reason to believe that the developer is circumventing the technical protection measures (TPMs) which YouTube has implemented to protect IFPI Member Content.

Accordingly, we repeat our request that the app be removed from the App Store without further delay.

Kind regards

IFPI

________________________________
From: AppStoreNotices <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>>
Sent: Monday, October 16, 2023 19:44

To: app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforce
ment@ifpi.org<mailto:App.Enforcement@ifpi.org
%3cmailto:App.Enforcement@ifpi.org<mailto:App
.Enforcement@ifpi.org%3cmailto:App.Enforceme
nt@ifpi.org%3cmailto:App.Enforcement@ifpi.org
%3cmailto:App.Enforcement@ifpi.org>>>>;

herstein@pitblado.com<mailto:herstein@pitblado.
com<mailto:herstein@pitblado.com%3cmailto:her
stein@pitblado.com<mailto:herstein@pitblado.co
m%3cmailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com>>>
<herstein@pitblado.com<mailto:herstein@pitblad
o.com<mailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com<mailto:herstein@pitblado.c
om%3cmailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com%3cmailto:herstein@pitblad
o.com>>>>;

christian@wearedash.com<mailto:christian@wea
redash.com<mailto:christian@wearedash.com%3
cmailto:christian@wearedash.com<mailto:christia
n@wearedash.com%3cmailto:christian@wearedа
sh.com%3cmailto:christian@wearedash.com%3c
mailto:christian@wearedash.com>>>
<christian@wearedash.com<mailto:christian@we
aredash.com<mailto:christian@wearedash.com%
3cmailto:christian@wearedash.com<mailto:christi
an@wearedash.com%3cmailto:christian@weared
ash.com%3cmailto:christian@wearedash.com%3
cmailto:christian@wearedash.com>>>>;

aaronwojnowski@gmail.com<mailto:aaronwojnow
ski@gmail.com<mailto:aaronwojnowski@gmail.c
om%3cmailto:aaronwojnowski@gmail.com<mailt
o:aaronwojnowski@gmail.com%3cmailto:aaronw
ojnowski@gmail.com%3cmailto:aaronwojnowski
@gmail.com%3cmailto:aaronwojnowski@gmail.c
om>>>
<aaronwojnowski@gmail.com<mailto:aaronwojno
wski@gmail.com<mailto:aaronwojnowski@gmail.
com%3cmailto:aaronwojnowski@gmail.com<mail
to:aaronwojnowski@gmail.com%3cmailto:aaronw
ojnowski@gmail.com%3cmailto:aaronwojnowski
@gmail.com%3cmailto:aaronwojnowski@gmail.c

om>>>>;

support@feelthemusi.com<mailto:support@feelth
emusi.com<mailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com<mailto:support
@feelthemusi.com%3cmailto:support@feelthemu
si.com%3cmailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com>>>
<support@feelthemusi.com<mailto:support@feelt
hemusi.com<mailto:support@feelthemusi.com%3
cmailto:support@feelthemusi.com<mailto:support
@feelthemusi.com%3cmailto:support@feelthemu
si.com%3cmailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com>>>>;

christian@feelthemusi.com<mailto:christian@feel
themusi.com<mailto:christian@feelthemusi.com%
3cmailto:christian@feelthemusi.com<mailto:christ
ian@feelthemusi.com%3cmailto:christian@feelth
emusi.com%3cmailto:christian@feelthemusi.com
%3cmailto:christian@feelthemusi.com>>>
<christian@feelthemusi.com<mailto:christian@fe
elthemusi.com<mailto:christian@feelthemusi.com
%3cmailto:christian@feelthemusi.com<mailto:chri
stian@feelthemusi.com%3cmailto:christian@feelt
hemusi.com%3cmailto:christian@feelthemusi.co
m%3cmailto:christian@feelthemusi.com>>>>;

aaron@feelthemusi.com<mailto:aaron@feelthem
usi.com<mailto:aaron@feelthemusi.com%3cmailt
o:aaron@feelthemusi.com<mailto:aaron@feelthe
musi.com%3cmailto:aaron@feelthemusi.com%3c
mailto:aaron@feelthemusi.com%3cmailto:aaron
@feelthemusi.com>>>
<aaron@feelthemusi.com<mailto:aaron@feelthe
musi.com<mailto:aaron@feelthemusi.com%3cma
ilto:aaron@feelthemusi.com<mailto:aaron@feelth
emusi.com%3cmailto:aaron@feelthemusi.com%3
cmailto:aaron@feelthemusi.com%3cmailto:aaron
@feelthemusi.com>>>>;

apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-

contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com>>>
<apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com>>>>;

MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>>
<MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>>
>
Subject: Apple Inc. (our ref# APP187194)

Hello,

**Please include APP187194 in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

 Apple Legal Apple One Apple Park Way
Cupertino, CA 95014

AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you
may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message
is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org>>>
Subject: Re: Apple Inc. (our ref# APP187194)
Date: Oct 9, 2023 at 8:45 AM
To:
AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>,

herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado

rstein@pitblado.com%3cmailto:nerstein@pitblado
.com>>>
Cc:
christian@wearedash.com<mailto:christian@wea
redash.com<mailto:christian@wearedash.com%3
cmailto:christian@wearedash.com<mailto:christia
n@wearedash.com%3cmailto:christian@weareda
sh.com%3cmailto:christian@wearedash.com%3c
mailto:christian@wearedash.com>>>,

aaronwojnowski@gmail.com<mailto:aaronwojnow
ski@gmail.com<mailto:aaronwojnowski@gmail.c
om%3cmailto:aaronwojnowski@gmail.com<mailt
o:aaronwojnowski@gmail.com%3cmailto:aaronw
ojnowski@gmail.com%3cmailto:aaronwojnowski
@gmail.com%3cmailto:aaronwojnowski@gmail.c
om>>>,

support@feelthemusi.com<mailto:support@feelth
emusi.com<mailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com<mailto:support
@feelthemusi.com%3cmailto:support@feelthemu
si.com%3cmailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com>>>,

christian@feelthemusi.com<mailto:christian@feel
themusi.com<mailto:christian@feelthemusi.com%
3cmailto:christian@feelthemusi.com<mailto:christ
ian@feelthemusi.com%3cmailto:christian@feelth
emusi.com%3cmailto:christian@feelthemusi.com
%3cmailto:christian@feelthemusi.com>>>,

aaron@feelthemusi.com<mailto:aaron@feelthem
usi.com<mailto:aaron@feelthemusi.com%3cmailt
o:aaron@feelthemusi.com<mailto:aaron@feelthe
musi.com%3cmailto:aaron@feelthemusi.com%3c
mailto:aaron@feelthemusi.com%3cmailto:aaron
@feelthemusi.com>>>,

apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>,

MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>>

Dear James,

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Your Reference: APP187194

Thank you for your email.

We have indeed received communication from the developer's advisers, but unfortunately the matter is not yet resolved. IFPI will shortly be responding to the developer's representative's latest communication, and we will keep Apple informed of the progress
and if we reach a resolution.

However, in the meantime, the app continues to infringe the rights of our member companies by communicating IFPI Member Content to the public without authorisation . Accordingly, until we notify you that the matter is resolved, we should be grateful if you
would leave this matter open.

Kind regards

IFPI

________________________________
From: AppStoreNotices
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>>
Sent: Monday, September 25, 2023 19:50
To: app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org>>>>;

herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>>
<herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>>>
Cc:
christian@wearedash.com<mailto:christian@wearedash.com<mailto:christian@wearedash.com%3cmailto:christian@wearedash.com<mailto:christian@wearedash.com%3cmailto:christian@wearedash.com%3cmailto:christian@wearedash.com%3cmailto:christian@wearedash.com>>>
<christian@wearedash.com<mailto:christian@wearedash.com<mailto:christian@wearedash.com%3cmailto:christian@wearedash.com<mailto:christian@wearedash.com%3cmailto:christian@wearedash.com%3cmailto:christian@wearedash.com%3cmailto:christian@wearedash.com>>>>;

aaronwojnowski@gmail.com<mailto:aaronwojnowski@gmail.com<mailto:aaronwojnowski@gmail.com%3cmailto:aaronwojnowski@gmail.com<mailt

o:aaronwojnowski@gmail.com%3cmailto:aaronw
ojnowski@gmail.com%3cmailto:aaronwojnowski
@gmail.com%3cmailto:aaronwojnowski@gmail.c
om>>>
<aaronwojnowski@gmail.com<mailto:aaronwojno
wski@gmail.com<mailto:aaronwojnowski@gmail.
com%3cmailto:aaronwojnowski@gmail.com<mail
to:aaronwojnowski@gmail.com%3cmailto:aaronw
ojnowski@gmail.com%3cmailto:aaronwojnowski
@gmail.com%3cmailto:aaronwojnowski@gmail.c
om>>>>;

support@feelthemusi.com<mailto:support@feelth
emusi.com<mailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com<mailto:support
@feelthemusi.com%3cmailto:support@feelthemu
si.com%3cmailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com>>>
<support@feelthemusi.com<mailto:support@feelt
hemusi.com<mailto:support@feelthemusi.com%3
cmailto:support@feelthemusi.com<mailto:support
@feelthemusi.com%3cmailto:support@feelthemu
si.com%3cmailto:support@feelthemusi.com%3c
mailto:support@feelthemusi.com>>>>;

christian@feelthemusi.com<mailto:christian@feel
themusi.com<mailto:christian@feelthemusi.com%
3cmailto:christian@feelthemusi.com<mailto:christ
ian@feelthemusi.com%3cmailto:christian@feelth
emusi.com%3cmailto:christian@feelthemusi.com
%3cmailto:christian@feelthemusi.com>>>
<christian@feelthemusi.com<mailto:christian@fe
elthemusi.com<mailto:christian@feelthemusi.com
%3cmailto:christian@feelthemusi.com<mailto:chri
stian@feelthemusi.com%3cmailto:christian@feelt
hemusi.com%3cmailto:christian@feelthemusi.co
m%3cmailto:christian@feelthemusi.com>>>>;

aaron@feelthemusi.com<mailto:aaron@feelthem
usi.com<mailto:aaron@feelthemusi.com%3cmailt
o:aaron@feelthemusi.com<mailto:aaron@feelthe
musi.com%3cmailto:aaron@feelthemusi.com%3c
mailto:aaron@feelthemusi.com%3cmailto:aaron
@feelthemusi.com>>>
<aaron@feelthemusi.com<mailto:aaron@feelthe
musi.com<mailto:aaron@feelthemusi.com%3cma
ilto:aaron@feelthemusi.com<mailto:aaron@feelth
emusi.com%3cmailto:aaron@feelthemusi.com%3

emusi.com%3cmailto:aaron@feelthemusi.com%3
cmailto:aaron@feelthemusi.com%3cmailto:aaron
@feelthemusi.com>>>>;

apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>
<apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>>;

MElkin@winston.com<mailto:MElkin@winston.co
m<mailto:MElkin@winston.com%3cmailto:MElkin
@winston.com<mailto:MElkin@winston.com%3c
mailto:MElkin@winston.com%3cmailto:MElkin@
winston.com%3cmailto:MElkin@winston.com>>>
<MElkin@winston.com<mailto:MElkin@winston.c
om<mailto:MElkin@winston.com%3cmailto:MElki
n@winston.com<mailto:MElkin@winston.com%3
cmailto:MElkin@winston.com%3cmailto:MElkin@
winston.com%3cmailto:MElkin@winston.com>>>
>
Subject: Apple Inc. (our ref# APP187194)

Dear [redacted],

**Please include APP187194 in the subject line of any future correspondence on this matter.**

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you within 14 days, we will conclude that the matter has been resolved. If at any time you wish to reopen this matter, you
may send us an email with your dispute reference

number in the subject line.

Developer: Musi Inc.
Provider: Musi Inc.
app Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

 Apple Legal Apple One Apple Park Way
Cupertino, CA 95014
AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you
may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message
is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>>
Subject: Apple Inc. (our ref# APP187194)
Date: Sep 18, 2023 at 4:26 PM

To:
AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>
Cc:
herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>>

Dear App Store Notices,

For your information, attached please find a copy of correspondence that Musi has provided directly to the Complainant to address its concerns.

We would like to reiterate once again that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Regards-

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<https://www.winston.com/en/professionals/elkin-michael-s<https://www.winston.com/en/professionals/elkin-michael-s>
<https://www.winston.com/en/professionals/elkin-michael-s<https://www.winston.com/en/professionals/elkin-michael-s>>>
I

.
VCard<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf>
<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf>>>
| Email<mailto:melkin@winston.com> |
winston.com<http://winston.com>
<http://winston.com<http://winston.com>>
<http://winston.com<http://winston.com>>
<http://winston.com<http://winston.com>>
<http://www.winston.com<http://www.winston.com>
<http://www.winston.com<http://www.winston.com>>>
[Winston & Strawn LLP]

________________________________

From: app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org>>>>>
Sent: Monday, September 11, 2023 2:14 PM
To: AppStoreNotices
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cm

ailto:AppStoreNotices@apple.com%3cmailto:App
StoreNotices@apple.com%3cmailto:AppStoreNot
ices@apple.com%3cmailto:AppStoreNotices@ap
ple.com%3cmailto:AppStoreNotices@apple.com
%3cmailto:AppStoreNotices@apple.com>>>>>
Cc:
apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>>
<apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>>>;
Elkin, Michael
<MElkin@winston.com<mailto:MElkin@winston.c
om<mailto:MElkin@winston.com%3cmailto:MElki
n@winston.com<mailto:MElkin@winston.com%3
cmailto:MElkin@winston.com%3cmailto:MElkin@
winston.com%3cmailto:MElkin@winston.com<ma
ilto:MElkin@winston.com%3cmailto:MElkin@wins
ton.com%3cmailto:MElkin@winston.com%3cmailt

ton.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com>>>>>;

herstein@pitblado.com<mailto:herstein@pitblado.
com<mailto:herstein@pitblado.com%3cmailto:her
stein@pitblado.com<mailto:herstein@pitblado.co
m%3cmailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com<mailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com%3cmailto:herstein@pitblado.com%3cmailto
:herstein@pitblado.com%3cmailto:herstein@pitbl
ado.com%3cmailto:herstein@pitblado.com%3cm
ailto:herstein@pitblado.com>>>>
<herstein@pitblado.com<mailto:herstein@pitblad
o.com<mailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com<mailto:herstein@pitblado.c
om%3cmailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com%3cmailto:herstein@pitblad
o.com<mailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com%3cmailto:herstein@pitblad
o.com%3cmailto:herstein@pitblado.com%3cmailt
o:herstein@pitblado.com%3cmailto:herstein@pit
blado.com%3cmailto:herstein@pitblado.com%3c
mailto:herstein@pitblado.com>>>>>
Subject: Re: Apple Inc. (our ref# APP187194)

Dear James, Re: Developer: Musi Inc.Provider: Musi
Inc.App<http://Inc.App>
<http://Inc.App<http://Inc.App>>
<http://Inc.App<http://Inc.App>
<http://Inc.App<http://Inc.App>>>
<http://Inc.App<http://Inc.App>
<http://Inc.App<http://Inc.App>>
<http://Inc.App<http://Inc.App>
<http://Inc.App<http://Inc.App>>>>
Title: Musi - Simple Music StreamingApple ID: 591560124 Your Reference: APP187194Thank you for your email. Please note that this matter is not resolved. The parties are in direct communication - IFPI wrote to the develope

Dear James,

Re: Developer: Musi Inc.

Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Your Reference: APP187194

Thank you for your email.

Please note that this matter is not resolved. The parties are in direct communication - IFPI wrote to the developer's representative, and a copy of that letter is attached for your information. However, no changes have been made to the app and the app continues
to infringe the rights of our member companies, including under laws, for example, in the EU Member States and the UK.

We shall update you if we reach a resolution with the developer, but in the meantime, we should be grateful if you would leave this matter open and we reiterate our request that the app be removed from the App Store without further delay.

Kind regards

IFPI

________________________________

From: AppStoreNotices <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<
mailto:AppStoreNotices@apple.com%3cmailto:A

mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>>>
Sent: Tuesday, August 29, 2023 01:49
To: app-enforcement
<App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org<mailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org%3cmailto:App.Enforcement@ifpi.org>>>>>
Cc: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com>>>>
<apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-

contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>>>;
MElkin@winston.com<mailto:MElkin@winston.co
m<mailto:MElkin@winston.com%3cmailto:MElkin
@winston.com<mailto:MElkin@winston.com%3c
mailto:MElkin@winston.com%3cmailto:MElkin@
winston.com%3cmailto:MElkin@winston.com<ma
ilto:MElkin@winston.com%3cmailto:MElkin@wins
ton.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com>>>>
<MElkin@winston.com<mailto:MElkin@winston.c
om<mailto:MElkin@winston.com%3cmailto:MElki
n@winston.com<mailto:MElkin@winston.com%3
cmailto:MElkin@winston.com%3cmailto:MElkin@
winston.com%3cmailto:MElkin@winston.com<ma
ilto:MElkin@winston.com%3cmailto:MElkin@wins
ton.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com>>>>>;
herstein@pitblado.com<mailto:herstein@pitblado.
com<mailto:herstein@pitblado.com%3cmailto:her
stein@pitblado.com<mailto:herstein@pitblado.co
m%3cmailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com<mailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com%3cmailto:herstein@pitblado.com%3cmailto
:herstein@pitblado.com%3cmailto:herstein@pitbl
ado.com%3cmailto:herstein@pitblado.com%3cm
ailto:herstein@pitblado.com>>>>
<herstein@pitblado.com<mailto:herstein@pitblad
o.com<mailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com<mailto:herstein@pitblado.c
om%3cmailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com%3cmailto:herstein@pitblad

erstein@pitblado.com%3cmailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>>>>
Subject: Apple Inc. (our ref# APP187194)

Dear [redacted],

**Please include APP187194 in the subject line of any future correspondence on this matter.**

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you within 14 days, we will conclude that the matter has been resolved. If at any time you wish to reopen this matter, you
may send us an email with your dispute reference number in the subject line.

Developer: Musi Inc.
Provider: Musi Inc.
app Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

 Apple Legal Apple One Apple Park Way
Cupertino, CA
95014 AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>

>
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you
may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message
is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>>>
Subject: Apple Inc. (our ref# APP187194)
Date: Aug 11, 2023 at 8:27 AM
To: AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>>
Cc: herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailt

o:herstein@pitblado.com<mailto:herstein@pitblad
o.com%3cmailto:herstein@pitblado.com%3cmailt
o:herstein@pitblado.com%3cmailto:herstein@pit
blado.com<mailto:herstein@pitblado.com%3cmai
lto:herstein@pitblado.com%3cmailto:herstein@pit
blado.com%3cmailto:herstein@pitblado.com%3c
mailto:herstein@pitblado.com%3cmailto:herstein
@pitblado.com%3cmailto:herstein@pitblado.com
%3cmailto:herstein@pitblado.com>>>>

Dear App Store Notices:
As noted, we have been in communication directly with the Complainant on this matter in order to attempt to resolve any dispute. We will continue to keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-
are/attorneys/elkin-michael-
s.html<http://www.winston.com/en/who-we-
are/attorneys/elkin-michael-s.html>
<http://www.winston.com/en/who-we-
are/attorneys/elkin-michael-
s.html<http://www.winston.com/en/who-we-
are/attorneys/elkin-michael-s.html>>>
I
VCard<http://www.winston.com/vcards/616.vcf<ht
tp://www.winston.com/vcards/616.vcf>
<http://www.winston.com/vcards/616.vcf<http://w
ww.winston.com/vcards/616.vcf>>>
I Email<mailto:melkin@winston.com>
I winston.com<http://winston.com>
<http://winston.com<http://winston.com>>

<http://winston.com<http://winston.com>>
<http://winston.com<http://winston.com>>
<http://winston.com<http://winston.com>
<http://winston.com<http://winston.com>>>
<http://www.winston.com<http://www.winston.com
>
<http://www.winston.com<http://www.winston.com
>>>
[Winston & Strawn LLP]

________________________________
From: App Disputes
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>>>>
Sent: Thursday, August 10, 2023 7:41 AM
To: app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org<mailto:app.enf

orcement@ifpi.org%3cmailto:app.enforcement@if
pi.org%3cmailto:app.enforcement@ifpi.org%3cm
ailto:app.enforcement@ifpi.org%3cmailto:app.enf
orcement@ifpi.org%3cmailto:app.enforcement@if
pi.org%3cmailto:app.enforcement@ifpi.org%3cm
ailto:app.enforcement@ifpi.org<mailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org%3cmailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org%3cmailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org%3cmailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org>>>>>
<app.enforcement@ifpi.org<mailto:app.enforcem
ent@ifpi.org<mailto:app.enforcement@ifpi.org%3
cmailto:app.enforcement@ifpi.org<mailto:app.enf
orcement@ifpi.org%3cmailto:app.enforcement@if
pi.org%3cmailto:app.enforcement@ifpi.org%3cm
ailto:app.enforcement@ifpi.org<mailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org%3cmailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org<mailto:app.enforcem
ent@ifpi.org%3cmailto:app.enforcement@ifpi.org
%3cmailto:app.enforcement@ifpi.org%3cmailto:a
pp.enforcement@ifpi.org%3cmailto:app.enforcem
ent@ifpi.org%3cmailto:app.enforcement@ifpi.org
%3cmailto:app.enforcement@ifpi.org%3cmailto:a
pp.enforcement@ifpi.org%3cmailto:app.enforcem
ent@ifpi.org%3cmailto:app.enforcement@ifpi.org
%3cmailto:app.enforcement@ifpi.org%3cmailto:a
pp.enforcement@ifpi.org%3cmailto:app.enforcem
ent@ifpi.org%3cmailto:app.enforcement@ifpi.org
%3cmailto:app.enforcement@ifpi.org%3cmailto:a
pp.enforcement@ifpi.org>>>>>>;
apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-

contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>>>
<apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-

contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>>>>>;
Elkin, Michael
<MElkin@winston.com<mailto:MElkin@winston.c
om<mailto:MElkin@winston.com%3cmailto:MElki
n@winston.com<mailto:MElkin@winston.com%3
cmailto:MElkin@winston.com%3cmailto:MElkin@
winston.com%3cmailto:MElkin@winston.com<ma
ilto:MElkin@winston.com%3cmailto:MElkin@wins
ton.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com%3cmailto:MElkin@winston.com%3cmailt
o:MElkin@winston.com%3cmailto:MElkin@winst
on.com<mailto:MElkin@winston.com%3cmailto:M
Elkin@winston.com%3cmailto:MElkin@winston.c
om%3cmailto:MElkin@winston.com%3cmailto:M
Elkin@winston.com%3cmailto:MElkin@winston.c
om%3cmailto:MElkin@winston.com%3cmailto:M
Elkin@winston.com%3cmailto:MElkin@winston.c
om%3cmailto:MElkin@winston.com%3cmailto:M
Elkin@winston.com%3cmailto:MElkin@winston.c
om%3cmailto:MElkin@winston.com%3cmailto:M
Elkin@winston.com%3cmailto:MElkin@winston.c
om%3cmailto:MElkin@winston.com>>>>>>;
herstein@pitblado.com<mailto:herstein@pitblado.
com<mailto:herstein@pitblado.com%3cmailto:her
stein@pitblado.com<mailto:herstein@pitblado.co
m%3cmailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com<mailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com%3cmailto:herstein@pitblado.com%3cmailto
:herstein@pitblado.com%3cmailto:herstein@pitbl
ado.com%3cmailto:herstein@pitblado.com%3cm
ailto:herstein@pitblado.com<mailto:herstein@pitb
lado.com%3cmailto:herstein@pitblado.com%3cm
ailto:herstein@pitblado.com%3cmailto:herstein@

ailto:herstein@pitblado.com%3cmailto:herstein@
pitblado.com%3cmailto:herstein@pitblado.com%
3cmailto:herstein@pitblado.com%3cmailto:herste
in@pitblado.com%3cmailto:herstein@pitblado.co
m%3cmailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com%3cmailto:herstein@pitblado.com%3cmailto
:herstein@pitblado.com%3cmailto:herstein@pitbl
ado.com%3cmailto:herstein@pitblado.com%3cm
ailto:herstein@pitblado.com>>>>>
<herstein@pitblado.com<mailto:herstein@pitblad
o.com<mailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com<mailto:herstein@pitblado.c
om%3cmailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com%3cmailto:herstein@pitblad
o.com<mailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com%3cmailto:herstein@pitblad
o.com%3cmailto:herstein@pitblado.com%3cmailt
o:herstein@pitblado.com%3cmailto:herstein@pit
blado.com%3cmailto:herstein@pitblado.com%3c
mailto:herstein@pitblado.com<mailto:herstein@pi
tblado.com%3cmailto:herstein@pitblado.com%3c
mailto:herstein@pitblado.com%3cmailto:herstein
@pitblado.com%3cmailto:herstein@pitblado.com
%3cmailto:herstein@pitblado.com%3cmailto:hers
tein@pitblado.com%3cmailto:herstein@pitblado.c
om%3cmailto:herstein@pitblado.com%3cmailto:h
erstein@pitblado.com%3cmailto:herstein@pitblad
o.com%3cmailto:herstein@pitblado.com%3cmailt
o:herstein@pitblado.com%3cmailto:herstein@pit
blado.com%3cmailto:herstein@pitblado.com%3c
mailto:herstein@pitblado.com>>>>>>
Subject: Apple Inc. (our ref# APP187194)

Hello,

**Please include APP187194 in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming

Apple ID: 591560124
-

Sincerely,

Barry

 Apple Legal I Apple I One Apple Park Way
Cupertino, CA 95014
I mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you
may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message
is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@winston.com%3cmailto:MElkin@

mailto:MElkin@winston.com%3cmailto:MElkin@
winston.com%3cmailto:MElkin@winston.com>>>
>>
Subject: Apple Inc. (our ref# APP187194) Notice
of Complaint
Date: Jul 31, 2023 at 11:59 AM
To: AppStoreNotices@apple.com<mailto:AppStor
eNotices@apple.com<mailto:AppStoreNotices@a
pple.com%3cmailto:AppStoreNotices@apple.com
<mailto:AppStoreNotices@apple.com%3cmailto:
AppStoreNotices@apple.com%3cmailto:AppStor
eNotices@apple.com%3cmailto:AppStoreNotices
@apple.com<mailto:AppStoreNotices@apple.co
m%3cmailto:AppStoreNotices@apple.com%3cm
ailto:AppStoreNotices@apple.com%3cmailto:App
StoreNotices@apple.com%3cmailto:AppStoreNot
ices@apple.com%3cmailto:AppStoreNotices@ap
ple.com%3cmailto:AppStoreNotices@apple.com
%3cmailto:AppStoreNotices@apple.com<mailto:
AppStoreNotices@apple.com%3cmailto:AppStor
eNotices@apple.com%3cmailto:AppStoreNotices
@apple.com%3cmailto:AppStoreNotices@apple.
com%3cmailto:AppStoreNotices@apple.com%3c
mailto:AppStoreNotices@apple.com%3cmailto:A
ppStoreNotices@apple.com%3cmailto:AppStore
Notices@apple.com%3cmailto:AppStoreNotices
@apple.com%3cmailto:AppStoreNotices@apple.
com%3cmailto:AppStoreNotices@apple.com%3c
mailto:AppStoreNotices@apple.com%3cmailto:A
ppStoreNotices@apple.com%3cmailto:AppStore
Notices@apple.com%3cmailto:AppStoreNotices
@apple.com%3cmailto:AppStoreNotices@apple.
com>>>>>
Cc: herstein@pitblado.com<mailto:herstein@pitbl
ado.com<mailto:herstein@pitblado.com%3cmailt
o:herstein@pitblado.com<mailto:herstein@pitblad
o.com%3cmailto:herstein@pitblado.com%3cmailt
o:herstein@pitblado.com%3cmailto:herstein@pit
blado.com<mailto:herstein@pitblado.com%3cmai
lto:herstein@pitblado.com%3cmailto:herstein@pit
blado.com%3cmailto:herstein@pitblado.com%3c
mailto:herstein@pitblado.com%3cmailto:herstein
@pitblado.com%3cmailto:herstein@pitblado.com
%3cmailto:herstein@pitblado.com<mailto:herstei
n@pitblado.com%3cmailto:herstein@pitblado.co
m%3cmailto:herstein@pitblado.com%3cmailto:he
rstein@pitblado.com%3cmailto:herstein@pitblado
.com%3cmailto:herstein@pitblado.com%3cmailto

:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com%3cmailto:herstein@pitblado.com>>>>>

Dear App Store Notices,

We are legal counsel to Musi Inc. in connection with this matter.

Our position is that the complainant IFPI (the "Complainant") has made unsubstantiated claims about our client's app. We are in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We
will continue to keep you updated as to the status of our communication with the Complainant.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Sincerely,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html>
<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html>>>
|

VCard<http://www.winston.com/vcards/616.vcf<http://www.winston.com/vcards/616.vcf>
<http://www.winston.com/vcards/616.vcf<http://www.winston.com/vcards/616.vcf>>>
| Email<mailto:melkin@winston.com>
| winston.com<http://winston.com>
<http://winston.com<http://winston.com>>
<http://winston.com<http://winston.com>>
<http://winston.com<http://winston.com>>
<http://winston.com<http://winston.com>
<http://winston.com<http://winston.com>>>
<http://www.winston.com<http://www.winston.com>
<http://www.winston.com<http://www.winston.com>>>
[Winston & Strawn LLP]

On Jul 27, 2023, at 1:34 PM, ASN
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@appl

e.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>>>>>
wrote:

Dear Sir or Madam,

**Please include APP187194 in the subject line of any future correspondence on this matter.**

On 7/27/2023, we received a notice from IFPI ("Complainant") that Complainant believes the app listed below infringes its intellectual property rights. In particular, Complainant believes you are infringing its copyright. Please see their comments below.

Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

The Application is communicating to the public and/or making available to the public and/or reproducing and/or enabling others to reproduce and/or distributing sound recording(s) and/or audiovisual work(s) or other audiovisual

fixation(s), rights in which are owned or controlled by one or more IFPI Members (the “IFPI Member Content”).

-

You can reach Complainant through [redacted]

(email: app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org<mailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailto:app.enforcement@ifpi.org%3cmailt

org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org%3cmailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org%3cmailto:app.enforc
ement@ifpi.org%3cmailto:app.enforcement@ifpi.
org%3cmailto:app.enforcement@ifpi.org%3cmailt
o:app.enforcement@ifpi.org>>>>>>),
copied on this email. Please exchange correspondence directly with Complainant.

We look forward to receiving written assurance that your application does not infringe Complainant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.

Please note that during the course of this matter:

1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.

2. Written assurance of rights may include confirmation that your application does not infringe Complainant's rights, an express authorization from Complainant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3. Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at

https://appstoreconnect.apple.com<https://appsto
reconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst

oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst

<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>
<https://appstoreconnect.apple.com<https://appst
oreconnect.apple.com>>>>>
<https://appstoreconnect.apple.com/<https://apps
toreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://apps
toreconnect.apple.com/>>
<https://appstoreconnect.apple.com/<https://apps
toreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://apps
toreconnect.apple.com/>>>
<https://appstoreconnect.apple.com/<https://apps
toreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://apps
toreconnect.apple.com/>>

<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>>>>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>>>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>
<https://appstoreconnect.apple.com/<https://appstoreconnect.apple.com/>>>>>>>
and access your app in the Manage Your Application module.

• Access your app in the "My Apps" module
• Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
• Select and deselect "All" territories to uncheck all App Store territories
• Click on the "Done" button

4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Complainant are at risk of termination from the Developer Program.

5. Failure to respond to the Complainant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised
of your progress.

Thank you for your immediate attention.

Sincerely,

Anna

 Apple Legal I Apple I One Apple Park Way
Cupertino, CA 95014
I mailto:AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

<musi _2202024.png>

---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

**20240507 Letter from IFPI re Musi(214215.1).pdf**

Case: 26-2892, 08/21/2026, DktEntry: 12.4, Page 133 of 196

Case: 26-2892, 08/21/2026, DktEntry: 12.4, (134 of 196)

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Jeff Wilkerson (SBN: 284044)
JWilkerson@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000

Attorneys for Plaintiff
MUSI INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

MUSI INC.,

Plaintiff,

v.

APPLE INC.,

Defendant.

**Case No. 5-24-cv-06920**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: November 13, 2024
Time: 11:00 A.M.
Judge: Hon. Nathanael Cousins
Place: San Jose Federal Courthouse, Courtroom 5 – 4th Floor

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 13, 2024, at 11:00 A.M., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, before the Honorable Nathanael Cousins at San Jose Courthouse, Courtroom 5 – 4th Floor, 208 South 1st Street, San Jose, CA 95513, Plaintiff Musi Inc. ("Musi") moves this Court pursuant to Federal Rule of Civil Procedure 65(a) for a preliminary injunction to restrain Defendant Apple Inc. from refusing to list or otherwise making unavailable the Musi mobile software application ("Musi app") from the Apple App Store on the basis that the Musi app violates Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 of the Apple Developer Program License Agreement.

This motion is made on the grounds that (1) absent preliminary relief, Musi is likely to suffer irreparable harm; (2) Musi is likely to succeed on the merits of its claims that Apple has breached the Developer Agreement and the implied covenant of good faith and fair dealing; (3) the balance of equities tips sharply in Musi's favor; and (4) a preliminary injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

This motion is based on the attached Memorandum of Points and Authorities; the Declarations of Jennifer A. Golinveaux, Aaron Wojnowski, and Michael S. Elkin, and the exhibits attached thereto; the related pleadings; and any other matters as may be presented to the Court at or before the hearing.

Dated: October 9, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/ Jennifer A. Golinveaux
Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Jeff Wilkerson (SBN: 340564)
JWilkerson@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000

Attorney for Plaintiff
MUSI INC.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1
II. RELEVANT FACTUAL BACKGROUND ..... 2
- A. The App Store ..... 2
- B. Apple's Developer Program License Agreement ..... 2
- C. The Musi App ..... 5
- D. Apple's Unreasonable Removal of the Musi App from the App Store ..... 5
  - 1. Musi's Correspondence with Apple Pre-2024 ..... 5
  - 2. Musi and Apple's 2024 Correspondence and the Musi App's Removal ..... 6
  - 3. Aftermath of the Musi App's Removal ..... 7

III. ARGUMENT: THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION ..... 8
- A. Musi is Likely to Suffer Irreparable Harm Without Preliminary Relief ..... 9
- B. The Balance of Equities Tips Sharply in Musi's Favor ..... 11
- C. A Preliminary Injunction is in the Public Interest ..... 12
- D. At a Minimum, there are "Serious Questions" on the Merits of Musi's Claims ..... 13
  - 1. Breach of Contract ..... 13
  - 2. Breach of the Implied Covenant of Good Faith and Fair Dealing ..... 17

IV. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Abdou v. Davita, Inc.,
734 F. App'x 506 (9th Cir. 2018) ....................13

All. for the Wild Rockies v. Cottrell,
632 F.3d 1127 (9th Cir. 2011) ....................8, 13

Carma Developers (Cal.) Inc. v. Marathon Dev. Cal., Inc.,
2 Cal. 4th 342 (1992) ....................18

Chastain v. Howard,
2024 WL 508823 (N.D. Cal. Feb. 9, 2024) ....................16

Congleton v. Nat'l Union Fire Ins.,
189 Cal. App. 3d 51 (1987) ....................18

CTIA - The Wireless Ass'n v. City of Berkeley, Cal.,
928 F.3d 832 (9th Cir. 2019) ....................11

Env't Democracy Project v. Green Sage Mgmt., LLC,
2022 WL 4596616 (N.D. Cal. Aug. 23, 2022) ....................12

Epic Games v. Apple Inc.,
559 F. Supp. 3d 898 (N.D. Cal. 2021), rev'd in non-relevant part and aff'd in part by 67 F.4th 946 (9th Cir. 2023) ....................9, 10

Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale - Phase II LLC,
2018 WL 10407485 (D. Ariz. Jan. 2, 2018) ....................13

Heat Factory USA, Inc. v. Shawbel Techs., LLC,
2019 WL 1779579 (S.D. Cal. Apr. 23, 2019) ....................12, 13

hiQLabs, Inc. v. LinkedIn Corp.,
31 F.4th 1180 (9th Cir. 2022) .................... passim

Intango, Ltd. v. Mozilla Corp.,
2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) ....................16, 17

John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,
588 F.2d 24 (2d Cir. 1978) ....................11

Just Tacos, Inc. v. Zezulak,
2011 WL 6140866 (D. Haw. Dec. 9, 2011) ....................12

L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,
634 F.2d 1197 (9th Cir. 198) ....................8

Marder v. Lopez,
450 F.3d 445 (9th Cir. 2006) ....................16

Merced Prod. Credit Assoc. v. Bayer,
222 Cal. App. 2d 793 (1963) ....................16

Miller v. Zurich Am. Ins.,
41 Cal. App. 5th 247 (2019) ....................17, 18

Oasis W. Realty LLC v. Goldman,
51 Cal.4th 811 (2011) ....................13

Optinrealbig.com, LLC v. Ironport Sys.,
323 F. Supp. 2d 1037 (N.D. Cal. 2004) ....................10

Pappan Enters. v. Hardee's Food Sys.,
143 F.3d 800 (3d Cir. 1998)....................12

Smith v. San Francisco,
225 Cal. App. 3d 38 (1990) ....................18

Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,
240 F.3d 832 (9th Cir. 2001) ....................11

Thrifty Payless, Inc. v. The Americana at Brand, LLC,
218 Cal. App. 4th 1230 (2013) ....................17, 18

Victoria v. Super. Ct.,
40 Cal. 3d 734 (1985) ....................16

Winter v. Nat. Res. Def. Council, Inc.,
555 U.S. 7 (2008)....................8

**Statutes**

Cal. Civ. Code § 1644....................13

**Other Authorities**

Fed. R. Civ. P. 65....................8

Reasonable, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/reasonable (last visited Oct. 4, 2023)....................17

Case: 26-2892, 08/21/2026, DktEntry: 12.4, Page 150 of 196

## SUMMARY OF ARGUMENT

### I. INTRODUCTION

Defendant Apple's App Store is the only viable means to make iOS-based mobile software applications, or "apps," available to consumers. Plaintiff Musi owns and operates the Musi app, a popular iOS app that is Musi's sole source of revenue. On September 24, 2024, Apple abruptly removed the Musi app from the App Store. While Apple is permitted under its Developer Agreement to "cease marketing, offering, and allowing download by end-users" of apps that Apple "reasonably believes, based [on] human and/or systematic review," infringe the "intellectual property rights of any third party" (Declaration of Jennifer A. Golinveaux ("Golinveaux Dec."), ¶ 2, Ex. A ("Dev. Agmt.") Schedule 1 § 6.3; *see also id.* ¶ 3, Ex. B ("Dev. Agmt.") Schedule 2 § 7.3 & Schedule 3 § 7.3), Apple had no such reasonable belief here, much less a reasonable belief based on a "human and/or systematic review" of the underlying claims that led to the Musi app's removal.

Rather, Apple's removal of the Musi app was based on a five-word complaint dated July 29, 2024 from a complainant identified as "YouTube Legal" ("Complainant"), with no supporting evidence or documentation. Despite Musi's efforts to contact Complainant to understand the basis for its concerns, Complainant—to this day—has failed to respond or to substantiate its accusations. Worse, Apple knew at the time it removed the Musi app that Complainant had failed to substantiate its claims. Apple's improper removal of the Musi app has caused—and continues to cause—substantial and irreparable harm to Musi's business and reputation. Thus, Apple has breached the Developer Agreement and the implied covenant of good faith and fair dealing.

By removing the Musi app from its only viable distribution platform, Apple has exiled Musi from its customer base—thereby threatening the company's survival. Musi is therefore entitled to a preliminary injunction to stop Apple from continuing to breach the Developer Agreement by refusing to list or otherwise making unavailable the Musi app. Apple's obligations are plain, Musi is likely to prevail on the merits, and the Court may enforce the Developer Agreement to protect Musi from incurring further irreparable harm.

Case: 26-2892, 08/21/2026, DktEntry: 12.4, (151 of 196)

## II. RELEVANT FACTUAL BACKGROUND

### A. The App Store

Apple designs, manufactures, and sells mobile computing devices, including "iPhone" branded smartphones. iPhones are portable, connect wirelessly to the internet, and enjoy advanced computing capabilities, including internet browsing. *See* Golinveaux Dec. ¶ 4, Ex. C ("Wired.com Article"). To function, iPhones rely on Apple's proprietary mobile operating system called "iOS," which is pre-installed on every device. *See id.* ¶ 5, Ex. D ("Javapoint.com Article"). Users often rely on third-party iOS apps to fully enjoy their iPhone's capabilities.

When the iPhone was launched in 2007, Apple initially refused to host third-party iOS apps. *Id.* ¶ 6, Ex. E ("Guardian Article"). However, Apple changed course the following year and launched the App Store—a dedicated online marketplace that allows users to browse and download third-party apps for iPhone. *See id.* ¶ 8, Ex. F ("Apple.com 2008 Article"); *see also id.* ¶ 8, Ex. G ("July 5, 2018 Apple.com Article Titled *The App Store turns 10*"). Today, the App Store hosts nearly two million apps—more than 99.99% of which were developed by third-party developers. *Id.* ¶ 9, Ex. H ("Caminade & Wartburg Study") at p.1.

The App Store is the only viable means by which iOS apps are distributed to consumers. *See id.* ¶ 10, Ex. I ("Morton Paper"). As the developer, owner, and operator of the App Store, Apple enjoys singular power to choose which iOS apps are made available on the platform. *See id.* ¶ 2, Ex. A, Dev. Agmt. §§ 3.2(g), 6.9. Even so, Apple's power is limited by the terms and conditions enumerated in the Developer Agreement, signed by every third party who wishes to distribute an iOS app for the App Store—including Musi. *See id.* ¶¶ 2–3, Ex. A & B, Dev. Agreement; Aaron Wojnowski Declaration ("Wojnowski Dec."), ¶ 5.

### B. Apple's Developer Program License Agreement

The Developer Agreement grants third-party developers a limited, personal, non-exclusive, and revocable license to use Apple's software and services, provided the developer builds and operates its app in compliance with the Developer Agreement's terms and conditions. Golinveaux Dec. ¶ 2, Ex. A, Dev. Agmt. §§ 1.1, 2.1, 3.2(a). And if a developer wishes to make an iOS app available on the App Store, it must apply for distribution with Apple. *Id.* ¶ 2, Ex. A, Dev. Agmt. §§ 6.1, 6.9.

To qualify for distribution, the third-party app must comply with the "Documentation and Program Requirements then in effect as well as with any additional guidelines that Apple may post." Id. ¶ 2, Ex. A, Dev, Agmt. § 6.1. Once the app is deemed qualified (i.e., a "Licensed Application"), the third-party developer must agree to additional conditions enumerated in Schedule 1, Schedule 2, or Schedule 3 of the Developer Agreement depending on the app's nature. See id. ¶ 2, Ex. A, Dev. Agmt. Purpose.

If the third-party app is distributed for free on the App Store, then it is subject to Schedule 1. Id. ¶ 2, Ex. A, Dev. Agmt. § 7.1. Schedule 1 § 1.2(b) states that the third-party developer must authorize Apple to "provide hosting services[,] . . . subject to the terms of the Agreement, in order to allow for the storage of, and end-user access to, the Licensed Applications" on the App Store. Id. ¶ 2, Ex. A, Dev. Agmt. Schedule 1 § 1.2(b). And Schedule 1 § 4.1(b) requires the third-party developer to guarantee to Apple that "none of the Licensed Applications . . . violate or infringe any . . . intellectual property or contractual rights of any other person, firm, corporation or other entity." Id. ¶ 2, Ex. A, Dev. Agmt. Schedule 1 § 4.1(b). If a dispute arises over the content or use of a Licensed Application, the third-party developer must permit Apple to share its contact information with the party filing the dispute and follow Apple's app dispute process "on a non-exclusive basis and without any party waiving its legal rights." Id. ¶ 2, Ex. A, Dev. Agmt. § 4.1(g).

Relatedly, Schedule 1 § 6.3 states that Apple "reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without good cause, by providing notice of termination to" the developer. Id. ¶ 2, Ex. A, Dev. Agmt. Schedule 1 § 6.3. But Schedule 1 § 6.3 goes on to state:

> Without limited the generality of this Section 6.3, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based [on] human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added)

If the third-party app charges end-users a fee "of any kind" through its use, the third-party developer must enter into Schedule 2 "before any such commercial distribution of [the] Licensed Application may take place via the App Store." Id. ¶ 2, Ex. A, Dev. Agmt. § 7.2. And if the third-party developer wishes to sell its iOS app "for a fee through Custom App Distribution," then the developer must agree to the terms enumerated in another agreement named Schedule 3. Id. Like Schedule 1, Schedules 2 and 3 require the third-party developer to warrant that its Licensed Application does not "violate or infringe any patent, copyright, trademark, trade secret or other intellectual property or contractual rights of any other person, firm, corporation or other entity." Id. ¶ 3, Ex. B Dev. Agmt. Schedule 2 ¶ 5.1, Schedule 3 ¶ 5.1. Schedule 2 § 7.3 and Schedule 3 § 7.3 are practically identical to Schedule 1 § 6.3, stating in relevant part:

**<u>Schedule 2</u>**

. . .

> **7.3.** Apple reserves the right to cease marketing, offering, and allowing download by End-Users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any End-User's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added)

Id. ¶ 3, Ex. B, Schedule 2 § 7.3.

**<u>Schedule 3</u>**

. . .

> **7.3.** Apple reserves the right to cease marketing, offering, and allowing purchase by Custom App Distribution Customers and download by End-Users of the Custom Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Custom Applications if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Custom Applications and/or any End-User's possession and/or use of those Custom Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . ." (emphasis added)

Id. ¶ 3, Ex. B, Dev. Agmt. Schedule 3 § 7.3.

### C. The Musi App

Musi is a mobile computing software company founded in Manitoba, Canada. Wojnowski Dec. ¶ 1. Released in 2013, the Musi app provides users with enhanced functionality to interact with publicly available content on YouTube's website through Musi's augmentative interface. Id. ¶ 2. The Musi app does not rely on YouTube's Application Programming Interface ("API"), nor do Musi's servers store, process, or transmit YouTube videos. Id. Instead, the Musi app plays or displays content based on the user's interactions with YouTube and enhances that experience via Musi's proprietary technology. Id.

Musi remains the sole owner and operator of the Musi App, and since its launch, the app has become popular among younger users. *See* id. ¶ 4. This popularity has allowed Musi to operate continuously for over a decade with a small team headquartered in Manitoba, and, for years, the Musi app has been ranked a top 200 app in the App Store. Id. As Musi's only product, the Musi app remains its sole revenue source. Id. ¶ 8.

### D. Apple's Unreasonable Removal of the Musi App from the App Store

1. <u>Musi's Correspondence with Apple Pre-2024</u>

Since at least 2015, Musi has engaged in sporadic dialogue with YouTube. Wojnowski ¶ 6. Throughout, Musi has repeatedly expressed its commitment to offer the Musi app in a way that complies with YouTube's Terms of Service. Id. Accordingly, whenever YouTube has raised concerns with the Musi app's functionality, Musi has, in good faith, either (a) adjusted the app's functionality, or (b) provided details about how the app works and explained why it is fully compliant with YouTube's Terms of Service. Id. ¶ 7.

In April 2021, YouTube's outside counsel raised several questions regarding the Musi app's functionality. Declaration of Michael S. Elkin ("Elkin Dec.") ¶ 2. Musi promptly responded and directly answered each question by substantively describing the Musi app's functionality; yet YouTube never replied. Id.; Wojnowski Dec. ¶ 7. Instead, in March 2023, YouTube sent a complaint notification to Apple about the Musi app, stating only "YouTube TOS Violations." Elkin Dec. ¶ 3. Musi, again, promptly responded, only to be met again with YouTube's silence. Id. Since May 5, 2021—when Musi, through outside counsel, substantively described the functionality and addressed

YouTube's comments—Musi has continued to offer the Musi app on the App Store. Wojnowski Dec. ¶ 7. Musi has conducted routine updates to the Musi app, but the app has otherwise operated in a substantially similar manner since that time. Id.

2. Musi and Apple's 2024 Correspondence and the Musi App's Removal

On August 8, 2024, Apple—via representatives of its App Store—emailed Musi, stating that it had received a notice from "YouTube Legal" on July 29, 2024, stating "that Claimant believes" the Musi app "infringes its intellectual property rights. In particular, Claimant believes [the Musi app] infring[es] its terms of use," and directed Musi to "see their comments below." Elkin Dec. ¶ 4, Ex. A ("Aug. 8, 2024 Apple Email"). The referenced "comments" were five words: "violating YouTube Terms of Service." Id.

Apple's August 8, 2024 email did not provide any other details about the basis for Complainant's assertions. Neither the nature of Complainant's intellectual property nor the specific sections of Complainant's Terms of Service allegedly violated were referenced. Id. That said, Musi's outside counsel responded to Apple on August 12, explaining that Complainant's accusations were "unsubstantiated," and that Musi had previously contacted Complainant directly to resolve the dispute. Id. ¶ 5, Ex. B ("Aug. 12, 2024 Response").

A month later, on September 6, Complainant emailed Apple again and inaccurately claimed that Musi failed to initiate contact to resolve the dispute. Id. ¶ 6, Ex. B ("Sept. 6, 2024 Complaint"). In doing so, Complainant carbon copied—without explanation—several third parties that have no apparent relation to the matter. See id. In any event, Musi's outside counsel responded to correct the record and reiterated that the Musi app did not infringe Complainant's intellectual property or violate Complainant's Terms of Service. Id. Musi's counsel again invited Complainant to discuss its concerns. Id. ¶ 7, Ex. C ("Sept. 6, 2024 Email to Complainant"). But again, Musi's counsel did not receive a response. Id.

Having heard nothing further from either Complainant or Apple, Musi's counsel followed up with Apple on September 19, and again, on September 24, updating Apple that:

> To date, we have received no communications from the Complainant in response to our September 6 correspondence, nor has the Complainant substantiated its complaint with further details.

> Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.
>
> Musi will continue to keep App Store Notices informed as to the status of this dispute.

Id. ¶ 7, Ex. D ("Sept. 19 and 24 Emails to Apple"). Apple responded by stating, without acknowledging Musi's prior communications, "your app will be removed from the App Store on the basis of intellectual property infringement." Id. ¶ 8, Ex. E ("Sept. 24, 2024 Removal Notice"). Apple removed the Musi app that same day. Wojnowski Dec. ¶ 8. Apple justified its decision by citing Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 of the Developer Agreement. Elkin Dec. ¶ 8, Ex. E, Sept. 24, 2024 Removal Notice.

3. Aftermath of the Musi App's Removal

Apple's abrupt removal of the Musi app from the App Store, despite the absence of any explanation from the Complainant as to how the Musi app infringed Complaint's intellectual property or violated its Terms of Service, and even though Musi has continued to operate the Musi app in a substantially similar manner since May 2021—the last time Musi substantively communicated with YouTube—was arbitrary, unreasonable, lacked good cause, and violated the Development Agreement. See Wojnowski Dec. ¶ 7. Apple's actions have also caused immediate, ongoing, and irreparable harm to Musi. Since the app's removal, Musi has received an outpouring of support and complaints about the app's unavailability. Id. ¶ 11. Potential customers complain about their inability to download the app. Id. And current customers complain about losing access to the app after updating their device and/or version of iOS. Id.

As it stands, Musi has no way of helping its customers because of Apple's arbitrary actions. Wojnowski Dec. ¶ 11. Worse, because of the Musi app's removal, Apple no longer permits distribution of the Musi app for internal testing via TestFlight—an online service developed by Apple, which allows for over-the-air installation and testing of iOS apps by iOS developers for development and QA purposes. Id. ¶ 12. Through TestFlight, iOS developers—like Musi—receive remote logs, crash reports, and tester feedback about their app from external and internal testers. Specifically, TestFlight allows iOS developers to distribute versions of their app for external beta testers, who provide

feedback about their use. Id. This has hampered Musi's ability to continue development on its app, and is a punitive measure that has no bearing on the Musi app's availability on the App Store.

In addition, after Apple's removal of the Musi app, multiple copycat apps have been submitted and published to the App Store using Musi's registered trademark for the term "Musi," as well as its trademarked app icon. Id. ¶ 10. These applications have confused and continue to confuse Musi's customers, many of whom deleted the original Musi app thinking that a new version had been published. Id. Contrary to its removal of Musi from the App Store, Apple has not removed these apps or revised them in such a way that they no longer infringe Musi's trademarks. Id.

The Musi app remains Musi's only source of revenue. Id. ¶ 8. Without access to the App Store, Musi lacks the means of updating its app and acquiring new users and thus, lacks the ability to continue operating in the future. Id. Unless the Musi app is re-listed, Musi will be forced to terminate its staff and shuts its doors. Id. ¶ 9. With no other option, Musi files this motion for a preliminary injunction.

## III. ARGUMENT: THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 provides for the issuance of a preliminary injunction to "preserve the status quo ante litem pending a determination of the action on the merits." L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 198). Musi is entitled to a preliminary injunction if it shows (1) that it is "likely to suffer irreparable harm in the absence of preliminary relief"; (2) that it is "likely to succeed on the merits"; (3) "that the balance of equities tips in [its] favor"; and (4) "that an injunction is in the public interest." hiQLabs, Inc. v. LinkedIn Corp., 31 F.4th 1180, 1188 (9th Cir. 2022) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). The Ninth Circuit follows a "sliding scale" approach, in which these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–35 (9th Cir. 2011)). Thus, for example, an injunction can issue if there are "serious questions going to the merits" and the balance of hardships "tips sharply in the [movant's] favor," provided that Musi shows that "there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135.

As shown in detail below, Musi satisfies all four elements. First, without preliminary relief, Musi will remain exiled from its customer base and thus, faces extinction. Second, the balance of

equities tips sharply in Musi's favor because granting a preliminary injunction will result only in Apple complying with its own Developer Agreement, while denying an injunction will likely result in Musi's dissolution. Third, there is a significant public interest in preliminary relief because Apple's conduct implicates nearly 2 million third-party iOS developers who, like Musi, are parties to the Developer Agreement. Fourth, there are—at a minimum—serious questions on the merits of Musi's claims.

Accordingly, this Court should enjoin Apple from continuing to breach the Developer Agreement by refusing to list or otherwise making unavailable the Musi app on its App Store based on an unreasonable belief that the Musi App violates Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 of the Developer Agreement.

### A. Musi is Likely to Suffer Irreparable Harm Without Preliminary Relief

By removing the Musi app from its only viable distribution platform, Apple has exiled Musi from its customer base—thereby jeopardizing the company's survival. *See* Wojnowski ¶¶ 8–9. "[T]he threat of being driven out of business is sufficient to establish irreparable harm." *hiQ Labs*, 31 F.4th at 1188 (quotation omitted). After all, the loss of an enterprise "representing many years of effort and the livelihood of its" owners "cannot be fully compensated by subsequent monetary damages." *Id.* (quotation omitted). Musi thus satisfies the first element for a preliminary injunction.

The App Store is the only viable means by which iOS apps are distributed to consumers. As another Court in this District recently observed: "Apple's creation and cultivation of the iOS device (and its ecosystem) has been described as a walled garden"; "it is a closed platform where Apple controls and supervises access to any software which accesses the iOS devices." *See Epic Games v. Apple Inc.*, 559 F. Supp. 3d 898, 922 (N.D. Cal. 2021) (emphasis added), *rev'd in non-relevant part and aff'd in part by* 67 F.4th 946, 967 (9th Cir. 2023) (noting that "Apple created a 'walled garden' in which Apple plays a significant curating role" because "[d]evelopers can distribute their apps to iOS devices only through Apple's App Store and after Apple has reviewed an app to ensure that it meets certain" criteria). Apple's power is reflected in the App Store's own financials: In 2022 alone, the App Store "attracted over 650 million average weekly visitors" and "users downloaded and redownloaded apps an average of more than 747 million and 1.5 billion times each week." Golinveaux Dec. ¶ 11, Ex. J ("May 31, 2023 App.com Article Titled *App Store developers generated $1.1 trillion in total*

Case: 26-2892, 08/21/2026, DktEntry: 12.4, (159 of 196)

billings and sales in the App Store ecosystem in 2022"). At the same time, the App Store enjoys "extraordinarily high" operating margins, with one estimate being "over 70%." Epic Games, 559 F. Supp. 3d at 953. Accordingly, "even without comparison to other [app] stores, the operating margins [of the App Store] strongly show market power." Id. at 993.

This power has recently attracted regulatory scrutiny. In 2023, the European Commission designated Apple a "gatekeeper" under its Digital Markets Act ("DMA") after finding that Apple's unique market position in iOS gave it "power to create a bottleneck in the digital economy." Golinveaux Dec. ¶ 12 Ex. K ("Sept. 6, 2023 Eur. Comm'n Press Release"); see also Council Regul. 2022/1925, 2022 O.J. (L. 265) 1, Recital (13) ("Regulation of the European Parliament and of the Council on Contestable and Fair Markets in the Digital Sector (Digital Markets Act)"). And just this year, the Commission opened a non-compliance procedure against Apple "over concerns that its new contractual requirements for third-party app developers and app stores, . . . fall short of ensuring effective compliance with Apple's obligations under the DMA" and therefore, the preservation of adequate competition. Golinveaux Dec. ¶ 13, Ex. L ("June 23, 2024 Eur. Comm'n Press Release").

The bottom line for purposes of this motion is that, as a walled-in ecosystem, the App Store is the only viable method for distributing iOS apps to end-consumers. Apple's arbitrary removal of the Musi app therefore risks Musi's extinction. See Wojnowski Dec. ¶¶ 8–9. That alone merits a finding of irreparable harm. See, e.g., Optinrealbig.com, LLC v. Ironport Sys., 323 F. Supp. 2d 1037, 1051 (N.D. Cal. 2004) (finding irreparable harm where defendant's conduct threatened plaintiff's continued business operations).

The Ninth Circuit's decision in hiQ Labs is instructive. There, plaintiff—a data analytics company—relied on publicly available information from the professional networking website, LinkedIn, to create sellable analytics. 31 F.4th at 1187. After LinkedIn accused hiQ Labs of violating its User Agreement and adopting technical measures to "prevent hiQ from accessing, and assisting others to access, LinkedIn's site," hiQ Labs moved for a preliminary injunction, arguing that LinkedIn's actions threatened its continued survival. See id. at 1187–89. The Ninth Circuit agreed, finding there was "no viable way" for hiQ Labs to continue to operate because "hiQ's entire business depends on being able to access public LinkedIn member profiles," and "there is no current viable

alternative to LinkedIn's member database to obtain data for hiQ's" analytical services. Id. at 1189. This case is on all fours with hiQ Labs. Musi, like all iOS developers, has no viable alternative to the App Store. Without that platform, it simply cannot meaningfully continue to operate.

Apple's conduct also threatens Musi with the "loss of prospective customers or goodwill." Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001). Without the App Store, the Musi app remains unavailable to all potential customers, and current customers continue to worry that their access might be discontinued. See Golinveaux Dec. ¶ 11. Relatedly, because of the app's removal, Musi can no longer use Apple's TestFlight service, which hampers Musi's ability to distribute test builds of its application and continue development during this period. See Wojnowski ¶ 12. And without a presence on the App Store, Musi app customers face an increased risk of confusion relating to the copycat apps that permeate the platform. See id. ¶ 10. Courts have found irreparable harm in analogous circumstances. See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24, 29 (2d Cir. 1978) (finding irreparable harm where plaintiff was "deprived totally of the opportunity to sell" its product and, as a result, faced "injury to its goodwill and reputation as a dependable distributor"). Thus, this Court should find that Musi will suffer irreparable harm in the absence of preliminary relief.

**B. The Balance of Equities Tips Sharply in Musi's Favor**

In determining the balance of equities, this Court must "balance the interests of all parties and weigh the damage to each in determining the balance of the equities." CTIA - The Wireless Ass'n v. City of Berkeley, Cal., 928 F.3d 832, 852 (9th Cir. 2019) (internal quotation marks and citation omitted). Here, that analysis tips sharply in Musi's favor.

Musi's side of the scale is weighty. As noted above, without the ability to distribute the Musi app on the App Store, Musi faces inevitable extinction—the exact concern that led the Ninth Circuit to find that "the balance of hardships tip[ped] sharply in hiQ's favor." 31 F.4th at 1190–91 ("On one side of the scale is the harm to hiQ . . . that, without an injunction, it will go out of business.").

Apple, on the other hand, faces little risk or harm. To start, the granting of this motion merely results in Apple being forced to do what it already promised to do via the Developer Agreement, and what good faith requires: Conduct a review of Complainant's claims, and only remove the Musi app

from the App Store if it has a "reasonable belie[f]" that the Musi app infringes Complainant's intellectual property and/or Terms of Service. See Golinveaux Dec. ¶ 2, Ex. A, Dev. Agmt. § 6.3; id. ¶ 3, Ex. B, Dev. Agmt. Schedule 2 § 7.3 & Schedule 3 § 7.3. And if Apple reinstates the Musi app, it faces no risk of liability by Complainant because Musi already agreed to indemnify and hold Apple harmless with respect to any such claim via the Developer Agreement. Golinveaux Dec. ¶ 2, Ex. A, Dev. Agmt. § 10; see also Elkin Dec. ¶ 7, Ex. D, Sept. 19 and 24 Emails to Apple.

In other words, any harm incurred by Apple that results from granting this motion is self-inflicted. Apple chose to arbitrarily remove the Musi app in breach of its own agreement and its duty of good faith and fair dealing, thereby necessitating the filing of this motion. Thus, the balance of equities tips sharply in Musi's favor. See, e.g., Pappan Enters. v. Hardee's Food Sys., 143 F.3d 800, 806 (3d Cir. 1998) (finding balance of equities favored plaintiff because defendant's "self-inflicted harm by choosing to stop its own performance under the contract and effectively terminat[e] the agreement is outweighed by the immeasurable damage done to the" plaintiff); Env't Democracy Project v. Green Sage Mgmt., LLC, 2022 WL 4596616, at *4 (N.D. Cal. Aug. 23, 2022) ("[T]he balance of equities favors Plaintiff because Defendant's alleged harms are self-inflicted."); Heat Factory USA, Inc. v. Shawbel Techs., LLC, 2019 WL 1779579, at *7 (S.D. Cal. Apr. 23, 2019) ("Any harm [defendant] might sustain as a result of an injunction could have been avoided had [defendant] acted in compliance with the License Agreement."); Just Tacos, Inc. v. Zezulak, 2011 WL 6140866, at *9 (D. Haw. Dec. 9, 2011) (balance of equities tipped in plaintiffs' favor because defendants "brought on any such difficulties upon themselves").

### C. A Preliminary Injunction is in the Public Interest

"[T]he public interest inquiry primarily addresses the impact on non-parties rather than parties." hiQ Labs, 938 F.3d at 1004 (internal quotation marks omitted). Here, there is a significant public interest in granting preliminary relief.

Apple's conduct implicates nearly 2 million third-party iOS developers. See Golinveaux Dec. ¶ 9, Ex. H, Caminade & Wartburg Study; id. ¶ 14, Ex. M ("Oct. 5, 2024 Apple.com Article Titled The apps you love, From the place you can trust"). Each relies on the App Store for distribution, and each naturally expects Apple to comply with the terms and conditions governing its access, and not to

arbitrarily remove their apps without any reasonable basis. Absent preliminary relief, those developers are sent a disturbing message: Apple is free to destroy their business, whenever it wants, however it wants, and with no obligation to form a "reasonable belief" of any breach of its terms beforehand—despite the Developer Agreement explicitly mandating as much.

Denying Musi's motion renders the Developer Agreement a "parchment guarantee"; a legal instrument where Apple is the only party with teeth. Granting Apple such power is inconsistent with the public interest. See hiQ Labs, 31 F.4th at 1202 ("[Giving companies like LinkedIn free rein to decide, on any basis, who can collect and use data [on its platform] . . . risks the possible creation of information monopolies that would disserve the public interest."). And, in a general sense, it contravenes the often-recognized public interest of upholding contractual obligations—especially where, as here, 2 million entitles expect those obligations to be honored. See Abdou v. Davita, Inc., 734 F. App'x 506, 507 (9th Cir. 2018) (affirming issuance of preliminary injunction in part because "[t]he public has an interest in . . . enforcing contractual rights and obligations." (quotation omitted)); Heat Factory USA, 2019 WL 1779579, at *8 (same); Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale - Phase II LLC, 2018 WL 10407485, at *2 (D. Ariz. Jan. 2, 2018) (finding a TRO serves public interest "by ensuring that the parties faithfully uphold their contractual obligations").

### D. At a Minimum, there are "Serious Questions" on the Merits of Musi's Claims

Finally, Musi can establish that its claims are meritorious or, at the very least, that there are "serious questions" on the merits. Cottrell, 632 F.3d at 1135 (citation omitted).

#### 1. Breach of Contract

Musi's breach-of-contract claim requires it to prove "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty LLC v. Goldman, 51 Cal.4th 811, 821 (2011). The only contestable issue here is whether Apple's removal of the Musi app from the App Store breached the Developer Agreement. A plain reading of that Agreement's language confirms that it did.

As with any contract, the Developer Agreement must be construed according to the "ordinary and popular" meaning of its language rather than its "strict legal meaning." Cal. Civ. Code § 1644.

Here, Apple based its removal of the Musi app on perceived violations of Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 of the Developer Agreement. Elkin Dec. ¶ 8, Ex. E, Sept. 24, 2024 Removal Notice. Thus, this merits evaluation must focus on those provisions, which share nearly identical text. As Schedule 1 § 6.3 states:

> Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limited the generality of this Section 6.3, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based [on] human and/or systematic review, and including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added)

Likewise, Schedules 2 § 7.3 and Schedule 3 § 7.3 state:

**<u>Schedules 2</u>**

. . .

> **7.3.** Apple reserves the right to cease marketing, offering, and allowing download by End-Users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any End-User's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added)

**<u>Schedules 3</u>**

. . .

> **7.3.** Apple reserves the right to cease marketing, offering, and allowing purchase by Custom App Distribution Customers and download by End-Users of the Custom Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Custom Applications if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Custom Applications and/or any End-User's possession and/or use of those Custom Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . ." (emphasis added)

Case: 26-2892, 08/21/2026, DktEntry: 12.4, Page 164 of 196

Per the above, Apple needed to conduct a "human and/or systematic review" of Complainant's assertions before taking any action against the Musi app. And once that review was conducted, Apple could only "cease marketing, offering, and allowing download" or "purchase" of the Musi app if it "reasonably believe[d]" that the Musi app "infringe[d]" YouTube Legal's "intellectual property rights."

It does not appear that Apple conducted a "human and/or systematic review" of Complainant's claims, and it certainly did not form a "reasonable belief" that the Musi app infringed Complainant's intellectual property prior to removing the Musi app from its App Store. Indeed, Apple never explained the bases for Complainant's assertions (nor provided any explanation from the Complainant). Instead, Apple merely stated that it received a notice from "YouTube Legal" "that Claimant believes" that the Musi app "infringes its intellectual property rights" and directed Musi to "see their comments below." Elkin Dec. ¶ 4, Ex. A, Aug. 8, 2024 Apple Email. Those comments consisted of five words—"violating YouTube Terms of Service"—which did not explain the nature of Complainant's intellectual property rights nor the Terms of Service supposedly breached. Id. Moreover, and shortly before Apple removed the Musi app from the App Store, Musi told Apple:

> To date, we have received no communications from the Complainant in response to our September 6 correspondence, nor has the Complainant substantiated its complaint with further details.
>
> Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.
>
> Musi will continue to keep App Store Notices informed as to the status of this dispute.

Elkin Dec. ¶ 7, Ex. D, Sept. 19 and 24 Emails to Apple.

Nothing in this history of correspondence suggests that Apple conducted any "human and/or systematic review" prior to removing the Musi app from the App Store. At best, the record implies that Apple accepted Complainant's bare assertions at face value and used those assertions to destroy Musi's business. That simply is not enough to form a "reasonable belief" that the Musi app violated Complainant's intellectual property rights. And for this reason, Apple breached Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 of the Developer Agreement.

It does not matter that the "reasonable belief" provision comes after the phrase "Without limiting the generality of this Section." California federal and state courts have consistently effectuated statutory and/or contractual language proceeding similar phrasing. See, e.g., Marder v. Lopez, 450 F.3d 445, 451 (9th Cir. 2006) (effectuating waiver provision contained in entertainment contract that proceeded the phrase "Without limiting the generality of the foregoing Release"); Chastain v. Howard, 2024 WL 508823, at *2, *4 (N.D. Cal. Feb. 9, 2024) (Pitts, J.) (effectuating waiver provision in marriage settlement agreement that proceeded the phrase "without limiting the generality of the foregoing"); Merced Prod. Credit Assoc. v. Bayer, 222 Cal. App. 2d 793 (1963) (finding disputed mortgage "sufficiently covered after-acquired property" based on language that followed "Without limiting the generality of [the previous] subsection"). At best, one might argue that this placement renders the provision ambiguous. But if that were so, then that ambiguity must be construed against the drafter of the Developer Agreement: Apple. Victoria v. Super. Ct., 40 Cal. 3d 734, 739 (1985) ("[A]mbiguities in standard form contracts are to be construed against the drafter").

Apple may also point in opposition to Intango, Ltd. v. Mozilla Corp., 2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) (Cousins, J.), but that case is materially distinguishable—in fact, it helps illustrate the problems with Apple's position. In Intango, an add-on developer sued Mozilla because it blocked and disabled several Intango add-ons from Mozilla's Firefox web browser. Intango, 2020 WL 12584274, at *1. Intango argued that Mozilla's actions amounted to a breach of § 7 of Mozilla's Add-On Distribution Agreement, which stated:

> Mozilla reserves the right (though not the obligation) to, in our sole discretion, remove or revoke access to any Listed or Unlisted Add-ons. This applies, but is not limited to, Add-ons that, in our reasonable opinion, violate this Agreement or the law, any applicable Mozilla policy, or is in any way harmful or objectionable. In addition, we may at any time remove Your Add-on from AMO; revoke Your Mozilla Certificate; blocklist an Add-on; delete your AMO account; flag, filter, modify related materials (including but not limited to descriptions, screenshots, or metadata); reclassify the Add-on; or take other corrective action.

Id. at *6 (emphasis added). This Court dismissed Intango's claim after finding that, under § 7's "plain terms," the Distribution Agreement granted Mozilla "wide discretion to remove any add-on," and that this language did not require Mozilla to "provide advance notice" or prevent Mozilla "from removing add-ons it had previously approved." Id.

However, in *Intango*, the "reasonable opinion" language in § 7 of Mozilla's Add-on Distribution Agreement was not at issue—and for good reason. Unlike Apple's conduct here, Mozilla engaged in "extensive" discussions with Intango before blocking and disabling Intango's add-ons from the Firefox web browser. *See id.* at *2–3. Each time Intango inquired into Mozilla's decision, Mozilla named the exact provision of the Add-on Distribution Agreement that it suspected the add-ons were violating. *See id.* And on one occasion, Mozilla lifted the block after learning more about their functionality. *See id.* Nothing similar happened here. Apple did not engage in any "extensive" discussions with Musi. To the contrary, Apple ignored Musi's correspondence, made no attempt to communicate with Musi to gather details surrounding its position, and removed the Musi app from the App Store without providing any bases for its belief that the app violated Complainant's intellectual property and/or Terms of Service.

Even assuming for the sake of argument that Apple and Complainant engaged in more extensive conversations (without Musi's involvement or knowledge), such one-sided conversations would not be enough to form a "reasonable belief" that the Musi app infringed Complainant's intellectual property. The ordinary and popular meaning of "reasonable belief" is one that is "in accordance with reason, fairness, duty or prudence." *See Reasonable*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/reasonable (last visited Oct. 4, 2023). There is nothing "fair" or "prudent" about engaging in a one-sided inquiry where a company's survival is at stake. And it undoubtedly contradicts Apple's "dut[ies]" under the Developer Agreement. At a minimum, Musi has shown that there are serious questions as to its claim for breach of contract.

2. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Musi also raises a claim for breach of the implied covenant of good faith and fair dealing. This covenant is implied by law in every contract. *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013). Under this covenant, "no party to the contract will do anything that would deprive another party" of the contract's benefits. *Miller v. Zurich Am. Ins.*, 41 Cal. App. 5th 247, 257 (2019) (citation omitted). Further, it "requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes." *Thrifty Payless, Inc.*, 218 Cal. App. 4th at 1244. "Although a breach of the implied covenant . . . is necessarily a breach of contract,

the scope of conduct prohibited by the implied covenant often is pleaded as a separate count." Miller, 41 Cal. App. 5th at 257. (citation omitted). Thus, a breach of contract may also breach the implied covenant of good faith and fair dealing where the conduct involves something beyond the breach of the contractual duty itself. See Congleton v. Nat'l Union Fire Ins., 189 Cal. App. 3d 51, 59 (1987).

To state a claim, Musi must allege: (1) the existence of a contractual relationship; (2) an implied duty; (3) breach; and (4) causation. See Smith v. San Francisco, 225 Cal. App. 3d 38, 49 (1990). Here, the way in which Apple breached the Developer Agreement separately breaches the implied covenant of good faith and fair dealing.

Implicit in its contractual obligation to conduct a "human and/or systematic review" of Claimant's claims was a duty to execute those obligations in good faith. After all, "[t]he covenant of good faith finds particular application in situations where one party," like Apple, "is invested with a discretionary power affecting the rights of another," like Musi. Carma Developers (Cal.) Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992). Here, Apple did not in good faith investigate Claimant's claims. Instead, it accepted Claimant's unsubstantiated accusations at face value, and—based on that bad faith assumption—destroyed Musi's business. For these reasons, there are, at a minimum, serious questions as to whether Apple "subjectively lack[ed] belief in the validity of its acts or" whether "its conduct was objectively unreasonable." Id. Accordingly, Musi is separately entitled to a preliminary injunction on its claim for breach of the implied covenant of good faith and fair dealing.

* * *

This Court cannot, on today's motion, fully heal the irreparable harm incurred by Musi. But it can stop the bleeding. Most of all, it can reassure the nearly 2 million iOS developers who depend on the App Store for distribution that their rights under the Developer Agreement will be honored.

## IV. CONCLUSION

For these reasons, Musi respectfully requests that the Court enter the proposed preliminary injunction.

Dated: October 9, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/ Jennifer A. Golinveaux
Jennifer A. Golinveaux
Jeff Wilkerson
Samantha K. Looker

Attorney for Plaintiff
MUSI INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

MUSI INC.,

Plaintiff,

v.

APPLE INC.,

Defendant.

**Case No. 5-24-cv-06920**

**DECLARATION OF AARON WOJNOWSKI IN SUPPORT OF PLAINTIFF MUSI INC.'S MOTION FOR PRELIMINARY INJUNCTION**

I, Aaron Wojnowski, declare as follows:

1. I am the Co-Founder and Chief Executive Officer ("CEO") for Musi Inc. ("Musi"), a mobile software computing company. Musi was founded in Manitoba, Canada by me and Christian Lunny.

2. Released in 2013, the Musi app provides users with enhanced functionality to interact with publicly available content on YouTube's website through its own augmentative interface—specifically, Musi's proprietary user interface components and proprietary organizational functionality/metadata. The Musi app does not rely on YouTube's Application Programming Interface ("API"), nor do Musi's servers store, process, or transmit YouTube videos. Instead, the Musi app plays or displays content based on the user's own interactions with YouTube's website via Musi's proprietary interface. At no point does the Musi app access YouTube's non-public interfaces. Web requests are made directly from user devices to the publicly facing YouTube website based on that user's manual inputs. And once the website returns a response, that response is parsed by the app, on the user device, and the resulting data is played or displayed on said device.

3. Musi also does not rely on automated means (e.g., bots). Instead, the Musi app allows a user to directly access the YouTube site to interact with content selected by the user. Musi does not "alter" or "modify" such content. The Musi app merely provides a user with enhanced functionality to interact with publicly available content on YouTube's website that the user is otherwise entitled to

access.

4. Musi remains the sole owner and operator of the Musi app. Since its launch, the app has become increasingly popular among younger users. The app's popularity has allowed Musi to operate continuously for over a decade with a small team headquartered in Manitoba. Musi has continuously been a top 200 app in the App Store for years.

5. As an iOS application, the Musi app is only available on the Apple App Store because the App Store remains the only viable way by which iOS apps are distributed to end-users. Musi entered into Apple's Developer Program License Agreement to distribute the Musi app on the App Store.

6. Since 2015, Musi has engaged in sporadic conversations with YouTube. Throughout, Musi has repeatedly expressed its commitment to offer the Musi app in a way that complies with YouTube's Terms of Service.

7. Accordingly, whenever YouTube has raised concerns with the Musi app's functionality, Musi has, in good faith, either (a) adjusted the app's functionality, or (b) provided details about how the app works and explained why it is fully compliant with YouTube's Terms of Service. At the same time, Musi has continued to offer the Musi app on the App Store. Despite routine updates, the Musi app has operated in a substantially similar manner since May 5, 2021—when Musi through outside counsel substantively described its functionality and addressed YouTube's direct comments.

8. On September 24, 2024, the Musi app was removed from the App Store by Apple. The Musi app is the only product offered by Musi, and it is the only source of revenue for the company. Without access to the App Store, Musi lacks the means of updating its app and acquiring new users and thus, lacks the ability to continue operating in the future.

9. Unless the Musi app is re-listed, Musi will be forced to terminate its staff and shut its doors. This will negatively affect those that work for Musi as well as its massive user base.

10. In addition, after Apple's removal of the Musi app, multiple copycat apps have been submitted and published to the App Store using Musi's registered trademark for the term "Musi," as well as its trademarked app icon. These applications have and continue to confuse Musi's customers, many of whom deleted the original Musi app thinking that a new version had been published. Contrary

to its removal of Musi from the App Store, Apple has not removed these apps or revised them in such a way that they no longer infringe Musi's trademarks.

11. Since the app's removal, Musi has experienced an outpouring of support and complaints about the app's unavailability. Potential customers complain about the lack of access on the App Store. Current customers complain about losing access to the app after updating their device and/or version of iOS. And as it stands, we have no way of helping these customers because of Apple's arbitrary actions.

12. Worse, because of the app being removed, Apple no longer permits distribution of the Musi app for internal testing via TestFlight. TestFlight is an online service developed by Apple, which allows for over-the-air installation and testing of iOS apps by iOS developers for development and QA purposes. Through TestFlight, iOS developers—like Musi—receive remote logs, crash reports, and tester feedback about their app from external and internal testers. Specifically, TestFlight allows iOS developers to distribute versions of their app for external beta testers, who provide feedback about their use. This has hampered Musi's ability to continue development on its application and is a punitive measure that has no bearing on Musi's availability on the App Store.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on October 9, 2024 in Manitoba, Canada.

/s/ Aaron Wojnowski
Aaron Wojnowski

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000

Attorneys for Plaintiff
MUSI INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MUSI INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | **Case No. 5:24-cv-06920**<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Musi Inc. ("Musi"), through its undersigned counsel, hereby brings this civil action against Defendant Apple Inc. ("Apple") for breach of contract and breach of the implied covenant of good faith and fair dealing, and alleges as follows:

## I. NATURE OF THE ACTION

1. This case arises from Apple's abrupt removal of Musi's mobile software application (the "Musi app") from the Apple App Store ("the App Store"), based upon an unsubstantiated third-party complaint, and in violation of the parties' contractual agreements. Despite its obligations to investigate complaints in good faith, Apple removed the Musi app based upon unsupported accusations from a third party who has failed to respond to Musi's communications. Worse, Apple was fully aware that the third party had failed to substantiate its claims to Musi. Apple's improper removal of the Musi app has caused—and continues to cause—substantial harm to Musi's business and reputation.

2. Plaintiff Musi is a mobile computing software company and the developer, owner, and operator of the Musi app, which provides users with enhanced functionality to interact with publicly available content on YouTube's website through an augmentative interface. Since its inception, and until September 24, 2024, when it was removed by Apple, the Musi app has only been available for download on the Apple App Store—an online marketplace for apps that is pre-installed on Apple smartphones. On September 24, 2024, Apple abruptly removed the Musi app from the App Store on the basis of a five-word complaint dated July 29, 2024 from a complainant identified as "YouTube Legal" ("Complainant"), with no supporting evidence or documentation. Despite Musi's efforts to contact Complainant to understand the nature and basis of its concerns, Complainant failed to either respond to Musi or to substantiate its accusations. Musi, on the other hand, has promptly responded to all of Apple's communications regarding the complaint.

3. Even more concerning, in April and May of 2021, Musi engaged with outside counsel for YouTube (apparently the same Complainant) to address several questions YouTube had about the functionality of the Musi app and compliance with the YouTube Terms of Service. Musi substantively addressed YouTube's concerns but heard nothing further from YouTube until several years later in March 2023, and July 2024 when YouTube sent a standard notice to Apple stating that the Musi app

Case: 26-2892, 08/21/2026, DktEntry: 12.4, Page 174 of 196

violated its intellectual property rights without any explanation. Musi again contacted YouTube to address its concerns without receiving any response. During that time, Musi continued to offer the Musi app on the App Store, operating in substantially the same manner, without incident.

4. Apple nonetheless suddenly and unjustifiably removed the Musi app from the App Store on the basis of the July 2024 complaint. To date, the Musi app has not been restored. The removal was all the more galling in light of the fact that Apple threatened to remove the app if Musi did not try to resolve the alleged complaint with the Complainant, and Apple was fully aware that the Complainant had elected not to communicate in any way directly with Musi.

5. Apple's unjustifiable removal of the Musi app from the App Store not only violates the implied covenant of good faith and fair dealing, but also Apple's own contractual obligations to developers who make applications available on the App Store.

6. This civil action states claims and seeks monetary, injunctive, and other appropriate relief for Apple's breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. THE PARTIES

7. Plaintiff Musi, Inc. is a foreign corporation with its principal place of business in Manitoba, Canada.

8. Defendant Apple, Inc. is a business incorporated under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Musi is a foreign corporation with citizenship different from Apple, an American corporation.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Apple maintains its principal place of business in the State of California and in this District, and because a substantial part of the events or omissions giving rise to Musi's claims occurred in, were directed to, and/or emanated from this District.

11. Venue is also proper because Apple has consented to the exercise of personal jurisdiction by this Court. Apple and Musi are parties to the Apple Developer Program License Agreement ("the Developer Agreement"). Section 14.10 of the Developer Agreement provides that "[a]ny litigation or other dispute resolution" between the parties "arising out of or relating to this Agreement, the Apple Software, or [the parties'] Relationship . . . will take place in the Northern District of California", and that the parties "consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District." (Developer Agreement Schedule 1 § 14.10. Ex. A) As detailed below, Musi's claims against Apple "arise[] out of or relat[e] to" the Developer Agreement and their relationship. *Id.*

**IV. INTRADISTRICT ASSIGNMENT**

12. This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred there. Pursuant to Local Rule 3-2(e), for those case categories which are not district-wide, civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

**V. GENERAL ALLEGATIONS**

**A. Apple's App Store**

13. Apple designs, manufactures, and sells mobile computing devices, including smartphones—branded "iPhones." iPhones are portable electronic devices that connect wirelessly to the internet and have advanced computing capabilities, including internet browsing and music streaming.

14. To function, smartphones require a mobile operating system ("mobile OS"). A mobile OS is piece of software that manages the smartphone's hardware and allows users to run software applications developed specifically for use on the smartphone, i.e., "apps."

15. iPhones are sold with Apple's proprietary mobile OS pre-installed, named "iOS." iPhone users frequently rely on iOS apps developed by Apple, as well as third-party iOS apps, to fully enjoy their iPhone's capabilities. Apps must be iOS-based to operate on iPhone.

16. Third-party developers make their iOS apps available to iPhone users primarily through Apple's App Store. The App Store is an app marketplace developed and operated by Apple for iOS

apps. As the developer, owner, and operator of the App Store, Apple contracts with all third-party iOS app developers that distribute their apps using the App Store, including Musi.

17. The App Store allows iPhone users to browse, search for, and download Apple-developed iOS apps, as well as third-party iOS apps—as long those third-party apps are approved by Apple. Without approval, a third-party iOS app cannot not be made available on the App Store.

**B. Apple's Developer Program License Agreement**

18. Apple's App Store is the primary means through which iOS apps are distributed to consumers. And as the developer, owner, and operator of the App Store, Apple enjoys singular power to choose which iOS apps are made available. However, these powers are limited by the terms and conditions enumerated in the Developer Agreement. Attached as Exhibit A is a true and correct copy of the Developer Agreement.

19. Apple requires all third-party iOS developers to enter into the Developer Agreement before they can develop apps using iOS. The Developer Agreement grants third-party developers a limited, personal, non-exclusive, and revocable license to use Apple's software and services, provided the third-party developer builds and operates its app in compliance with the terms and conditions contained therein. (Developer Agreement §§ 1.1, 2.1, 3.2(g), Ex. A)

20. If a third-party developer wishes to make its iOS app available for download on the App Store, it must apply for distribution with Apple. (Developer Agreement §§ 6.1, 6.9, Ex. A) To qualify, the third-party developer must show that its app complies with the "Documentation and Program Requirements then in effect as well as with any additional guidelines that Apple may" place in the Developer Agreement. (Developer Agreement § 6.1, Ex. A)

21. Once the iOS app is deemed qualified for distribution by Apple (*i.e.*, a "Licensed Application"), the third-party developer must agree to additional conditions enumerated in Schedule 1 of the Developer Agreement before the app can be distributed using the App Store. (Developer Agreement, Schedule 1 § 1.1, Ex. A) A true and correct copy of Schedule 1 is found in Exhibit A.

22. Schedule 1 § 1.2(b) states that the third-party developer must authorize Apple to "provide hosting services[,] . . . subject to the terms of the Agreement, in order to allow for the storage

of, and end-user access to, the Licensed Applications" on the App Store. (Developer Agreement, Schedule 1 § 1.2(b), Ex. A)

23. And Schedule 1 § 4.1(b) requires the third-party developer to guarantee to Apple that "none of the Licensed Applications . . . violate or infringe any patent, copyright, trademark, trade secret or other intellectual property or contractual rights of any other person, firm, corporation or other entity." (Developer Agreement, Schedule 1 § 4.1, Ex. A)

24. If a dispute arises over the content or use of a Licensed Application, the third-party developer must permit Apple to share its contact information with the party filing the dispute and to follow Apple's app dispute process "on a non-exclusive basis and without any party waiving its legal rights." (Developer Agreement, Schedule 1 § 4.2, Ex. A)

25. Relatedly, Schedule 1 § 6.3 states that Apple "reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without good cause, by providing notice of termination to" the third-party developer. (Developer Agreement, Schedule 1 § 6.3, Ex. A) However, Schedule 1 § 6.3 goes on to state, in relevant part:

> Without limiting the generality of this Section 6.3, [the third-party developer] acknowledge[s] that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple *reasonably believes*, based on human and/or systematic review, and, including without limitation upon notice received under applicable law, that: . . . (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added).

26. If the Licensed Application charges end-users a fee of any kind through its use, the third-party developer must also enter into a separate agreement with Apple, named Schedule 2, "before any such commercial distribution of [the] Licensed Application may take place via the App Store." (Developer Agreement § 7.2, Ex. A) And if the third-party developer wishes to sell its iOS app "for a fee through Custom App Distribution," then the developer must separately agree to the terms enumerated in another agreement named Schedule 3. *Id.* Attached as Exhibit B is a true and correct copy of Schedules 2 and 3 of the Developer Agreement.

27. Notably, Schedule 2 § 7.3 and Schedule 3 § 7.3 contain identical language as Schedule

1 § 6.3, stating in relevant part:

> **<u>Schedule 2</u>**
>
> . . .
>
> **7.3.** Apple reserves the right to cease marketing, offering, and allowing download by End-Users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any End-User's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . .

(Developer Agreement, Schedule 2 § 7.3, Ex. B)

> **<u>Schedule 3</u>**
>
> . . .
>
> **7.3.** Apple reserves the right to cease marketing, offering, and allowing purchase by Custom App Distribution Customers and download by End-Users of the Custom Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Custom Applications if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Custom Applications and/or any End-User's possession and/or use of those Custom Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . ."

(Developer Agreement, Schedule 3 § 7.3, Ex. B).

**C. The Musi App**

28. Musi is a mobile computing software company based in Canada that owns and operates the Musi app, an iOS-based mobile application.

29. The Musi app provides users with enhanced functionality to interact with publicly available content on YouTube's website through its own augmentative interface—specifically, Musi's proprietary user interface components and proprietary organizational functionality/metadata. The Musi app does not rely on YouTube's Application Programming Interface ("API"), nor do Musi's servers store, process, or transmit YouTube videos. Instead, the Musi app plays or displays content based on the user's own interactions with YouTube and enhances the user experience via Musi's proprietary technology.

### D. Apple's Wrongful Removal of the Musi App from the App Store

30. Since at least 2015, Musi has engaged in sporadic dialogue with YouTube. And throughout, Musi has repeatedly expressed its commitment to offer the Musi app in a way that fully complies with YouTube's Terms of Service.

31. In the past, when YouTube has raised a question concerning the Musi app's functionality, Musi has, in good faith, consistently either (a) adjusted the app's functionality, or (b) provided details about how the Musi app works and explained why it is fully compliant with YouTube's Terms of Service.

32. In April 2021, YouTube's outside counsel raised several questions regarding the Musi app's functionality. Specifically, YouTube's counsel claimed that the Musi app violated YouTube's Terms of Service because (1) the Musi app accessed and used YouTube's non-public interfaces; (2) the Musi app used the service for a commercial use; and (3) the Musi app violated YouTube's prohibition on the sale of advertising "on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales."

33. Musi addressed these concerns by explaining to YouTube's counsel that (1) at no point does the Musi app access YouTube's non-public interfaces; (2) the Musi app merely allows users to access YouTube's publicly available website through a functional interface and, thus, does not use YouTube in a commercial way; and (3) the Musi app does not sell advertising on any page that only contains content from YouTube or where such content is the primary basis for such sales. Musi provided a detailed basis in support of these conclusions, and explained why YouTube's assertions were premised on a misunderstanding of the Musi app's functionality.

34. YouTube never responded. Instead, in March 2023, YouTube again complained about the Musi app's functionality, to which Musi promptly responded. YouTube—again—failed to respond.

35. Since that time, Musi has continued to offer the Musi app on the App Store. Musi has conducted routine updates to the Musi app, but the Musi app has otherwise operated in a substantially similar manner since May 5, 2021.

36. On August 8, 2024, Apple—via representatives of its App Store—emailed Musi, stating that it had received a notice from "YouTube Legal" "that Claimant believes" that the Musi app "infringes its intellectual property rights" and directed Musi to "see their comments below." The referenced comments simply stated "violating YouTube Terms of Service." Attached as Exhibit C is a true and correct copy of the August 8, 2024 Email from Apple.

37. Apple's August 8, 2024 email did not provide any further details regarding the bases behind Complainant's assertions. The nature of Complainant's intellectual property was not described. And the specific sections of Complainant's Terms of Service allegedly violated by the Musi app were not named or cited. Nevertheless, Musi's attorney promptly responded to Apple and Complainant on August 12, explaining that these accusations were "unsubstantiated," and that Musi had previously contacted Complainant directly to resolve the dispute but had received no response. Attached as Exhibit D is a true and correct copy of Musi's August 12, 2024 through September 6, 2024 responses.

38. A month later, on September 6, Complainant emailed Apple again, inaccurately claiming that Musi failed to initiate contact to resolve the matter. Ex. D. In doing so, Complainant carbon copied—without explanation—several third parties that have no apparent relation to the matter. Nonetheless, Musi again promptly responded that same day to correct the record and reiterate that the Musi app did not infringe Complainant's intellectual property or violate Complainant's terms of service. Musi again invited Complainant to discuss its concerns. Attached as Exhibit E is a true and correct copy of Musi's September 6, 2024 response to Complainant. But again, Musi did not receive a response from Complainant.

39. Ignoring Musi's communications entirely, on September 18, 2024, Apple advised Musi that, according to its records, the matter remained unresolved. Musi responded by explaining to Apple that Musi's communications to Complainant had gone unanswered and reiterated that Complainant had failed to provide any relevant information regarding its complaint. Attached as Exhibit F is a true and correct copy of Musi's September 18, 2024 through September 24, 2024 responses.

40. Having heard nothing further from either Complainant or Apple, Musi's counsel followed up with Apple on September 24, 2024 updating Apple that:

> To date, we have received no communication from the Complainant in response to our September 6 correspondence, nor has the Complainant substantiated its complaint with further details.
>
> Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.
>
> Musi will continue to keep App Store Notices informed as to the status of this dispute.

Ex. F.

41. Apple responded by ignoring Musi's communications altogether and stating that "your app will be removed from the App Store on the basis of intellectual property infringement," which it did later that day. Attached as Exhibit G is a true and correct copy of the September 24, 2024 response.

42. Apple's decision to abruptly and arbitrarily remove the Musi app from the App Store without any indication whatsoever from the Complainant as to how Musi's app infringed Complaint's intellectual property or violated its Terms of Service, and in light of the fact that Musi has continued to operate the Musi app in a substantially similar matter since May 2021, was unreasonable, lacked good cause, and violated Apple's Development Agreement's terms. Apple's decision has caused immediate and ongoing financial and reputational harm to Musi. Without the Court's immediate intervention, Musi and consumers face irreparable damage.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

43. Musi repeats and incorporates herein by reference the allegations in the preceding paragraphs of this complaint.

44. Apple breached several conditions contained in the Developer Program License Agreement, including Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 (the "Sections").

45. These Sections curtail Apple's ability to remove any Licensed Applications, including the Musi app, from its App Store. Specifically, these Sections provide that Apple may only cease the download of any Licensed Application on the App Store if Apple "*reasonably believes*, based on human and/or systematic review," that the Licensed Application infringes "patent, copyright, trademark, trade secret or other intellectual property rights of any third party."

46. Based upon the correspondence to date, Apple had no reasonable basis to believe that the Musi app infringed Complainant's intellectual property rights.

47. Accordingly, Apple removed the Musi app from the App Store in violation of the terms of its own Developer Agreement.

48. As a direct and proximate result of Apple's breach, Musi has suffered direct, actual, compensatory, and consequential damages in an amount to be determined at trial. Those damages include but are not limited to lost profits and other consequential damages that are not waivable by contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive relief to prevent Apple's continuing breach.

**SECOND CAUSE OF ACTION**

**Breach of the Covenant of Good Faith and Fair Dealing**

49. Musi repeats and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

50. California law implies in every contract a covenant of good faith and fair dealing, such that neither party will compromise the rights of the other to receive the benefits of the contract. The covenant aims to effectuate the contract's guarantees, and to protect the parties' expectations. In doing so, the covenant requires each party to do all things reasonably contemplated by the contract's terms. For this reason, under the Development Agreement, Apple has a continuing obligation to act in good faith and deal fairly with Musi, as it does with all its partners.

51. Schedule 1 § 6.3, as well Schedules 2–3 § 7.3, provide that Apple may only cease marketing and/or allowing downloads by end-users of Licensed Applications on the App Store if Apple "*reasonably believes*, based on human and/or systemic review," that the Licensed Applications infringed a third-party's intellectual property rights. Accordingly, Apple was required to perform its contractual obligations in good faith and to avoid any acts or material omissions which unfairly interfere with the right of Musi to receive the benefits of the Developer Agreement.

52. Upon information and belief, Apple violated its covenant of good faith and fair dealing by failing to ensure that the Complainant had provided to Musi—in response to Musi's repeated

requests—the bases for its complaint, so that the two parties might attempt to resolve any issues as had been the case in prior dealings with the parties, before removing the Musi app.

53. Had Apple met its duty of good faith and fair dealing, the Musi app would never have been removed for violating Schedule 1 § 6.3, Schedules 2 § 7.3, and Schedule 3 § 7.3. Musi and the Musi app were fully compliant with the contractual obligations enumerated in Apple's Development Agreement. The Musi app did not and does not infringe any intellectual property rights held by Complainant, and a reasonable inquiry into the matter would have led Apple to conclude the same. Despite this, Apple abruptly removed the Musi app from its App Store without conducting a reasonable inquiry. Thereby, in effect, taking an affirmative step to frustrate the purpose of the Development Agreement.

54. As a direct and proximate result of Apple's breach of the covenant of good faith and fair dealing, Musi has suffered direct, actual, compensatory, and consequential damages in an amount to be determined at trial, plus prejudgment interest at the maximum legal rate. Those damages include but are not limited to lost profits and other consequential damages that are not waivable by contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive relief to prevent Apple's continuing breach.

**PRAYER FOR RELIEF**

WHEREFORE, Musi respectfully prays for judgment against Apple, and that the Court decree as follows:

a. The conduct alleged in the First Cause of Action herein be adjudged to constitute an unjustified breach of contract under California law;

b. The conduct alleged in the Second Cause of Action be adjudged to constitute a breach of the covenant of good faith and fair dealing under California law;

c. That Musi be entitled to a preliminary and permanent injunction to have the Musi app restored on the App Store platform.

d. That Musi be awarded direct, actual, compensatory, and/or consequential damages on its breach of contract and breach of the implied covenant and good faith and fair dealing claims, and

that Apple be preliminarily and permanently enjoined from continuing to engage in the underlying wrongful conduct and ordered to immediately reinstate the Musi app to the App Store.

e. Award Musi prejudgment interest at the maximum legal rate; and

f. For such other and further relief that this Court deems just and proper.

**JURY DEMAND**

Musi demands a trial by jury.

Dated: October 2, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000

Attorney for Plaintiff
MUSI INC.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF** **Northern District of California**

**Form 1. Notice of Appeal from a Judgment or Order of a United States District Court**

U.S. District Court case number: 5:24-cv-06920-EKL

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 10/02/2024

Date of judgment or order you are appealing: 04/15/2026, 03/16/2026

Docket entry number of judgment or order you are appealing: 100, 97

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes ○ No ○ IFP was granted by U.S. District Court

---

**List all Appellants** *(List* ***each*** *party filing the appeal. Do not use "et al." or other abbreviations.)*

Winston & Strawn LLP

Is this a cross-appeal? ○ Yes ◉ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case? ○ Yes ◉ No

If yes, what is the prior appeal case number?

Your mailing address (if pro se):

City: State: Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** /s/ Jeffrey Scott Wilkerson **Date** Apr 27, 2026

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Winston & Strawn LLP

Name(s) of counsel (if any):

Jeffrey Scott Wilkerson
Winston & Strawn LLP

Address: 300 South Tryon Street, 16th Floor, Charlotte, NC 28202

Telephone number(s): (704) 350-7700

Email(s): jwilkerson@winston.com

Is counsel registered for Electronic Filing in the 9th Circuit? ◉ Yes ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Apple Inc.

Name(s) of counsel (if any):

Christopher William Johnstone
Wilmer Cutler Pickering Hale & Door

Address: 2600 El Camino Real, Suite 400, Palo Alto, CA 94306

Telephone number(s): (650) 858-6147

Email(s): chris.johnstone@wilmerhale.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ○ No

---

**Appellees**

Name(s) of party/parties:

Apple Inc.

Name(s) of counsel (if any):

Jennifer Milici (pro hac vice)
Wilmer Cutler Pickering Hale & Dorr LLP

Address: 2100 Pennsylvania Avenue NW, Washington, DC 20037

Telephone number(s): (202) 663-6006

Email(s): jennifer.milici@wilmerhale.com

---

Name(s) of party/parties:

Apple Inc.

Name(s) of counsel (if any):

Mark Albert Ford (pro hac vice)
Wilmer Cutler Pickering Hale & Dorr LLP

Address: 60 State Street, Boston, MA 02109

Telephone number(s): 617-526-6000

Email(s): mark.ford@wilmerhale.com

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Query Reports Utilities Help Log Out

ADRMOP,APPEAL,CLOSED,PROTO

# U.S. District Court
# California Northern District (San Jose)
# CIVIL DOCKET FOR CASE #: 5:24-cv-06920-EKL

Musi Inc. v. Apple Inc.
Assigned to: Judge Eumi K. Lee
Referred to: Magistrate Judge Nathanael M. Cousins
Demand: $10,000,000
Case in other court: Ninth Circuit, 26-02892
Cause: 28:1332 Diversity-Other Contract

Date Filed: 10/02/2024
Date Terminated: 04/01/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Musi Inc.**
*a Canadian corporation*

represented by **Jennifer A. Golinveaux**
Winston & Strawn LLP
101 California Street, 21st Floor
San Francisco, CA 94111
415-591-1506
Fax: 415-591-1400
Email: jennifer.golinveaux@alston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Scott Wilkerson**
Winston Taylor LLP
300 South Tryon Street
16th Floor
Charlotte, NC 28202
704-350-7700
Fax: 704-350-7800
Email: jeff.wilkerson@winstontaylor.com
*ATTORNEY TO BE NOTICED*

**Samantha Looker**
Alston & Bird LLP
55 2nd St
Suite 2100
San Francisco, CA 94105
415-243-1021
Email: samantha.looker@alston.com
*ATTORNEY TO BE NOTICED*

V.

**Appellant**

**Winston & Strawn LLP**

represented by **Winston & Strawn LLP**
PRO SE

V.

**Defendant**

**Apple Inc.**
*a California corporation*

represented by **Christopher William Johnstone**
Wilmer Cutler Pickering Hale and Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
650-858-6147
Fax: 650-858-6100
Email: chris.johnstone@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Jennifer Milici**
Wilmer Cutler Pickering Hale & Dorr LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
202-663-6006
Email: jennifer.milici@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark Albert Ford**
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109
617-526-6000
Fax: 617-526-5000
Email: Mark.Ford@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2024 | 1 | COMPLAINT *for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing; Jury Trial Demanded* against Apple Inc., (Filing Fee: $405.00, receipt number ACANDC-19913242). Filed by Musi Inc.. (Attachments: # 1 Exhibit A to Complaint, # 2 Exhibit B to Complaint, # 3 Exhibit C to Complaint, # 4 Exhibit D to Complaint, # 5 Exhibit E to Complaint, # 6 Exhibit F to Complaint, # 7 Exhibit G to Complaint, # 8 Civil Cover Sheet)(Golinveaux, Jennifer) (Filed on 10/2/2024) (Entered: 10/02/2024) |
| 10/02/2024 | 2 | Proposed Summons. (Golinveaux, Jennifer) (Filed on 10/2/2024) (Entered: 10/02/2024) |
| 10/02/2024 | 3 | CORPORATE DISCLOSURE PURSUANT TO FED. R. CIV. P. 7.1 filed by Musi Inc. (Golinveaux, Jennifer) (Filed on 10/2/2024) (Entered: 10/02/2024) |
| 10/02/2024 | 4 | CERTIFICATION OF INTERESTED ENTITIES OR PERSONS PURSUANT TO CIV. L.R. 3-15 by Musi Inc. identifying Other Affiliate Aaron Wojnowski, Other Affiliate Christian Lunny for Musi Inc.. (Golinveaux, Jennifer) (Filed on 10/2/2024) (Entered: 10/02/2024) |
| 10/02/2024 | 5 | NOTICE of Appearance filed by Samantha Looker on behalf of Musi Inc. (Looker, Samantha) (Filed on 10/2/2024) (Entered: 10/02/2024) |

| | | |
|---|---|---|
| 10/03/2024 | 6 | Case assigned to Magistrate Judge Nathanael M. Cousins.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 10/17/2024. (mbc, COURT STAFF) (Filed on 10/3/2024) (Entered: 10/03/2024) |
| 10/03/2024 | 7 | **Initial Case Management Scheduling Order with ADR Deadlines: Joint Case Management Statement due by 1/1/2025. Initial Case Management Conference set for 1/8/2025 at 10:00 AM in San Jose - Telephonic Only. (tn, COURT STAFF) (Filed on 10/3/2024) (Entered: 10/03/2024)** |
| 10/03/2024 | 8 | Summons Issued as to Apple Inc.. (tn, COURT STAFF) (Filed on 10/3/2024) (Entered: 10/03/2024) |
| 10/09/2024 | 9 | NOTICE of Appearance filed by Jeffrey Scott Wilkerson on behalf of Musi Inc. (Wilkerson, Jeffrey) (Filed on 10/9/2024) (Entered: 10/09/2024) |
| 10/09/2024 | 10 | MOTION for Preliminary Injunction filed by Musi Inc.. Motion Hearing set for 11/13/2024 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. Responses due by 10/23/2024. Replies due by 10/30/2024. (Attachments: # 1 Declaration of Aaron Wojnowski, # 2 Declaration of Jennifer A. Golinveaux, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Declaration of Michael S. Elkin, # 17 Exhibit A, # 18 Exhibit B, # 19 Exhibit C, # 20 Exhibit D, # 21 Exhibit E, # 22 Proposed Order) (Golinveaux, Jennifer) (Filed on 10/9/2024) (Entered: 10/09/2024) |
| 10/10/2024 | 11 | SUMMONS Returned Executed by Musi Inc.. Apple Inc. served on 10/4/2024, answer due 10/25/2024. (Golinveaux, Jennifer) (Filed on 10/10/2024) (Entered: 10/10/2024) |
| 10/10/2024 | 12 | CLERK'S NOTICE RE: Consent or Declination. All parties are requested to file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. **Consent/Declination due by 10/17/2024.**<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 10/10/2024) (Entered: 10/10/2024) |
| 10/11/2024 | 13 | NOTICE of Appearance filed by Christopher William Johnstone on behalf of Apple Inc. (Johnstone, Christopher) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/11/2024 | 14 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19945905.) filed by Apple Inc.. (Ford, Mark) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/11/2024 | 15 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19945955.) filed by Apple Inc.. (Milici, Jennifer) (Filed on 10/11/2024) (Entered: 10/11/2024) |

| | | |
|---|---|---|
| 10/11/2024 | 16 | CERTIFICATION OF INTERESTED ENTITIES OR PERSONS AND RULE 7.1 CORPORATE DISCLOSURE STATEMENT filed by Apple Inc. (Johnstone, Christopher) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/11/2024 | 17 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Apple Inc... (Johnstone, Christopher) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/11/2024 | 18 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (lmh, COURT STAFF) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/15/2024 | 19 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Beth Labson Freeman for all further proceedings. Magistrate Judge Nathanael M. Cousins no longer assigned to case, except for discovery purposes.**<br><br>**Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. (Attachments: # 1 Notice of Eligibility for Video Recording)(smc, COURT STAFF) (Filed on 10/15/2024) (Entered: 10/15/2024)** |
| 10/15/2024 | 20 | **CLERK'S NOTICE RESETTING MOTION HEARING AND CASE MANAGEMENT CONFERENCE AFTER REASSIGNMENT.**<br>**Motion Hearing as to 10 MOTION for Preliminary Injunction reset for 1/2/2025 09:00 AM and Initial Case Management Conference set for 1/2/2025 11:00 AM in San Jose, Courtroom 1, 5th Floor before Judge Beth Labson Freeman. Case Management Statement due by 12/26/2024.**<br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)***<br>**(tsh, COURT STAFF) (Filed on 10/15/2024) (Entered: 10/15/2024)** |
| 10/16/2024 | 21 | **ORDER OF RECUSAL. Signed by Judge Beth Labson Freeman on 10/16/2024. (blflc1, COURT STAFF) (Filed on 10/16/2024) (Entered: 10/16/2024)** |
| 10/17/2024 | 22 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Eumi K Lee for all further proceedings. Judge Beth Labson Freeman no longer assigned to case. (smc, COURT STAFF) (Filed on 10/17/2024) (Entered: 10/17/2024)** |
| 10/17/2024 | 23 | **ORDER granting 14 Motion for Pro Hac Vice as to Mark Ford. Signed by Judge Eumi K. Lee (lrt, COURT STAFF) (Filed on 10/17/2024) (Entered: 10/17/2024)** |
| 10/17/2024 | 24 | **ORDER granting 15 Motion for Pro Hac Vice as to Jennifer Milici. Signed by Judge Eumi K. Lee. (lrt, COURT STAFF) (Filed on 10/17/2024) (Entered: 10/17/2024)** |
| 10/21/2024 | 25 | STIPULATION WITH PROPOSED ORDER *for First Request for the Extension of Time Pursuant to Civil Local Rule 6-2* filed by Apple Inc.. (Johnstone, Christopher) (Filed on 10/21/2024) (Entered: 10/21/2024) |

| | | |
|---|---|---|
| 10/22/2024 | 26 | **ORDER granting AS MODIFIED 25 Stipulation FOR FIRST REQUEST FOR THE EXTENSION OF TIME. Signed by Judge Eumi K. Lee. (lrt, COURT STAFF) (Filed on 10/22/2024) (Entered: 10/22/2024)** |
| 11/04/2024 | 27 | CLERK'S NOTICE RESETTING HEARING ON MOTION. Motion Hearing as to 10 MOTION for Preliminary Injunction reset for 1/9/2025 at 02:00 PM in San Jose, Courtroom 7, 4th Floor before Judge Eumi K Lee.. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lrt, COURT STAFF) (Filed on 11/4/2024) (Entered: 11/04/2024) |
| 11/06/2024 | 28 | **DOCKETED IN ERROR - PLEASE DISREGARD. CASE REASSIGNED.** CLERK'S NOTICE CONVERTING MOTION HEARING TO ZOOM WEBINAR HEARING and NOTICE OF REQUIRED REGISTRATION.<br><br>Motion Hearing as to 10 MOTION for Preliminary Injunction filed by Musi Inc set for 1/02/2025 09:00 AM before Judge Beth Labson Freeman will be held via a Zoom webinar.<br><br>Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/blf<br><br>**Court Appearances: Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at blfcrd@cand.uscourts.gov no later than 12/30/2024, at 12:00 PM PST.**<br><br>General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (tsh, COURT STAFF) (Filed on 11/6/2024) (Filed on 11/6/2024) Modified on 11/6/2024 (tsh, COURT STAFF). (Entered: 11/06/2024) |
| 11/13/2024 | 29 | NOTICE of Change of Address by Jennifer A. Golinveaux (Golinveaux, Jennifer) (Filed on 11/13/2024) (Entered: 11/13/2024) |
| 11/15/2024 | 30 | OPPOSITION/RESPONSE to (re 10 MOTION for a Preliminary Injunction ) filed by Apple Inc.. (Attachments: # 1 Declaration of Jennifer Milici in Support, # 2 Exhibit 1 to the Declaration of Jennifer Milici, # 3 Exhibit 2 to the Declaration of Jennifer Milici, # 4 Exhibit 3 to the Declaration of Jennifer Milici, # 5 Exhibit 4 to the Declaration of Jennifer Milici, # 6 Exhibit 5 to the Declaration of Jennifer Milici, # 7 Exhibit 6 to the Declaration of Jennifer Milici, # 8 Declaration of Violet Evan-Karimian in Support, # 9 Exhibit 1 to the Declaration of Violet Evan-Karimian, # 10 Exhibit 2 to the Declaration of Violet Evan-Karimian, # 11 Exhibit 3 to the Declaration of Violet Evan-Karimian, # 12 Exhibit 4 to the Declaration of Violet Evan-Karimian, # 13 Exhibit 5 to the Declaration of Violet Evan-Karimian, # 14 Exhibit 6 to the Declaration of Violet Evan-Karimian)(Milici, Jennifer) (Filed on 11/15/2024) (Entered: 11/15/2024) |
| 12/06/2024 | 31 | REPLY (re 10 MOTION for Preliminary Injunction ) filed byMusi Inc.. (Attachments: # 1 Declaration of Aaron Wojnowski, # 2 Exhibit A to Declaration of Aaron Wojnowski, # 3 Exhibit B to Declaration of Aaron Wojnowski, # 4 Exhibit C to Declaration of Aaron Wojnowski, # 5 Exhibit D to Declaration of Aaron Wojnowski, # 6 Exhibit E to |

| | | |
|---|---|---|
| | | Declaration of Aaron Wojnowski, # 7 Exhibit F to Declaration of Aaron Wojnowski, # 8 Exhibit G to Declaration of Aaron Wojnowski, # 9 Exhibit H to Declaration of Aaron Wojnowski, # 10 Exhibit I to Declaration of Aaron Wojnowski, # 11 Exhibit J to Declaration of Aaron Wojnowski, # 12 Declaration of Jennifer A. Golinveaux, # 13 Exhibit 1 to Declaration of Jennifer A. Golinveaux, # 14 Exhibit 2 to Declaration of Jennifer A. Golinveaux, # 15 Exhibit 3 to Declaration of Jennifer A. Golinveaux, # 16 Exhibit 4 to Declaration of Jennifer A. Golinveaux)(Golinveaux, Jennifer) (Filed on 12/6/2024) (Entered: 12/06/2024) |
| 12/10/2024 | 32 | **ORDER RESETTING INITIAL CASE MANAGEMENT DEADLINES. Signed by Judge Eumi K. Lee on 12/10/2024. (lrt, COURT STAFF) (Filed on 12/10/2024) (Entered: 12/10/2024)** |
| 12/11/2024 | 33 | MOTION to Dismiss filed by Apple Inc.. Motion to Dismiss Hearing set for 4/16/2025 10:00 AM in San Jose, Courtroom 7, 4th Floor. Responses due by 1/22/2025. Replies due by 2/12/2025. (Attachments: # 1 Memorandum in Support, # 2 Proposed Order, # 3 Request for Judicial Notice in Support, # 4 Declaration of Jennifer Milici in Support, # 5 Exhibit 1)(Milici, Jennifer) (Filed on 12/11/2024) (Entered: 12/11/2024) |
| 12/20/2024 | 34 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *by Apple Inc.* (Johnstone, Christopher) (Filed on 12/20/2024) (Entered: 12/20/2024) |
| 12/20/2024 | 35 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *by Musi Inc.* (Golinveaux, Jennifer) (Filed on 12/20/2024) (Entered: 12/20/2024) |
| 01/02/2025 | 36 | JOINT CASE MANAGEMENT STATEMENT filed by Apple Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Johnstone, Christopher) (Filed on 1/2/2025) (Entered: 01/02/2025) |
| 01/09/2025 | 37 | **Minute Entry for proceedings held before Judge Eumi K Lee: Motion Hearing held on 1/9/2025. The Court heard argument on Musi's 10 Motion for Preliminary Injunction. The motion is denied without prejudice. Written order to issue.**<br><br>**Initial Case Management Conference and informal discovery conference held on 1/9/25. The parties shall continue to meet and confer regarding discovery. Case management order to issue.**<br><br>**Apple's 33 Motion to Dismiss is terminated as moot in light of Musi's forthcoming amended complaint. The motion hearing set for 4/16/25 is VACATED. An in-person hearing on Apple's anticipated motion to dismiss the amended complaint is set for 4/30/25 at 10:00 a.m.**<br><br>**Total Time in Court: 1:53 minutes.**<br>**Court Reporter: Lee-Anne Shortridge.**<br><br>**Plaintiff Attorney: Jennifer Golinveaux, Samantha Looker.**<br>**Defendant Attorney: Jennifer Milici, Christopher Johnstone.**<br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lrt, COURT STAFF) (Date Filed: 1/9/2025) (Entered: 01/09/2025)** |
| 01/09/2025 | 38 | **CASE MANAGEMENT & SCHEDULING ORDER. Signed by Judge Eumi K. Lee on 1/9/2025. (lrt, COURT STAFF) (Filed on 1/9/2025) (Entered: 01/09/2025)** |
| 01/09/2025 | 39 | TRANSCRIPT ORDER for proceedings held on 01/09/2025 before Judge Eumi K Lee by Apple Inc., for Court Reporter Lee-Anne Shortridge. (Johnstone, Christopher) (Filed on 1/9/2025) (Entered: 01/09/2025) |

| | | |
|---|---|---|
| 01/10/2025 | 40 | TRANSCRIPT ORDER for proceedings held on January 9, 2025 before Judge Eumi K Lee by Musi Inc., for Court Reporter Lee-Anne Shortridge. (Looker, Samantha) (Filed on 1/10/2025) (Entered: 01/10/2025) |
| 01/16/2025 | 41 | Transcript of Proceedings held on 1-9-25, before Judge Eumi K. Lee. Court Reporter Lee-Anne Shortridge, email: lee-anne_shortridge@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 39 Transcript Order ) Release of Transcript Restriction set for 4/16/2025. (Related documents(s) 39 ) (las, COURT STAFF) (Filed on 1/16/2025) (Entered: 01/16/2025) |
| 01/23/2025 | 42 | REQUEST for ADR Phone Conference (Golinveaux, Jennifer) (Filed on 1/23/2025) (Entered: 01/23/2025) |
| 01/24/2025 | 43 | ADR Clerk's Notice Setting ADR Phone Conference on Friday, January 31, 2025, at 10:00 AM Pacific time (1:00 PM Eastern time) via Zoom. Zoom credentials will be provided to the parties under separate cover. Please note that you must be logged into an ECF account of counsel of record in order to view this document. (af, COURT STAFF) (Filed on 1/24/2025) (Entered: 01/24/2025) |
| 01/30/2025 | 44 | **ORDER denying 10 Motion for Preliminary Injunction. Signed by Judge Eumi K. Lee. (lrt, COURT STAFF) (Filed on 1/30/2025) (Entered: 01/30/2025)** |
| 01/31/2025 | 45 | ADR Remark: ADR Phone Conference held on 1/31/2025, by Jill Kopeikin. (af, COURT STAFF) (Filed on 1/31/2025) *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Entered: 01/31/2025) |
| 02/20/2025 | 46 | Joint Discovery Letter Brief filed by Musi Inc.. (Golinveaux, Jennifer) (Filed on 2/20/2025) (Entered: 02/20/2025) |
| 02/20/2025 | 47 | CLERK'S NOTICE RE: 46 Joint Discovery Letter Brief.<br><br>Hearing set for 2/26/2025, at 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins.<br>Each party ordered to file proposed order on discovery disputes by 2/25 11:00 AM.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 2/20/2025) (Entered: 02/20/2025) |
| 02/21/2025 | 48 | STIPULATION WITH PROPOSED ORDER *for Protective Order Regarding the Disclosure and Use of Discovery Materials* filed by Apple Inc.. (Johnstone, Christopher) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/21/2025 | 49 | **STIPULATED PROTECTIVE ORDER Regarding the Disclosure and Use of Discovery Materials; Granting 48 . Signed by Judge Nathanael M. Cousins on 2/21/2025.** (lmh, COURT STAFF) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/25/2025 | 50 | Proposed Order re 46 Joint Discovery Letter Brief by Musi Inc.. (Golinveaux, Jennifer) (Filed on 2/25/2025) (Entered: 02/25/2025) |
| 02/25/2025 | 51 | Proposed Order re 46 Joint Discovery Letter Brief by Apple Inc.. (Johnstone, Christopher) (Filed on 2/25/2025) (Entered: 02/25/2025) |
| 02/26/2025 | 52 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins: Motion Hearing held on 2/26/2025 re 46 Motion for Discovery.** |

| | | |
|---|---|---|
| | | **- Musi's Request for Expedited Discovery, ECF No. 46 , is Granted-in-Part and Denied-in-part, as stated on the record. The central issue is whether the discovery sought is targeted, narrow, and proportional to the needs of the case under Fed. R. Civ. P. 26.**<br><br>**- The Court determined that witness Elizabeth Miles must be added as a custodian. Responsive non-privileged documents from Miles must be produced by 3/5/2025.**<br><br>**- The rest of the discovery is denied. An expedited privilege log, and custodial collection from the other seven (7) custodians would not be proportional, especially given Apple's proffered discovery production already underway.**<br><br>**- No fees or costs awarded.**<br><br>**Digital Recording Time: 11:38-11:42 AM; 12:08-12:46 PM.<br>Transcriber - Tara Jauregui, email: echoreporting@yahoo.com**<br><br>**Plaintiff Attorney: Samantha Looker, Jeffrey Wilkerson.<br>Defendant Attorney: Christopher Johnstone, Jennifer Milici.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (crr, COURT STAFF) (Date Filed: 2/26/2025) Modified on 3/5/2025 (lmh, COURT STAFF). (Entered: 02/26/2025)** |
| 02/26/2025 | 53 | TRANSCRIPT ORDER for proceedings held on 02/26/2025 before Magistrate Judge Nathanael M. Cousins by Apple Inc., for Recorded Proceeding - San Jose. (Johnstone, Christopher) (Filed on 2/26/2025). **Transcriber - Tara Jauregui, email: echoreporting@yahoo.com**. Modified on 2/26/2025 (jcf, COURT STAFF). (Entered: 02/26/2025) |
| 02/26/2025 | 54 | TRANSCRIPT ORDER for proceedings held on 02/26/2025 before Magistrate Judge Nathanael M. Cousins by Musi Inc., for Recorded Proceeding - San Jose. (Looker, Samantha) (Filed on 2/26/2025) **Transcriber - Tara Jauregui, email: echoreporting@yahoo.com** Modified on 2/27/2025 (lmh, COURT STAFF). (Entered: 02/26/2025) |
| 02/27/2025 | 55 | STIPULATION WITH PROPOSED ORDER *Regarding Electronically-Stored Information* filed by Apple Inc.. (Johnstone, Christopher) (Filed on 2/27/2025) (Entered: 02/27/2025) |
| 02/27/2025 | 56 | **ESI STIPULATION AND ORDER; Granting 55 . Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 2/27/2025) (Entered: 02/27/2025) |
| 02/28/2025 | 57 | Transcript of Proceedings held on 02/26/25, before Judge Nathanael Cousins. Court Reporter/Transcriber Echo Reporting, Inc., telephone number echoreporting@yahoo.com. Tape Number: 11:38 - 11:42. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Redaction Request due 3/21/2025. Redacted Transcript Deadline set for 3/31/2025. Release of Transcript Restriction set for 5/29/2025. (Jauregui, Tara) (Filed on 2/28/2025) (Entered: 02/28/2025) |

| | | |
|---|---|---|
| 03/01/2025 | 58 | Joint Discovery Letter Brief filed by Apple Inc.. (Milici, Jennifer) (Filed on 3/1/2025) (Entered: 03/01/2025) |
| 03/02/2025 | 59 | **Order denying 58 Apple's request for a protective order in Discovery Letter Brief entered by Magistrate Judge Nathanael M. Cousins. This Order finds that the time-limited (3 hours each) depositions of Singh and Evan-Karimian are relevant and proportional to the needs of the case, especially considering that the Court in Dkt. No. 52 denied discovery from additional Apple witnesses. No fees or costs awarded. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Entered: 03/02/2025)** |
| 03/04/2025 | 60 | STIPULATION WITH PROPOSED ORDER *to Extend Time and Amend Briefing Schedule Pursuant to L.R. 6-2* filed by Musi Inc.. (Golinveaux, Jennifer) (Filed on 3/4/2025) (Entered: 03/04/2025) |
| 03/04/2025 | 61 | **ORDER granting 60 Stipulation FOR EXTENSION OF TIME PURSUANT TO CIVIL LOCAL RULE 6- 2. Signed by Judge Eumi K. Lee.(lrt, COURT STAFF) (Filed on 3/4/2025) (Entered: 03/04/2025)** |
| 03/12/2025 | 62 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Musi Inc.. (Attachments: # 1 Proposed Order, # 2 Unredacted Version of the First Amended Complaint, # 3 Unredacted Version of the Redlined First Amended Complaint) (Golinveaux, Jennifer) (Filed on 3/12/2025) (Entered: 03/12/2025) |
| 03/12/2025 | 63 | FIRST AMENDED COMPLAINT AND JURY TRIAL DEMANDED *(Redacted)* against Apple Inc.. Filed by Musi Inc.. (Attachments: # 1 Redlined First Amended Complaint (Redacted), # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Golinveaux, Jennifer) (Filed on 3/12/2025) (Entered: 03/12/2025) |
| 03/12/2025 | 64 | CERTIFICATE OF SERVICE by Musi Inc. re 62 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (Golinveaux, Jennifer) (Filed on 3/12/2025) (Entered: 03/12/2025) |
| 03/19/2025 | 65 | STATEMENT IN RESPONSE to re 62 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Apple Inc.. (Johnstone, Christopher) (Filed on 3/19/2025) (Entered: 03/19/2025) |
| 03/21/2025 | 66 | **ORDER denying 62 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed. Signed by Judge Eumi K. Lee. (lrt, COURT STAFF) (Filed on 3/21/2025) (Entered: 03/21/2025)** |
| 03/21/2025 | 67 | FIRST AMENDED COMPLAINT - *First Amended Complaint for Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of Contract (Unredacted) (Refiled Pursuant to 66 Order; Originally filed at 63)* against Apple Inc.. Filed by Musi Inc.. (Attachments: # 1 Redlined First Amended Complaint (Unredacted) (Refiled Pursuant to 66 Order; Originally filed at 63-1, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Golinveaux, Jennifer) (Filed on 3/21/2025) (Entered: 03/21/2025) |
| 03/25/2025 | 68 | MOTION to Dismiss filed by Apple Inc.. Motion to Dismiss Hearing set for 4/30/2025 10:00 AM in San Jose, Courtroom 7, 4th Floor. Responses due by 4/7/2025. Replies due by 4/16/2025. (Attachments: # 1 Memorandum of Points and Authorities in Support, # 2 Proposed Order, # 3 Request for Judicial Notice in Support, # 4 Declaration of Jennifer Milici in Support of Motion to Dismiss, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5)(Milici, Jennifer) (Filed on 3/25/2025) (Entered: 03/25/2025) |