**No. 26-2892**

***In the***

# United States Court of Appeals

***for the***

# Ninth Circuit

---

WINSTON TAYLOR LLP,

*Appellant*,

– v. –

APPLE INC.,

*Defendant-Appellee.*

---

On appeal from a final judgment of the
United States District Court for the Northern District of California
Case No. 5:24-cv-6920 (District Judge Eumi K. Lee)

---

**APPELLANT'S EXCERPTS OF RECORD**
**VOLUME 2 OF 3**

---

JEFF WILKERSON
*Winston Taylor LLP*
*300 S. Tryon Street*
*Charlotte, NC 28202*
*(704) 350-7700*

MICHAEL B. KIMBERLY
*Winston Taylor LLP*
*1901 L Street NW*
*Washington, DC 20036*
*(202) 282-5000*

*Counsel for Appellant*
*Winston Taylor LLP*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MUSI INC.,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 24-cv-06920-EKL

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 68

This action arises out of Defendant Apple Inc.'s decision to remove Plaintiff Musi Inc.'s music streaming application ("Musi app") from the App Store following third-party complaints that the app violates intellectual property rights. Musi claims that Apple breached the Developer Program License Agreement ("DPLA"), which governs the relationship between Apple and software developers, and that Apple breached the implied covenant of good faith and fair dealing. Apple moves to dismiss, primarily arguing that it had an express contractual right to remove the Musi app from its App Store. *See* Mot. to Dismiss, ECF No. 68. The Court reviewed the briefs and relevant law and heard argument on the motion. For the following reasons, Apple's motion to dismiss is GRANTED, and Musi's complaint is DISMISSED with prejudice.

## I. BACKGROUND

### A. Factual Background[1]

Musi is "the developer, owner, and operator of the Musi app," which draws from "publicly available content on YouTube's website." First Am. Compl. ¶ 2, ECF No. 67 ("FAC"). The Musi app was downloadable through the App Store – "an online marketplace for apps" – for years until

[1] These facts are drawn from the allegations in the complaint, documents attached to the complaint – including the DPLA – and documents that are incorporated by reference. *See infra* Section I.C.

United States District Court
Northern District of California

it was removed by Apple in September 2024. *Id.*

Both Musi and Apple had received complaints about the Musi app for years before it was ultimately removed from the App Store. These complaints alleged that the Musi app infringed third-party intellectual property rights or violated certain terms of service. For example, in April 2021, YouTube complained to Apple and Musi that "the Musi app violated YouTube's Terms of Service because (1) the Musi app accessed and used YouTube's non-public interfaces; (2) the Musi app used the service for a commercial use; and (3) the Musi app violated YouTube's prohibition on the sale of advertising 'on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales.'" FAC ¶ 40; *see also* Milici Decl. Ex. 3, ECF No. 68-7. Musi "addressed these concerns" by denying them, and by arguing that it was justified in selling advertising over YouTube content streamed through the Musi app. FAC ¶ 41; *see also* Golinveaux Reply Decl. Ex. 1 at 2, ECF No. 31-13. YouTube renewed its complaint to Apple in March 2023, but it was not resolved. *See* FAC ¶ 42.

In 2024, "Apple was facing mounting pressure from the music industry," which had made other "unsuccessful attempts to remove the Musi app from the App Store." *Id.* ¶¶ 6-7. In April 2024, "several music-industry players" escalated their complaints directly to Apple "to demand Musi's removal" from the App Store. *Id.* ¶ 8. Musi focuses on a complaint from Sony Music Entertainment ("SME" or "Sony"). *Id.* ¶ 44. Sony's letter to Apple states:

> I am reaching out to see whether you might be able to help us identify a path forward in our efforts to have the Musi app removed from the Apple app store. The Musi app sources SME music content from YouTube without SME authorization by circumventing YouTube's technical protection measures (i.e., rolling cypher). We have worked with YouTube to remove API access from Musi, but the app finds ways to access our content through technological means that are more difficult for Google to action. The app is not available in the Google App store. It would be helpful to understand what Apple may need to make a decision to remove the app from the storefront. We are not aware that Musi pays any of the creators or rightsholders whose music they make available in their app.
>
> The IFPI (our international trade association) has participated in Apple's mitigation process with Musi for several years. All indications are that the conversations have not been productive or lead to resolution. SME is considering other enforcement options, but it would be helpful to understand if additional enforcement measures would move the needle for purposes of Apple and the App Store. Ideally, we would like to establish a line of communication around unlicensed music apps. If you might be able to facilitate appropriate introductions, it would be very helpful.



United States District Court
Northern District of California

Milici Decl. Ex. 2, ECF No. 68-6 (emphasis added).

Musi claims that, in order to appease Sony and Apple's other "friends in the music industry," Apple "solicited YouTube to resurrect its" prior disputes regarding the Musi app. FAC ¶ 8. Musi further asserts that Apple "solicited a letter of support for YouTube's supposed complaint" from the National Music Publishers' Association ("NMPA"), and that this letter "was littered with falsehoods, including factual claims that Apple *knew* to be false." FAC ¶ 9. The NMPA letter states that "Musi is an audio streaming app that leeches its content offerings from YouTube's Application Programming Interface ('API') to avoid paying copyright licensing fees. The app offers an alternative user interface for accessing the entire YouTube video library, except with ads served by Musi rather than YouTube." Milici Decl. Ex. 4 at 1, ECF No. 68-8. The NMPA expressed concern that the Musi app's "ad manipulation serves to undermine NMPA members' various YouTube licensing structures." *Id.* The NMPA letter attached purported evidence of Musi's use of YouTube's API. *Id.* at 4-5. The NMPA letter also included analysis of Musi's software code to demonstrate how "Musi lays its own ads over YouTube's ads." *Id.* at 4. As noted above, Musi disputes that it uses YouTube's API, but does not dispute that the Musi app plays and displays YouTube content and sells advertising that displays over the YouTube content. *See* FAC ¶ 37; *see also* Golinveaux Reply Decl. Ex. 1 at 2.

On August 8, 2024, Apple notified Musi that it received a complaint from YouTube on July 29, 2024, alleging that the Musi app infringes YouTube's intellectual property rights and violates its terms of service. FAC Ex. C at 1-2, ECF No. 67-4. The notice informed Musi that failure to respond to YouTube "or to take steps toward resolving [the] dispute may lead to removal of the app(s)" from the App Store. *Id.* at 2. On August 12, 2024, Musi responded to Apple that it believed YouTube's claims were "unsubstantiated." FAC Ex. D at 3, ECF No. 67-5. On August 14, 2024, Apple noted that the dispute was "still not resolved," and it instructed Musi again to "contact YouTube Legal immediately regarding this issue." *Id.* at 2. On September 6, 2024, YouTube wrote to Apple: "Musi has not reached out to us . . . and [the Musi] app continues to violate our Terms of Service. We request that you please proceed with removing [the Musi] app from the App Store." *Id.* Finally, after receiving this email, Musi contacted YouTube directly on

September 6, 2024, and repeated its position that the Musi app complies with YouTube's terms. FAC Ex. E at 1, ECF No. 67-6.

On September 18, 2024, Apple notified Musi that if the YouTube dispute "is not resolved shortly, Apple may be forced to pull your application(s) from the App Store." FAC Ex. F at 3, ECF No. 67-7. But Musi did not commit to changing the Musi app to address YouTube's complaint. Instead, Musi argued to Apple that YouTube did not provide "any details to substantiate its complaint." *Id*. at 1-2. On September 24, 2024, Apple removed the Musi app from the App Store. Apple reminded Musi that it was Musi's responsibility "to resolve the matter directly with [YouTube], or risk removal of [the Musi] app from the App Store." FAC Ex. G at 1, ECF No. 67-8. Because Musi failed to resolve YouTube's complaint, Apple removed the Musi app from the App Store "on the basis of intellectual property infringement." *Id*. at 1.

**B. Procedural History**

Musi initiated this action on October 2, 2024, asserting breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Compl. ¶¶ 43-54, ECF No. 1. On October 9, 2024, Musi filed a motion for preliminary injunction. *See* ECF No. 10. The preliminary injunction sought to prevent Apple "from refusing to list or otherwise making unavailable the Musi app from the App Store." Proposed Order at 2, ECF No. 10-22. The parties stipulated to defer Apple's deadline to file a motion to dismiss until after the close of briefing on Musi's motion for preliminary injunction. *See* Stip. at 2, ECF No. 25; *see also* Order, ECF No. 26 (granting stipulation with slight modification). Briefing on the motion for preliminary injunction closed on December 6, 2024, and Apple filed its motion to dismiss Musi's original complaint on December 11, 2024. *See* ECF Nos. 31, 33.

In advance of the initial case management conference and hearing on Musi's motion for preliminary injunction, Musi stated that it "may amend its complaint" because Apple's submissions in connection with the preliminary injunction briefing "revealed highly relevant facts previously unknown to Musi." Joint Case Mgmt. Statement at 9, ECF No. 36. Apple contended that "Musi's legal theory cannot be remedied through amendment" because "Apple acted within its express contractual rights in removing the Musi app from the App Store." *Id*. Consistent with

United States District Court
Northern District of California

that position, Apple asked the Court to stay discovery pending a ruling on its then-pending motion to dismiss. *Id*. at 14. Apple argued that no discovery was needed because Musi's claims fail based on the "plain language" of the DPLA. *Id*. at 17. Musi vigorously opposed a discovery stay. *See id*. at 9-14. Musi acknowledged that Apple's motion to dismiss was potentially dispositive of the case but argued that discovery was needed to probe Apple's claimed reasons for removing the Musi app from the App Store. *See id*. at 10-12.

On January 9, 2025, the Court heard argument on Musi's motion for preliminary injunction and denied the motion with a written order to follow. 1/9/25 Hr'g Tr. 47:3-48:17, ECF No. 41. After issuing its ruling, the Court held an initial case management conference, at which Apple repeated its request to stay discovery, and Musi renewed its request for leave to amend the complaint. *See id*. 49:15-21, 55:18-57:9. The Court granted Musi leave to amend the complaint in light of new information that Apple had relied on to oppose the motion for a preliminary injunction.[2] The Court also terminated Apple's then-pending motion to dismiss as moot in light of the Court's order granting Musi leave to amend the complaint. *See id*. 60:8-19. The Court set a deadline of March 10, 2025, for Musi to file an amended complaint. Case Mgmt. & Scheduling Order at 2, ECF No. 38.

The parties commenced discovery, and pursuant to the Court's instruction, prioritized issues relevant to Musi's amendments to the complaint. *See, e.g.,* 1/9/25 Hr'g Tr. 73:6-13. The parties raised two discovery disputes to Magistrate Judge Cousins. Judge Cousins granted in part Musi's motion to compel Apple to produce documents from an additional custodian on an expedited basis. *See* Min. Entry, ECF No. 52. Judge Cousins also denied Apple's motion for a protective order, thus permitting Musi to take the depositions of two key Apple employees. *See* Min. Entry, ECF No. 59. The parties stipulated to further extend Musi's deadline to amend the complaint to March 12, 2025, so Musi could complete the depositions and use the testimony to amend the complaint. *See* Order Granting Stip., ECF No. 61 (granting extension in light of

[2] Musi needed leave of court to amend because its time to amend as a matter of course had expired. Musi did not amend its complaint within 21 days after Apple served its motion to dismiss on December 11, 2024. *See* Fed. R. Civ. P. 15(a)(1).

depositions scheduled for March 6 and 7, 2025). In sum, when Musi amended the complaint, it had access to more than 3,500 documents produced by Apple, responses to interrogatories and requests for admission, and deposition testimony from two Apple witnesses. *See* Joint Disc. Letter Br. at 1, ECF No. 58.

**C. Request for Judicial Notice**

When deciding a Rule 12(b)(6) motion, courts generally do not consider material outside of the pleadings. *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011). However, courts may consider "documents incorporated in the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Incorporation by reference "treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Additionally, courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Apple asks the Court to consider five documents in connection with its motion to dismiss. *See* Req. for Judicial Notice, ECF No. 68-3 ("RJN"). Exhibit 1 is a copy of the Apple Developer Agreement, which is a separate document from the DPLA. Milici Decl. Ex. 1, ECF No. 68-5. Musi opposes Apple's request. *See* Opp. at 3 n.1, ECF No. 69. The Court will not consider this document because the DPLA is dispositive of Apple's motion to dismiss as explained below. Thus, Apple's request is denied as moot.

Exhibit 2 is the email from a Sony Music representative to Apple, described above. Milici Decl. Ex. 2. This document is incorporated by reference in the complaint because Musi's claim relies on it to explain why Apple allegedly acted in bad faith. *See* FAC ¶¶ 1, 8, 11, 44. Musi does not dispute that the Sony email is incorporated by reference. Musi also cites this document in its

opposition brief. *See* Opp. at 15. Accordingly, the Court will consider Exhibit 2.

Exhibit 3 is a cease-and-desist email from YouTube to Musi dated April 22, 2021, described above. Milici Decl. Ex. 3. This document is also incorporated by reference in the complaint. *See* FAC ¶¶ 4, 40. Musi relies upon this exchange as proof that it responded to YouTube's complaints in the past, and that therefore YouTube had no basis to maintain its complaints in 2024. Musi criticizes Apple for asking the Court to consider this email without considering Musi's response letter, which Musi describes in the complaint and relies upon to oppose Apple's motion to dismiss. *See* Opp. at 15. To resolve this objection, the Court will also consider Musi's response letter dated May 5, 2021. *See* Golinveaux Reply Decl. Ex. 1. Musi's letter is incorporated by reference in the complaint because Musi relies on its response to YouTube to support its allegations of bad faith. *E.g.*, FAC ¶¶ 4, 41, 43.

Exhibit 4 is the letter from the NMPA to Apple providing purported evidence of Musi's infringement and violation of YouTube policies, described above. Milici Decl. Ex. 4. This document is also incorporated by reference in the complaint. *See* FAC ¶¶ 1, 9, 10, 50-52. This document is key to Musi's claim of bad faith because Musi claims that Apple solicited the NMPA letter as a pretext, and that Apple knew the NMPA letter contained false information. Musi does not dispute that the Court may consider this document.

Exhibit 5 is the YouTube Terms of Service. Milici Decl. Ex. 5, ECF No. 68-9. Although not material to the Court's analysis below, the Terms of Service are also incorporated by reference in the complaint because Musi's claimed compliance with them forms part of the basis for its claim that Apple lacked a reasonable belief to remove the Musi app from the App Store. FAC ¶¶ 1, 4-5, 38-40, 42, 48-49, 53.

In sum, Apple's request for judicial notice is GRANTED as to Exhibits 2 through 5, but DENIED as to Exhibit 1.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

## III. DISCUSSION

Apple moves to dismiss, relying primarily on its contractual right to remove the Musi app from the App Store. The Court first summarizes the key terms of the DPLA, then addresses Musi's claims for breach of contract and breach of the implied covenant of good faith and fair dealing in turn.

### A. Terms of the DPLA

The DPLA outlines the terms under which a developer like Musi may use certain Apple Software to develop an application for use on Apple devices. The stated purpose of the DPLA is to facilitate development of applications "for Apple-branded products." *Id.* at 1. To that end, Apple grants developers "a limited license to use the Apple Software and Services . . . to develop and test [their] Applications on the terms and conditions set forth in [the DPLA]." *Id.* "Either party may terminate [the DPLA] for its convenience, for any reason or no reason, effective 30 days after providing the other party with written notice of its intent to terminate." *Id.* § 11.2.

The DPLA also provides that some applications may be distributed through the App Store, but "only if selected by Apple (in its sole discretion)." *Id.* § 3.2(g); *see also id.* at 1 ("Applications developed under this Agreement . . . can be distributed[] through the App Store, if selected by Apple[.]"). Apple "may, in its sole discretion . . . reject [an] Application for distribution for any reason." *Id.* § 6.9. Distribution of applications through the App Store is "subject to the distribution terms contained in Schedule 1" to the DPLA. *Id.* at 1. Schedule 1 provides that, after

United States District Court
Northern District of California

an application is accepted by Apple for distribution through the App Store, both Apple and the developer have the right to remove the application from the App Store at any time. "Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to [the developer]." DPLA Schedule 1 § 6.3. Likewise, a developer "may withdraw any or all of the Licensed Applications from the App Store . . . at any time, and for any reason[.]" *Id.* § 6.4.

The DPLA also includes provisions relating to intellectual property rights and disputes that may arise with respect to applications offered through the App Store. Developers agree not to "violate, misappropriate, or infringe any Apple or third-party copyrights, trademarks, rights of privacy and publicity, trade secrets, patents, or other proprietary or legal rights." *Id.* § 3.2(d). "[I]n the event a dispute arises over the content" of an application, the developer must "permit Apple to share [its] contact information with the party filing such dispute" and "follow Apple's app dispute process on a non-exclusive basis and without any party waiving its legal rights." DPLA Schedule 1 § 4.1(g).

In sum, these provisions establish that the DPLA is mutually terminable by either party, and applications may be removed from the App Store by either party, upon satisfying the relevant notice requirements. The DPLA also establishes a non-exclusive dispute process that a developer must follow in response to complaints.

**B. Breach of Contract**

Musi's breach of contract claim requires "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). A contract must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. The contract's language governs if it is "clear and explicit." *Id.* § 1638.

Musi fails to plausibly allege that Apple breached the DPLA by removing the Musi app from the App Store. Relevant here, the DPLA includes the following provision regarding Apple's right to remove an application from its App Store offerings:



United States District Court
Northern District of California

> Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 6.3, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based [on] human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: (i) those Licensed Applications are not authorized for export to one or more of the regions designated by You under Section 2.1 hereof, in accordance with the Export Administration Regulations or other restrictions; (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party; (iii) the distribution and/or use of those Licensed Applications violates any applicable law in any region You designate under Section 2.1 of this Schedule 1; (iv) You have violated the terms of the Agreement, this Schedule 1, or other documentation including without limitation the App Review Guidelines; or (v) You or anyone representing You or Your company are subject to sanctions of any region in which Apple operates. An election by Apple to cease allowing download of any Licensed Applications, pursuant to this Section 6.3, shall not relieve You of Your obligations under this Schedule 1.

DPLA Schedule 1 § 6.3 (emphasis added).

The plain language of the DPLA governs because it is clear and explicit: Apple may "cease marketing, offering, and allowing download by end-users of the [Musi app] at any time, with or without cause, by providing notice of termination." *Id*. Based on this language, Apple had the right to cease offering the Musi app without cause if Apple provided notice to Musi. The complaint alleges, and Musi does not dispute, that Apple gave Musi the required notice. FAC ¶¶ 3, 56.[3] Therefore, Apple's decision to remove the Musi app from the App Store did not breach the DPLA.

Musi contends that more was required of Apple. Musi points to other language in the DPLA, which provides that "Apple may cease allowing download by end-users . . . if Apple

[3] Several documents that Musi attached to the amended complaint reflect that Apple provided notice that the Musi app would be removed from the App Store if Musi did not resolve YouTube's complaint promptly. *See* FAC Ex. C at 1-2 (notifying Musi on August 8, 2024, that "[d]evelopers with a history of allegations of repeat infringement . . . are at risk of termination from the Developer Program" and that "[f]ailure to . . . take steps toward resolving a dispute may lead to removal of the app(s) at issue"); FAC Ex. F at 2-3 (notifying Musi on September 18, 2024, that "[i]f the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store"); FAC Ex. G at 1 (notifying Musi on September 24, 2024, that the Musi app "will be removed from the App Store on the basis of intellectual property infringement").

reasonably believes, based [on] human and/or systematic review," that an application infringes intellectual property rights. DPLA Schedule 1 § 6.3 (emphasis added). Musi proposes that this "reasonable belief" clause limits Apple's right to cease offering an application "at any time, with or without cause." According to Musi, Apple was required to (1) conduct a "human and/or systematic review" of YouTube's complaint, and (2) based on that review, form a reasonable belief that the Musi app infringed intellectual property rights. Opp. at 7.

The problem with Musi's construction of the DPLA is that the "reasonable belief" clause expressly does not "limit[] the generality" of Apple's right to cease offering an application "at any time, with or without cause." DPLA Schedule 1 § 6.3 ("Without limiting the generality of this Section 6.3 . . . ."). When a contract's plain language expressly states that a clause is not limiting, a court should not construe the clause as a limitation. *See FTC v. EDebitPay, LLC*, 695 F.3d 938, 943 (9th Cir. 2012) (holding that the phrase "including but not limited to" is a "phrase of enlargement" indicating that "enumerated examples following the phrase should not be construed as an exhaustive listing"); *see also Marder v. Lopez*, 450 F.3d 445, 451-52 (9th Cir. 2006). Musi argues that the "reasonable belief" clause is superfluous if it has no limiting effect. Opp. at 7. But it is neither superfluous nor unusual for a contract to list non-exhaustive examples of a general provision. *See EDebitPay*, 695 F.3d at 943. By contrast, Musi's preferred interpretation would render the primary clause – that Apple may act "with or without cause" – superfluous.[4]

Judge Cousins' opinion in *Intango, Ltd. v. Mozilla Corp.* is instructive. No. 20-cv-02688-NC, 2020 WL 12584274 (N.D. Cal. Aug. 25, 2020). In that case, the plaintiff made add-ons for Mozilla's Firefox browser. Mozilla disabled the plaintiff's add-ons because they allegedly

[4] Listing specific termination conditions in Schedule 1 § 6.3 is also consistent with the overall structure of Schedule 1. Section 6.3 states that Apple may cease allowing downloads of an application if Apple reasonably believes, or upon receiving notice, that the application is not authorized for export or infringes intellectual property rights, that distribution of the application violates any law, or that the developer has violated the DPLA or other documentation. These conditions mirror the other terms in Schedule 1. For example, Schedule 1 § 2.3 requires developers to certify compliance with export requirements. Schedule 1 § 4.1 requires developers to warrant that their applications do not violate or infringe any intellectual property rights. Schedule 1 § 4.1 also requires developers to warrant that their applications do not contain any material that is "prohibited or restricted under the laws or regulations" of any region in which the application will be distributed. In sum, Section 6.3 identifies the consequences that may follow if a developer violates other terms in Schedule 1, without limiting Apple's rights otherwise.

violated Mozilla's distribution agreement by "secretly redirecting its users' internet searches and tracking its users' search activity." *Id.* at *1. Mozilla's distribution agreement provided that:

> Mozilla reserves the right (though not the obligation) to, in [Mozilla's] sole discretion, remove or revoke access to any Listed or Unlisted Add-ons. This applies, but is not limited to, Add-ons that, in [Mozilla's] reasonable opinion, violate this Agreement or the law, any applicable Mozilla policy, or is in any way harmful or objectionable. In addition, [Mozilla] may at any time remove Your Add-on from AMO; revoke Your Mozilla Certificate; blocklist an Add-on; delete your AMO account; flag, filter, modify related materials (including but not limited to descriptions, screenshots, or metadata); reclassify the Add-on; or take other corrective action.

*Id.* at *6 (emphasis added). This language, including the provision that Mozilla "may at any time remove" add-ons, gave Mozilla broad discretion to remove the plaintiff's add-on. Judge Cousins held that Mozilla's right to remove add-ons was expressly "'not limited to' situations where Mozilla found that the add-on violates Mozilla policy." *Id.* The same is true here. The DPLA provides example circumstances under which Apple may cease offering an application, and those examples do not limit the broad discretion that Apple reserved for itself.

Musi relies on *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008), to argue that the "reasonable belief" clause limits Apple's rights. *Nygard* is inapposite. In that case, a company alleged that its former employee violated a confidentiality agreement by making statements about the employee's working conditions. *Id.* at 1046. The confidentiality agreement prohibited the former employee from disclosing "any information, knowledge or data of the Company." *Id.* at 1044. The court reasoned that this phrase was "susceptible of more than one interpretation," so it "must be construed in light of the kinds of protected information enumerated in the sentence that follows." *Id.* at 1046 & n.5. By contrast, the clause in the DPLA that Musi seeks to limit is unambiguous: It provides that Apple may cease offering an application "at any time, with or without cause." DPLA Schedule 1 § 6.3. There is simply no textual basis in the DPLA to construe a limitation on Apple's right to cease offering an application, as long as Apple provided notice – which it did.[5] Accordingly, Musi's breach of contract claim is dismissed.

---

[5] Musi also argues that the "app dispute process" described in Section 4.1(g) of the DPLA would be "redundant" if Apple could unilaterally remove an application from the App Store. Opp. at 7.

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Musi also claims that Apple violated the covenant of good faith and fair dealing. A claim for breach of the implied covenant of good faith and fair dealing requires "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act." *VFLA Eventco, LLC v. William Morris Endeavor Ent., LLC*, 100 Cal. App. 5th 287, 312-13 (2024) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).

Although a plaintiff need not identify a "breach of a specific provision of [a] contract" to state a claim, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) (in bank). It follows that the implied covenant cannot require action that contradicts the rights and obligations set forth by a contract's express terms. The Supreme Court of California has observed: "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." *Id.* at 373-74; *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) ("Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" (quoting *Carma*, 2 Cal. 4th at 374)).

Here, Musi has not plausibly alleged that Apple breached an implied covenant. Based on the plain language of the DPLA, Apple had the express right to remove the Musi app from the App Store "at any time, with or without cause." DPLA Schedule 1 § 6.3. The covenant of good faith and fair dealing cannot impose an obligation on Apple that contradicts this express term.

---

But this provision imposes an obligation on ***Musi***, not on Apple, and it expressly does not waive Apple's rights. DPLA Schedule 1 § 4.1(g) (requiring developers "to permit Apple to share [their] contact information with the party filing [a] dispute and to follow Apple's app dispute process on a non-exclusive basis and without any party waiving its legal rights"). There is nothing redundant about requiring a developer to agree to follow a platform's informal dispute process, while also reserving a general right to remove an application – particularly if disputes persist.



United States District Court
Northern District of California

*Carma*, 2 Cal. 4th at 373-74; *see also Intango*, 2020 WL 12584274, at *7 (holding that a claim for beach of the implied covenant was "precluded by the specific terms" of the agreement, which permitted defendant to remove plaintiff's browser add-ons "at any time").

Musi argues that the Court must read into the DPLA an undefined constraint on Apple's right to cease offering an application through the App Store. Opp. at 9. It is true that, "where one party is invested with a discretionary power affecting the rights of another," that power "must be exercised in good faith." *Carma*, 2 Cal. 4th at 372. But "courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995). Here, there is no need to imply a further limitation on Apple's termination rights because "a contract with a mutual termination provision is not illusory when conditioned on notice." *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1063 (2010). That is precisely the structure of the DPLA, which provides parallel and mutual termination rights to both Musi and Apple upon notice to the other party. DPLA § 11.2; DPLA Schedule 1 §§ 6.3, 6.4.

Imposing a further limitation on Apple's termination rights would also frustrate the purpose of the DPLA and contradict its express terms. The purpose of the DPLA is to provide developers with a limited, non-exclusive license to use Apple software to develop and test applications, and to create a distribution arrangement that is mutually terminable at will. DPLA §§ 1, 3.2(g), 6.9. Just as Apple may remove an application from the App Store at any time by providing notice, so may a developer withdraw its application from the App Store at any time, and for any reason. DPLA Schedule 1 §§ 6.3, 6.4. Apple assumed no contractual obligation to continue distributing an application, and developers assumed no contractual obligation to continue offering an application – even if withdrawal of the application would disappoint Apple users, undermine the value of the App Store, or deprive Apple of commissions. Thus, the Court cannot imply an obligation on Apple to continue distributing the Musi app, or to continue overseeing an informal dispute process that, as acknowledged in the complaint, went nowhere.

The cases cited by Musi do not support its position. Instead, they demonstrate that courts will imply limits to a contract's express terms only under specific circumstances. For example, *Chodos v. West Publishing Co.*, 292 F.3d 992 (9th Cir. 2002), involved a contract between an author and a publisher. The author "spent a number of years fulfilling his part of the bargain and had submitted a completed manuscript" of a treatise. *Id*. at 994. But the publisher "declined to publish the treatise, citing solely sales and marketing reasons." *Id*. The Ninth Circuit held that, because the contract "obligate[d] the publisher to make a judgment as to the quality or literary merit of the author's work . . . it must make that judgment in good faith, and cannot reject a manuscript for other, unrelated reasons." *Id*. at 997. The agreement in *Chodos* is distinguishable because it "impose[d] numerous obligations on the author" but imposed no obligation on the publisher. *Id*. at 996-97. Because the contract required one party to perform, but permitted the author party to terminate at will, it lacked "mutuality of obligation" unless the publisher's discretion was "limited by its duty of good faith and fair dealing." *Id*. at 997. Here, by contrast, the DPLA's distribution arrangement is mutually terminable by Musi or Apple upon notice – which was given. Moreover, Apple has performed under the DPLA by distributing the Musi app through the App Store for years. FAC ¶¶ 2, 5, 23-25; *see Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) (holding that a policy "was not illusory because plaintiffs obtained the benefits of the policy while it was operable"). Therefore, the DPLA is not illusory because neither Musi nor Apple is required to unilaterally perform subject to the other party's termination and non-performance on a whim.

Musi's other authority is likewise unpersuasive. In *Reyes v. Wells Fargo Bank, N.A.*, the court rejected a bank's position that it could "foreclose on Plaintiffs' home at any time, without notifying Plaintiffs . . . even if Plaintiffs have complied with all the requirements of" the parties' forbearance agreement. No. C-10-01667 JCS, 2011 WL 30759, at *16 (N.D. Cal. Jan. 3, 2011). The court held that the forbearance agreement would be illusory if it granted the bank "sole discretion to terminate . . . at any time without notice to Plaintiffs." *Id*. Of course, permitting a bank to capriciously foreclose on a home while the homeowners were making the required payments would frustrate the very purpose of a forbearance agreement – *i.e.*, to stave off

foreclosure. *See id.* at *2. Nor does *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165 (2015), support Plaintiff's position. In *Serafin*, the court stated the uncontroversial proposition that an employer may not exercise its discretionary power to ***modify*** its employment policies and practices in bad faith. *Id.* at 176. But here, Musi does not allege that Apple unilaterally modified the terms of the DPLA. Instead, according to the complaint, Apple ceased offering the Musi app through the App Store based on the existing, mutual provision in the DPLA.[6]

Finally, even if the implied covenant of good faith and fair dealing limited Apple's termination rights, which it does not, Musi still fails to plausibly allege that Apple acted in bad faith. For present purposes, the Court accepts as true Musi's allegation that Apple knew that Musi did not violate YouTube's API Terms of Service.[7] Regardless, the complaint reflects that Apple was facing pressure from multiple music industry complaints. The letter from Sony expressly states that its trade organization (the IFPI) had already tried to resolve issues with Musi through the app dispute process, but Musi was not cooperating. Milici Decl. Ex. 2. Sony accused Musi of sourcing Sony music content without Sony's authorization, and without paying creators or rightsholders. *Id.* Sony also warned Apple that it was "considering other enforcement options" given that the app dispute process was not productive. *Id.* Thus, regardless of the YouTube dispute, Apple was in receipt of at least one other active complaint about the Musi app. The implied covenant of good faith did not require Apple to side with Musi in this dispute. Nor did the implied covenant require Apple to continue to oversee an informal dispute process in which Musi "responded" to complaints by denying them. In sum, Apple was not required to expose itself to legal claims by Sony or other rightsholders for Musi's benefit. This claim is dismissed.

[6] Musi's other authority is also inapposite. *See InfoStream Grp., Inc. v. PayPal, Inc.*, No. C 12-748 SI, 2012 WL 3731517, at *8 (N.D. Cal. Aug. 28, 2012) (Plaintiffs plausibly alleged "that PayPal acted in bad faith by terminating the [plaintiffs' account] for the sole purpose of benefitting plaintiffs' competitors."); *Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR, 2014 WL 3950671, at *2-3 (N.D. Cal. Aug. 11, 2014) (Plaintiff plausibly alleged bad faith based on alleged violations of the express terms of eBay's Buyer Protection Policy and other conduct that frustrated the plaintiff's legitimate expectations.).

[7] Apple moved for Rule 11 sanctions on the grounds that several key allegations in the amended complaint are factually baseless. That motion is addressed by a separate order. Here, the Court assumes the truth of well-pleaded allegations, regardless of their factual basis or lack thereof.

**D. Dismissal is Without Leave to Amend**

Generally, if dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). In assessing whether to grant leave to amend, courts consider the factors set forth in *Foman v. Davis,* including the plaintiff's failure to cure pleading deficiencies "by amendments previously allowed" and whether amendment would be futile. 371 U.S. 178, 182 (1962). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile).

Here, the Court denies further leave to amend because amendment would be futile in light of the legal deficiencies of Musi's claims. Additionally, Musi has not stated a claim even after the Court previously granted leave to amend and permitted two months of discovery.

Musi's claims fail as a matter of law for essentially the same reasons that Musi failed to show a likelihood of success at the preliminary injunction stage. Specifically, Musi's claim for breach of contract fails because Apple had the contractual right under the DPLA to cease offering the Musi app if it provided notice of termination, which it did. *See* Order Denying Mot. for Prelim. Inj. at 10-11, ECF No. 44 ("MPI Order"). Likewise, Musi's claim for breach of the implied covenant of good faith and fair dealing fails because the covenant does not impose obligations on Apple that contradict the express terms of the DPLA under these circumstances. *Id.* at 14-15. These are also the same issues Apple raised in its motion to dismiss the original complaint, which the Court terminated when it granted Musi leave to amend. *See* Mot. to Dismiss at 6-13, ECF No. 33-1. In sum, Musi has already had an opportunity to cure its pleading deficiencies, but it failed to do so. Because Musi's claims fail as a matter of law, further amendment would be futile. *See, e.g., Ofir v. Transam. Premier Life Ins. Co.*, 781 F. App'x 617,

619 (9th Cir. 2019) ("Amendment to add further factual allegations would have been futile given the legal deficiencies in [plaintiff's] theories of relief.").

At the motion hearing, Musi requested further leave to amend the complaint "to quote the specific deposition testimony and the additional documents" obtained in discovery to "provide even more detail" to support its theory of bad faith. 4/30/25 Hr'g Tr. 27:24-29:10, ECF No. 80; *see also* Opp. at 18 n.6. But Musi did not identify any facts that it could allege that are not already included in the amended complaint. *See id.* 28:23-29:19 (vaguely referencing "additional details" without identifying any). Nor has Musi identified any other facts that would be material in light of the plain language of the DPLA. Musi's failure to identify "any such fact in [its] briefing or argument" supports dismissal without leave to amend. *Dougherty v. City of Covina*, 654 F.3d 892, 901 (9th Cir. 2011); *see also Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (affirming denial of leave to amend because plaintiff "did not propose any new facts or legal theories for an amended complaint and therefore gave the Court no basis to allow an amendment"). Finally, Musi already had the deposition testimony and documents from Apple when it amended the complaint. Indeed, the Court further extended Musi's deadline to amend the complaint after discovery concluded so Musi could use Apple documents and witness testimony to amend the complaint, which Musi did. *See* Order Granting Stip. For all these reasons, dismissal is without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Apple's motion to dismiss is GRANTED. Musi's complaint is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: March 16, 2026

Eumi K. Lee
United States District Judge

10:28:56

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| MUSI, INC., | ) | CV-24-6920-EKL |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | JULY 31, 2025 |
| | ) | |
| APPLE, INC., | ) | PAGES 1-37 |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |
| ______________________________ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EUMI K. LEE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF: WINSTON & STRAWN LLP
101 CALIFORNIA STREET, 21ST FLOOR
SAN FRANCISCO, CA 94111
BY: JENNIFER A. GOLINVEAUX
SAMANTHA LOOKER

FOR THE DEFENDANT: WILMER CUTLER PICKERING HALE & DORR LLP
2100 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20037
BY: JENNIFER MILICI
LYDIA TURNAGE

OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

LET ME TRY TO EXPLAIN. I UNDERSTAND YOUR QUESTION PERFECTLY AND LET ME TRY TO UNDERSTAND THE THINKING BEHIND THE ALLEGATION AND THE RESPONSE HERE.

MY QUESTION IN DEPOSITION TO MS. EVAN KARIMIAN WAS SPECIFICALLY:

"QUESTION: SO AT THIS POINT IN TIME, APRIL 11, 2024, APPLE HAD BEEN INFORMED THAT YOUTUBE HAD REMOVED THE API ACCESS FROM MUSI, CORRECT?

"ANSWER: AT THIS POINT IN 2024, INDIVIDUALS AT APPLE WERE TOLD THAT GOOGLE HAD REMOVED THE API ACCESS FROM MUSI BUT THAT THE APP WAS STILL FINDING WAYS TO ACCESS GOOGLE SERVICES IN A WAY THAT WAS MORE DIFFICULT FOR GOOGLE TO ACTION."

THAT'S THE TESTIMONY. THAT'S WHAT WE WERE RELYING ON. AND SO THE FACTS -- I THINK THIS GOES FAR BEYOND WHAT IS NECESSARY TO SUPPORT THE ALLEGATION BECAUSE THE FACTS SHOW --

THE COURT: WHAT YOU JUST READ ACTUALLY, COUNSEL, SORT OF CUTS THE OTHER WAY, THEY WERE TOLD THAT THIS HAD HAPPENED. IT SAYS THEY ADMITTED THAT THIS WAS.

MS. GOLINVEAUX: YOUR HONOR, I THINK WHAT COUNSEL IS FOCUSED ON, WHAT PERHAPS WHAT YOUR QUESTION IS FOCUSED ON IS THERE IS SOME DAYLIGHT BETWEEN "WERE TOLD" AND "KNEW."

AND FOR PURPOSES OF A CHARACTERIZATION OF EVIDENCE IN A COMPLAINT, I RESPECTFULLY DISAGREE. THE WITNESS TESTIFIED AT THAT POINT IN TIME THAT THE INDIVIDUALS AT APPLE HAD BEEN TOLD THAT -- BY A SENIOR EXECUTIVE BY ONE OF THEIR INDUSTRY MUSIC

PARTNERS THAT MUSI WAS NOT USING THE API.

AND SO THE FACTS SPECIFICALLY SHOW THAT APPLE KNEW AT THAT POINT IN TIME IN APRIL OF 2024 THAT MUSI DIDN'T USE YOUTUBE'S API, WAS TOLD THAT BY SONY IN APRIL, AND BY MUSI EARLIER IN 2020, AND THAT APPLE EXPRESSLY ADMITTED RECEIVING THE E-MAIL FROM SONY IN APRIL 2024 SHOWING THAT MUSI COULD NOT USE YOUTUBE'S API BECAUSE GOOGLE HAD REMOVED THE ACCESS.

THE COURT: DRAWING AN ANALOGY TO THIS, YOU ARE SAYING IN A DOUBLE OR TRIPLE HEARSAY SCENARIO, THAT NO MATTER WHAT THAT INITIAL -- SOMEONE -- THAT THAT IS ACCEPTING ALL THE DIFFERENT LAYERS OF HEARSAY AS TRUE.

I MEAN, THAT IS BASICALLY WHAT -- ALL THEY ADMITTED TO WAS RECEIVING THE E-MAIL AT THAT POINT, THEY HADN'T ADMITTED TO THE TRUTH OR FALSE OF THE STATEMENTS EARLIER -- I'M STILL HAVING PROBLEMS ARTICULATING IT CLEARLY, BUT --

MS. GOLINVEAUX: I UNDERSTAND, YOUR HONOR.

I THINK THE CRUX OF IT HERE IS THAT THE WITNESS ADMITTED THAT INDIVIDUALS AT APPLE HAD BEEN TOLD AT THAT POINT IN TIME IN APRIL, BY THE SENIOR VICE PRESIDENT OF SONY, THAT THE APP WAS NOT USING THE API. THEY HAD BEEN TOLD THAT.

NOW THERE IS A FACT QUESTION, IF THEY WANT TO COME AND TRY TO DEVELOP A RECORD IN THE CASE THAT, WELL YEAH, THEY TOLD US THAT BUT WE DIDN'T BELIEVE IT, WE DIDN'T CREDIT IT, SO WE CREDITED INSTEAD THE NMPA EVIDENCE. THEY CAN DO THAT, BUT THAT'S A FACT ISSUE.

BUT YOU HAVE TO ASK YOURSELF, YOUR HONOR, WHY WAS MR. WALKER SAYING BECAUSE MUSI DOESN'T USE THE API, THIS IS AN ACTION THAT'S MORE DIFFICULT FOR GOOGLE TO ADDRESS, AND WHY WAS MS. MILES, IN HER RESPONSE TO MR. WALKER AFTER THEY HAD SUCCESSFULLY REMOVED THE APP, WHY WAS SHE CALLING THE REMOVAL "COMPLEX PROCESS-WISE."

THE COURT: SO MS. GOLINVEAUX, I WANT TO MAKE SURE WE GET TO ALL THE COURT'S QUESTIONS. SO THE OTHER QUESTION WAS IF THE COURT WERE TO FIND A RULE 11 VIOLATION AND AWARDS MONETARY SANCTIONS, HOW SHOULD THESE SANCTIONS BE ALLOCATED BETWEEN MUSI'S COUNSEL?

MS. GOLINVEAUX: WE OF COURSE SUBMIT THAT THE ALLEGATIONS IN THE FAC ARE ALL WELL SUPPORTED IN THE RECORD AS REFLECTED IN THE OPPOSITION BRIEF AND THE RECORD TODAY. IF THE COURT DOES FIND A RULE 11 VIOLATION AND AWARDS MONETARY SANCTIONS ON THIS RECORD, WE DO NOT BELIEVE THEY SHOULD HAVE LEVIED AGAINST MUSI. BUT RESPECTFULLY, FINDING A RULE 11 MOTION HERE BASED UPON DAYLIGHT BETWEEN THE WORD CHOICE LIKE "KNEW" AND "WERE INFORMED" WOULD OPEN -- LITERALLY OPEN THE FLOOD GATES TO RULE 11 MOTION PRACTICE.

WE RESPECTFULLY SUBMIT THAT THIS IS AN IMPROPER USE OF RULE 11. RULE 11, AS YOUR HONOR KNOWS, IS AN EXTRAORDINARY REMEDY RESERVED FOR THE MOST EGREGIOUS CASES.

AND FOR FILING A COMPLAINT, IT CAN ONLY BE ORDERED IF THE COMPLAINT IS LEGALLY OR FACTUALLY BASELESS FROM AN OBJECTIVE

# EXHIBIT 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MUSI INC.,
Plaintiff,
vs. Case No. 5:24-cv-06920 EKL
APPLE INC.,
Defendant.
______________________________

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**
VIDEO DEPOSITION OF ARUN SINGH
Redwood City, California
Friday, March 7, 2025
Volume 1

STENOGRAPHICALLY REPORTED BY:
REBECCA L. ROMANO, RPR, CSR, CCR
California CSR No. 12546
Nevada CCR No. 827
Oregon CSR No. 20-0466
Washington CCR No. 3491
JOB NO. 7226014
PAGES 1 - 120

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MUSI INC.,

Plaintiff,

vs. Case No. 5:24-cv-06920 EKL

APPLE INC.,

Defendant.

____________________________

DEPOSITION OF ARUN SINGH, taken on behalf of the Plaintiff, at 255 Shoreline Drive, #520, Redwood City, California, commencing at 9:01 a.m., Friday, Friday, March 7, 2025 before REBECCA L. ROMANO, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Court Reporter.

APPEARANCES OF COUNSEL

For the Plaintiff:

WINSTON & STRAWN LLP
BY: JENNIFER A. GOLINVEAUX
BY: SAMANTHA K. LOOKER
Attorneys at Law
101 California Street
21st Floor
San Francisco, California 94111-5891
(415) 591-1000
jgolinveaux@winston.com
slooker@winston.com

/////

APPEARANCES OF COUNSEL(cont'd)

For the Defendant:

WILMER CUTLER PICKERING HALE AND DORR LLP
BY: MARK A. FORD
Attorney at Law
60 State Street
Boston, Massachusetts 02109
(617) 526-6423
mark.ford@wilmerhale.com

ALSO PRESENT:

Colleen Powers, In-House Counsel at Apple Inc.
Cameron Tuttle, Videographer

/////

A. That was between Apple and YouTube. 09:45:32
Q. Got it.
A. So Sean and Violet and myself from the Apple side. Kelvin and two lawyers from the YouTube side. 09:45:42
Q. I see.
And was this the video call about Musi?
A. Correct.
Q. Okay. Do you remember approximately the date of that video call? 09:45:53
A. July 15th.
Q. That's the July 15th call.
What was discussed on that video call?
A. Sean started by basically giving an overview of what had happened which was that 09:46:10 YouTube had filed a complaint against Musi. It -- the communication began between Musi and YouTube. And at a certain point, YouTube stopped responding.
We -- Apple legal checked in with them and didn't get a response and so believed that the 09:46:32 issue had been resolved.
And so when the complaint was filed, I believe, if I recall correctly, the Musi app had been taken down from the App Store.
When YouTube did not respond and Apple 09:46:49

legal believed the issue had been resolved, it was 09:46:51
reinstated to the App Store.

Q. I see.

So that was Mr. Cameron's setting the
table, so to speak, for the call with YouTube? 09:47:07

A. That's correct.

Q. Okay. And what precipitated the -- the
video -- the July 15th video call between Apple and
YouTube?

MR. FORD: Because that's implicating the 09:47:20
attorney-client communication, I can -- I'll
instruct you that you can identify the person who
asked you to set up the call and the fact of the
ask, but don't reveal the substance of any
attorney-client communication beyond that. 09:47:31

THE DEPONENT: So that was the first
phone call I had with Sean Cameron.

Q. (By Ms. Golinveaux) I see.

It's all making sense.

Okay. So after Mr. Cameron set the table 09:47:46
at that July 15th video call by giving an overview
and the history and why Apple put the Musi app back
up, what was said next?

A. He said that we -- Apple had been
receiving complaints about the Musi app and asked 09:48:06

YouTube if they wanted to continue with the complaint. 09:48:09

Q. Okay. And did Mr. Cameron mention from whom Apple had been receiving complaints about the Musi app? 09:48:26

A. No specifics. I believe he said the music industry.

Q. Okay. Fair enough.

I'm looking at this because the court reporter didn't get your full answer. 09:48:58

Your answer was, "He said that we, Apple, had been receiving complaints about the Musi app and asked YouTube if they wanted to continue with the" -- and then it drops off.

Do you recall how you finished that sentence? 09:49:13

A. Complaint.

Q. Okay.

A. And I think I said Apple legal not just "we," Apple. I said, I think, "we," Apple legal. 09:49:17

Q. Okay. Did Mr. Cameron describe the nature of the complaints from the music industry?

A. No.

Q. Did he describe --

A. Sorry. 09:49:43

Q. Sure. 09:49:44
A. He said that there were API guideline violations, YouTube API guideline violations.
Q. Okay. He said that those were the nature of the complaints --
A. Sorry.
Q. -- with Musi?
A. Yeah. That was not the nature of the complaint from the music industry. That was what YouTube said was the original reason for the 09:50:13 complaint that YouTube had filed.
Q. I see.
So Mr. Cameron reminded YouTube that that was the nature of the original complaint?
A. Sorry. I'm mixing it up now. 09:50:28
Q. No, that's okay.
A. It's been a bit of time.
So from the music industry, Mr. Cameron didn't specify what the -- what the exact complaints were and asked YouTube why they had 09:50:39 filed the complaint.
And they -- YouTube said it was because of API issues.
Q. I see.
A. Sorry. 09:50:52

Q. And when you called him up, what did you say? 10:34:30

MR. FORD: You can totally divulge -- you can testify as to your memory of the phone call between you and Mr. Paulino. 10:34:38

You can do that.

THE DEPONENT: I told him that Apple legal wanted a conversation with YouTube legal regarding Musi and a complaint that YouTube had filed. 10:34:51

Q. (By Ms. Golinveaux) Okay. Did he know what you were talking about?

Had he heard of Musi before?

A. He did not --

MR. FORD: Objection. Calls for speculation. 10:34:57

Q. (By Ms. Golinveaux) Based on your conversation with him and his reaction to your question asking for a call, did he indicate whether or not he was familiar with Musi? 10:35:06

A. He did not indicate he was familiar with Musi.

Q. Okay. What did you say -- how did you set the table for him on that call about what this was about? 10:35:21

Q. Okay. Fair. 10:56:28
What did the two of them talk about?
A. They both acknowledged that a complaint had indeed been filed by YouTube and that some communication had been exchanged between Musi and 10:56:42 YouTube.
They were not aware of the last communication from Apple and indicated that there may have been some confusion as to the email alias that that last communication had been sent to from 10:57:03 Apple.
Q. Okay. What else did they have to say?
A. They were asked what the issues were, I believe. Actually, I don't know what the question was, but I -- I should strike that. 10:57:23
I don't remember the question, but they did say that they were API issues which were ongoing and that they wanted to pursue the complaint.
Q. And did they give any indication of the 10:57:38 nature of the API issues?
A. They did not share that.
Q. Okay. Did they ask about who in the music industry was inquiring about Musi?
A. Not that I recall. 10:57:55

the bottom, it says -- and I should say, this is a document that's Bates-numbered APL-MUSI -36854. 11:00:24

And if you look up three hashes up from the bottom, it says, "Want to know which aspects of YouTube they are violating." [as read] 11:00:36

Do you see that?

A. I do.

Q. What does that mean?

A. Apple legal wanted to know which aspects of the AP- -- what API issues of which guidelines Musi was violating. 11:00:43

Q. I see.

What aspects of the API or which guidelines Musi was violating; is that accurate?

A. Yes. 11:01:03

Q. Okay. Who -- who from Apple legal asked that question?

A. I don't recall.

Q. Sure.

And did they say why they wanted to know? 11:01:10

A. They did not.

Q. Okay. And did YouTube specify which aspects of the API issues or guidelines Musi was violating?

A. They didn't specify which aspects, but 11:01:29

they did indicate that there were some violations. 11:01:31

Q. So on that last hash, it says, "Is it an API abuse issue?"

Is that a question that came from one of the Apple lawyers? 11:01:44

A. Yes.

Q. Okay. And it says -- and the response from YouTube is "There are some violations"?

A. That's correct.

Q. But to your recollection, they didn't 11:01:52 specify what the -- the nature of the violations were --

A. They did not.

Q. -- beyond that?

A. My recollection is they did not. 11:01:58

Q. Okay. The second hash from the bottom, it says, "They can't speak to GPlay's decision, but it is indeed down from GPlay."

Do you see that?

A. Yes. 11:02:12

Q. That's what the YouTube lawyers said, that the Musi app was down from GPlay?

A. No, they didn't say that.

Q. Okay.

A. At the beginning when Sean was laying the 11:02:29

Would you please read through to the end of the response. 11:12:25
A. Just up to line 18?
Q. No, go ahead and read through the end of the page, and then you'll see there's text on the first half of this next page. 11:13:07
A. Okay.
Okay.
Q. Okay. So turning back to page 6.
You see the -- the last paragraph on page 6 says, "On or around May 29, 2024, Apple's YouTube relationship manager Arun Singh reached out to YouTube relationship contact Kelvin Paulino to inquire about the status of a March 22, 2023, complaint submitted by YouTube regarding the music app and YouTube's contention that the Musi app violates its terms of service." 11:14:10 11:14:27
Do you see that?
A. Yes.
Q. Is that accurate? 11:14:36
A. I didn't know the exact date that I reached out to Kelvin.
But my recollection is that Sean Cameron reached out to me towards the end of May, and I followed up -- reached out to Kelvin -- 11:14:52

Q. Okay. 11:14:54
A. -- based on that request.
Q. Would there be diary entries in your calendar or the like about that reach-out, do you think, or not necessarily? 11:15:00
A. No.
Q. Okay. Do you remember how Mr. Cameron reached out to you?
A. It was a phone call.
Q. It was a phone call. 11:15:05
And then your reach-out sometime around the May 29th period to Mr. Paulino --
A. Uh-huh.
Q. -- do you recall whether that was a phone -- 11:15:16
A. That was a phone call.
Q. Okay. That's probably why we don't have an email reflecting it?
A. That's correct.
Q. And what was discussed during that phone call? 11:15:25
A. Basically, that I had been requested by Apple legal to set up a call with YouTube legal regarding the complaint about the Musi app.
Q. Okay. And you described that phone call 11:15:35

# EXHIBIT 4

**Subject:** Re: Musi - complaints
**From:** "Arun Singh" <arunsingh@apple.com>
**Received(Date):** Mon, 15 Jul 2024 18:32:20 +0000
**To:** "Kelvin Paulino" <kpaulino@google.com>
**Date:** Mon, 15 Jul 2024 18:32:20 +0000

---

Hi Kelvin,

It will be me and a few of our legal friends (Sean Cameron, Violet Evan-Karimian, Elizabeth Miles Waring).

Cheers,

Arun

On Jul 15, 2024, at 11:07☐AM, Kelvin Paulino <kpaulino@google.com> wrote:

Hi Arun,

It would be me and two members of the YouTube Music Product Counsel (Kelsea Carlson and Leo LIpsztein).

Who will be attending on your side?

On Mon, Jul 15, 2024 at 2:04☐PM Arun Singh <arunsingh@apple.com> wrote:

> Hi Kelvin,
> Can you please share who will be attending today?
>
> Cheers,
> Arun
> —
>
> On Jul 8, 2024, at 4:03☐PM, Arun Singh <arunsingh@apple.com> wrote:
>
> Done - thanks Kelvin!
>
> On Jul 8, 2024, at 3:24☐PM, Kelvin Paulino <kpaulino@google.com> wrote:
>
> Hi Arun,
>
> We're confirmed on my side. Please feel free to share a dial in. Thanks.
>
> Kelvin Paulino
> YouTube Mobile Partnerships

212-565-4725

On Fri, Jun 28, 2024 at 1:37☐PM Arun Singh <arunsingh@apple.com> wrote:

> Just sent the hold to you.
> Arun
> ---
>
> On Jun 28, 2024, at 10:21☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>
> Thanks, Arun. Could you please hold 7/15 from 2-2:30 pm PT while I work to confirm?
>
> On Fri, Jun 28, 2024 at 1:06☐PM Arun Singh <arunsingh@apple.com> wrote:
>
> Hi Kelvin,
> Here you go:
>
> Mon 7/15: 2-2:30pm PT
> Tues 7/16: 1:30-2pm, 3:30-4pm ,4-4:30pm PT
> Thurs 7/18: 9:30-10am PT
>
> Cheers,
> Arun
> ==
>
>> On Jun 28, 2024, at 7:56☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>>
>> Hi Arun,
>> Could you please share some avails on your side for the week of July 8th or 15th for a 30 min call between our respective legal teams? Happy to chat live should you have any questions. Thanks.
>>
>> On Mon, Jun 24, 2024 at 3:26☐PM Arun Singh <arunsingh@apple.com> wrote:
>>
>> Will do.
>>
>> On Jun 24, 2024, at 11:37☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>>
>> Hi Arun,
>>
>> Yes, please feel free to call me at 1pm PT. Thanks.
>>
>> On Mon, Jun 24, 2024 at 2:24☐PM Arun Singh <arunsingh@apple.com> wrote:
>>
>>> Hi Kelvin,
>>> About to jump on a couple of calls, but can talk around 1pm PT - does that work?
>>>
>>> Cheers,

Arun
--

On Jun 24, 2024, at 11:23 AM, Kelvin Paulino <kpaulino@google.com> wrote:

Hi Arun,

Do you have a few mins to catch up on this? Thanks.

On Tue, Jun 18, 2024 at 2:00 PM Arun Singh <arunsingh@apple.com> wrote:

Great - will call you then.

Sent from my iPhone

On Jun 18, 2024, at 10:12 AM, Kelvin Paulino <kpaulino@google.com> wrote:

Sure, I can do noon PT.

On Tue, Jun 18, 2024 at 12:37 PM Arun Singh <arunsingh@apple.com> wrote:

Hi Kelvin,
I'm at a conference - can you chat around noon PT?
Cheers,
Arun

On Jun 18, 2024, at 5:04 AM, Kelvin Paulino <kpaulino@google.com> wrote:

Hi Arun,

Sure. Would you be available at 10:30 or 11:30 am PT?

On Tue, Jun 18, 2024 at 12:50 AM Arun Singh <arunsingh@apple.com> wrote:

Hey Kelvin,
Want to chat tomorrow (Tuesday)?

Cheers,
Arun
-

On Jun 13, 2024, at 12:47 PM, Kelvin Paulino <kpaulino@google.com> wrote:

Hi Arun,

Do you have time to chat about this? Thanks.

On Wed, Jun 12, 2024 at 10:38 AM Kelvin Paulino <kpaulino@google.com> wrote:

Hi Arun,

Thanks for checking in. We're still gathering information on our end regarding Musi. I'll share an update as soon as possible.

On Wed, Jun 12, 2024 at 12:45☐AM Arun Singh <arunsingh@apple.com> wrote:

> Hi Kelvin,
>
> Hope you're well and enjoyed WWDC!
>
> I was wondering if you were able to look into the Musi issue we discussed a couple of weeks ago. Any updates?
>
> Cheers,
> Arun
>
> --

| |
|---|
| **Kelvin Paulino** |
| YouTube Partnerships Lead |
| kpaulino@google.com |
| +1 (650) 318 9375 |

--

| |
|---|
| **Kelvin Paulino** |
| YouTube Partnerships Lead |
| kpaulino@google.com |
| +1 (650) 318 9375 |

--

| |
|---|
| **Kelvin Paulino** |

YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

Kelvin Paulino
YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

Kelvin Paulino
YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

Kelvin Paulino
YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

Kelvin Paulino

YouTube Partnerships Lead

kpaulino@google.com

+1 (650) 318 9375

--

**Kelvin Paulino**

YouTube Partnerships Lead

kpaulino@google.com

+1 (650) 318 9375

--

**Kelvin Paulino**

YouTube Partnerships Lead

kpaulino@google.com

+1 (650) 318 9375

# EXHIBIT 5

**Subject:** Fwd: Apple Inc. (our ref# APP44644-F)
**From:** "Arun Singh" <arunsingh@apple.com>
**Received(Date):** Wed, 17 Jul 2024 18:37:13 +0000
**To:** "Kelvin Paulino" <kpaulino@google.com>
**Date:** Wed, 17 Jul 2024 18:37:13 +0000

---

Hi Kelvin,

Here you go.

Cheers,

Arun

--

> Begin forwarded message:
>
> **From:** ASN <AppStoreNotices@apple.com>
> **Subject: Apple Inc. (our ref# APP44644-F)**
> **Date:** July 15, 2024 at 2:28:31□PM PDT
> **To:** legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com
>
> **Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**
>
> Hello,
>
> Per request from the YouTube Legal team, please review the dispute history included below, and advise whether you intend to pursue your claim against the following app:
>
> F. Developer: Musi Inc.
> Provider: Musi Inc.
> App Title: Musi - Simple Music Streaming
> Apple ID: 591560124
> -
>
> If you would like to re-open your claim against this app, please specify the rights you believe are being infringed, and by which aspect of the app.
>
> Sincerely,
>
> Victoria,
>
> □ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |

EXHIBIT 24
DEPONENT Singh
DATE 3/2/25
Rebecca L. Romano, RPR, CSR, CCR

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

**From:** AppStoreNotices <appstorenotices@apple.com>
**Subject: Apple Inc. (our ref# APP44644-F)**
**Date:** April 19, 2023 at 12:54:13☐PM PDT
**To:** legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com
**Cc:** apple-ios-contact@feelthemusi.com, herstein@pitblado.com, MElkin@winston.com

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you shortly, we will conclude that the matter has been resolved.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

☐ Apple Legal Apple One Apple Park Way Cupertino, CA 95014
AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----

From: MElkin@winston.com
Subject: Apple Inc. (our ref# APP44644-F)
Date: Apr 4, 2023 at 9:49 PM
To: AppStoreNotices@apple.com
Cc: apple-ios-contact@feelthemusi.com, herstein@pitblado.com

Dear App Store Notices,
As noted, we have been in communication directly with the Complainant on this matter in order to attempt to resolve any dispute. We will continue to keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Sincerely,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> |
VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> |
winston.com<http://www.winston.com>
[Winston & Strawn LLP]

---

From: ASN <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>>
Sent: Tuesday, April 4, 2023 11:41 AM
To: legal-youtube@google.com<mailto:legal-youtube@google.com> <legal-youtube@google.com<mailto:legal-youtube@google.com>>; legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com> <legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com>>; apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com> <apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>>; herstein@pitblado.com<mailto:herstein@pitblado.com> <herstein@pitblado.com<mailto:herstein@pitblado.com>>; Elkin, Michael <MElkin@winston.com<mailto:MElkin@winston.com>>
Subject: Apple Inc. (our ref# APP44644-F)

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Anna

 Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com<mailto:MElkin@winston.com>
Subject: FW: Apple Inc. (our ref# APP44644-F) Notice of Complaint
Date: Mar 27, 2023 at 3:11 PM
To: AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>
Cc: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>, herstein@pitblado.com<mailto:herstein@pitblado.com>

Dear App Store Notices,

As you know from earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

We believe that YouTube Legal ("Complainant") has made unsubstantiated claims about our client's app. We have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We will keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> |
VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> |
winston.com<http://www.winston.com>
[Winston & Strawn LLP]
From: ASN
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@
Date: March 23, 2023 at 4:25:54 PM EDT
To: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com>>,
herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailt
MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:
Cc: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com%3cmailto:legal-youtube+2mlwktveucwom0y@google.com>>
Subject: Apple Inc. (our ref# APP44644-F) Notice of Complaint

Dear Sir or Madam,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

On 3/22/2023, we received a notice from YouTube Legal ("Complainant") that Complainant believes the app listed below infringes its intellectual property rights. In particular, Complainant believes you are infringing its terms of use. Please see their comments below.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

YouTube TOS Violations

-

You can reach Complainant through YouTube Legal (email: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com%3cmailto:legal-youtube+2mlwktveucwom0y@google.com>>), copied on this email. Please exchange correspondence directly with Complainant.

We look forward to receiving written assurance that your application does not infringe Complainant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.

Please note that during the course of this matter:

1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.

2. Written assurance of rights may include confirmation that your application does not infringe Complainant's rights, an express authorization from Complainant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3. Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com<https://appstoreconnect.apple.com><https://appstoreconnect.a and access your app in the Manage Your Application module.

• Access your app in the "My Apps" module
• Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
• Select and deselect "All" territories to uncheck all App Store territories
• Click on the "Done" button

4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Complainant are at risk of termination from the Developer Program.

5. Failure to respond to the Complainant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Anna

□ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

# EXHIBIT 6

**7/15/24: Musi: Kelvin, Leo (VP Counsel - YT), Kelsey; Sean, Elizabeth, Violet**

- Had a number of complaints about the app. And more recently
- Not on Google Play, complaints to us
- Musi filed a complaint with our team, but then abandoned it - why? How? Did they want to restart it?
- YT - wasn't abandoned it. Sometimes they don't get a response, and don't follow up - could be the case here.
- Sent request, Apple took it down and then reinstated the app. YT did pursue after the reinstatement. App provider said they were in direct communication with YT, would keep us updated on status of comms. We sent email (4/19/23) to YT advising them of this. If we don't hear from YT we would reinstate, didn't hear back so we thought resolved etc, so we reinstated.
- Leo has same understanding. No intent to abandon or close matter from their side, email may have gone to other channels and they may not have been aware
- We should reinstate the complaint - just need email from YT
- Violet will fwd the 4/19/23 email to a legal email alias, will route back to Kelsey, Leo. Kelsey will flag this is coming in
- Want to know which aspects of YT they are violating.
- They can't speak to GPlay's decision, but it is indeed down from GPlay
- Is it an API abuse issue? There are some violations.

EXHIBIT 25
DEPONENT
DATE 3/8/25
Rebecca L. Romano, RPR, CSR, CCR

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

-----------------------------------------x

MUSI INC.,

Plaintiff,

vs. Case No.

APPLE INC., 5:24-cv-06920-EKL

Defendant.

-----------------------------------------x

VIDEOTAPED DEPOSITION OF

VIOLET EVAN-KARIMIAN

Thursday, March 5, 2025

Stenographically Reported By:
Lynne Ledanois
Certified Court Reporter, License No. 6811
Job No. 7223172

PAGES 1 - 159

Case: 26-2892, 08/21/2026, DktEntry: 12.3, (58 of 266)

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

-----------------------------------------x

MUSI INC.,

Plaintiff,

vs. Case No.

APPLE INC., 5:24-cv-06920-EKL

Defendant.

-----------------------------------------x

Videotaped deposition of VIOLET EVAN-KARIMIAN taken at Winston & Strawn 255 Shoreline Drive, Suite 250, Redwood City, California, commencing at 10:04 a.m., on Thursday, March 6, 2025 before LYNNE M. LEDANOIS, Certified Shorthand Reporter No. 6811, Certified Court Reporter.

* * *

Case: 26-2892, 08/21/2026, DktEntry: 12.3, Page 59 of 266

REMOTE APPEARANCES

Counsel for the Plaintiff:
WINSTON & STRAWN LLP
BY: JENNIFER A. GOLINVEAUX
SAMANTHA K. LOOKER
Attorneys at Law
255 Shoreline Drive
Suite 520
Redwood City, California 94062
jgolinveaux@winston.com
slooker@winston.com

Counsel for the Defendant:
WILMER CUTLER PICKERING HALE & DORR LLP
BY: JENNIFER MILICI
Attorney at Law
101 California Street
35th Floor
San Francisco, California 94111
jennifer.milici@wilmerhale.com

Also Present:
Cameron Tuttle, Videographer
Beth Gettinger, Apple Legal Counsel

A Correct. 01:23

Q Did they explain why they wanted Apple to initiate the response from YouTube?

Why couldn't they just respond, did they explain that to you? 01:24

A I believe they did. I don't recall exactly what their reason was.

I have a little bit of memory of there being an issue with who was getting the emails that we were sending to YouTube and that maybe they 01:24 weren't going to the right places.

And so they gave us the right email address to use and that way we could send them the dispute history and reference number as we did.

Q Did YouTube confirm to Apple on the 01:24 July 15th email phone call that -- strike that. Let me start over.

Did YouTube confirm to Apple on that July 15th phone call that Musi was, in fact, violating its terms of service? 01:24

MS. MILICI: Objection, vague.

THE WITNESS: Did you want to rephrase?

BY MS. GOLINVEAUX:

Q Not at all.

A In the July 15th phone call, YouTube said, 01:24

we do believe that the app is violating our terms of service and in particular our API. 01:25

Q That's what they told you on July 15?

A That's what I recall them saying.

Q Okay. On this July 15th email you sent to YouTube soliciting whether they want to pursue their claim against the app, was Musi or its counsel copied on this communication? 01:25

A I don't recall.

Q Okay. Well, looking at YouTube legal's response at the top of the chain, do you see Musi or its counsel copied or is this an email chain directly between Google and Apple? 01:25

A It is likely this was an email chain directly between YouTube and Apple. I do recall, however, that we then notified Musi of the fact that YouTube considers the matter unresolved. 01:25

Q Great. We'll get to that right now.

So YouTube responds to your email and says, "Hello, we write to confirm that this matter should remain open. Sincerely, The YouTube Team." Correct? 01:26

A Correct.

MS. GOLINVEAUX: Let's go to the next exhibit. 01:26

# EXHIBIT 10

| | |
|---|---|
| **Subject:** | Re: Musi |
| **From:** | "Elizabeth Miles Waring" <elizabeth.miles@apple.com> |
| **Received(Date):** | Wed, 02 Oct 2024 17:50:17 +0000 |
| **To:** | "Jeff Walker" <jeff.walker@sonymusic.com> |
| **Attachment:** | smime.p7s |
| **Date:** | Wed, 02 Oct 2024 17:50:17+0000 |

---

Always TBD! □

□

**Elizabeth Miles**

Senior Legal Director, □Music, □TV, □Fitness, Apple Media Services International

One Apple Park Way, MS 169-4ISM | Cupertino, CA 95014 | USA

+1-408-862-3436

elizabeth.miles@apple.com

This email and any attachments may contain confidential information intended only for the recipient(s) named above. Any other distribution, forwarding, copying or disclosure of this message is strictly prohibited. If you have received this email in error, please notify me immediately by telephone or return email, and delete this message from your system.

On Oct 2, 2024, at 10:47□AM, Walker, Jeff, Sony Music <Jeff.Walker@sonymusic.com> wrote:

**Hi Elizabeth. We were really happy to hear about that. Thanks for all your help and support. TBD whether this is actually over. □**

**From:** Elizabeth Miles Waring <elizabeth.miles@apple.com>

Sent: Wednesday, October 2, 2024 1:45 PM

To: Walker, Jeff, Sony Music <Jeff.Walker@sonymusic.com>

Subject: Musi

Hi Jeff, hope you're well! Just wanted to let you know, since you were asking about it earlier, that Apple has removed Musi from the App Store. This one was complex process-wise—thanks as always for working with us.

EXHIBIT LML 3/6/15
16
Evan-Kari

Elizabeth

☐

Elizabeth Miles

Senior Legal Director, ☐Music, ☐TV, ☐Fitness, Apple Media Services International

One Apple Park Way, MS 169-4ISM | Cupertino, CA 95014 | USA

+1-408-862-3436

elizabeth.miles@apple.com

This email and any attachments may contain confidential information intended only for the recipient(s) named above. Any other distribution, forwarding, copying or disclosure of this message is strictly prohibited. If you have received this email in error, please notify me immediately by telephone or return email, and delete this message from your system.

# EXHIBIT 4

**Subject:** Re: Musi - complaints
**From:** "Arun Singh" <arunsingh@apple.com>
**Received(Date):** Mon, 15 Jul 2024 18:32:20 +0000
**To:** "Kelvin Paulino" <kpaulino@google.com>
**Date:** Mon, 15 Jul 2024 18:32:20 +0000

---

Hi Kelvin,

It will be me and a few of our legal friends (Sean Cameron, Violet Evan-Karimian, Elizabeth Miles Waring).

Cheers,

Arun

On Jul 15, 2024, at 11:07☐AM, Kelvin Paulino <kpaulino@google.com> wrote:

Hi Arun,

It would be me and two members of the YouTube Music Product Counsel (Kelsea Carlson and Leo LIpsztein).

Who will be attending on your side?

On Mon, Jul 15, 2024 at 2:04☐PM Arun Singh <arunsingh@apple.com> wrote:

> Hi Kelvin,
> Can you please share who will be attending today?
>
> Cheers,
> Arun
> —
>
> On Jul 8, 2024, at 4:03☐PM, Arun Singh <arunsingh@apple.com> wrote:
>
> Done - thanks Kelvin!
>
> On Jul 8, 2024, at 3:24☐PM, Kelvin Paulino <kpaulino@google.com> wrote:
>
> Hi Arun,
>
> We're confirmed on my side. Please feel free to share a dial in. Thanks.
>
> Kelvin Paulino
> YouTube Mobile Partnerships

212-565-4725

On Fri, Jun 28, 2024 at 1:37☐PM Arun Singh <arunsingh@apple.com> wrote:

> Just sent the hold to you.
> Arun
> ---
>
> On Jun 28, 2024, at 10:21☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>
> Thanks, Arun. Could you please hold 7/15 from 2-2:30 pm PT while I work to confirm?
>
> On Fri, Jun 28, 2024 at 1:06☐PM Arun Singh <arunsingh@apple.com> wrote:
>
> Hi Kelvin,
> Here you go:
>
> Mon 7/15: 2-2:30pm PT
> Tues 7/16: 1:30-2pm, 3:30-4pm ,4-4:30pm PT
> Thurs 7/18: 9:30-10am PT
>
> Cheers,
> Arun
> ==
>
>> On Jun 28, 2024, at 7:56☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>>
>> Hi Arun,
>> Could you please share some avails on your side for the week of July 8th or 15th for a 30 min call between our respective legal teams? Happy to chat live should you have any questions. Thanks.
>>
>> On Mon, Jun 24, 2024 at 3:26☐PM Arun Singh <arunsingh@apple.com> wrote:
>>
>> Will do.
>>
>> On Jun 24, 2024, at 11:37☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>>
>> Hi Arun,
>>
>> Yes, please feel free to call me at 1pm PT. Thanks.
>>
>> On Mon, Jun 24, 2024 at 2:24☐PM Arun Singh <arunsingh@apple.com> wrote:
>>
>>> Hi Kelvin,
>>> About to jump on a couple of calls, but can talk around 1pm PT - does that work?
>>>
>>> Cheers,

> Arun
> --
>
> On Jun 24, 2024, at 11:23☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>
> Hi Arun,
>
> Do you have a few mins to catch up on this? Thanks.
>
> On Tue, Jun 18, 2024 at 2:00☐PM Arun Singh <arunsingh@apple.com> wrote:
>
> Great - will call you then.
>
> Sent from my iPhone
>
>> On Jun 18, 2024, at 10:12☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>>
>> ☐
>> Sure, I can do noon PT.
>>
>> On Tue, Jun 18, 2024 at 12:37☐PM Arun Singh <arunsingh@apple.com> wrote:
>>
>> Hi Kelvin,
>> I'm at a conference - can you chat around noon PT?
>> Cheers,
>> Arun
>>
>> On Jun 18, 2024, at 5:04☐AM, Kelvin Paulino <kpaulino@google.com> wrote:
>>
>> Hi Arun,
>>
>> Sure. Would you be available at 10:30 or 11:30 am PT?
>>
>> On Tue, Jun 18, 2024 at 12:50☐AM Arun Singh <arunsingh@apple.com> wrote:
>>
>>> Hey Kelvin,
>>> Want to chat tomorrow (Tuesday)?
>>>
>>> Cheers,
>>> Arun
>>> -
>>>
>>> On Jun 13, 2024, at 12:47☐PM, Kelvin Paulino <kpaulino@google.com> wrote:
>>>
>>> Hi Arun,
>>>
>>> Do you have time to chat about this? Thanks.
>>>
>>> On Wed, Jun 12, 2024 at 10:38☐AM Kelvin Paulino <kpaulino@google.com> wrote:

Hi Arun,

Thanks for checking in. We're still gathering information on our end regarding Musi. I'll share an update as soon as possible.

On Wed, Jun 12, 2024 at 12:45 AM Arun Singh <arunsingh@apple.com> wrote:

Hi Kelvin,

Hope you're well and enjoyed WWDC!

I was wondering if you were able to look into the Musi issue we discussed a couple of weeks ago. Any updates?

Cheers,
Arun

--

**Kelvin Paulino**
YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

**Kelvin Paulino**
YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

**Kelvin Paulino**

YouTube Partnerships Lead

kpaulino@google.com

+1 (650) 318 9375

--

·

**Kelvin Paulino**

YouTube Partnerships Lead

kpaulino@google.com

+1 (650) 318 9375

--

·

**Kelvin Paulino**

YouTube Partnerships Lead

kpaulino@google.com

+1 (650) 318 9375

--

·

**Kelvin Paulino**

YouTube Partnerships Lead

kpaulino@google.com

+1 (650) 318 9375

--

·

**Kelvin Paulino**

YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

**Kelvin Paulino**
YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

--

**Kelvin Paulino**
YouTube Partnerships Lead
kpaulino@google.com
+1 (650) 318 9375

# EXHIBIT 5

**Subject:** Fwd: Apple Inc. (our ref# APP44644-F)
**From:** "Arun Singh" <arunsingh@apple.com>
**Received(Date):** Wed, 17 Jul 2024 18:37:13 +0000
**To:** "Kelvin Paulino" <kpaulino@google.com>
**Date:** Wed, 17 Jul 2024 18:37:13 +0000

---

Hi Kelvin,

Here you go.

Cheers,

Arun

--

Begin forwarded message:

**From:** ASN <AppStoreNotices@apple.com>
**Subject: Apple Inc. (our ref# APP44644-F)**
**Date:** July 15, 2024 at 2:28:31□PM PDT
**To:** legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com

**Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

Per request from the YouTube Legal team, please review the dispute history included below, and advise whether you intend to pursue your claim against the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

If you would like to re-open your claim against this app, please specify the rights you believe are being infringed, and by which aspect of the app.

Sincerely,

Victoria,

□ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |

EXHIBIT 24
DEPONENT Singh
DATE 3/21/25
Rebecca L. Romano, RPR, CSR, CCR

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

**From:** AppStoreNotices <appstorenotices@apple.com>
**Subject: Apple Inc. (our ref# APP44644-F)**
**Date:** April 19, 2023 at 12:54:13□PM PDT
**To:** legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com
**Cc:** apple-ios-contact@feelthemusi.com, herstein@pitblado.com, MElkin@winston.com

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you shortly, we will conclude that the matter has been resolved.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

□ Apple Legal Apple One Apple Park Way Cupertino, CA 95014
AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----

From: MElkin@winston.com
Subject: Apple Inc. (our ref# APP44644-F)
Date: Apr 4, 2023 at 9:49 PM
To: AppStoreNotices@apple.com
Cc: apple-ios-contact@feelthemusi.com, herstein@pitblado.com

Dear App Store Notices,
As noted, we have been in communication directly with the Complainant on this matter in order to attempt to resolve any dispute. We will continue to keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Sincerely,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> |
VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> |
winston.com<http://www.winston.com>
[Winston & Strawn LLP]

---

From: ASN <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>>
Sent: Tuesday, April 4, 2023 11:41 AM
To: legal-youtube@google.com<mailto:legal-youtube@google.com> <legal-youtube@google.com<mailto:legal-youtube@google.com>>; legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com> <legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com>>; apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com> <apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>>; herstein@pitblado.com<mailto:herstein@pitblado.com> <herstein@pitblado.com<mailto:herstein@pitblado.com>>; Elkin, Michael <MElkin@winston.com<mailto:MElkin@winston.com>>
Subject: Apple Inc. (our ref# APP44644-F)

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Anna

□ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com<mailto:MElkin@winston.com>
Subject: FW: Apple Inc. (our ref# APP44644-F) Notice of Complaint
Date: Mar 27, 2023 at 3:11 PM
To: AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>
Cc: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>, herstein@pitblado.com<mailto:herstein@pitblado.com>

Dear App Store Notices,

As you know from earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

We believe that YouTube Legal ("Complainant") has made unsubstantiated claims about our client's app. We have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We will keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> |
VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> |
winston.com<http://www.winston.com>
[Winston & Strawn LLP]
From: ASN
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@
Date: March 23, 2023 at 4:25:54 PM EDT
To: apple-ios-contact@feelthemusi.com<mailto:apple-ios-
contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-
contact@feelthemusi.com>>,
herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailt
MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:
Cc: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-
youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-
youtube+2mlwktveucwom0y@google.com<mailto:legal-
youtube+2mlwktveucwom0y@google.com<mailto:legal-
youtube+2mlwktveucwom0y@google.com%3cmailto:legal-
youtube+2mlwktveucwom0y@google.com>>
Subject: Apple Inc. (our ref# APP44644-F) Notice of Complaint

Dear Sir or Madam,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

On 3/22/2023, we received a notice from YouTube Legal ("Complainant") that Complainant believes the app listed below infringes its intellectual property rights. In particular, Complainant believes you are infringing its terms of use. Please see their comments below.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

YouTube TOS Violations

-

You can reach Complainant through YouTube Legal (email: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com%3cmailto:legal-youtube+2mlwktveucwom0y@google.com>>), copied on this email. Please exchange correspondence directly with Complainant.

We look forward to receiving written assurance that your application does not infringe Complainant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.

Please note that during the course of this matter:

1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.

2. Written assurance of rights may include confirmation that your application does not infringe Complainant's rights, an express authorization from Complainant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3. Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com<https://appstoreconnect.apple.com><https://appstoreconnect.a and access your app in the Manage Your Application module.

• Access your app in the "My Apps" module
• Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
• Select and deselect "All" territories to uncheck all App Store territories
• Click on the "Done" button

4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Complainant are at risk of termination from the Developer Program.

5. Failure to respond to the Complainant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Anna

☐ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

---------------------------------------------x

MUSI INC.,
Plaintiff,
vs. Case No.
APPLE INC., 5:24-cv-06920-EKL
Defendant.

---------------------------------------------x

VIDEOTAPED DEPOSITION OF
VIOLET EVAN-KARIMIAN
Thursday, March 5, 2025

Stenographically Reported By:
Lynne Ledanois
Certified Court Reporter, License No. 6811
Job No. 7223172

PAGES 1 - 159



Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

-----------------------------------------x

MUSI INC.,

Plaintiff,

vs. Case No.

APPLE INC., 5:24-cv-06920-EKL

Defendant.

-----------------------------------------x

Videotaped deposition of VIOLET EVAN-KARIMIAN taken at Winston & Strawn 255 Shoreline Drive, Suite 250, Redwood City, California, commencing at 10:04 a.m., on Thursday, March 6, 2025 before LYNNE M. LEDANOIS, Certified Shorthand Reporter No. 6811, Certified Court Reporter.

* * *

REMOTE APPEARANCES

Counsel for the Plaintiff:

WINSTON & STRAWN LLP
BY: JENNIFER A. GOLINVEAUX
SAMANTHA K. LOOKER
Attorneys at Law
255 Shoreline Drive
Suite 520
Redwood City, California 94062
jgolinveaux@winston.com
slooker@winston.com

Counsel for the Defendant:

WILMER CUTLER PICKERING HALE & DORR LLP
BY: JENNIFER MILICI
Attorney at Law
101 California Street
35th Floor
San Francisco, California 94111
jennifer.milici@wilmerhale.com

Also Present:
Cameron Tuttle, Videographer
Beth Gettinger, Apple Legal Counsel

A Let's see. "We have worked with YouTube to remove API access from Musi, but the app finds ways to access our content through technological means that are more difficult for Google to action," yes. 01:02

Q Okay. So at this point in time, April 11th, 2024, Apple had been informed that YouTube had removed the API access from Musi; correct? 01:02

MS. MILICI: Objection, vague.

THE WITNESS: At this point in 2024, individuals at Apple were told that Google had removed the API access from Musi but the app was still somehow using Google's services in a way that was more difficult for Google to action is what it says. 01:02 01:03

BY MS. GOLINVEAUX:

Q Okay. Thank you.

A Yes.

Q And you see this email is forwarded to you from Robert Windom; correct? 01:03

A Correct.

Q And it says, "Hi, Violet," and then there is an attorney-client privilege bar, so we cannot see what he says; correct?

A Correct. 01:03

# EXHIBIT 8

**Subject:** Re: Musi App (APP187194)
**From:** "Robert Windom" <windom@apple.com>
**Received(Date):** Fri, 24 May 2024 14:04:16 +0000
**To:** "Sean Cameron" <sean_cameron@apple.com>
**Cc:** "Violet Evan-Karimian" <vevankarimian@apple.com>,"Elizabeth Miles Waring" <elizabeth.miles@apple.com>
**Date:** Fri, 24 May 2024 14:04:16 +0000

---

Yes, please try to get that meeting set up.

Best,

Robert

On May 24, 2024, at 3:30 AM, Sean Cameron <sean_cameron@apple.com> wrote:

Attorney Client Privilege

On May 24, 2024, at 8:54 AM, Violet Evan-Karimian <vevankarimian@apple.com> wrote:

Privileged and Confidential
Hi Elizabeth,

Attorney Client Privilege

EXHIBIT mm
3/6/25
7
Evan-Karimian

Attorney Client Privilege

Best,
Violet

Violet Evan | Senior Legal Counsel | Apple Inc.

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

On May 23, 2024, at 2:55☐PM, Elizabeth Miles Waring <elizabeth.miles@apple.com> wrote:

Attorney Client Privilege

Thanks,
Elizabeth

☐

**Elizabeth Miles**

Senior Legal Director, Music, TV, Fitness, Apple Media Services International

One Apple Park Way, MS 169-4ISM | Cupertino, CA 95014 | USA

+1-408-862-3436

elizabeth.miles@apple.com

This email and any attachments may contain confidential information intended only for the recipient(s) named above. Any other distribution, forwarding, copying or disclosure of this message is strictly prohibited. If you have received this email in error, please notify me immediately by telephone or return email, and delete this message from your system.

On Apr 16, 2024, at 4:09☐PM, Violet Evan-Karimian <vevankarimian@apple.com> wrote:

Privileged and Confidential
Hi Robert,

Attorney Client Privilege

Attorney Client Privilege

Let me know if further discussion is needed.

Best,
Violet

Violet Evan | Senior Legal Counsel | Apple Inc.

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

On Apr 16, 2024, at 12:43 PM, Robert Windom <windom@apple.com> wrote:

Hi Violet,

Attorney Client Privilege

Best,
Robert

Robert Windom
323-397-9131

---------------------------------------------------------------------

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

**From:** "Walker, Jeff, Sony Music" < Jeff.Walker@sonymusic.com >
**Subject: Musi App**
**Date:** April 11, 2024 at 6:04:31☐AM PDT
**To:** Robert Windom < windom@apple.com >, "Elizabeth Miles ( elizabeth.miles@apple.com )" < elizabeth.miles@apple.com >

**Hi Robert and Elizabeth –**

**I hope you are both well. I am reaching out to see whether you might be able to help us identify a path forward in our efforts to have the Musi app removed from the Apple app store. The Musi app sources SME music content from YouTube without SME authorization by circumventing YouTube's technical protection measures (i.e., rolling cypher). We have worked with YouTube to remove API access from Musi, but the app finds ways to access our content through technological means that are more difficult for Google to action. The app is not available in the Google App store. It would be helpful to understand what Apple may need to make a decision to remove the app from the storefront. We are not aware that Musi pays any of the creators or rightsholders whose music they make available in their app.**

The IFPI (our international trade association) has participated in Apple's mitigation process with Musi for several years. All indications are that the conversations have not been productive or lead to resolution. SME is considering other enforcement options, but it would be helpful to understand if additional enforcement measures would move the needle for purposes of Apple and the App Store.

Ideally, we would like to establish a line of communication around unlicensed music apps. If you might be able to facilitate appropriate introductions, it would be very helpful.

We appreciate your assistance and your partnership on these complicated issues. Best regards.

Jeff

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Jennifer Milici (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MUSI INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:24-cv-06920-EKL<br><br>NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11<br><br>Judge: The Honorable Eumi K. Lee<br>Hearing Date: July 30, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 7 |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD

PLEASE TA E NOTICE THAT on July 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Eumi K. Lee, in Courtroom 7 of the United States District Court, Northern District of California, located at 280 South 1st Street, San Jose, California, defendant Apple Inc. ("Apple") will and hereby does move this Court for an order for Sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure, against Plaintiff Musi Inc. ("Musi") and its counsel for filing Musi's First Amended Complaint in violation of the obligations imposed by Rule 11(b) of the Federal Rules of Civil Procedure.

Apple requests sanctions in the form of: (1) if the First Amended Complaint is not dismissed, an order striking it with prejudice; (2) an order that Musi's counsel pay Apple's costs and attorneys' fees for bringing this motion and defending this matter; and (3) any additional sanctions or other relief the Court determines to be just and proper.

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jennifer Milici in Support and exhibits thereto, the pleadings and other papers on file in this action, any argument, and any other evidence that the Court may consider.

Dated: May 5, 2025

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: /s/ Jennifer Milici
Jennifer Milici (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Case: 26-2892, 08/21/2026, DktEntry: 12.3, (93 of 266)

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Jennifer Milici (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MUSI INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:24-cv-06920-EKL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Judge: The Honorable Eumi K. Lee<br>Hearing Date: July 30, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 7 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. Legal Standard ..... 2
B. The FAC's Factual Allegations Are False Or Misleading ..... 4
1. The FAC makes numerous false allegations about Apple's July 2024 call with YouTube. ..... 4
2. The FAC falsely alleges that Apple "admitted" that it "knew" that evidence submitted by NMPA was "false" ..... 7
3. The FAC misleadingly omits reference to pending complaints, as well as the history of dishonest, and even fraudulent, conduct in the app dispute process by Musi and its counsel ..... 8
III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ....................3

*G. C. and K. B. Investments, Inc. v. Wilson*, 326 F.3d 1096 (9th Cir. 2003) ....................3

*Hall v. Hamilton Family Center*, 2014 WL 1410555 (N.D. Cal. April 11, 2014) ....................3

*Lake v. Gates,* 130 F.4th 1064 (9th Cir. 2025) ....................3, 9

*Montrose Chemical Corp. of California v. American Motorists Insurance Co.*, 117 F.3d 1128 (9th Cir. 1997) ....................3

*Rattagan v. Uber Technologies, Inc.*, 2019 WL 3891714 (N.D. Cal. Aug. 19, 2019) ....................3

*Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146 (9th Cir. 2002) ....................3, 4

*United National Insurance Co. v. R&D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001) ....................1

**Federal Rules**

Fed. R. Civ. P. 11 .................... *passim*

## I. INTRODUCTION

Apple requests that the Court enter an order pursuant to Fed. R. Civ. P. 11 ("Rule 11") sanctioning Plaintiff Musi Inc. ("Musi") and its counsel, Winston & Strawn LLP ("Winston") for filing a First Amended Complaint ("FAC") making false and misleading allegations. Rule 11 is designed to "deter baseless filings in district court," and reflects the principle that "on occasion attorneys engage in litigation tactics so vexatious as to be unjustifiable even within the broad bounds of our adversarial system, and that neither the other part[y] nor the court[] should have to abide such behavior or waste time and money coping with it." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001). This is such an occasion.

The parties conducted targeted discovery before Musi filed its FAC, and that discovery thoroughly disproved Musi's baseless conspiracy theory that Apple schemed to eliminate the Musi app from the App Store to benefit "friends" in the music industry. FAC ¶ 8. Apple attempted to resolve this matter without the Court's intervention and sent Musi a March 11, 2025 letter explaining that "discovery has now conclusively demonstrated that Apple did not act in bad faith [and that] Musi *knew* that Apple did not act in bad faith when Musi filed its original complaint, when it expanded upon its allegations in its preliminary injunction briefing, and when it sought burdensome, wasteful discovery from Apple." Ex. 1 at 1.[1] Far from resolving Apple's concerns, Musi's March 31, 2025 responsive letter *confirms* that numerous allegations in the FAC are based on misrepresentations or fabrications of the record. *See* Ex. 2.

Despite having received notice that filing an amended complaint that again seeks to mislead the Court would draw a meritorious sanctions motion, *see* Ex. 1 at 2, Musi, through its counsel, filed its FAC containing numerous false and misleading statements, including falsely describing identifiable communications. *See* Dkts. 63, 67. To make matters worse, Musi attempted to give its falsehoods a veneer of truth by provisionally redacting many allegations and misrepresenting to the Court that those allegations reflected information Apple produced in discovery, *see* Dkts.

[1] Citations to "Ex.__" refer to exhibits to the concurrently filed Declaration of Jennifer Milici in Support of Motion for Sanctions.

62, 65.

As the Court warns in its Civil Standing Order, "[m]isrepresentations of … fact, however subtle, may result in sanctions and a referral to the District's Standing Committee on Professional Conduct." Standing Order for Civil Cases Before Judge Eumi K. Lee, Section VIII.F. There is nothing "subtle" about Musi and its counsel's egregious misrepresentations of the record in its FAC, as the following examples amply demonstrate. *First*, the FAC baselessly alleges that a July 15, 2024 phone call between Apple and YouTube was part of a "backchannel scheme to cook up a supposed reason to remove the Musi app" from the App Store. FAC ¶ 8; *see also id.* ¶¶ 1, 46, 49. But Musi is well aware that Apple had the contractual right to remove the app at its discretion and had no need to "cook up" any complaint from YouTube. Moreover, multiple complaints were *already* pending against Musi's app, including, among others, unresolved complaints from YouTube that the Musi app violated YouTube's user Terms of Service. *See, e.g.*, *id.* ¶¶ 5, 42, 44, 46. *Second*, Musi alleges in the FAC that Apple "admitted" that it "*knew*" that "evidence" Apple allegedly relied on in removing the Musi app from the App Store was false. *Id.* ¶ 1 (citing evidence from the National Music Publishers' Association ("NMPA")); *see also id.* ¶¶ 9, 11, 46, 48, 52, 57-59, 64. Apple made no such admission, and Musi has no good-faith basis for its assertion. *Third*, the FAC deliberately seeks to deceive the Court by omitting key information, including about the many consistent complaints levied against the Musi app by rightsholders, and the repeated dishonesty of Musi and its counsel when responding to complaints. Indeed, Apple previously removed Musi's app from the App Store and Musi only regained access in 2020 by fraudulently impersonating a complainant. *See* Ex. 1 at 7-9; Ex. 2 at 3.

For these reasons, as detailed below, Musi and its counsel should be sanctioned, and the FAC should be struck with prejudice.

## II. ARGUMENT

### A. Legal Standard

"Rule 11(b) states that, by 'signing, filing, submitting or later advocating' for a 'pleading, written motion, or other paper,' an attorney certifies that:"

> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

*Lake v. Gates*, 130 F.4th 1064, 1067 (9th Cir. 2025) (quoting Fed. R. Civ. P. 11(b)). A complaint that violates any one of these requirements gives grounds for sanctions. *Id.* at 1068.

"Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' ...." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). "Where ... the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Id.*; *see also Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997). A district court may impose sanctions if a filing is either "legally frivolous" or "factually misleading," *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002). Misleading "omi[ssions of] critical information" that "directly contradict[]" a party's allegations "are sufficient grounds for Rule 11 sanctions." *Hall v. Hamilton Family Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. April 11, 2014) (citing *United Nat'l Ins. Co.*, 242 F.3d at 1117). Subjective bad faith is not required under Rule 11; the inquiry is objective. *See G. C. and K. B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003). "Where Rule 11 is violated, 'the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.'" *Rattagan v. Uber Techs., Inc.*, 2019 WL 3891714, at *2 (N.D. Cal. Aug. 19, 2019).

A motion for sanctions "must be served under Rule 5, but it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R.

Civ. P. 11(c)(2). Apple complied with this safe harbor provision by serving Musi's counsel with a copy of its anticipated motion for sanctions on April 7, 2025.

**B. The FAC's Factual Allegations Are False Or Misleading**

Musi's allegations described above are plainly false and misleading and thus could not have been the product of a reasonable and competent inquiry. Musi has taken discovery on these points, and that discovery has conclusively proven Musi's claims false. No reasonable lawyer or litigant could conclude otherwise. By filing the factually insufficient FAC and continuing to assert baseless allegations in the face of unambiguous evidence to the contrary, Musi and its counsel have violated Rule 11. *See Truesdell*, 293 F.3d at 1153-54 (upholding sanctions where complaint stated allegations that counsel "must have known were false").

**1. The FAC makes numerous false allegations about Apple's July 2024 call with YouTube.**

Musi's breach of the implied covenant claim is premised on a series of false allegations about Apple's communications with YouTube between May and July 2024, including a July 15, 2024 call between Apple and YouTube's respective legal teams. *See* FAC ¶¶ 1, 8, 10, 46-47, 49, 59. Deposition testimony about the call, which Musi had the opportunity to take before it filed the FAC, and the contemporaneous notes regarding it, entirely contradict the FAC's allegations.

Musi falsely alleges that beginning in May 2024, Apple engaged in outreach to YouTube specifically to "solicit[] YouTube to resurrect" a complaint against Musi in order to "cook up a supposed reason to remove the Musi app." FAC ¶ 8; *see also id.* ¶ 46. But Musi is well aware that there is no factual support for such a claim. While Apple did reach out to YouTube beginning in May 2024, culminating in the July 15 phone call, Apple had no need to "solicit" a complaint from YouTube or to "cook up" a basis for removal. To the contrary, Apple had the right to remove Musi's app "at any time, with or without cause." FAC Ex. A at 84. Moreover, after Apple restored Musi's app to the App Store in 2020, YouTube filed repeated complaints to Apple that the Musi app violated its Terms of Service, including in 2020, 2021 and 2023.[2] And between the date of

[2] As described below, Apple restored Musi's app only after Musi fraudulently impersonated a complainant, asserting that the complaint had been resolved. *See infra* Section II.C.

Apple's last communication with YouTube in April 2023 and Apple's outreach to YouTube in May 2024, Apple had received dozens of communications from other complainants alleging that Musi was violating YouTube's Terms of Service and infringing the copyrights of content providers. Multiple complaints about Musi's app were pending at the time of Apple's 2024 outreach to YouTube. *See* Dkt. 30-9 (July 27, 2023 IFPI complaint); Ex. 3 (December 2023 Araldyca complaint); Ex. 4 (February 2024 BHMedia complaint). As an Apple witness explicitly testified, the outreach that culminated in the July 15 phone call was to determine the status of YouTube's *existing* complaint, which it had last raised with Apple in 2023. *See* Ex. 5 at 120:22-121:9 ("What we discussed on the call is that there was a claim from YouTube against the Musi app, that we had received a number of other claims against the Musi app with a consistency of allegations that the Musi app was violating YouTube's Terms of Service, circumventing YouTube's technical protection measures. It was a theme across a number of claims. So we were asking YouTube, ***because that complaint hadn't been resolved and/or closed***, it was sort of stagnant, whether their intention was to pursue that claim[.]" (emphasis added)).

Musi also alleges in connection with Apple's 2024 outreach that YouTube "had no idea what Apple was talking about," FAC ¶ 46, and "could not even be bothered to look up its prior complaint," *id.* ¶ 47. But as an Apple witness explained, YouTube indicated on the July 15 call that there was "an issue with who was getting … [Apple's] emails … to YouTube," and it was possible "they weren't going to the right places." Ex. 5 at 121:4-6, 128:8-11. Contemporaneous notes from the call reflect the same. *See* Ex. 6 ("No intent to abandon or close matter from their side, email may have gone to other channels and they may not have been aware"). Far from being ignorant of it, YouTube expressly reaffirmed its desire to press the complaint. *See id.*

Musi admits that YouTube had complained in 2021 and 2023 that Musi's app violated YouTube's user Terms of Service, but falsely alleges that those complaints had been resolved or closed. *Compare* FAC ¶¶ 5, 42, 44, 46, *with* Ex. 5 at 121:4-5 (Apple's in-house counsel testifying "that complaint hadn't been resolved and/or closed"). As the record unequivocally demonstrates, at the time of Apple's outreach to YouTube, the complaint was "stagnant," *id.* at 121:6, following

*Musi*'s false representation to Apple in 2023 that it was in active discussions with YouTube to resolve the dispute. After YouTube submitted a formal dispute to Apple in March 2023, outside counsel for Musi—specifically, Winston partner Michael Elkin—represented to Apple that "[w]e have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute." Ex. 7 at 3. On April 4, 2023, Mr. Elkin reiterated this claim. *Id.* at 1-2. In both cases, Mr. Elkin removed YouTube from the email chain. *Id.* On April 19, 2023, Apple wrote YouTube, copying Musi, to inform YouTube that Musi had "advised that they have been in contact with you and that the matter is now resolved." *Id.* at 1. While YouTube did not respond to Apple's April 2023 email, as discussed above, the record reflects that the relevant YouTube team did not receive this or any other communications about the complaint. *See* Ex. 5 at 121:4-6, 128:8-11; Ex. 6.

Mr. Elkin's representations to Apple were false. Discovery has revealed that there were *no* communications between Musi or its counsel and YouTube in March or April of 2023. To make matters worse, Musi attempted to conceal Mr. Elkin's fraudulent conduct by making false allegations about it to the Court. In describing Mr. Elkin's two emails, the FAC alleges "Musi, referencing its previous detailed letter from 2021 rebutting any claim of violating YouTube's Terms of Service, noted it had previously been in contact with YouTube to address its concerns." FAC ¶ 5. But the 2023 emails speak for themselves and do not reference a two-year old letter. Instead, the emails falsely claim that Musi was *currently* communicating with YouTube to come to a timely resolution of "this dispute," which was submitted in 2023. Ex. 7 at 3.[3] Musi nonetheless makes the doubly false allegation in the FAC that Apple "closed" YouTube's complaint because of YouTube's "failure to respond," FAC ¶ 44, deliberately concealing that Musi, through Winston, made false representations about its communications with YouTube.

Further, the FAC's theory that Apple solicited a particular complaint from YouTube in

[3] Remarkably, despite having no contact with YouTube *since 2021*, on August 12, 2024, Mr. Elkin cut and pasted the content of his deceptive March 27, 2023 email to Apple and resent it, again falsely claiming that "we have been in communication directly with the Complainant on this matter" despite having made no effort to communicate with YouTube. FAC Ex. D at 3.

2024—that Musi violated YouTube's API Terms of Service—is baseless. Musi alleges that "[i]t was on th[e July 15] call that YouTube supposedly stated to Apple that its complaint with Musi was ***not*** a violation of its user Terms of Service … but rather an unspecified violation of YouTube's API Terms of Service." FAC ¶ 46. But Musi obtained documents from and deposed two Apple witnesses who participated in the call, and no record evidence supports that allegation. *See, e.g.*, Ex. 5 at 128:25-129:2 (testimony describing call); Ex. 8 at 52:2-53:25 (same); Ex. 6 (contemporaneous call notes); Ex. 9 at 4-5 (interrogatory response describing call). YouTube never said to Apple that Musi's app does *not* violate the user Terms of Service, and no Apple witness has ever testified otherwise. *See* Ex. 2 at 2-3 (citing to testimony reflected in Exs. 5, 8).

**2. The FAC falsely alleges that Apple "admitted" that it "knew" that evidence submitted by NMPA was "false".**

The FAC repeatedly and baselessly alleges that in removing the Musi app from the App Store, Apple relied on "evidence"—specifically, NMPA's September 11, 2024 letter in support of YouTube's complaint—that Apple has "admitted" that it "*knew*" was false. FAC ¶ 1; *see also id.* ¶¶ 9, 11, 46, 48, 52, 57-59, 64. There is no evidence in the record of *any* such admission, as any reasonable and competent inquiry would show.

To the extent its fictions can be followed at all, it seems that Musi's theory is that Apple removed Musi's app solely because of alleged violations of YouTube's API Terms of Service, but that Apple supposedly "knew" Musi was not using YouTube's API, and was not subject to YouTube's API Terms of Service. *See* FAC ¶ 1; *see also* Dkt. 68-8 (NMPA letter alleging, among other things, misuse of YouTube's API and violations of API Terms of Service). Musi's primary basis for Apple's alleged knowledge is an April 11, 2024 email from Sony Music Entertainment ("SME") stating that SME had "worked with YouTube to remove API access from Musi[.]" Dkt. 68-6; *see also* FAC ¶ 1 (alleging Apple "learned" from "music-industry players" that "Musi was *not* using YouTube's API"). Musi blatantly mischaracterizes this email as stating that "*years earlier*, Musi had *ceased use* of YouTube's API." *Id.* ¶ 44 (emphasis added). But nothing in the email supports that characterization.

Incredibly, Musi's counsel now claims that an Apple witness questioned about the email

"unequivocally testified that Apple was aware as of April 2024 that Musi *does not use* the YouTube API," *see* Ex. 2 at 3. But the cited testimony reflects nothing close to an "unequivocal" admission that Apple "knew" Musi was not using YouTube's API and says nothing at all about whether Apple "knew" that Musi was not subject to YouTube's API Terms of Service. *See* Ex. 5 at 111:5-15 ("Q. At this point in time, April 11th, 2024, Apple had been informed that YouTube had removed the API access from Musi, correct? … A. At this point in 2024, individuals at Apple were told that Google had removed the API access from Musi but the app was still somehow using Google's services in a way that was more difficult for Google to action is what [the email from SME] says."). Nor does the record support that Apple *could* have known that Musi was not subject to YouTube's API Terms of Service—given that Musi had repeatedly submitted documentation to Apple purporting to show that it was authorized to use YouTube's API. *See* Ex. 10.

**3. The FAC misleadingly omits reference to pending complaints, as well as the history of dishonest, and even fraudulent, conduct in the app dispute process by Musi and its counsel.**

In addition to its false allegations about YouTube's complaint, Musi makes false allegations and material omissions, intended to suggest that no other complaints were pending at the time Musi's app was removed from the App Store, and that prior complaints "were ultimately closed when Musi substantively responded, either by making changes to the Musi app or by showing that these complaints were without factual or legal basis." FAC ¶ 7.

Musi's suggestion that all complaints (other than YouTube's "cooked up" complaint) had been resolved at the time of Musi's removal from the App Store in September 2024 plainly conflicts with the factual record, as multiple complaints were still pending. This includes an active complaint submitted by the International Federation of the Phonographic Industry ("IFPI") on July 27, 2023, that Apple attached to its opposition to Musi's motion for preliminary injunction, *see* Dkt. 30-9, and that the Court discussed extensively in its order, *see* Dkt. 44 at 3-4. Winston was, in fact, a party to communications about that complaint. *See* Dkt. 30-9. Also active at the time was a December 19, 2023 complaint by Araldyca alleging that the Musi app "functions, at a basic level, by allowing users to stream, without relevant authorization, copyright-protected sound

recordings derived from YouTube." Ex. 3 at 4. A February 18, 2024, complaint by BHMedia raising similar claims that Musi was "infringing its copyright[s]" by "using many songs, video, and sound recordings without our permission," Ex. 4 at 71, was also still active—indeed, BHMedia was still demanding Musi's removal from the App Store as late as August 22, 2024, *id.* at 2. Despite these active complaints, "[a] reasonable person reading the [FAC] would believe, contrary to the facts," that no complaints against Musi other than YouTube's were pending at the time of its removal. *Lake*, 130 F.4th at 1069.

Further, while Musi contends that prior complaints were closed because they lacked merit, the record shows otherwise. The FAC misleadingly omits substantial evidence regarding those complaints, including evidence that it was Musi and its counsel—not Apple—that engaged in bad faith conduct in relation to disputes about Musi's app. In one particularly egregious instance, Musi impersonated a representative from complainant Universal Music Group ("UMG") to regain access to the App Store. *See* Ex. 1 at 9; *see also* Ex. 11 at 3; Ex. 12 at 1. On other occasions, Musi tried to get copyright holders to drop their claims by falsely implying that Musi had secured YouTube's authorization to use their content or that YouTube otherwise approved of Musi's app. Ex. 1 at 8; *see also, e.g.*, Ex. 13 at 1; Ex. 14 at 7. While Musi's counsel claims this evidence somehow "does not bear on the question of whether Apple's removal decision in September 2024 was in good faith," Ex. 2 at 3, Musi is grasping at straws. Apple repeatedly informed Musi and its counsel that "[d]evelopers … who misrepresent facts to Apple and/or the Claimant are at risk of termination[.]" FAC Ex. C at 2.

Musi also omits the fact that at least one complainant—David Colloff—expressly stated that the closure of his May 17, 2023 complaint alleging that the Musi app was "[h]osting [his] copyrighted musical content without license or compensation" was *not* a resolution on the merits. Ex. 15 at 12. When closing his complaint in May 2023, *see id.* at 1-2, Mr. Colloff made clear in a contemporaneous communication to Musi's outside counsel that he did not consider the matter resolved on the merits, stating: "I am not [withdrawing the complaint] because I have any doubts whatsoever about my complaint's accuracy, nor has your client resolved the issue to my

satisfaction. I do not plan any further action here, but I of course reserve all rights going forward." Ex. 16 at 1; *see also* Ex. 17 at 1 ("[W]hat you guys are doing is wrong, and I am pretty sure you know that.").

## III. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant Apple's motion for sanctions pursuant to Rule 11(c) of the Federal Rules of Civil Procedure.

Dated: May 5, 2025

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: */s/ Jennifer Milici*

Jennifer Milici (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*

# EXHIBIT 3

**From:** AppStoreNotices <AppStoreNotices@apple.com>
**Received(Date):** Mon, 12 Feb 2024 12:27:12 -0800
**Subject:** Apple Inc. (our ref# APP195591)
**Cc:** aaronwojnowski@gmail.com, support@feelthemusi.com,christian@feelthemusi.com, aaron@feelthemusi.com,apple-ios-contact@feelthemusi.com, MElkin@winston.com
**To:** araldyca@gmail.com
**Date:** Mon, 12 Feb 2024 12:27:12 -0800

---

**Please include APP195591 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you shortly, we will conclude that the matter has been resolved.

Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

☐ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 | mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

---

On Jan 25, 2024 at 1:34 PM, AppStoreNotices@apple.com wrote:

> Dear Sir or Madam,

>
> **Please include APP195591 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**
>
> Thank you for your response and for confirming that you have contacted Araldyca directly regarding your concerns.
>
> Upon receipt of written notification from Araldyca agreeing that your conversation resolves this matter to Araldyca's satisfaction, we will close this matter for our records. Please have Araldyca email us at appstorenotices@apple.com to confirm resolution of this matter.
>
> Sincerely,
>
> Barry
>
> ☐ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 | mailto:AppStoreNotices@apple.com
> The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.
>
>
>
> ----- Original Message -----
> From: MElkin@winston.com
> Subject: [EXT] Re: Apple Inc. (our ref# APP195591) Notice of Complaint
> Date: Jan 11, 2024 at 3:53 PM
> To: AppStoreNotices@apple.com
> Cc: herstein@pitblado.com
>
>
>
>
> Dear App Store Notices:
>
> We are legal counsel to Musi Inc. in connection with this matter.
>
> Our position is that the complainant Araldyca (the “Complainant”) has made unsubstantiated claims about our client's app. We are in communication directly with the Complainant on this matter in order to address the issues he has raised. We will

continue to keep you updated as to the status of our communication with the Complainant.
>
> We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.
>
> Sincerely,
>
>
> Michael Elkin
> Vice Chairman
> Winston & Strawn LLP
> 200 Park Avenue
> New York, NY 10166-4193
> D: +1 212-294-6729
> F: +1 212-294-4700
> Bio<https://www.winston.com/en/professionals/elkin-michael-s> | VCard<https://www.winston.com/en/professionals/elkin-michael-s/vcard.vcf> | Email<mailto:melkin@winston.com> | winston.com<http://www.winston.com>
> [Winston & Strawn LLP]
>
>
>
>
>
>
>
>
>
> On Jan 5, 2024, at 2:16 PM, AppStoreNotices <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>> wrote:
>
>
>
> Dear Sir or Madam,
>
> **Please include APP195591 in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**
>
> On 12/19/2023, we received a notice from Araldyca ("Complainant") that Complainant believes the app listed below infringes its intellectual property rights.  In particular, Complainant believes you are infringing its copyright.  Please see their comments below.
>
> Developer: Musi Inc.
> Provider: Musi Inc.

> app Title: Musi - Simple Music Streaming
> Apple ID: 591560124
>
> The Application is communicating to the public and/or making available to the public and/or reproducing and/or enabling others to reproduce and/or distributing sound recording(s) and/or audiovisual work(s) or other audiovisual fixation(s), rights in which are owned or controlled by Araldyca (https://www.araldyca.com/<https://www.araldyca.com/>).
>
> The Application functions, at a basic level, by allowing users to stream, without relevant authorization, copyright-protected sound recordings derived from YouTube.
> -
>
> You can reach Complainant through Giacomo Tavani (email: araldyca@gmail.com<mailto:araldyca@gmail.com>), copied on this email. Please exchange correspondence directly with Complainant.
>
> We look forward to receiving written assurance that your application does not infringe Complainant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.
>
> Please note that during the course of this matter:
>
> 1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.
>
> 2. Written assurance of rights may include confirmation that your application does not infringe Complainant's rights, an express authorization from Complainant, or other evidence acceptable to Apple, and should include documentation wherever possible.
>
> 3. Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com<https://appstoreconnect.apple.com> and access your app in the Manage Your Application module.
>
> • Access your app in the "My Apps" module
> • Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
> • Select and deselect "All" territories to uncheck all App Store territories
> • Click on the "Done" button
>
> 4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Complainant are at risk of termination from the Developer Program.
>
> 5. Failure to respond to the Complainant or to take steps toward resolving a dispute

may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress.
>
> Thank you for your immediate attention.
>
> Sincerely,
>
> James
>
> ☐ Apple Legal Apple One Apple Park Way Cupertino, CA 95014 AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>
> The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.
>
>
>
>
>
> ________________________________
>
> The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

---------------------------------------------x

MUSI INC.,

Plaintiff,

vs. Case No.

APPLE INC., 5:24-cv-06920-EKL

Defendant.

---------------------------------------------x

VIDEOTAPED DEPOSITION OF

VIOLET EVAN-KARIMIAN

Thursday, March 5, 2025

Stenographically Reported By:

Lynne Ledanois

Certified Court Reporter, License No. 6811

Job No. 7223172

PAGES 1 - 159



Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

----------------------------------------x

MUSI INC.,

Plaintiff,

vs. Case No.

APPLE INC., 5:24-cv-06920-EKL

Defendant.

----------------------------------------x

Videotaped deposition of VIOLET EVAN-KARIMIAN taken at Winston & Strawn 255 Shoreline Drive, Suite 250, Redwood City, California, commencing at 10:04 a.m., on Thursday, March 6, 2025 before LYNNE M. LEDANOIS, Certified Shorthand Reporter No. 6811, Certified Court Reporter.

* * *

REMOTE APPEARANCES

Counsel for the Plaintiff:

WINSTON & STRAWN LLP
BY: JENNIFER A. GOLINVEAUX
SAMANTHA K. LOOKER
Attorneys at Law
255 Shoreline Drive
Suite 520
Redwood City, California 94062
jgolinveaux@winston.com
slooker@winston.com

Counsel for the Defendant:

WILMER CUTLER PICKERING HALE & DORR LLP
BY: JENNIFER MILICI
Attorney at Law
101 California Street
35th Floor
San Francisco, California 94111
jennifer.milici@wilmerhale.com

Also Present:
Cameron Tuttle, Videographer
Beth Gettinger, Apple Legal Counsel

A Let's see. "We have worked with YouTube to 01:02
remove API access from Musi, but the app finds ways to
access our content through technological means that
are more difficult for Google to action," yes.

Q Okay. So at this point in time, 01:02
April 11th, 2024, Apple had been informed that
YouTube had removed the API access from Musi;
correct?

MS. MILICI: Objection, vague.

THE WITNESS: At this point in 2024, 01:02
individuals at Apple were told that Google had
removed the API access from Musi but the app was
still somehow using Google's services in a way that
was more difficult for Google to action is what it
says. 01:03

BY MS. GOLINVEAUX:

Q Okay. Thank you.

A Yes.

Q And you see this email is forwarded to you
from Robert Windom; correct? 01:03

A Correct.

Q And it says, "Hi, Violet," and then there
is an attorney-client privilege bar, so we cannot
see what he says; correct?

A Correct. 01:03

A Correct. 01:23
Q Did they explain why they wanted Apple to initiate the response from YouTube?
Why couldn't they just respond, did they explain that to you? 01:24
A I believe they did. I don't recall exactly what their reason was.
I have a little bit of memory of there being an issue with who was getting the emails that we were sending to YouTube and that maybe they 01:24 weren't going to the right places.
And so they gave us the right email address to use and that way we could send them the dispute history and reference number as we did.
Q Did YouTube confirm to Apple on the 01:24 July 15th email phone call that -- strike that. Let me start over.
Did YouTube confirm to Apple on that July 15th phone call that Musi was, in fact, violating its terms of service? 01:24
MS. MILICI: Objection, vague.
THE WITNESS: Did you want to rephrase?
BY MS. GOLINVEAUX:
Q Not at all.
A In the July 15th phone call, YouTube said, 01:24

email from Elizabeth Miles to yourself. 01:29
Do you see that?
A Yes.
Q If you flip back to the page ending in
166548, do you see an email from Ashley Joyce at the 01:29
NMPA to Ms. Miles?
A Yes.
Q And it says, "Thank you for taking the
time to speak with us a few weeks ago. As a
follow-up to that conversation, attached please find 01:30
a letter in support of YouTube's app store complaint
against Musi."
Do you see that?
A Yes, I do.
Q Did Apple contact the NMPA after its 01:30
meeting, July 15th meeting with Google?
A Can you be specific as to who you believe
may have contacted them or who you're inquiring about?
Q Well, I'm asking about whether you're
aware of anyone at Apple reaching out to the NMPA 01:30
after the July 15th call with YouTube?
A Proactively reaching out?
Q Sure.
A I'm not aware of anybody proactively
reaching out to the NMPA. 01:30

# EXHIBIT 7

**From:** AppStoreNotices <AppStoreNotices@apple.com>
**Received(Date):** Wed, 19 Apr 2023 12:54:13 -0700
**Subject:** Apple Inc. (our ref# APP44644-F)
**Cc:** apple-ios-contact@feelthemusi.com, herstein@pitblado.com, MElkin@winston.com
**To:** legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google
**Date:** Wed, 19 Apr 2023 12:54:13 -0700

---

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you shortly, we will conclude that the matter has been resolved.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

☐ Apple Legal Apple One Apple Park Way Cupertino, CA 95014
AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com
Subject: Apple Inc. (our ref# APP44644-F)
Date: Apr 4, 2023 at 9:49 PM
To: AppStoreNotices@apple.com
Cc: apple-ios-contact@feelthemusi.com, herstein@pitblado.com

Dear App Store Notices,
As noted, we have been in communication directly with the Complainant on this matter in order to attempt to resolve any dispute. We will continue to keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Sincerely,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> | VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> | winston.com<http://www.winston.com>
[Winston & Strawn LLP]

________________________________
From: ASN <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>>
Sent: Tuesday, April 4, 2023 11:41 AM
To: legal-youtube@google.com<mailto:legal-youtube@google.com> <legal-youtube@google.com<mailto:legal-youtube@google.com>>; legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com> <legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com>>; apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com> <apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>>; herstein@pitblado.com<mailto:herstein@pitblado.com> <herstein@pitblado.com<mailto:herstein@pitblado.com>>; Elkin, Michael <MElkin@winston.com<mailto:MElkin@winston.com>>
Subject: Apple Inc. (our ref# APP44644-F)

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Anna

☐ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com<mailto:MElkin@winston.com>
Subject: FW: Apple Inc. (our ref# APP44644-F) Notice of Complaint
Date: Mar 27, 2023 at 3:11 PM
To: AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>
Cc: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>, herstein@pitblado.com<mailto:herstein@pitblado.com>

Dear App Store Notices,

As you know from earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

We believe that YouTube Legal (“Complainant”) has made unsubstantiated claims about our client's app. We have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We will keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> |
VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> |
winston.com<http://www.winston.com>
[Winston & Strawn LLP]
From: ASN
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.
Date: March 23, 2023 at 4:25:54 PM EDT
To: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com>>,
herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:herst
MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@w
Cc: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com%3cmailto:legal-youtube+2mlwktveucwom0y@google.com>>
Subject: Apple Inc. (our ref# APP44644-F) Notice of Complaint

Dear Sir or Madam,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

On 3/22/2023, we received a notice from YouTube Legal ("Complainant") that Complainant believes the app listed below infringes its intellectual property rights. In particular, Complainant believes you are infringing its terms of use. Please see their comments below.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

YouTube TOS Violations
-

You can reach Complainant through YouTube Legal (email: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-

youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com%3cmailto:legal-youtube+2mlwktveucwom0y@google.com>>), copied on this email. Please exchange correspondence directly with Complainant.

We look forward to receiving written assurance that your application does not infringe Complainant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.

Please note that during the course of this matter:

1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.

2. Written assurance of rights may include confirmation that your application does not infringe Complainant's rights, an express authorization from Complainant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3. Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com<https://appstoreconnect.apple.com><https://appstoreconnect.appl and access your app in the Manage Your Application module.

• Access your app in the "My Apps" module
• Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
• Select and deselect "All" territories to uncheck all App Store territories
• Click on the "Done" button

4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Complainant are at risk of termination from the Developer Program.

5. Failure to respond to the Complainant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Anna☐ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 | mailto:AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

---

# EXHIBIT 8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MUSI INC.,
Plaintiff,
vs. Case No. 5:24-cv-06920 EKL
APPLE INC.,
Defendant.
_____________________________

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**
VIDEO DEPOSITION OF ARUN SINGH
Redwood City, California
Friday, March 7, 2025
Volume 1

STENOGRAPHICALLY REPORTED BY:
REBECCA L. ROMANO, RPR, CSR, CCR
California CSR No. 12546
Nevada CCR No. 827
Oregon CSR No. 20-0466
Washington CCR No. 3491
JOB NO. 7226014
PAGES 1 - 120

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MUSI INC.,
Plaintiff,
vs. Case No. 5:24-cv-06920 EKL
APPLE INC.,
Defendant.
______________________________

DEPOSITION OF ARUN SINGH, taken on behalf of the Plaintiff, at 255 Shoreline Drive, #520, Redwood City, California, commencing at 9:01 a.m., Friday, Friday, March 7, 2025 before REBECCA L. ROMANO, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Court Reporter.

APPEARANCES OF COUNSEL

For the Plaintiff:

WINSTON & STRAWN LLP
BY: JENNIFER A. GOLINVEAUX
BY: SAMANTHA K. LOOKER
Attorneys at Law
101 California Street
21st Floor
San Francisco, California 94111-5891
(415) 591-1000
jgolinveaux@winston.com
slooker@winston.com

/////

APPEARANCES OF COUNSEL(cont'd)

For the Defendant:

WILMER CUTLER PICKERING HALE AND DORR LLP
BY: MARK A. FORD
Attorney at Law
60 State Street
Boston, Massachusetts 02109
(617) 526-6423
mark.ford@wilmerhale.com

ALSO PRESENT:

Colleen Powers, In-House Counsel at Apple Inc.
Cameron Tuttle, Videographer

/////

A. That was between Apple and YouTube. 09:45:32
Q. Got it.
A. So Sean and Violet and myself from the Apple side. Kelvin and two lawyers from the YouTube side. 09:45:42
Q. I see.
And was this the video call about Musi?
A. Correct.
Q. Okay. Do you remember approximately the date of that video call? 09:45:53
A. July 15th.
Q. That's the July 15th call.
What was discussed on that video call?
A. Sean started by basically giving an overview of what had happened which was that 09:46:10 YouTube had filed a complaint against Musi. It -- the communication began between Musi and YouTube. And at a certain point, YouTube stopped responding.
We -- Apple legal checked in with them and didn't get a response and so believed that the 09:46:32 issue had been resolved.
And so when the complaint was filed, I believe, if I recall correctly, the Musi app had been taken down from the App Store.
When YouTube did not respond and Apple 09:46:49

legal believed the issue had been resolved, it was reinstated to the App Store. 09:46:51

Q. I see.

So that was Mr. Cameron's setting the table, so to speak, for the call with YouTube? 09:47:07

A. That's correct.

Q. Okay. And what precipitated the -- the video -- the July 15th video call between Apple and YouTube?

MR. FORD: Because that's implicating the attorney-client communication, I can -- I'll instruct you that you can identify the person who asked you to set up the call and the fact of the ask, but don't reveal the substance of any attorney-client communication beyond that. 09:47:20 09:47:31

THE DEPONENT: So that was the first phone call I had with Sean Cameron.

Q. (By Ms. Golinveaux) I see.

It's all making sense.

Okay. So after Mr. Cameron set the table at that July 15th video call by giving an overview and the history and why Apple put the Musi app back up, what was said next? 09:47:46

A. He said that we -- Apple had been receiving complaints about the Musi app and asked 09:48:06

YouTube if they wanted to continue with the complaint. 09:48:09

Q. Okay. And did Mr. Cameron mention from whom Apple had been receiving complaints about the Musi app? 09:48:26

A. No specifics. I believe he said the music industry.

Q. Okay. Fair enough.

I'm looking at this because the court reporter didn't get your full answer. 09:48:58

Your answer was, "He said that we, Apple, had been receiving complaints about the Musi app and asked YouTube if they wanted to continue with the" -- and then it drops off.

Do you recall how you finished that sentence? 09:49:13

A. Complaint.

Q. Okay.

A. And I think I said Apple legal not just "we," Apple. I said, I think, "we," Apple legal. 09:49:17

Q. Okay. Did Mr. Cameron describe the nature of the complaints from the music industry?

A. No.

Q. Did he describe --

A. Sorry. 09:49:43

Q. (By Ms. Golinveaux) That's good. 09:55:37
You got the knack of this deposition thing down.
So what was said after that during this meeting? 09:55:45
A. After what, sorry?
Q. After Mr. Cameron set the table and then told Apple that -- or told YouTube that Apple had been receiving complaints from the music industry about the Musi app and reminded YouTube that it had 09:55:59 had earlier sent a complaint, what was -- what was discussed next?
A. So he also mentioned that there was some communication back and forth between Musi and YouTube following the complaint filed by YouTube 09:56:20 and that at a certain point YouTube stopped responding. YouTube lawyers on the call seemed to be unaware of that fact.
And Violet shared that we had sent -- "we," Apple legal, had sent a response to YouTube, 09:56:40 an email to YouTube, to which they did not respond, which is the email communication the two lawyers -- two YouTube lawyers were unaware of asking them if they wanted to pursue the complaint.
Q. Why did Apple want to know whether Google 09:57:05

or YouTube wanted to pursue the complaint? 09:57:09

MR. FORD: I instruct you not to answer the question to the extent it gets into any attorney-client communications. But to the extent anyone at -- on the -- on the videoconference with 09:57:20 YouTube articulated to YouTube why, you may answer.

THE DEPONENT: The complaints from the music industry.

Q. (By Ms. Golinveaux) Sure.

And I believe, but correct me if I'm 09:57:34 wrong, I believe you testified earlier that Mr. Cameron did not mention particular players in the music industry; is that true?

A. That's correct.

Q. Okay. 09:57:45

A. As far as I recall.

Q. Sure.

Did you YouTube ask about who in the music industry?

A. I don't recall. 09:57:52

Q. Okay. And so after Mr. Cameron took you to -- through the fact that they had stopped responding, what happened next?

A. Violet outlined the date on which that communication had been sent to YouTube, that email, 09:58:13

dates mentioned. 10:37:32

Q. Okay. And what did he say?

A. He let me go back and talk to -- he said he would go back, basically, to his legal folks and get back to me. 10:37:46

Q. Okay. Did you provide him any additional information, for example, that Apple had heard from individuals in the music industry about Musi?

MR. FORD: You can answer to the extent you -- about what you told Mr. Paulino. 10:37:59

THE DEPONENT: I did not.

Q. (By Ms. Golinveaux) Okay. Was anything else discussed on this phone call?

A. No.

Q. Okay. How long did it last, 10:38:11 approximately?

A. I think you just asked me that.

Q. I'm sorry.

A. It was a few minutes.

Q. Okay. And then the next email in the 10:38:20 chain is on Wednesday, June 12th, where Mr. Paulino emails you, says, "Hi Arun, thanks for checking in. We're still gathering information on our end regarding Musi. I'll share an update as soon as possible." 10:38:36

A. About what Apple legal wanted to talk to YouTube legal about. 10:39:25

Q. And what did you say?

A. I said I had already shared with him everything I knew. 10:39:33

Q. And the extent of what you had shared with him is that you understood that YouTube had sent a prior complaint about Musi; is that true?

A. Again, you used --

MR. FORD: Objection. Mischaracterizes testimony. 10:39:44

Q. (By Ms. Golinveaux) Can you please -- correct me, please.

A. Yeah, I think you used the word "prior" again. 10:39:49

Q. Okay.

A. "Prior complaint."

I just said that YouTube had filed a complaint about Musi with Apple legal.

Q. Okay. And what did Kelvin say then? 10:39:58

A. Okay. Let me go back and talk to the team.

Q. So you weren't able to share any additional information with him?

MR. FORD: I just -- let me interject -- 10:40:14

because I think you may be misunderstanding her question. 10:40:15

Her question was about the second telephone conversation, I think, right?

THE DEPONENT: Uh-huh. 10:40:22

MR. FORD: Okay. But go ahead.

Sorry, I just wanted to make sure that the record's clear.

MS. GOLINVEAUX: Yeah.

THE DEPONENT: This is while I was at the conference in Long Beach. 10:40:28

Q. (By Ms. Golinveaux) This is on June 18th at noon --

A. Uh-huh.

Q. -- Pacific time? 10:40:34

A. Uh-huh.

Q. Okay. How long did that conversation last, to your recollection?

A. A couple of minutes.

Q. A couple minutes. 10:40:39

And Kelvin said, Do you have any more information you can share with me about the nature of what they want to talk about Musi about?

A. That's correct.

Q. Okay. And you said, No? 10:40:46

they did indicate that there were some violations. 11:01:31
Q. So on that last hash, it says, "Is it an API abuse issue?"
Is that a question that came from one of the Apple lawyers? 11:01:44
A. Yes.
Q. Okay. And it says -- and the response from YouTube is "There are some violations"?
A. That's correct.
Q. But to your recollection, they didn't 11:01:52 specify what the -- the nature of the violations were --
A. They did not.
Q. -- beyond that?
A. My recollection is they did not. 11:01:58
Q. Okay. The second hash from the bottom, it says, "They can't speak to GPlay's decision, but it is indeed down from GPlay."
Do you see that?
A. Yes. 11:02:12
Q. That's what the YouTube lawyers said, that the Musi app was down from GPlay?
A. No, they didn't say that.
Q. Okay.
A. At the beginning when Sean was laying the 11:02:29

table -- 11:02:33

Q. Uh-huh.

A. -- the second bullet, he's -- he called out that it was -- or noted that the Musi app was not on the Google Play Store but we were getting 11:02:40 complaints, Apple, with Musi on the App Store.

Q. Okay.

A. And at the end of the call, I believe it came up and YouTube lawyers said that they couldn't speak to Google Play's decision. 11:02:57

And I've typed in "indeed down from Google Play." They may have said it's not on Google Play --

Q. Okay.

A. -- Store. 11:03:10

Q. Did they ever mention that it had never been on Google Play, or did that not come up during the call?

A. They didn't mention that at all.

Q. Okay. And did you share your notes with 11:03:21 anyone after the meeting?

A. No.

Q. Okay.

A. Obviously until this.

Q. Until they became an exhibit in a 11:03:32

# EXHIBIT 14

**From:** YouTube Legal [legal-youtube+03nkyvpoirek20y@google.com]
**Sent:** 3/24/2021 7:25:32 PM
**To:** appstorenotices@apple.com
**CC:** christian@feelthemusi.com; support@feelthemusi.com; aaron@feelthemusi.com; herstein@pitblado.com
**Subject:** RE: Apple Inc. (our ref# APP44644-F)
**Attachments:** Screenshot 1 (Use of YouTube Search API Service).png; Screenshot 2 (YouTube Content Playing in Musi).png; Screenshot 3 (the violation that shows the background play of YouTube content).png

To Mr. Herstein and Apple:

Your product or service, Musi - Simple Music Streaming ("Your Client"), is being offered at https://apps.apple.com/us/app/musi-simple-music-streaming/id591560124.

Notwithstanding assertions in your prior correspondence with YouTube and Apple,

(i) we have a record of at least 5 "Musi" apps on the App Store, though it does appear that these have been removed. We are providing these links per your request.

https://apps.apple.com/us/app/musi-playfree-music-player/id1102454969
https://apps.apple.com/app/free-musi-video-for-youtube/id1151026338
https://apps.apple.com/dz/app/musi-simple-music-downloader/id1326609504
https://apps.apple.com/app/free-musi-unlimited-free-music/id1160062366
https://apps.apple.com/us/app/musi-hd-simple-music-streaming/id1409389912

(ii) Your Client is, indeed, using YouTube API Services. Specifically, Your Client is using YouTube's API Services to enable your users to search YouTube (YouTube Search API service) and to play YouTube content (YouTube Player API Service). Moreover, it appears Your Client enables "background" playback of YouTube content -- e.g., when a user navigates away from your Your Client or locks their screen on their device, Your Client allows YouTube content to continue playing. This functionality is a violation of the YouTube API Services Developer Policies Section III.I.9. For your reference, please find attached a screenshot of Your Client's use of YouTube API Service to search YouTube content (screenshot 1), a screenshot of YouTube content on Your Client (screenshot 2), and a screenshot of the violation that shows the background play of YouTube content on Your Client (screenshot 3).

We hope that you will cooperate with us by correcting and ceasing to offer Your Client that violates our terms and policies within 7 days from the date of this letter.

Sincerely,
The YouTube Legal Team

On February 19, 2021 herstein@pitblado.com wrote:

> February 19, 2021
>
> Dear YouTube Legal Team:
>
> **Re: Apple Inc. - Reference No. APP44644-F**
>
> We are legal counsel to Musi Inc. ("**Musi**").

This email is written further to your email to App Store Notices of February 9, 2021, which was forwarded to Musi on February 17, 2021.

In your email, you state:

"… we've come to know of multiple apps created by Musi Inc. and hosted on your App Store that were in violation of YouTube's Terms of Service and/or YouTube API Services Terms of Service including the Developer Policies (collectively, the "**Terms**"). *[emphasis added]*

At least five apps developed by Musi Inc. were found to be in violation of YouTube's Terms, and all five apps were subsequently removed from the App Store resulting from our written notice ..."

With respect to the above quoted paragraphs from your email:

1. Musi categorically denies that it has created "multiple apps" that are hosted on the App Store. It has one app on the App Store, and always has. If you are aware of other apps on the App Store or elsewhere that are operating under the names "Musi" or "Musi Inc.", they would be in violation of our client's registered trade mark. Please provide us with links to the apps in question, so that our office may follow up with these parties with respect to their actions, with a view to having them removed from the App Store.

2. Musi categorically denies that the one app it has on the App Store is in violation of what you define as the Terms. In fact, Musi wrote to you on August 18, 2020 and then again on August 26, 2020 (i.e. when it appeared you may not have received the August 18, 2020 communication), setting out its position that is not, in fact, in violation of what you define as the Terms. To quote one portion of text from our client's communication to you, "*...we have done our due diligence to ensure that our app is fully compliant with the YouTube Terms of Service and is a safe, reliable way for users to contribute to and engage with the YouTube platform.*"

Your email goes on to state:

"It appears that the same developer continues to create new apps that are in violation of YouTube's Terms. Most recently, we became aware of an app " Musi - Simple Music Streaming" that is in violation of YouTube's Terms. We sent a Cease and Desist letters, ref# APP44644-F, to the developer and AppStoreNotices@apple.com on August 13, 2020."

With respect to the above quoted paragraph from your email:

1. Again, Musi categorically denies that it continues to create new apps that are in violation of YouTube's Terms. Musi has one app on the App Store, and always has. Could you please provide further information about the apps that you believe to be operated by our client?

2. As stated above, our client responded to your email on August 18, 2020 and then again on August 26, 2020, when it appeared you may not have received the August 18, 2020 communication.

We wish to reiterate the following:

1. You have made and continue to make a number of unsubstantiated claims regarding Musi's app.

2. You have failed to adequately address our client's responses to your claims, in which our client has been clear that in its view, its app does not violate what you define as the Terms. Our client's responses have also included our client's rationale for its position.

3. You have failed to provide any evidence to substantiate your claims.

Yours truly,

Pitblado LLP

per:

**Adam Herstein**

**Adam Herstein**

Partner

herstein@pitblado.com

D. 204.956.3523

Pitblado LLP | 2500-360 Main St | Winnipeg, MB R3C 4H6

P. 204.956.0560 | F. 204.957.0227

Unsubscribe | The Latest at pitblado.com | Online Payment

Visit our redesigned website at www.pitblado.com

Begin forwarded message:

**From:** AppStoreNotices <AppStoreNotices@apple.com>

**Subject: Apple Inc. (our ref# APP44644-F)**

**Date:** February 17, 2021 at 7:26:30 PM CST

**To:** legal-youtube@google.com, youtube-disputes+32qkm2a2churf0y@google.com, legal-youtube+32qkm2a2churf0y@google.com, christian@wearedash.com, aaronwojnowski@gmail.com, support@feelthemusi.com, christian@feelthemusi.com, aaron@feelthemusi.com

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

YouTube Legal has notified us that this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

 Apple Legal Apple One Apple Park Way Cupertino, CA 95014 AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: legal-youtube+03nkyvpoirek20y@google.com
Subject: YouTube Terms of Service Violation - Musi Inc.
Date: Feb 9, 2021 at 3:53 PM
To: AppStoreNotices@apple.com

Dear Apple Inc.:

We are reaching out to request your assistance with a developer Musi Inc. Over a period of several years, we've come to know of multiple apps created by Musi Inc. and hosted on your App Store that were in violation of YouTube's Terms of Service and/or YouTube API Services Terms of Service including the Developer Policies (collectively, the "Terms").

At least five apps developed by Musi Inc. were found to be in violation of YouTube's Terms, and all five apps were subsequently removed from the App Store resulting from our written notice of the violations to your App

Store and/or to the developer.

It appears that the same developer continues to create new apps that are in violation of YouTube's Terms. Most recently, we became aware of an app " Musi - Simple Music Streaming" that is in violation of YouTube's Terms. We sent a Cease and Desist letters, ref# APP44644-F, to the developer and AppStoreNotices@apple.com on August 13, 2020.

In response to our C&D letter, you provided that "5. Failure to respond to the Complainant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress." Accordingly, we are writing to inform you that the violations have not been fixed, and to request your assistance in removing the app Musi - Simple Music Streaming from the App Store.

Sincerely,
The YouTube Legal Team

----- Original Message -----
From: AppStoreNotices@apple.com
Subject: Apple Inc. (our ref# APP44644-F)
Date: Sep 17, 2020 at 1:36 AM
To: legal-youtube@google.com, youtube-disputes+32qkm2a2churf0y@google.com, legal-youtube+32qkm2a2churf0y@google.com

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, we did not receive confirmation from you that this matter had been resolved.

Please let us know the status of the dispute involving the app listed below. If we do not hear from you shortly, we will consider the matter closed.

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Serena

□ Apple Legal | Apple | 1 Infinite Loop | Cupertino | CA | 95014 | AppStoreNotices@apple.com The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: AppStoreNotices@apple.com
Subject: Apple Inc. (our ref# APP44644-F)
Date: Sep 2, 2020 at 5:23 PM
To: legal-youtube@google.com, youtube-disputes+32qkm2a2churf0y@google.com, legal-youtube+32qkm2a2churf0y@google.com, christian@wearedash.com, aaronwojnowski@gmail.com, support@feelthemusi.com, christian@feelthemusi.com, aaron@feelthemusi.com

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

 Apple Legal Apple One Apple Park Way Cupertino, CA 95014 AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: aaron@feelthemusi.com
Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: Aug 26, 2020 at 3:01 PM
To: legal-youtube+32qkm2a2churf0y@google.com
Cc: appstorenotices@apple.com, clunny@dashagency.com, herstein@pitblado.com

Dear YouTube,

Please see our response below (sent to you August 18, 2020).

On Aug 18, 2020, at 11:25 AM, Aaron Wojnowski <aaron@feelthemusi.com> wrote:

Dear YouTube Legal,

Thank you for your email. As you should be aware based on our previous email exchanges, we have done our due diligence to ensure that our app is fully compliant with the YouTube Terms of Service and is a safe, reliable way for users to contribute to and engage with the YouTube platform.

The concept of Musi is to allow YouTube users to organize and share YouTube videos in a manner that is tailored to the music video content on YouTube. Specifically, this means providing Musi users with the ability to view YouTube's catalogue of videos, add and organize videos into a "video library", and use this library of videos to create new playlists that can be watched or shared with friends. An example of this might be a user, Mark, creating a playlist of his favourite music videos to send to his girlfriend, Michelle, who can then view and collaboratively add/modify this playlist with her own favourite music videos, which could be then viewed and enjoyed by Mark. As far as we understand, this type of collaborative functionality does not currently exist through the YouTube website or mobile apps. It is our goal to provide a transformative network where YouTube users can build and share rich playlists of YouTube video content in a positive, augmentative manner.

We acknowledge your complaints with respect to the YouTube API Terms of Service. As stated in prior emails to you, Musi ceased all use of the YouTube API in 2016 and no longer uses any of the YouTube API Services. Per point 24.1 in the YouTube API Terms of Service: "You may terminate your legal agreement with YouTube by terminating your access to and use of the YouTube API Services (including discontinuing access to and use by your API Client(s) and those acting on your behalf) at any time. You do not need to specifically inform YouTube when you stop using and accessing the YouTube API Services unless otherwise required by YouTube."

I would like to bring attention to the fact that a number of third party email addresses and developers appear to have been copied on your email to our organization. It is our understanding that these dispute threads are to remain private, and we appreciate your consideration in ensuring that third parties are not copied in the future. To confirm, you may contact us through any one of the following email addresses: aaron@feelthemusi.com, aaronwojnowski@gmail.com, support@feelthemusi.com

If you have any further questions or concerns, please do not hesitate to reach out.

Aaron Wojnowski
Founder, Musi Inc.

Aaron Wojnowski
Founder, Musi Inc.

On Aug 24, 2020, at 12:35 PM, YouTube Legal <legal-youtube+32qkm2a2churf0y@google.com> wrote:

Hello,

In Reference To: APP44644-F

We are still waiting to hear from you on our removal request. Below is a copy of the Cease and Desist letter that we sent to you on August 13, 2020.

Sincerely,

The YouTube Legal Team

Sincerely,
The YouTube Team

On August 13, 2020 jaapvankampen@gmail.com wrote:

Dear YouTube Legal,

We're confused on why our email addresses (jaapvankampen@gmail.com and info@caramba-apps.com ) are on this distribution list.

We have no affiliation or association with an app called 'Musi' and the app linked in your email below. How was that link to our email addresses made? From our side, the only hypotheses we have is that we did experience YouTube Data API Quota Theft in the past, and have consequently secured our API Keys. Could this be related to 'Musi', and the reason why the link with my email address was made?

Regards , Jaap

On Aug 13, 2020, at 21:46, YouTube Legal <legal-youtube+32qkm2a2churf0y@google.com> wrote:

To Whom It May Concern:

We recently became aware of your product or service, Musi - Simple Music Streaming ("Your Client"), which is being offered at https://apps.apple.com/us/app/musi/id591560124. It appears Your Client:

• Plays YouTube content in the background, meaning the audio or visual of the Content is not displayed in the page, tab, or screen that the user is viewing
As you know, you are required to comply with the YouTube Terms of Service at all times, which are posted at www.youtube.com/t/terms. Compliance includes, without limitation, not accessing, modifying, selling, or otherwise using the Services (including any Content) in violation of the YouTube Terms of Service.

In addition, Your Client appears to be in violation of the YouTube API Services Terms of Service and Developer Policies:

• III.C. Implementing YouTube Features
  • Policy #: III.C.1 API Client is not adhering to YouTube's RMF features. API Client must not use overlays, frames or other visual elements to obscure any part of an embedded player, including player controls.
• III.F. YouTube Look and Feel
  • Policy #: III.F.1 API Client cannot change the visual content, features of user upload data. YouTube actions should be clearly identifiable, until unless a YouTube written approval.
• III.G. Distribution and Commercial Use
  • Policy #: III.G.1.c API Clients must not sell, purchase, lease, lend, convey, redistribute, or sublicense all or any portion of YouTube API Services.
• III.I. Additional Prohibitions
  • Policy #: III.I.1API Clients must not create, offer, or act as a substitute for, or substantially similar service to, any YouTube Applications. API Clients must not mimic or replicate YouTube's core user experiences by recreating features or process flows unless they add significant independent value or functionality that improves users' interactions with YouTube.
  • Policy #: III.I.6 API Client must not modify, build upon, or block any portion or functionality of a YouTube player.

• Policy #: III.I.9 An API Client must not create, include, or promote features that play content, including audio or video components, from a background player, meaning a player that is not displayed in the page, tab, or screen that the user is viewing.
We strive to keep YouTube a safe, responsible community, and to encourage respect for the rights of millions of YouTube creators. This requires compliance with the YouTube Terms of Service, YouTube API Services Terms of Service, and Developer Policies, as applicable. If applicable, you must also delete any Content including data that you may have gathered in violation of our terms, policies, and applicable laws. Note that terms defined in this letter will have the meanings assigned to them in the applicable terms and policies.

We hope that you will cooperate with us by correcting and ceasing to offer Your Client that violates our terms and policies within 7 days from the date of this letter.

Sincerely,
The YouTube Legal Team

On August 7, 2020 AppStoreNotices@apple.com wrote:

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

It appears that you have submitted a duplicate complaint. The web form is for new matters only. Please note that duplicate submissions will not expedite your matter, and may in fact delay the processing of your claim.

We request that you contact the developer (cc'ed) directly to address any ongoing concerns regarding the app below, or address any information for Apple's consideration in email to <
appstorenotices@apple.com
rather than through our web form.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

□ Apple Legal Apple One Apple Park Way Cupertino, CA 95014
AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
AppStoreNotices@apple.com

Subject: Apple Inc. (our ref# APP44644-F)
Date: Jan 16, 2020 at 3:47 PM
To:
legal-youtube@google.com, youtube-disputes+32qkm2a2churf0y@google.com

Cc:
christian@wearedash.com, aaronwojnowski@gmail.com, support@feelthemusi.com

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

We have learned that the developer of the application named "Musi - Simple Music Streaming" (cc'ed on this message) has attempted to contact you regarding this dispute but has not received any response. Please advise us of the best way for the developer to contact you to resolve your concerns. If you no longer wish to pursue your complaint, please let us know so we may close this matter for our records.

If we do not hear from you shortly, we will close this matter for our records.

Sincerely,

James

 Apple Legal Apple One Apple Park Way Cupertino, CA 95014
AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
aaronwojnowski@gmail.com

Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: Dec 24, 2019 at 7:34 AM
To:
legal-youtube@google.com

Cc:

christian@feelthemusi.com, AppStoreNotices@apple.com

Dear YouTube,

Thank you for your email. We have worked our hardest to ensure that our app is fully compliant with the YouTube Terms of Service and is a safe, reliable way for users to contribute to the YouTube platform.

The concept of Musi is to allow YouTube users to organize and share YouTube videos in a manner that is tailored to the music video content on YouTube. Specifically, this means providing Musi users with the ability to view YouTube's catalogue of videos, add and organize videos into a "video library", and use this library of videos to create and derive new playlists that can be watched or shared with friends. An example of this might be a user, Mark, creating a playlist of his favourite music videos to send to his girlfriend, Michelle, who can then view and collaboratively add/modify this playlist with her own favourite music videos, which could be then viewed and enjoyed by Mark. As far as we understand, this type of collaboration does not currently exist through the YouTube website or mobile apps. It is our goal to provide a transformative network where YouTube users can build and share rich playlists of YouTube video content in a positive, augmentative manner.

When Musi plays videos in the app, we ensure that both the audio and the video are played at all times. Whenever a user starts playing a video, the video is played directly from YouTube using a web player and no content or data is cached or downloaded within the app.

Being a free app, Musi does not charge for access and all YouTube content is available through Musi without the need to purchase anything. We have one paid in-app purchase which is used to remove advertisements in the app. Our advertisements never appear over YouTube content and are limited to small display formats which allow us to recuperate our development expenses and support the app.

Finally, we ensure that proper links to the YouTube website are available by tapping the YouTube logo at the bottom right side of the video while it is playing, or through the "Share" button in the video player. If you have any suggestions as to where we should place these links to make them more visible, please let me know.

Aaron Wojnowski
Founder, Musi Inc.

On Dec 18, 2019, at 11:52 PM, AppStoreNotices <

AppStoreNotices@apple.com

wrote:

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

It appears that you have submitted a duplicate complaint. The web form is for new matters only. Please note that duplicate submissions will not expedite your matter, and may in fact delay the processing of your claim.

We request that you contact the developer (cc'ed) directly to address any ongoing concerns regarding the app below, or address any information for Apple's consideration in email to <

appstorenotices@apple.com

rather than through our web form.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Comments from Complainant: We recently became aware of your service, Musi - Simple Music Streaming. It appears from your website and other marketing materials that Musi - Simple Music Streaming is designed to allow audio to be played without the video portion of the content, require users to pay for access to YouTube content, and use the YouTube player without providing a link to the

YouTube.com watch page. We need to ask you to stop offering that functionality. Your Service must always stream the visual component of any YouTube content together with its accompanying audio component and display / stream both to the user simultaneously at all times. Please take the appropriate technical measures in your application to ensure background audio playback of YouTube content does not occur. Continuing to violate these restrictions may result in legal consequences for you and/or your company. We strive to keep YouTube a safe, responsible community, and to encourage respect for the rights of millions of YouTube creators. This requires compliance with the Terms of Service and API Terms of Service. We hope that you will cooperate with us by ceasing to offer Musi - Simple Music Streaming with functionality that is designed to ,allow audio to be played without the video portion of the content, require users to pay for access to YouTube content, and use the YouTube player wi

thout providing a link to the YouTube.com

watch page within seven days from the date of this letter. Thank you in advance.

-

Sincerely,

James

 Apple Legal  Apple  One Apple Park Way Cupertino, CA 95014

AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:

aaronwojnowski@gmail.com

Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: Nov 26, 2019 at 10:52 AM
To:

AppStoreNotices@apple.com

Cc:
christian@feelthemusi.com

Dear App Store Notices team,

Thank you for sending these followup emails.

We have still not heard from YouTube regarding the changes that we have made to our app. We would like to make clear that we have resolved all concerns that have been brought forward.

Given the lack of communication from any other party, we ask that you please allow us to submit an app update to Musi and subsequently allow the app to be re-listed for sale on the App Store.

Aaron Wojnowski
Founder, Musi Inc.

On Nov 13, 2019, at 9:04 PM, App Store Notices <
AppStoreNotices@apple.com
wrote:

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

We have learned that Musi Inc. has made changes to their app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Unlimited Free Music From YouTube & SoundCloud
Apple ID: 591560124
-

The developer has attempted to contact you regarding these changes but has not received any response. The developer warrants that sufficient changes have been made to the app to alleviate your initial concerns.

If we do not hear from you shortly, we will consider returning this app to sale in the App Store.

Sincerely,

Victoria

 Apple Legal | Apple | One Apple Park Way | Cupertino | CA | 95014 |
AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and

any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

From: Aaron Wojnowski <
aaronwojnowski@gmail.com

Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: November 12, 2019 at 9:07:20 AM PST
To: App Store Notices <
AppStoreNotices@apple.com

Cc: YouTube Legal <
youtube-disputes+32qkm2a2churf0y@google.com>, christian@wearedash.com

Dear App Store notices team,

YouTube has still not replied to any message of ours. It has now been nearly two months since we attempted to correspond with them in order to receive their confirmation that our updates resolve their complaints.

Please confirm when we can expect Musi to be returned to the App Store, given the lack of communication from any of our complainants. We have made updates to resolve any concerns and ask that we be reinstated as soon as possible.

Aaron Wojnowski
Founder, Musi Inc.

On Nov 5, 2019, at 5:22 PM, App Store Notices <
AppStoreNotices@apple.com
wrote:

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

We have learned that Musi Inc. has attempted to contact you regarding the following app, but has not yet received your response:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Unlimited Free Music From YouTube & SoundCloud
Apple ID: 591560124
-

Please immediately advise us of the best method for the app developer to contact you in order to resolve their concerns.

Sincerely,

Victoria

 Apple Legal | Apple | One Apple Park Way | Cupertino | CA | 95014 |
AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

From: Musi Support <
support@feelthemusi.com

Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: October 15, 2019 at 11:19:19 AM PDT
To: Musi Support <
support@feelthemusi.com

Cc: YouTube Legal <
youtube-disputes+32qkm2a2churf0y@google.com>, youtube-disputes+3s80yl4jzf5260y@google.com, appstorenotices@apple.com, legal-youtube@google.com, Christian Lunny <clunny@dashagency.com>, christian@wearedash.com

Dear YouTube Legal team,

We have not received a reply regarding the email below.

Can you please provide confirmation that this update will be suitable for release to the App Store?

Thank you,

Aaron Wojnowski
Founder, Musi Inc.

On Oct 1, 2019, at 3:59 PM, Musi Support <
support@feelthemusi.com
wrote:

Dear YouTube Legal Team,

As you are aware, Musi has been unavailable for new downloads on the App Store for two months. During this time, we have been conducting major app updates in order to address various complaints brought forward to our application and ensure compliance with all applicable third party terms of service.

With that said, we ask that you approve Musi's functionality (including playback functionality, advertising placements, and more) in writing via this email, so we may proceed with our submission to the App Store.

The concept of Musi is to allow YouTube users to organize and share YouTube videos in a manner that is tailored to the music video content on YouTube. Specifically, this means providing Musi users with the ability to view YouTube's catalogue of videos, add and organize videos into a "video library", and use this library of videos to create and derive new playlists that can be watched or shared with friends. An example of this might be a user, Mark, creating a playlist of his favourite music videos to send to his girlfriend, Michelle, who can then view and collaboratively add/modify this playlist with her own favourite music videos, which could be then viewed and enjoyed by Mark. As far as we understand, this type of collaboration does not currently exist through the YouTube website or mobile apps. It is our goal to provide a transformative network where YouTube users can build and share rich playlists of YouTube video content in a positive, augmentative manner.

To operate our service, Musi does rely on nominal advertising revenue to maintain server costs and pay employees such as graphic designers, software engineers, and playlist curators. Specifically within Musi, we would like to include two specific advertising formats, with the following parameters and limitations:

1. Banner advertisements
   - Limited to "display" advertising meaning non-interactive advertisements such as a static image or text
   - Limited to appearing on pages within Musi where there is a large enough basis to warrant the display of such advertisements (ex. not on pages consisting of solely YouTube API data)
2. Interstitial advertisements
   - Appearing once every 30 minutes
   - Limited to not appearing on or over any YouTube video, in order to not confuse users that this is an advertisement originating from the YouTube Service

In order to facilitate the playback of videos, Musi will play back videos via the YouTube video playback page and will not attempt to block or otherwise interfere with any advertisements served by the YouTube Service, including preroll advertisements on the videos, and text based advertising typically appearing at the bottom of the videos during playback (note that the prior incarnations of the app did not attempt to block any of these advertisements). In playing back this video content, we will not attempt to block or circumvent any restrictions set in place by the YouTube Service in order to restrict or limit playback of content (ex. in the background or when the device is locked).

It is Musi's goal to be a fun, transformative app that encourages safe, responsible consumption of YouTube videos whilst also providing its own novel functionality. We ask that you review the above information and provide written confirmation that Musi is suitable for release to the App Store, provided that it operates in the manner described above, within seven (7) business days.

Thank you for your consideration,

Aaron Wojnowski
Founder, Musi Inc.

On Aug 12, 2019, at 8:51 AM, Musi Support <
support@feelthemusi.com

wrote:

Hello,

Thank you for your email. Musi is currently removed from the App Store and is unavailable for sale.

We will be happy to address these concerns once we are reinstated on the App Store, but I can assure you in the mean time that we are not infringing on any of the YouTube or YouTube API Terms of Service.

Aaron Wojnowski
Founder, Musi Inc.

On Aug 12, 2019, at 2:55 AM, YouTube Legal <
youtube-disputes+32qkm2a2churf0y@google.com
wrote:

08/08/2019
VIA EMAIL (
aaronwojnowski@gmail.com, clunny@dashagency.com, christian@wearedash.com
)

Hello Aaron & Team,

We would like to re-open the discussion with regards to Musi's infringement of YouTube Terms of Service (the "TOS") and the YouTube API Services Terms of Service including the Developer Policies (collectively "API TOS").

It appears that your app is selling advertisements, sponsorships, or promotions on a page or screen that contains YouTube API Data (see API TOS - Developers Policies Section III.G.1,2), acting as a substantially similar service, mimicking or replicating YouTube's core experience (see API TOS - Developers Policies Section III.I.1), and modifying the YouTube embedded player (see API TOS - Developers Policies Section III.I.4,6). Furthermore, your app is separating, isolating, and/or modifying the audio or video components of the YouTube audiovisual content (see API TOS - Developers Policies Section I).

We strive to keep YouTube a safe, responsible community, and to encourage respect for the rights of millions of YouTube creators. This requires compliance with the YouTube Terms of Service and YouTube API Services Terms of Service (including the Developer Policies) at all times. We hope that you will cooperate with us by complying with our terms and policies within seven (7) days from receiving this letter.

Thank you in advance!

Sincerely,
The YouTube Legal Team

On February 13, 2019

AppStoreNotices@apple.com
wrote:

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

It appears that you have submitted a duplicate complaint. The web form is for new matters only. Please note that duplicate submissions will not expedite your matter, and may in fact delay the processing of your claim.

We request that you contact the developer (cc'ed) directly to address any ongoing concerns regarding the app below, or address any information for Apple's consideration in email to <

appstorenotices@apple.com

rather than through our web form.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Unlimited Free Music From YouTube & SoundCloud
Apple ID: 591560124
-

Sincerely,

Barry

 Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |

mailto:AppStoreNotices@apple.com

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:

AppStoreNotices@apple.com

Subject: Apple Inc. (our ref# APP44644-F)
Date: Jul 31, 2018 at 11:32 AM
To:

legal-youtube@google.com

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, we did not receive confirmation from you that this matter had been resolved.

Please let us know the status of the dispute involving the app listed below. If we do not hear from you shortly, we will consider the matter closed.

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Unlimited Free Music From YouTube & SoundCloud -- NOW NAMED: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Audrey

 Apple Legal | One Apple Park Way | Cupertino | CA | 95014

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
aaronwojnowski@gmail.com

Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: Jul 20, 2018 at 8:22 AM
To:
AppStoreNotices@apple.com

Cc:
legal-youtube@google.com, christian@wearedash.com

Hello,

We still have not heard a reply from YouTube in response to our email.

Aaron

On Jul 19, 2018, at 4:40 PM, App Store Notices <
AppStoreNotices@apple.com

wrote:

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Unlimited Free Music From YouTube & SoundCloud -- NOW NAMED: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Audrey

 Apple Legal | One Apple Park Way | Cupertino | CA | 95014

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
aaronwojnowski@gmail.com

Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: Jul 5, 2018 at 3:57 PM
To:
AppStoreNotices@apple.com

Hello,

We have not yet heard a reply from YouTube.

Aaron

On Jul 5, 2018, at 4:45 PM, App Store Notices <
AppStoreNotices@apple.com
wrote:

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Unlimited Free Music From YouTube & SoundCloud -- NOW NAMED: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Audrey

 Apple Legal | One Apple Park Way | Cupertino | CA | 95014

The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From:
support@feelthemusi.com

Subject: Re: Apple Inc. (our ref# APP44644-F)
Date: Jul 2, 2018 at 12:34 PM
To:
youtube-disputes+32qkm2a2churf0y@google.com

Cc:
youtube-disputes+3s80yl4jzf5260y@google.com, AppStoreNotices@apple.com, lwidup@apple.com, legal-youtube@google.com, clunny@dashagency.com

Hello,

Thank you for your email. We received two similar emails with regards to this matter, a couple hours apart, so we will be responding to this one exclusively.

Please note that this is the first time this issue has been brought to our attention. It is important to us that YouTube's normal advertisements are shown appropriately within the YouTube embedded player. Based on

this email, we understand the current issue to be that YouTube advertisements are not showing in the YouTube iFrame SDK due to the "Referer" HTTP header not be included when loading the iFrame SDK resources, and other necessary YouTube resources during video playback.

When searching online for how to embed a YouTube video within an iOS application, the first result is an article written by a member of the YouTube Developer Relations team, suggesting the use of the youtube-ios-player-helper library (see here:

https://developers.google.com/youtube/v3/guides/ios_youtube_helper
<https://developers.google.com/youtube/v3/guides/ios_youtube_helper

). As such, we have designed the video playback player within Musi using the information described in this article, as well as information from the youtube-ios-player-helper library.

As per the instructions included in the youtube-ios-player-helper library's GitHub repository and the aforementioned article, the YouTube iFrame library is to be loaded through an HTML page, typically included locally with the shipped third party iOS application, using the `loadHTMLString:origin:` method of UIWebView. In your email sent June 29, 2018, you mention that the HTML that is loaded must be loaded from a server in order for the "Referer" header to be set. As the "Referer" header is not a factor when loading the local video page, we extrapolated that it was important that the "Referer" header was sent along with subsequent requests made by the HTML page, such as when external resources or scripts are loaded. Although it is true that loading an HTML page from a server would cause a UIWebView to send a "Referer" header when loading resources, we have found that the "origin" parameter of the `loadHTMLString:origin:` method can serve the same pu

rpose.

In the youtube-ios-player-helper library, the `loadWithPlayerParams:` method supports the inclusion of an `origin` key which can be used to set the `origin` parameter of the `loadHTMLString:origin:` method of UIWebView. This means that when this key is included and pointing to a URL such as "

https://youtube.com <https://youtube.com/>" or "https://mywebsite.com <https://mywebsite.com/

" (etc), this URL will be passed forward when making requests for resources, despite the original HTML page being loaded locally.

Using the YouTube video playback page, we identified a proof of concept which demonstrates that the "Referer" header is sent, based on the `origin` parameter, when loading external resources and scripts:

1. Save the HTML page source of a YouTube video playback page and include this as a resource in an iOS application
2. Create a UIWebView and load the resource created in step 1 using `loadHTMLString:origin:`
3. Set the origin parameter in the `loadHTMLString:origin:` method to the YouTube link to the playback page that the HTML page source was fetched from (ex.

https://youtube.com/watch?v=<identifier> <https://youtube.com/watch?v=%3Cidentifier%3E

)

4. Run the iOS application and observe that the YouTube video playback page operates normally
5. Quit the iOS application and change the origin to another website URL (ex.

https://mypage.com <https://mypage.com/

)

6. Run the iOS application and observe that the YouTube video playback page does not playback the video

Not only does the YouTube playback page only operate normally when the `origin` parameter is set appropriately, observing the HTTP requests that are sent by the UIWebView will reveal that the "Referer" HTTP header is set to the `origin` parameter.

Based on the above information, we believe that the "Referer" HTTP header is set appropriately when requests for resources are made using a locally loaded HTML page, provided that the `origin` parameter is used appropriately when loading HTML strings using a UIWebView. Therefore, we do not believe that it is necessary for the HTML page to be loaded from a server. Furthermore, we also believe that since the "Referer" HTTP header is set using the `origin` parameter, the `Referer` HTTP header could not be the cause of interference with ad display. Could you please confirm the information above to be correct?

With regards to the advertisement removal In-App Purchase within the Musi app, this purchase will remove the first-party Musi advertisements throughout the application (ie. the banner ads that appear at the top of various views). This purchase does not remove any advertisements that would be served by YouTube. Therefore, we believe that this In-App Purchase is not an issue.

Aaron Wojnowski
Founder, Musi Inc.

On Jun 29, 2018, at 6:49 PM, YouTube Legal <

youtube-disputes+32qkm2a2churf0y@google.com

wrote:

Hello,

We appreciate that you are attempting to comply with our TOS. One key requirement, however, is that YouTube's normal ads must be displayed on embedded content. It appears your app utilizes our IFrame SDK which is our player for web browsers. Because you appear to be hosting the web page locally there is no HTTP REFERER set and this is interfering with ad display.

For you to fix this, you need to make sure the HTML comes from a web page on a server so that the HTTP_REFERER HTTP header gets set. We believe you could also set this manually <

https://stackoverflow.com/questions/7913305/specifying-http-referer-in-embedded-uiwebview

in your WebView implementation.

Additionally we note that you appear to provide an option for users to pay to remove ads. Such a service could only be appropriate for removal of your own ads, not those generated by YouTube.

Until you make at least these changes, we continue to believe your app is in violation of our TOS.
Sincerely,
The YouTube Team

---

This communication, including its attachments, if any, is confidential and intended only for the person(s) to whom it is addressed, and may contain proprietary and/or privileged material. Any unauthorized review, disclosure, copying, other distribution of this communication or taking of any action in reliance on its contents is strictly prohibited. If you have received this message in error, please notify us immediately so that we may amend our records. Then, please delete this message (and its attachments, if any) without reading, copying or forwarding it to anyone.

---

**Pages 1 - 37**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Eumi K. Lee, Judge

| | |
|---|---|
| MUSI INC., Plaintiff, | |
| VS. | NO. C 24-06920 EKL |
| APPLE INC., Defendant. | |

San Jose, California
Wednesday, April 30, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, California 94111
**BY: JENNIFER A. GOLINVEAUX, ESQ.**
**SAMANTHA LOOKER, ESQ.**

For Defendant:
WILMER, CUTLER, PICKERING, HALE & DORR LLP
2100 Pennsylvania Avenue Northwest
Washington, DC 20037
**BY: JENNIFER MILICI, ESQ.**

WILMER, CUTLER, PICKERING, HALE & DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
**BY: CHRISTOPHER WILLIAM JOHNSTONE, ESQ.**

Reported By: James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

**THE COURT:** Counsel, why don't you approach. Let's discuss this quickly.

So does Musi have any objections?

**MS. GOLINVEAUX:** We would object to that, Your Honor. We still haven't had an opportunity to depose Elizabeth Miles, who had communications with Sony and was -- both before and after the removal and was involved in the call with YouTube as well.

So I think that there is no reason, at this stage, to stay discovery. I can understand why Apple would want to do that.

**THE COURT:** Why -- before we infer the sort of -- some sort of purpose here, just -- let's go to, again, sort of first principles.

How is this not plausibility discovery at that point?

**MS. GOLINVEAUX:** Well, Your Honor, there are key witnesses that we didn't have an opportunity to depose in the very short window that we were provided before the amendment and --

**THE COURT:** But, again, this raises concerns to me in terms of plausibility discovery. We were sort of in an odd -- odd position before because we had the MPI. Musi asked for leave to amend. The Court had granted that and then did permit some discovery over Apple's protests.

But now I'm worried that we're -- we're getting into plausibility discovery.

# Exhibit 2

**Subject:** Musi App
**From:** "Walker, Jeff, Sony Music" <jeff.walker@sonymusic.com>
**Received(Date):** Thu, 11 Apr 2024 13:04:31 +0000
**To:** "Robert Windom" <windom@apple.com>,"Elizabeth Miles (elizabeth.miles@apple.com)" <elizabeth.miles@apple.com>
**Date:** Thu, 11 Apr 2024 13:04:31+0000

---

Hi Robert and Elizabeth –

I hope you are both well. I am reaching out to see whether you might be able to help us identify a path forward in our efforts to have the Musi app removed from the Apple app store. The Musi app sources SME music content from YouTube without SME authorization by circumventing YouTube's technical protection measures (i.e., rolling cypher). We have worked with YouTube to remove API access from Musi, but the app finds ways to access our content through technological means that are more difficult for Google to action. The app is not available in the Google App store. It would be helpful to understand what Apple may need to make a decision to remove the app from the storefront. We are not aware that Musi pays any of the creators or rightsholders whose music they make available in their app.

The IFPI (our international trade association) has participated in Apple's mitigation process with Musi for several years. All indications are that the conversations have not been productive or lead to resolution. SME is considering other enforcement options, but it would be helpful to understand if additional enforcement measures would move the needle for purposes of Apple and the App Store.

Ideally, we would like to establish a line of communication around unlicensed music apps. If you might be able to facilitate appropriate introductions, it would be very helpful.

We appreciate your assistance and your partnership on these complicated issues. Best regards.

Jeff

# Exhibit 3

**Received(Date):** Thu, 22 Apr 2021 16:59:00 -0700
**Subject:** Apple Inc. (our ref# APP44644-F)
**From:** YouTube Legal <legal-youtube+03nkyvpoirek20y@google.com>
**To:** appstorenotices@apple.com
**Cc:** christian@feelthemusi.com, support@feelthemusi.com, aaron@feelthemusi.com,herstein@pitblado.com
**Date:** Thu, 22 Apr 2021 16:59:00 -0700

---

**Dear Mr. Herstein:**

**This law firm represents YouTube, LLC and on YouTube's behalf hereby instructs Musi Inc., its officers, employees, affiliates, and all others acting on its behalf (collectively "Musi") to immediately cease and desist from the conduct described below and to immediately remove and disable the existing version of the Musi App and the Musi App Free APK from distribution and use (or replace it with a version that complies with this notice).**

**Following the statements made in your latest response on this matter, YouTube further investigated the functionality of iOS app Musi - Simple Music Streaming - offered at https://apps.apple.com/us/app/musi-simple-music-streaming/id591560124 ( "Musi App"). Contrary to the statements made by your client about the Musi App not infringing the rights of YouTube or accessing the YouTube platform through unauthorized means, we have learned that the functionality of the Musi App appears to be even more egregious than the use of YouTube API Services originally described in our correspondence. Specifically, it appears that the Musi App is accessing and using YouTube's non-public interfaces not intended for use by third parties and is using such unauthorized interfaces to access and display YouTube content and data (including, but not limited to, audiovisual content, audio content, visual content, metadata such as titles, and any other information, on, or relating to, YouTube) ("YouTube Content") on Musi App—without YouTube's permission.**

**Apart from the above, Musi itself advertises on the App Store that the Musi App will "Stream any song from YouTube" and "stream and organize music directly from YouTube."**

**It also appears that Musi is distributing a Musi Free App APK for Android, offered at https://baixarapk.gratis/en/app/591560124/musi-simple-music-streaming ("Musi APK"), which APK engages in the same conduct described above as the Musi App.**

**The above-described conduct violates multiple prohibitions in the YouTube Terms of Service:**

**"You are not allowed to:**

**(1) access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use any part of the Service or any Content except: (a) as expressly**

**authorized by the Service; or (b) with prior written permission from YouTube and, if applicable, the respective rights holders;**

**(2) circumvent, disable, fraudulently engage with, or otherwise interfere with any part of the Service (or attempt to do any of these things), including security-related features or features that (a) prevent or restrict the copying or other use of Content or (b) limit the use of the Service or Content;**

**(3) access the Service using any automated means (such as robots, botnets or scrapers) except (a) in the case of public search engines, in accordance with YouTube's robots.txt file; or (b) with YouTube's prior written permission; …**

**(9) use the Service to view or listen to Content other than for personal, non-commercial use (for example, you may not publicly screen videos or stream music from the Service); or**

**(10) use the Service to (a) sell any advertising, sponsorships, or promotions placed on, around, or within the Service or Content, other than those allowed in the Advertising on YouTube policies (such as compliant product placements); or (b) sell advertising, sponsorships, or promotions on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales (for example, selling ads on a webpage where YouTube videos are the main draw for users visiting the webpage)."**

**See YouTube Terms of Service "Permissions and Restrictions".**

**Musi should further be aware that such streaming of content from the YouTube service likely infringes (unless licensed) the copyrights in that content, such as the copyrights owned by the record labels and music publishers for the music streamed by Musi. With this notice, YouTube is acting only on behalf of itself. Third-party copyright owners may be contacting Musi separately to protect their own rights.**

**In light of the foregoing, we hope that you will cooperate by immediately ceasing all conduct that violates YouTube's terms and policies. This means the Musi App and the Musi APK must also (i) stop enabling and facilitating streaming content from YouTube; (ii) stop accessing and using any and all of YouTube's non-public interfaces not intended for use by third parties, (iii) stop using any unauthorized interfaces to access and display YouTube Content, and (iv) completely remove any and all YouTube Content from the Musi App, the Musi APK, and public materials such as your client's marketing materials.**

**In addition, Musi must not, and must not enable, encourage or require others to, engage in any other conduct that violates any YouTube terms and policies (including the YouTube Terms of Service, YouTube API Services Terms of Service, and YouTube API Services Developer Policies, as applicable).**

**Please respond to this notice within 7 days to confirm your compliance. YouTube reserves all rights to take any further appropriate action. Please contact me at aweibell@wsgr.com if you have any questions about this notice.**

**Very truly yours,**

**WILSON SONSINI GOODRICH & ROSATI**

**Professional Corporation**

**/s/ Tony Weibell**

**Attorneys for**

**YOUTUBE, LLC**

On April 16, 2021 AppStoreNotices@apple.com wrote:

Dear YouTube and Legal,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, we did not receive confirmation from you that this matter had been resolved.

Please let us know the status of the dispute involving the app listed below. If we do not hear from you shortly, we will consider the matter closed.

F. Developer: Musi Inc.

Provider: Musi Inc.

Title: Musi - Simple Music Streaming

Apple ID: 591560124

-

Sincerely,

Serena

 Apple Legal | Apple | 1 Infinite Loop | Cupertino | CA | 95014 | AppStoreNotices@apple.com The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the

# Exhibit 4

NMPA
National
Music Publishers'
Association

1900 N Street, NW
Suite 500
Washington, DC 20036
Tel: (202) 393-NMPA (6672)

**September 11, 2024**

VIA EMAIL

**Ms. Elizabeth Miles**
**Senior Legal Director**
**Apple Inc.**
**1 Apple Park Way**
**Stop 169-4Ism**
**Cupertino, CA 95014-0642**
**elizabeth.miles@apple.com**

**Re: Evidence of YouTube Policy Violations by Musi Inc.**

**Dear Elizabeth:**

**I write regarding the Musi Streaming App developed by Musi Inc. ("Musi"); specifically, to share important evidence concerning Musi's abuse of YouTube's policies. By removing YouTube's native advertisements in favor of its own, Musi violates YouTube's developer Agreement—as defined in Section 2 of YouTube's API Services Terms of Service—which includes YouTube's Developer Policies.[1] Musi is a repeat offender, as evidenced by Musi's unchanged conduct following its removal from Google Play. However, as of this writing, Musi remains a top app in the Apple App Store.[2]**

**To re-state NMPA's concerns, Musi is an audio streaming app that leeches its content offerings from YouTube's Application Programming Interface ("API") to avoid paying copyright licensing fees. The app offers an alternative user interface for accessing the entire YouTube video library, except with ads served by Musi rather than YouTube. Musi also has a feature that allows users to pay a one-time fee of $5.99 to mute ads entirely. As explained further below, this ad manipulation serves to undermine NMPA members' various YouTube licensing structures. Musi even allows users to continue listening while their device is locked, which is a feature YouTube**

---

1 https://developers.google.com/youtube/terms/developer-policies **(prohibiting, , the "modif[ication], interfere[nce] with, replace[ment], or block[ing of] advertisements placed or served by YouTube or by YouTube API Services including in API Data, YouTube audiovisual content, or YouTube players").**

2 https://www.wired.com/story/free-music-streaming-app-musi-too-good-to-be-true/ **(noting that Musi is popular among high schoolers who like that "it's free, doesn't interrupt the music to play ads as Spotify's free tier does, and has a broad catalog.").**

**only offers to paying subscribers. This functionality is wholly inconsistent with YouTube's Developer Policies.[3]**

**While it is not NMPA's API that Musi abuses, NMPA members are nonetheless harmed by Musi's scheme. Certain videos available on Musi contain compositions owned and/or controlled by NMPA members that are licensed pursuant to 17 U.S.C. § 115 ("Section 115"). These videos, known as "Art Tracks," generate royalties according to a statutory formula tied to the host-platform's revenue (in this case, YouTube's revenue). Thus, by muting YouTube's ads and replacing them with its own, Musi diverts royalties from music publishers and songwriters to itself. Additionally, Musi's ad manipulation undermines YouTube's ability to pay rightsholders for music videos licensed pursuant to negotiated synchronization deals, as YouTube relies on the ads it serves alongside those videos to pay the associated royalties.**

**NMPA is aware that YouTube recently filed a complaint against Musi. In furtherance of YouTube's complaint, I have enclosed NMPA's own research into Musi's technical workings (attached hereto as Exhibit A), which confirms that Musi is indeed in violation of YouTube's Developer Policies. NMPA believes this evidence is highly relevant to Apple's review of YouTube's complaint and hopes that Apple will act swiftly to avoid further harm.**

**NMPA strongly supports YouTube's complaint against Musi and again requests that the app be expeditiously removed from the Apple App Store. This is yet another opportunity for Apple to work cooperatively with the songwriting and music publishing community to restrain bad faith actors that disturb the digital music ecosystem.**

**We look forward to hearing from you.**

**Sincerely,**



**Ashley Joyce, SVP, NMPA**

**CC: Danielle Aguirre, EVP & General Counsel, NMPA**
**Eric Sunray, VP, NMPA**

---

3 **https://developers.google.com/youtube/terms/developer-policies (prohibiting the "creat[ion], inclu[sion], or promot[ion of] features that play content, including audio or video components, from a background player, meaning a player that is not displayed in the page, tab, or screen that the user is viewing").**

# Exhibit A

Musi uses YouTube's API to pull in tracks/videos. Musi's code includes snippets like the following:

- "YouTube appears to be receiving a large volume of requests from your network. To fix this, try the following:\n\n1. Sign into a YouTube account by tapping More > YouTube Login and try again.\n2. Try disabling any VPNs or changing internet networks and then try again."

Musi uses multiple API-tokens and applies users into buckets per token and then moves users once banned by YouTube. This allows Musi to exceed YouTube rate limits and scale without needing a commercial API account.

Musi interacts with YouTube's API by hardcoding all of its requests from an iphone 15 to "iphone 12" as the user agent: User-Agent: Mozilla/5.0 (iPhone; CPU iPhone OS 12_2 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko)

The Youtube "API" is an iframe of the video. There are a few libraries where an app can pull the underlying video. From there Musi lays its own ads over YouTube's ads. Musi uses Applovin to overlay the video ads:

- 




- **The above are network requests that occur to play a song / watch an ad.**
  - **Doubleverify is an ad measurement platform used to track view length and interactions to collect revenue;**
  - **inmobi, another advertising platform appears; and**
  - **Appsflyer provides ad analytics.**

**Musi is violating Youtube API's Terms by:**

- **removing the native ads played by Youtube; and**
- **allowing the music content to play in the background.**

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000

Jeff Wilkerson (SBN: 284044)
JWilkerson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7700

Attorneys for Plaintiff
MUSI INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MUSI INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | **Case No. 5:24-cv-06920-EKL**<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED**<br><br>**UNREDACTED** |

Plaintiff Musi Inc. ("Musi"), through its undersigned counsel, hereby brings this civil action against Defendant Apple Inc. ("Apple") for breach of contract and breach of the implied covenant of good faith and fair dealing, and alleges as follows:

## I. NATURE OF THE ACTION

1. This case arises from Apple's abrupt removal of Musi's mobile software application (the "Musi app") from the Apple App Store (the "App Store"), the only commercially viable marketplace for applications for Apple devices. Apple removed the Musi app at the behest of several key players in the music industry, but told Musi it was acting on the basis of a complaint by third-party YouTube (a complaint Apple had purposefully cooked up by proactively seeking to revive a 14-month-old complaint from YouTube that had previously been closed because YouTube had stopped responding). In truth, Apple was acting to appease music-industry players with whom Apple had other commercial dealings. Indeed, Apple later stated that it relied on "evidence" provided by the National Music Publishers Association ("NMPA")—*not* by YouTube—that Musi was violating YouTube's Terms of Service. But Apple *knew* that this "evidence" was false, as it has since admitted, and it did not disclose this so-called "evidence" to Musi until this litigation. Specifically, Apple's post hoc justification for removing the Musi app—that Musi was violating YouTube's Terms of Service with regard to its use of YouTube's Data/iFrame Application Programming Interface (hereafter, "API")—was something that Apple *knew* to be false. Indeed, Apple knew months before the removal—it had learned from the very music-industry players it was acting to appease—that Musi was *not* using YouTube's API. Apple's improper removal of the Musi app has caused—and continues to cause—substantial harm to Musi's business and reputation.

2. Plaintiff Musi is a mobile computing software company and the developer, owner, and operator of the Musi app, which provides users with enhanced functionality to interact with publicly available content on YouTube's website through an augmentative interface. Since its inception, and until September 24, 2024, when it was removed by Apple, the Musi app has been available for download only on the Apple App Store—an online marketplace for apps that is pre-installed on Apple smartphones, and the only commercially viable marketplace for such apps.

3. On September 24, 2024, Apple abruptly removed the Musi app from the App Store. At the time, Apple told Musi it was removing the app on the basis of a five-word complaint dated July 29, 2024, from a complainant identified as "YouTube Legal" (or "YouTube"), which included no supporting evidence or documentation. Despite Musi's efforts to contact YouTube to understand the nature and basis of its concerns, YouTube failed to either respond to Musi or to substantiate its accusations. Musi, on the other hand, promptly responded to all of Apple's communications regarding the complaint.

4. This was not the first time that Musi had heard that YouTube had questions or concerns about the Musi app. In April and May of 2021, Musi engaged with outside counsel for YouTube (apparently the same complainant) to address several questions YouTube had about the functionality of the Musi app and compliance with the YouTube Terms of Service. In a detailed letter, Musi substantively addressed YouTube's concerns. YouTube's counsel did not respond.

5. Musi heard nothing further from YouTube until several years later, in March 2023, when YouTube sent a standard notice to Apple stating that the Musi app violated its intellectual property rights without any explanation (other than a three-word reference to "YouTube TOS Violations"). Musi, referencing its previous detailed letter from 2021 rebutting any claim of violating YouTube's Terms of Service, noted it had previously been in contact with YouTube to address its concerns. But YouTube again failed to respond to its own complaint, and Apple, as was its standard practice, ultimately closed this March 2023 complaint from YouTube because YouTube was not responding. From the time of the 2021 communication through Apple's removal of the Musi app in September 2024, Musi continued to offer the Musi app on the App Store, operating in substantially the same manner, without incident.

6. In the meantime, Apple was facing mounting pressure from the music industry, which had launched sporadic, but ultimately unsuccessful attempts to remove the Musi app from the App Store.

7. Specifically, several music-industry entities had filed complaints with Apple regarding the Musi app, but those complaints were ultimately closed when Musi substantively responded, either by making changes to the Musi app or by showing that these complaints were without factual or legal

basis. These music-industry complaints were meritless, and it is no wonder they did not result in the Musi app's removal. The complainants did not have a legitimate basis to claim that Musi was violating their rights. Indeed, such complainants often failed to substantively engage with—and in some cases did not even respond to—Musi's responses to their complaints, which provided explanations of the Musi app's functionality and why it did not violate any intellectual property rights.

8. In or around April 2024, however, several music-industry players took a different approach. Rather than filing formal complaints through Apple's App Store Notices programs—which following Apple's normal processes would have provided Musi with an opportunity to respond—these entities instead came directly to Apple to demand Musi's removal. Apple ultimately agreed but because of the legal risk posed by removing a popular app without providing a basis, Apple instead began a backchannel scheme to cook up a supposed reason to remove the Musi app. Specifically, and in an effort to appease its friends in the music industry, Apple proactively reached out to YouTube and, in a series of phone calls in June and July 2024, solicited YouTube to resurrect its 14-month-old (and completely lacking in detail) complaint against Musi, even though that complaint had already (and justifiably) been closed for YouTube's total unresponsiveness.

9. Apple also solicited a letter of support for YouTube's supposed complaint from the NMPA (purporting to provide "evidence" that the Musi app was violating YouTube's API Terms of Service). Putting aside why a music-industry trade association would be providing evidence of violations of *YouTube*'s Terms of Service rather than YouTube itself, the NMPA's letter, which Apple did not share with Musi until this litigation, was littered with falsehoods, including factual claims that Apple *knew* to be false.

10. With YouTube's cooked-up complaint and the NMPA's false "evidence" in hand, Apple unjustifiably removed the Musi app from the App Store. To date, the Musi app has not been restored. The removal was all the more unjustified in light of the fact that Apple told Musi it was removing the app because it had not made sufficient efforts to resolve the alleged complaint with YouTube, but Apple was fully aware that YouTube had not communicated the basis for its purported complaint to Musi, was fully aware that it was relying on a detailed letter from NMPA that Musi had not seen and had no way to know existed, and was even fully aware that the NMPA letter contained

false claims, which Musi could and would have demonstrated if Apple or anyone else had told Musi about it.

11. Apple's purported reasoning for removing the Musi app—that Musi had failed to resolve allegations that it was violating the YouTube API Terms of Service—is and was a façade. In fact, Apple knew, as it had been told several months prior by music-industry players, that Musi did not and could not use YouTube's API. Thus, Apple did not and could not have reasonably believed in good faith that its basis for removing the Musi app was justified. To the contrary, Apple itself orchestrated, in bad faith and for the benefit of its friends in the music industry, a basis for removing the Musi app under false pretenses.

12. Apple's unjustifiable removal of the Musi app from the App Store not only violates the implied covenant of good faith and fair dealing, but also Apple's own contractual obligations to developers who make applications available on the App Store.

13. This civil action states claims and seeks monetary, injunctive, and other appropriate relief for Apple's breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. THE PARTIES

14. Plaintiff Musi, Inc. is a foreign corporation with its principal place of business in Manitoba, Canada.

15. Defendant Apple, Inc. is a business incorporated under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

## III. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Musi is a foreign corporation with citizenship different from Apple, an American corporation.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Apple maintains its principal place of business in the State of California and in this District, and because a substantial part of the events or omissions giving rise to Musi's claims occurred in, were directed to, and/or emanated from this District.

18. Venue is also proper because Apple has consented to the exercise of personal jurisdiction by this Court. Apple and Musi are parties to the Apple Developer Program License Agreement (the "Developer Agreement"). Section 14.10 of the Developer Agreement provides that "[a]ny litigation or other dispute resolution" between the parties "arising out of or relating to this Agreement, the Apple Software, or [the parties'] Relationship . . . will take place in the Northern District of California", and that the parties "consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District." A true and correct copy of the Developer Agreement is attached as Exhibit A. As detailed below, Musi's claims against Apple "arise[] out of or relat[e] to" the Developer Agreement and their relationship. *Id.*

## IV. INTRADISTRICT ASSIGNMENT

19. This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred there. Pursuant to Local Rule 3-2(e), for those case categories which are not district-wide, civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

## V. GENERAL ALLEGATIONS

### A. Apple's App Store

20. Apple designs, manufactures, and sells mobile computing devices, including smartphones—branded "iPhones." iPhones are portable electronic devices that connect wirelessly to the internet and have advanced computing capabilities, including internet browsing and music streaming.

21. To function, smartphones require a mobile operating system ("mobile OS"). A mobile OS is piece of software that manages the smartphone's hardware and allows users to run software applications developed specifically for use on the smartphone, i.e., "apps."

22. iPhones are sold with Apple's proprietary mobile OS pre-installed, named "iOS." iPhone users frequently rely on iOS apps developed by Apple, as well as third-party iOS apps, to fully enjoy their iPhone's capabilities. Apps must be iOS-based to operate on iPhone.

23. Third-party developers make their iOS apps available to iPhone users primarily through Apple's App Store. The App Store is an app marketplace developed and operated by Apple for iOS

Case: 26-2892, 08/21/2026, DktEntry: 12.3, Page 187 of 266

apps. As the developer, owner, and operator of the App Store, Apple contracts with all third-party iOS app developers that distribute their apps using the App Store, including Musi.

24. The App Store allows iPhone users to browse, search for, and download Apple-developed iOS apps, as well as third-party iOS apps—as long those third-party apps are approved by Apple. Without approval, a third-party iOS app cannot not be made available on the App Store.

**B. Apple's Developer Program License Agreement**

25. Apple's App Store is the primary means through which iOS apps are distributed to consumers. And as the developer, owner, and operator of the App Store, Apple enjoys singular power to choose which iOS apps are made available. However, these powers are limited by the terms and conditions enumerated in the Developer Agreement.

26. Apple drafted the Developer Agreement. The agreement is a contract of adhesion, because Apple requires all third-party iOS developers to enter into the Developer Agreement before they can develop apps using iOS. The Developer Agreement grants third-party developers a limited, personal, non-exclusive, and revocable license to use Apple's software and services, provided the third-party developer builds and operates its app in compliance with the terms and conditions contained therein. Ex. A §§ 1.1, 2.1, 3.2(g).

27. If a third-party developer wishes to make its iOS app available for download on the App Store, it must apply for distribution with Apple. *Id*. §§ 6.1, 6.9. To qualify, the third-party developer must show that its app complies with the "Documentation and Program Requirements then in effect as well as with any additional guidelines that Apple may" place in the Developer Program License Agreement. *Id*. § 6.1.

28. Once the iOS app is deemed qualified for distribution by Apple (*i.e.*, a "Licensed Application"), the third-party developer must agree to additional conditions enumerated in Schedule 1 of the Developer Agreement before the app can be distributed using the App Store. *Id*. Schedule 1 § 1.1.

29. Schedule 1 § 1.2(b) states that the third-party developer must authorize Apple to "provide hosting services[,] . . . subject to the terms of the Agreement, in order to allow for the storage of, and end-user access to, the Licensed Applications" on the App Store. *Id*. Schedule 1 § 1.2(b).

30. And Schedule 1 § 4.1(b) requires the third-party developer to guarantee to Apple that "none of the Licensed Applications . . . violate or infringe any patent, copyright, trademark, trade secret or other intellectual property or contractual rights of any other person, firm, corporation or other entity." *Id*. Schedule 1 § 4.1.

31. If a dispute arises over the content or use of a Licensed Application, the third-party developer must permit Apple to share its contact information with the party filing the dispute and to follow Apple's app dispute process "on a non-exclusive basis and without any party waiving its legal rights." *Id*. Schedule 1 § 4.2.

32. Relatedly, Schedule 1 § 6.3 states that Apple "reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without good cause, by providing notice of termination to" the third-party developer. *Id*. Schedule 1 § 6.3. However, Schedule 1 § 6.3 goes on to state, in relevant part:

> Without limiting the generality of this Section 6.3, [the third-party developer] acknowledge[s] that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple *reasonably believes*, based on human and/or systematic review, and, including without limitation upon notice received under applicable law, that: . . . (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added).

33. If the Licensed Application charges end-users a fee of any kind through its use, the third-party developer must also enter into a separate agreement with Apple, named Schedule 2, "before any such commercial distribution of [the] Licensed Application may take place via the App Store." *Id*. § 7.2. And if the third-party developer wishes to sell its iOS app "for a fee through Custom App Distribution," then the developer must separately agree to the terms enumerated in another agreement named Schedule 3. *Id.* Attached as Exhibit B is a true and correct copy of Schedules 2 and 3 of the Developer Agreement.

34. Notably, Schedule 2 § 7.3 and Schedule 3 § 7.3 contain identical language as Schedule 1 § 6.3, stating in relevant part:

**<u>Schedule 2</u>**

. . .

> **7.3.** Apple reserves the right to cease marketing, offering, and allowing download by End-Users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any End-User's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . .

Ex. B, Schedule 2 § 7.3.

**<u>Schedule 3</u>**

. . .

> **7.3.** Apple reserves the right to cease marketing, offering, and allowing purchase by Custom App Distribution Customers and download by End-Users of the Custom Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Custom Applications if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Custom Applications and/or any End-User's possession and/or use of those Custom Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . ."

*Id*. Schedule 3 § 7.3.

35. The above provisions create, and the common law imposes regardless, an implied covenant of good faith, including that Apple will not remove an app in bad faith and will otherwise deal with its contractual counterparties, including Musi, fairly. Thus, although the contract purports to provide that Apple may remove an app for any reason, the parties understand that the basis for removal must be still formed in good faith, and that Apple may not misrepresent or hide the nature of its concerns or of any complaints on which it purports to rely in removing an app from the App Store.

**C. The Musi App**

36. Musi is a mobile computing software company based in Canada that owns and operates the Musi app, an iOS-based mobile application.

37. The Musi app provides users with enhanced functionality to interact with publicly available content on YouTube's website through its own augmentative interface—specifically, Musi's

proprietary user interface components and proprietary organizational functionality/metadata. The Musi app does not rely on YouTube's API, nor do Musi's servers store, process, or transmit YouTube videos. Instead, the Musi app plays or displays content based on the user's own interactions with YouTube and enhances the user experience via Musi's proprietary interface.

**D. Apple's Wrongful Removal of the Musi App from the App Store**

38. Since at least 2015, Musi has engaged in sporadic dialogue with YouTube. And throughout, Musi has repeatedly expressed its commitment to offer the Musi app in a way that fully complies with YouTube's Terms of Service.

39. In the past, when YouTube has raised a question concerning the Musi app's functionality, Musi has, in good faith, consistently either (a) adjusted the app's functionality (which included cessation of use of the API as of 2016), or (b) provided details about how the Musi app works and explained why it is fully compliant with YouTube's Terms of Service.

40. In April 2021, YouTube's outside counsel raised several questions regarding the Musi app's functionality. Specifically, YouTube's counsel claimed that the Musi app violated YouTube's Terms of Service because (1) the Musi app accessed and used YouTube's non-public interfaces; (2) the Musi app used the service for a commercial use; and (3) the Musi app violated YouTube's prohibition on the sale of advertising "on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales."

41. Musi addressed these concerns by explaining to YouTube's counsel, in a detailed letter with supporting facts, that (1) at no point does the Musi app access YouTube's non-public interfaces; (2) the Musi app merely allows users to access YouTube's publicly available website through a functional interface and, thus, does not use YouTube in a commercial way; and (3) the Musi app does not sell advertising on any page that only contains content from YouTube or where such content is the primary basis for such sales. Musi provided a detailed basis in support of these conclusions and explained why YouTube's assertions were premised on a misunderstanding of the Musi app's functionality.

42. YouTube never responded. Instead, in March 2023, YouTube again lodged a three-word complaint with the App Store, alleging unspecified violations of the YouTube Terms of Service.

Musi promptly let the App Store know that the parties had been in communication on this issue. YouTube—again—failed to respond. Apple, in accordance with its past practices, closed YouTube's complaint for a failure to respond shortly thereafter.

43. Since that time, Musi has continued to offer the Musi app on the App Store. Musi has conducted routine updates to the Musi app, but the Musi app has otherwise operated in a substantially similar manner since May 5, 2021.

44. In April 2024, nearly a year after YouTube's complaint was closed for failure to respond, Apple was approached by a major music company, which complained that its attempts to run Musi off the App Store via Apple's app dispute process had been repeatedly unsuccessful. The music company also made it known to Apple that, years earlier, Musi had ceased use of YouTube's API. On information and belief, the music company pressured Apple to find a solution that would result in Musi's permanent removal from the App Store (and thus permanent destruction of the company). But, on information and belief, Apple made it known that the fastest way to permanently remove the Musi app would be if YouTube lodged a complaint that Musi would be unable to resolve. With this information, the music company refrained from lodging its own complaint and instead sat back to wait while Apple did its dirty work.

45. With the pressure mounting, Apple set out to drum up a basis to remove the Musi app for the sole benefit of the music-industry actors. Specifically, it began a months-long campaign of backchannel discussions with the goal of creating the appearance of a legitimate basis to pull the Musi app.

46. Beginning no later than May 29, 2024, Apple repeatedly reached out to YouTube to supposedly "follow up" on the closed March 2023 complaint, despite the fact that, as a general matter, Apple does not proactively seek out app disputes, nor does it arbitrate disputes between parties—to the contrary, and as evidenced by its treatment of the March 2023 YouTube complaint, its typical practice is to close app disputes when the complainant fails to respond, not make repeated efforts to goad the complainant into action. An immediate roadblock to Apple's plan became apparent—its contacts at YouTube had no idea what Apple was talking about. So Apple proactively set up a July 15, 2024 phone call with YouTube wherein Apple reminded YouTube of the prior complaint (again,

without supporting details) that YouTube had lodged. It was on this call that YouTube supposedly stated to Apple that its complaint with Musi was not a violation of its user Terms of Service (which Musi had repeatedly countered with factual and legal argument), but rather an unspecified violation of YouTube's API Terms of Service. Apple did not ask YouTube to elaborate any further—and why would it? Apple knew that Musi did not (and apparently, could not) access YouTube's API. Instead, Apple simply asked YouTube to send a message reopening its prior complaint.

47. YouTube, however, apparently could not be bothered even to look up its prior complaint and respond on the thread. Instead, Apple forwarded the March 2023 complaint to YouTube and asked it to specify which of its rights were being infringed. Even then, YouTube responded but did not state what rights, or what aspects of YouTube's user or API Terms of Service Musi had supposedly violated. Instead, it merely indicated it wanted to reopen its prior complaint.

48. Thus, on August 8, 2024, Apple—via representatives of its App Store—emailed Musi, stating that it had received a notice from "YouTube Legal" "that Claimant believes" that the Musi app "infringes its intellectual property rights" and directed Musi to "see their comments below." The referenced comments—unsurprisingly since YouTube had never specified what rights were being infringed, and since Apple knew that any claims based on Musi's supposed use of YouTube's API were baseless—simply stated, "violating YouTube Terms of Service." Attached as Exhibit C is a true and correct copy of the August 8, 2024 email from Apple.

49. Apple's August 8, 2024 email did not provide any further details regarding the bases behind YouTube's assertions. The nature of YouTube's intellectual property was not described. And the specific sections of YouTube's Terms of Service allegedly violated by the Musi app were not named or cited. Of course, the basis (to the extent there was one) provided in the complaint was not the basis that YouTube allegedly provided to Apple on the July 15, 2024 phone call—nowhere within the complaint was it suggested that Musi was violating the requirements to use YouTube's API. Nevertheless, Musi's attorney promptly responded to Apple on August 12, explaining that these accusations were "unsubstantiated," and that Musi had previously contacted YouTube directly to resolve the dispute. Attached as Exhibit D is a true and correct copy of Musi's August 12, 2024 through September 6, 2024 responses.

50. As the app dispute process was ongoing, Apple took its scheme a step further. After a reach out from the NMPA, Apple's in-house counsel held a phone conference with representatives from the NMPA. On that call, on information and belief, Apple solicited a letter of support from the NMPA for YouTube's complaint.

51. The NMPA issued such letter on September 11, 2024. But the NMPA has never filed an app dispute against Musi or even contacted Musi whatsoever. And neither Apple nor the NMPA ever disclosed that letter or its contents to Musi (let alone informed Musi that it formed the basis for Apple's removal of the Musi app).

52. That letter thus could not provide any reasonable basis to remove the Musi app and, indeed, it contains several false claims, including claims that Apple knew to be untrue:

a. The Musi app has never, as the NMPA letter claims, been removed from the Google Play Store, because it has never been offered for sale on the Google Play Store.

b. Musi does not, as the letter claims, rely on or access the API (and therefore, Musi is not subject to the API Terms of Service).

c. Musi does not, as the letter claims, give users the ability to "mute ads," rather video media is accessed directly from YouTube and does not interfere with any ads to the extent they are included within the publicly-available video media that is streamed by the Musi app's user.

d. Musi does not, as the letter claims, use "multiple API-tokens" and "API-token bucketing" to avoid rate limiting because it does not access YouTube's API.

53. On September 6, YouTube emailed Apple claiming that Musi failed to initiate contact to resolve the matter. Ex. D. In doing so, YouTube carbon copied—without explanation—several third parties that have no apparent relation to the matter. Now realizing that YouTube was seemingly unaware of Musi's substantive 2021 communication to YouTube's outside counsel, Musi promptly responded that same day to correct the record and reiterate that the Musi app did not infringe YouTube's intellectual property or violate YouTube's Terms of Service. In this message, Musi again invited YouTube to discuss its concerns. Attached as Exhibit E is a true and correct copy of Musi's September 6, 2024 response to YouTube. This communication was attached in a separate

communication to Apple directly that explained that Musi had previously contacted YouTube's counsel on this matter, had not received a response, and had followed up with YouTube in attempt to resolve the dispute. Attached as Exhibit F is a true and correct copy of Musi's September 18, 2024 through September 24, 2024 responses. But again, Musi did not receive a response from YouTube.

54. Ignoring Musi's communications entirely, on September 18, 2024, Apple advised Musi that, according to its records, the matter remained unresolved. Musi responded by explaining to Apple that Musi's communications to YouTube had gone unanswered, including Musi's most recent communication inviting YouTube to have a discussion. It also reiterated that YouTube's five-word complaint failed to provide any relevant information regarding the basis for its complaint. Ex. F.

55. Having still heard nothing further from either YouTube or Apple, Musi's counsel followed up with Apple on September 24, 2024 updating Apple that:

> To date, we have received no communication from the Complainant in response to our September 6 correspondence, nor has the Complainant substantiated its complaint with further details.
>
> Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.
>
> Musi will continue to keep App Store Notices informed as to the status of this dispute.

Ex. F.

56. Apple responded by ignoring Musi's communications altogether and stating that "your app will be removed from the App Store on the basis of intellectual property infringement," which it did later that day. Attached as Exhibit G is a true and correct copy of the September 24, 2024 response.

57. To tie up its bad-faith campaign against Musi, in-house counsel for Apple contacted the very music company that had kicked off this entire series of events to let it know its mission had been successful: The Musi app was removed. Apple thanked the music company for its patience, noting that the removal process had been more complex than normal. Of course it was—Apple does not usually proactively seek out the reinstatement of complaints, nor remove apps based on "evidence" that is knows to be based on factually false premises.

58. Apple's decision was made in bad faith, given that it knew that there was no basis for the claim that Musi was violating YouTube's API Terms of Service, both based on its own knowledge

and YouTube's complete failure to provide either Apple or Musi with an explanation of how the Musi app violates YouTube's API Terms of Service (and despite all parties' knowledge that the Musi app does not access YouTube's API).

59. Apple's decision to arbitrarily remove the Musi app from the App Store on the basis of a knowingly false complaint that Apple itself had a hand in procuring, at the behest and for the sole benefit of the music industry, was unreasonable, lacked good cause, and violated Apple's Development Program License Agreement's terms, including the implied covenant of good faith and fair dealing. Apple's decision has caused immediate and ongoing financial and reputational harm to Musi. Without the Court's immediate intervention, Musi and consumers face irreparable damage.

**FIRST CAUSE OF ACTION**

**Breach of the Covenant of Good Faith and Fair Dealing**

60. Musi repeats and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

61. California law implies in every contract a covenant of good faith and fair dealing, such that neither party will compromise the rights of the other to receive the benefits of the contract. The covenant aims to effectuate the contract's guarantees, and to protect the parties' expectations. In doing so, the covenant requires each party to do all things reasonably contemplated by the contract's terms. For this reason, under the Development Agreement, Apple has a continuing obligation to act in good faith and deal fairly with Musi, as it does with all its partners.

62. Schedule 1 § 6.3, as well Schedules 2–3 § 7.3, provides that Apple may only cease marketing and/or allowing downloads by end-users of Licensed Applications on the App Store if Apple "reasonably believes, based on human and/or systemic review," that the Licensed Applications infringed a third party's intellectual property rights. Accordingly, Apple was required to perform its contractual obligations in good faith and to avoid any acts or material omissions which unfairly interfere with the right of Musi to receive the benefits of the Developer Agreement.

63. Upon information and belief, Apple violated its covenant of good faith and fair dealing by removing the Musi app on the basis of a complaint that Apple not only proactively sought out at the behest of the music industry, but that Apple knew to be based on an allegation that was false.

64. Had Apple met its duty of good faith and fair dealing, the Musi app would never have been removed for violating Schedule 1 § 6.3, Schedules 2 § 7.3, and Schedule 3 § 7.3. Musi and the Musi app were fully compliant with the contractual obligations enumerated in Apple's Development Agreement. The Musi app did not and does not infringe any intellectual property rights held by YouTube—in fact Apple knew that the basis of the complaint was false. Despite this, Apple abruptly removed the Musi app from its App Store without having a good faith basis to do so, thereby, in effect, taking an affirmative step to frustrate the purpose of the Development Agreement.

65. As a direct and proximate result of Apple's breach of the covenant of good faith and fair dealing, Musi has suffered direct, actual, compensatory, and consequential damages in an amount to be determined at trial, plus prejudgment interest at the maximum legal rate. Those damages include but are not limited to lost profits and other consequential damages that are not waivable by contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive relief to prevent Apple's continuing breach.

## SECOND CAUSE OF ACTION

### Breach of Contract

66. Musi repeats and incorporates herein by reference the allegations in the preceding paragraphs of this complaint.

67. Apple breached several conditions contained in the Developer Agreement, including Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 (the "Sections").

68. These Sections curtail Apple's ability to remove any Licensed Applications, including the Musi app, from its App Store. Specifically, these Sections provide that Apple may only cease the download of any Licensed Application on the App Store if Apple "reasonably believes, based on human and/or systematic review," that the Licensed Application infringes "patent, copyright, trademark, trade secret or other intellectual property rights of any third party."

69. Based upon the correspondence to date, Apple had no reasonable basis to believe that the Musi app infringed YouTube's intellectual property rights.

70. Accordingly, Apple removed the Musi app from the App Store in violation of the terms of its own Developer Agreement.

71. As a direct and proximate result of Apple's breach, Musi has suffered direct, actual, compensatory, and consequential damages in an amount to be determined at trial. Those damages include but are not limited to lost profits and other consequential damages that are not waivable by contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive relief to prevent Apple's continuing breach.

## PRAYER FOR RELIEF

WHEREFORE, Musi respectfully prays for judgment against Apple, and that the Court decree as follows:

a. The conduct alleged in the First Cause of Action herein be adjudged to constitute a breach of the covenant of good faith and fair dealing under California law;

b. The conduct alleged in the Second Cause of Action be adjudged to constitute an unjustified breach of contract under California law;

c. That Musi is entitled to an injunction requiring Apple to restore the Musi app on the App Store platform;

d. That Musi shall be awarded direct, actual, compensatory, and/or consequential damages on its breach of contract and breach of the implied covenant and good faith and fair dealing claims, and that Apple shall be enjoined from continuing to engage in the underlying wrongful conduct and ordered to immediately reinstate the Musi app to the App Store;

e. That Musi shall be awarded prejudgment interest at the maximum legal rate; and

f. That Musi shall be entitled to such other and further relief that this Court deems just and proper.

## JURY DEMAND

Musi demands a trial by jury.

Dated: March 12, 2025

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000

Jeff Wilkerson (SBN: 284044)
JWilkerson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7700

Attorneys for Plaintiff
MUSI INC.

# Exhibit C

Looker, Samantha K.

Subject: FW: Apple Inc. (our ref# APP44644-F) Notice of Complaint

**From:** App Disputes <AppStoreNotices@apple.com>
**Sent:** Thursday, August 8, 2024 11:41 AM
**To:** aaronwojnowski@gmail.com; support@feelthemusi.com; christian@feelthemusi.com; aaron@feelthemusi.com; apple-ios-contact@feelthemusi.com; herstein@pitblado.com; Elkin, Michael <MElkin@winston.com>
**Cc:** legal-youtube@google.com; legal-youtube+2mlwktveucwom0y@google.com
**Subject:** Apple Inc. (our ref# APP44644-F) Notice of Complaint

**Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

On 7/29/24, we received a notice from YouTube Legal ("Claimant") that Claimant believes the app listed below infringes its intellectual property rights. In particular, Claimant believes you are infringing its terms of use. Please see their comments below.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

Comment: violating YouTube Terms of Service.
-

You can reach Claimant through YouTube Legal (email: legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com), copied on this email. Please exchange correspondence directly with Claimant.

We look forward to receiving written assurance that your application does not infringe Claimant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.

Please note that during the course of this matter:

1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.

2. Written assurance of rights may include confirmation that your application does not

infringe Claimant's rights, an express authorization from Claimant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3. Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com and access your app in the Manage Your Application module.

- Access your app in the "My Apps" module
- Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
- Select and deselect "All" territories to uncheck all App Store territories
- Click on the "Done" button

4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Claimant are at risk of termination from the Developer Program.

5. Failure to respond to the Claimant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Barry

□ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: AppStoreNotices@apple.com
Subject: Apple Inc. (our ref# APP44644-F)
Date: April 19, 2023 at 12:54:13 PM
To: legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com
Cc: apple-ios-contact@feelthemusi.com, herstein@pitblado.com, MElkin@winston.com

Dear YouTube,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

The provider below (cc'ed) has advised that they have been in contact with you and that the matter is now resolved. Unless we hear from you shortly, we will conclude that the matter has been resolved.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

James

▯ Apple Legal Apple One Apple Park Way Cupertino, CA 95014 AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com
Subject: Apple Inc. (our ref# APP44644-F)
Date: Apr 4, 2023 at 9:49 PM
To: AppStoreNotices@apple.com
Cc: apple-ios-contact@feelthemusi.com, herstein@pitblado.com

Dear App Store Notices,
As noted, we have been in communication directly with the Complainant on this matter in order to attempt to resolve any dispute. We will continue to keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Sincerely,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP

200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> |
VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> |
winston.com<http://www.winston.com>
[Winston & Strawn LLP]

---

From: ASN <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>>
Sent: Tuesday, April 4, 2023 11:41 AM
To: legal-youtube@google.com<mailto:legal-youtube@google.com> <legal-youtube@google.com<mailto:legal-youtube@google.com>>; legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com> <legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com>>; apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com> <apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>>; herstein@pitblado.com<mailto:herstein@pitblado.com> <herstein@pitblado.com<mailto:herstein@pitblado.com>>; Elkin, Michael <MElkin@winston.com<mailto:MElkin@winston.com>>
Subject: Apple Inc. (our ref# APP44644-F)

Hello,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

According to our records, this matter is unresolved at this time. Please update us on the status of your communications regarding the following app:

F. Developer: Musi Inc.
Provider: Musi Inc.
Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Anna

 Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 | mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

----- Original Message -----
From: MElkin@winston.com<mailto:MElkin@winston.com>
Subject: FW: Apple Inc. (our ref# APP44644-F) Notice of Complaint
Date: Mar 27, 2023 at 3:11 PM
To: AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>
Cc: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com>, herstein@pitblado.com<mailto:herstein@pitblado.com>

Dear App Store Notices,

As you know from earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

We believe that YouTube Legal ("Complainant") has made unsubstantiated claims about our client's app. We have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We will keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

Michael Elkin
Vice Chairman
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio<http://www.winston.com/en/who-we-are/attorneys/elkin-michael-s.html> |
VCard<http://www.winston.com/vcards/616.vcf> | Email<mailto:melkin@winston.com> |
winston.com<http://www.winston.com>
[Winston & Strawn LLP]
From: ASN
<AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com%3cmailto:AppStoreNotices@apple.com>>>
Date: March 23, 2023 at 4:25:54 PM EDT
To: apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com<mailto:apple-ios-contact@feelthemusi.com%3cmailto:apple-ios-contact@feelthemusi.com>>,
herstein@pitblado.com<mailto:herstein@pitblado.com<mailto:herstein@pitblado.com%3cmailto:hers

tein@pitblado.com>>,
MElkin@winston.com<mailto:MElkin@winston.com<mailto:MElkin@winston.com%3cmailto:MElkin@winston.com>>
Cc: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com%3cmailto:legal-youtube+2mlwktveucwom0y@google.com>>
Subject: Apple Inc. (our ref# APP44644-F) Notice of Complaint

Dear Sir or Madam,

**Please include APP44644-F in the subject line of any future correspondence on this matter.**

On 3/22/2023, we received a notice from YouTube Legal ("Complainant") that Complainant believes the app listed below infringes its intellectual property rights. In particular, Complainant believes you are infringing its terms of use. Please see their comments below.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124

YouTube TOS Violations
-

You can reach Complainant through YouTube Legal (email: legal-youtube@google.com<mailto:legal-youtube@google.com<mailto:legal-youtube@google.com%3cmailto:legal-youtube@google.com>>, legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com<mailto:legal-youtube+2mlwktveucwom0y@google.com%3cmailto:legal-youtube+2mlwktveucwom0y@google.com>>), copied on this email. Please exchange correspondence directly with Complainant.

We look forward to receiving written assurance that your application does not infringe Complainant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.

Please note that during the course of this matter:

1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.

2. Written assurance of rights may include confirmation that your application does not infringe Complainant's rights, an express authorization from Complainant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3. Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com<https://appstoreconnect.apple.com><https://appstoreconnect.apple.com<https://appstoreconnect.apple.com>> and access your app in the Manage Your Application module.

• Access your app in the "My Apps" module
• Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
• Select and deselect "All" territories to uncheck all App Store territories
• Click on the "Done" button

4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Complainant are at risk of termination from the Developer Program.

5. Failure to respond to the Complainant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Anna

□ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 | mailto:AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

# Exhibit D

**Looker, Samantha K.**

Subject: FW: Apple Inc. (our ref# APP44644-F)
Attachments: FW: Apple Inc. (our ref# APP44644-F)

---

**From:** Elkin, Michael
**Sent:** Friday, September 6, 2024 5:46 PM
**To:** ASN <AppStoreNotices@apple.com>
**Cc:** herstein@pitblado.com
**Subject:** Apple Inc. (our ref# APP44644-F)

Dear App Store Notices:

As you know from my earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

As noted in my August 15, 2024 email, I have been in communication directly with YouTube's counsel on this matter. I did not receive a response from YouTube to my earlier communication and have followed up with YouTube Legal today in order to attempt to come to a timely resolution of this dispute. Please see attached. We will keep you updated as to the status of our communication.

In the meantime, rest assured that Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

**Michael Elkin**
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio | VCard | Email | winston.com
WINSTON & STRAWN LLP

Begin forwarded message:

**From:** YouTube Legal <legal-youtube+2mlwktveucwom0y@google.com>
**Subject: Apple Inc. (our ref# APP44644-F)**
**Date:** September 6, 2024 at 4:26:29 PM CDT
**To:** appstorenotices@apple.com
**Cc:** 125665701@qq.com, frank@crunding.com, giveappfeedback@gmail.com, frank@impalastudios.com, peter@impalastudios.com, susanna@impalastudios.com, carinda@impalastudios.com, paul@impalastudios.com, jenkins@impalastudios.com, apc_yaoyou@impalastudios.com, rodrick@impalastudios.com, admin@impalastudios.com, johannes.lang@impalastudios.com, robert@impalastudios.com, iuri.genovesi@impalastudios.com, legal@impalastudios.com, apple-ios-contact@feelthemusi.com, herstein@pitblado.com, melkin@winston.com, aaronwojnowski@gmail.com, support@feelthemusi.com, aaron@feelthemusi.com, christian@feelthemusi.com
**Reply-To:** YouTube Legal <legal-youtube+2mlwktveucwom0y@google.com>

Hi Apple team,

We are writing to follow up on this matter. Musi has not reached out to us despite their message below, and this app continues to violate our Terms of Service. We request that you please proceed with removing this app from the App Store.

Sincerely,
The YouTube Team

On August 14, 2024 AppStoreNotices@apple.com wrote:

> **Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**
>
> Hello,
>
> According to our records, this matter is still not resolved. Please contact YouTube Legal immediately regarding this issue. You can reach YouTube Legal through: YouTube Legal (email: legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com).
>
> F. Developer: Musi Inc.
> Provider: Musi Inc.
> App Title: Musi - Simple Music Streaming
> Apple ID: 591560124
> -
>
> As you know, it is your responsibility to resolve this issue directly with YouTube Legal, and further, that you are responsible for any liability to Apple in connection with this matter. We look forward to confirmation from you and YouTube Legal that this issue has been resolved.
>
> Sincerely,
>
> Victoria,
>
> □ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
> The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your

systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

**From:** "Elkin, Michael" <MElkin@winston.com>
**Subject: FW: Re: Apple Inc. (our ref# APP44644-F) Notice of Complaint**
**Date:** August 12, 2024 at 9:11:56 AM PDT
**To:** "ASN" <AppStoreNotices@apple.com>
**Cc:** "herstein@pitblado.com" <herstein@pitblado.com>

Dear App Store Notices:

As you know from earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

We believe that YouTube Legal ("Complainant") has made unsubstantiated claims about our client's app. We have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We will keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

**Michael Elkin**
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio | VCard | Email | winston.com

# Exhibit E

**Looker, Samantha K.**

**Subject:** FW: Apple Inc. (our ref# APP44644-F)

From: Elkin, Michael
Sent: Friday, September 6, 2024 5:42 PM
To: legal-youtube+2mlwktveucwom0y@google.com
Cc: herstein@pitblado.com
Subject: FW: Apple Inc. (our ref# APP44644-F)

Dear YouTube Legal,

As you know, Winston & Strawn LLP represents Musi Inc. ("Musi") in connection with the above referenced dispute. Please correspond with me directly on this matter going forward. I write in response to your communication to Apple dated September 6, 2024.

As noted in my August 12, 2024 email to Apple included in the below email chain, I have been in communication with YouTube's counsel about Musi's compliance with the YouTube Terms of Service. I did not receive a response to my last substantive communication, which detailed how Musi's service works and why it is fully in compliance with YouTube's Terms in response to YouTube's questions. I am available to further discuss this matter at your convenience.

Please rest assured that Musi takes allegations of wrongdoing seriously and has developed its application in compliance with YouTube's Terms.

Yours truly,
Michael S. Elkin

Michael Elkin
Winston & Strawn LLP
T: +1 212-294-6700
D: +1 212-294-6729
F: +1 212-294-4700
winston.com
WINSTON & STRAWN LLP

Begin forwarded message:

From: YouTube Legal <legal-youtube+2mlwktveucwom0y@google.com>
Subject: Apple Inc. (our ref# APP44644-F)
Date: September 6, 2024 at 4:26:29 PM CDT
To: appstorenotices@apple.com
Cc: 125665701@qq.com, frank@crunding.com, giveappfeedback@gmail.com, frank@impalastudios.com, peter@impalastudios.com, susanna@impalastudios.com, carinda@impalastudios.com, paul@impalastudios.com, jenkins@impalastudios.com, apc_yaoyou@impalastudios.com, rodrick@impalastudios.com, admin@impalastudios.com, johannes.lang@impalastudios.com, robert@impalastudios.com, iuri.genovesi@impalastudios.com, legal@impalastudios.com, apple-ios-contact@feelthemusi.com, herstein@pitblado.com,

melkin@winston.com, aaronwojnowski@gmail.com, support@feelthemusi.com, aaron@feelthemusi.com, christian@feelthemusi.com
Reply-To: YouTube Legal <legal-youtube+2mlwktveucwom0y@google.com>

Hi Apple team,

We are writing to follow up on this matter. Musi has not reached out to us despite their message below, and this app continues to violate our Terms of Service. We request that you please proceed with removing this app from the App Store.

Sincerely,
The YouTube Team

On August 14, 2024 AppStoreNotices@apple.com wrote:

> **Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**
>
> Hello,
>
> According to our records, this matter is still not resolved. Please contact YouTube Legal immediately regarding this issue. You can reach YouTube Legal through: YouTube Legal (email: legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com).
>
> F. Developer: Musi Inc.
> Provider: Musi Inc.
> App Title: Musi - Simple Music Streaming
> Apple ID: 591560124
> -
>
> As you know, it is your responsibility to resolve this issue directly with YouTube Legal, and further, that you are responsible for any liability to Apple in connection with this matter. We look forward to confirmation from you and YouTube Legal that this issue has been resolved.
>
> Sincerely,
>
> Victoria,
>
>  Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
> The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.
>
> Begin forwarded message:

**From:** "Elkin, Michael" <MElkin@winston.com>
**Subject: FW: Re: Apple Inc. (our ref# APP44644-F) Notice of Complaint**
**Date:** August 12, 2024 at 9:11:56 AM PDT
**To:** "ASN" <AppStoreNotices@apple.com>
**Cc:** "herstein@pitblado.com" <herstein@pitblado.com>

Dear App Store Notices:

As you know from earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

We believe that YouTube Legal ("Complainant") has made unsubstantiated claims about our client's app. We have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We will keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

Michael Elkin
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio | VCard | Email | winston.com

# Exhibit F

Looker, Samantha K.

Subject: FW: Apple Inc. (our Ad ref# APP44644-F)
Attachments: 2024.9.24 Correspondence to App Store Notices(20547953.1).pdf

---

**From:** Elkin, Michael
**Sent:** Tuesday, September 24, 2024 11:08 AM
**To:** ASN <AppStoreNotices@apple.com>
**Cc:** herstein@pitblado.com
**Subject:** Apple Inc. (our Ad ref# APP44644-F)

Dear App Store Notices:

As you know, we are legal counsel to Musi Inc. in connection with this matter.

We are writing in furtherance to our communication to you on September 19. To date, we have received no communications from the Complainant in response to our September 6 correspondence, nor has the Complainant substantiated its complaint with further details.

Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.

Musi will continue to keep App Store Notices informed as to the status of this dispute.

Yours truly,

**Michael Elkin**
Winston & Strawn LLP
T: +1 212-294-6700
D: +1 212-294-6729
F: +1 212-294-4700
winston.com
WINSTON & STRAWN LLP

---

**From:** Elkin, Michael
**Sent:** Thursday, September 19, 2024 8:39 AM
**To:** ASN <AppStoreNotices@apple.com>
**Cc:** herstein@pitblado.com
**Subject:** FW: Apple Inc. (our Ad ref# APP44644-F)

Dear App Store Notices:

As you know from my earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

Musi takes this matter extremely seriously.

In response to YouTube's September 6 communication, I immediately reached out to YouTube via the email listed on this thread. Apple was provided with a copy on this communication, and this communication is reattached to this email. To date, I have not received a response from YouTube to my September 6 communication. In addition, at no point has YouTube provided any details to substantiate its complaint.

In the meantime, rest assured that Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.

Musi further acknowledges that Apple does not act as arbiter for disputes amongst third parties. Musi considers this matter to be an active legal issue between the parties and is treating it accordingly.

**We would like to strongly reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.**

As a reminder, attached is a copy of Musi's latest correspondence to YouTube, dated September 6, 2024.

Sincerely,

Michael S. Elkin

**Michael Elkin**
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio | VCard | Email | winston.com
WINSTON & STRAWN LLP

---

**From:** ASN <AppStoreNotices@apple.com>
**Sent:** Wednesday, September 18, 2024 4:22 PM
**To:** aaronwojnowski@gmail.com <aaronwojnowski@gmail.com>; support@feelthemusi.com <support@feelthemusi.com>; christian@feelthemusi.com <christian@feelthemusi.com>; aaron@feelthemusi.com <aaron@feelthemusi.com>; apple-ios-contact@feelthemusi.com <apple-ios-contact@feelthemusi.com>; herstein@pitblado.com <herstein@pitblado.com>; Elkin, Michael <MElkin@winston.com>
**Cc:** legal-youtube@google.com <legal-youtube@google.com>; legal-youtube+2mlwktveucwom0y@google.com <legal-youtube+2mlwktveucwom0y@google.com>
**Subject:** Apple Inc. (our ref# APP44644-F)

**Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

YouTube Legal has advised that this matter is still not resolved. Please contact YouTube Legal immediately regarding this issue. You can reach YouTube Legal through: YouTube Legal (email: legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com).

As you know, it is your responsibility to resolve this issue directly with YouTube Legal, and further, that you are responsible for any liability to Apple in connection with this matter. We look forward to confirmation from you and YouTube Legal that this issue has been resolved.

If the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Sincerely,

Victoria,

 Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

**From:** YouTube Legal <legal-youtube+2mlwktveucwom0y@google.com>
**Subject: Apple Inc. (our ref# APP44644-F)**
**Date:** September 6, 2024 at 2:26:29 PM PDT
**To:** appstorenotices@apple.com
**Cc:** 125665701@qq.com, frank@crunding.com, giveappfeedback@gmail.com, frank@impalastudios.com, peter@impalastudios.com, susanna@impalastudios.com, carinda@impalastudios.com, paul@impalastudios.com, jenkins@impalastudios.com, apc_yaoyou@impalastudios.com, rodrick@impalastudios.com, admin@impalastudios.com, johannes.lang@impalastudios.com,

robert@impalastudios.com, iuri.genovesi@impalastudios.com, legal@impalastudios.com, apple-ios-contact@feelthemusi.com, herstein@pitblado.com, melkin@winston.com, aaronwojnowski@gmail.com, support@feelthemusi.com, aaron@feelthemusi.com, christian@feelthemusi.com
**Reply-To:** YouTube Legal <legal-youtube+2mlwktveucwom0y@google.com>

Hi Apple team,

We are writing to follow up on this matter. Musi has not reached out to us despite their message below, and this app continues to violate our Terms of Service. We request that you please proceed with removing this app from the App Store.

Sincerely,
The YouTube Team

On August 14, 2024 AppStoreNotices@apple.com wrote:

> **Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**
>
> Hello,
>
> According to our records, this matter is still not resolved. Please contact YouTube Legal immediately regarding this issue. You can reach YouTube Legal through: YouTube Legal (email: legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com).
>
> F. Developer: Musi Inc.
> Provider: Musi Inc.
> App Title: Musi - Simple Music Streaming
> Apple ID: 591560124
> -
>
> As you know, it is your responsibility to resolve this issue directly with YouTube Legal, and further, that you are responsible for any liability to Apple in connection with this matter. We look forward to confirmation from you and YouTube Legal that this issue has been resolved.
>
> Sincerely,
>
> Victoria,
>
> Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
> The information in this e-mail and any attachment(s) is intended solely for

the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

Begin forwarded message:

**From:** "Elkin, Michael" <MElkin@winston.com>
**Subject: FW: Re: Apple Inc. (our ref# APP44644-F) Notice of Complaint**
**Date:** August 12, 2024 at 9:11:56 AM PDT
**To:** "ASN" <AppStoreNotices@apple.com>
**Cc:** "herstein@pitblado.com" <herstein@pitblado.com>

Dear App Store Notices:

As you know from earlier communications, we are legal counsel to Musi Inc. in connection with this matter.

We believe that YouTube Legal ("Complainant") has made unsubstantiated claims about our client's app. We have been in communication directly with the Complainant on this matter in order to attempt to come to a timely resolution of this dispute. We will keep you updated as to the status of our communication.

We would like to reiterate that in our view there is no basis, legal or otherwise, for you to remove our client's app from the App Store.

Yours truly,

Michael S. Elkin

**Michael Elkin**
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 212-294-6729
F: +1 212-294-4700
Bio | VCard | Email | winston.com

# Exhibit G

**Looker, Samantha K.**

**Subject:** FW: Apple Inc. (our ref# APP44644-F)

On Sep 24, 2024, at 5:35 PM, App Disputes <AppStoreNotices@apple.com> wrote:

**Please include APP44644-F in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**

Hello,

On 7/29/24, Apple received a notice from YouTube Legal ("Claimant') that it believes the following app infringes its terms of use.

F. Developer: Musi Inc.
Provider: Musi Inc.
App Title: Musi - Simple Music Streaming
Apple ID: 591560124
-

Apple informed you of the claim, and of your responsibility to resolve the matter directly with the Claimant, or risk removal of your app from the App Store. We regret that the dispute could not be resolved amicably. As a result, your app will be removed from the App Store on the basis of intellectual property infringement.

As a reminder, content that infringes a third party's rights is not in compliance with the Apple Developer Program Agreement ("the Agreement"): https://developer.apple.com/support/terms/. In particular, under Schedule 1 Section 6.3, Schedule 2 Section 7.3, or Schedule 3 Section 7.3 of the Agreement (as applicable), Apple may remove your application from sale if Apple reasonably believes third party intellectual property rights may have been infringed.

Please contact Claimant directly regarding this matter. Claimant has provided the following contact information: YouTube Legal (email: legal-youtube@google.com, legal-youtube+2mlwktveucwom0y@google.com). For any technical questions, you may contact App Store Connect: https://developer.apple.com/contact/.

Sincerely,

Barry

 Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients. This message may be an attorney-client communication protected by privilege. If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message. Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems. The use of the sender's name in this message is not intended as an electronic signature under any applicable law. Thank you.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**California Northern District**

**Notice of Electronic Filing**

The following transaction was entered on 3/2/2025 at 8:42 PM PST and filed on 3/2/2025

| | |
|---|---|
| **Case Name:** | Musi Inc. v. Apple Inc. |
| **Case Number:** | 5:24-cv-06920-EKL |
| **Filer:** | |
| **Document Number:** | 59(No document attached) |

**Docket Text:**
**Order denying [58] Apple's request for a protective order in Discovery Letter Brief entered by Magistrate Judge Nathanael M. Cousins. This Order finds that the time-limited (3 hours each) depositions of Singh and Evan-Karimian are relevant and proportional to the needs of the case, especially considering that the Court in Dkt. No. 52 denied discovery from additional Apple witnesses. No fees or costs awarded.** ***(This is a text-only entry generated by the court. There is no document associated with this entry.)***

**5:24-cv-06920-EKL Notice has been electronically mailed to:**

**Christopher William Johnstone     chris.johnstone@wilmerhale.com, kathleen.gregory@wilmerhale.com, WHDocketing@wilmerhale.com**

**Jeffrey Scott Wilkerson     jwilkerson@winston.com, ECF_SF@winston.com, jeff-wilkerson-5469@ecf.pacerpro.com**

**Jennifer Milici     jennifer.milici@wilmerhale.com**

**Jennifer A. Golinveaux     jgolinveaux@winston.com, ecf_sf@winston.com, jennifer-golinveaux-1530@ecf.pacerpro.com, kagarcia@winston.com**

**Mark Albert Ford     Mark.Ford@wilmerhale.com, whdocketing@wilmerhale.com**

**Samantha Looker     slooker@winston.com, ECF_SF@winston.com, samantha-looker-7006@ecf.pacerpro.com**

**5:24-cv-06920-EKL Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MUSI INC.,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 24-cv-06920-EKL

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Re: Dkt. No. 10

This action arises out of Defendant Apple Inc.'s decision to remove Plaintiff's music streaming application (the "Musi app") from the App Store following complaints that the Musi app violates third-party intellectual property rights. Before the Court is Plaintiff's motion for a preliminary injunction that would require Apple to continue offering the Musi app for download through the App Store. *See* Mot. for Prelim. Inj., ECF No. 10 ("Motion"). The Court reviewed the briefs and supporting exhibits and heard argument on January 9, 2025. At the conclusion of the hearing, the Court denied the Motion, noting that a written order would follow. Min. Entry, ECF No. 37. This Order provides the reasons for the Court's ruling.

## I. BACKGROUND

### A. The Musi app and the App Store

Plaintiff Musi Inc. ("Musi") is "the developer, owner, and operator of the Musi app," a music streaming application that draws from "publicly available content on YouTube's website." Compl. ¶ 2, ECF No. 1. The Musi app was offered for download through the App Store for years until it was removed on September 24, 2024. *See id.*

The App Store is an electronic store operated by Apple through which developers can offer a wide variety of applications for Apple device users to download. *See* Apple Developer Program

License Agreement at 2, ECF No. 10-3 ("DPLA"). It would be hard to overstate the App Store's commercial success and popularity with users and developers alike. When it launched in July 2008, the App Store offered users just a few hundred applications. *See* Golinveaux Decl. Ex. F at 1, ECF No. 10-8. Since then, the App Store's offerings have expanded tremendously. Today, the "App Store is home to about 2 million apps with only about 60 from Apple, meaning that more than 99.99% of apps are third-party apps." Golinveaux Decl. Ex. H at 1, ECF No. 10-10. Users download applications from the App Store hundreds of millions of times on average each week. Golinveaux Decl. Ex. J. at 3, ECF No. 10-12.

Apple benefits from the growth of the App Store ecosystem "directly through App Store commissions" and "indirectly as the value users get from their iPhones increases." Golinveaux Decl. Ex. H at 8. Third-party developers like Musi benefit from the App Store, too, because it allows them to market and distribute their applications to millions of users. Apple calculated that, within the first decade of the App Store's launch, developers "earned over $100 billion from the App Store." Golinveaux Decl. Ex. G at 7, ECF No. 10-9. And in 2022, the App Store facilitated "$1.1 trillion in developer billings and sales" with "more than 90 percent of the billings and sales accruing solely to developers and businesses of all sizes." Golinveaux Decl. Ex. J. at 2. Finally, and perhaps most important, users benefit from the growth of the App Store ecosystem because they can seamlessly download and use a wide variety of applications – including to stream music. Golinveaux Decl. Ex. H at 24-25 (noting that "many music streaming services" are available through the App Store).

The Musi app has been popular with users. "Musi has continuously been a top 200 app in the App Store for years." Wojnowski Decl. ¶ 4, ECF No. 10-1. One report estimates that the Musi app has been downloaded "more than 66 million times since launching" and was downloaded 8.5 million times in 2023 alone. Milici Decl. Ex. 2 at 2, ECF No. 30-3. According to Musi, "Musi was gaining an average of 886,148 new users per month" in the four months before Apple removed the Musi app from the App Store. Wojnowski Reply Decl. ¶ 2, ECF No. 31-1.

United States District Court
Northern District of California

United States District Court
Northern District of California

**B. Music Industry Complaints About the Musi app**

Despite the popularity of the Musi app, not everyone is a fan. Indeed, Apple claims that it has received "over a dozen third-party complaints" regarding the Musi app, including complaints that the Musi app violates intellectual property rights. Evan-Karimian Decl. ¶¶ 3-4, ECF No. 30-8. The parties provided extensive documentary evidence regarding a complaint by the International Federation of the Phonographic Industry (the "IFPI"), so the Court focuses on that complaint here.

On July 27, 2024, the IFPI, which "promotes the interests" of "some 8,000 major and independent record companies in over 70 countries," complained to Apple that the Musi app infringes its members' intellectual property rights. Evan-Karimian Decl. Ex. 1 at 6-7, 54-55, ECF No. 30-9 ("IFPI Dispute Email"). According to the IFPI, the Musi app reproduces and distributes IFPI members' sound recordings and audiovisual works to the public without authorization. *Id.* at 54-55. Upon receiving the IFPI complaint, Apple forwarded it to Musi and instructed Musi to provide "written assurance that [the Musi app] does not infringe [the IFPI's] rights, or that the parties are taking steps to promptly resolve the matter." *Id.* at 56. Apple warned Musi that developers "with a history of allegations of repeat infringement . . . are at risk of termination from the Developer Program" and that "[f]ailure to respond to the [IFPI] or to take steps toward resolving a dispute may lead to removal of the app(s) at issue." *Id.* at 59. In response, Musi called the IFPI's claims "unsubstantiated," but also represented that it would communicate directly with the IFPI "to attempt to come to a timely resolution of this dispute." *Id.* at 51-52.

Months passed without progress. The IFPI periodically updated Apple that its complaint was not resolved because the Musi app "continues to infringe the rights of [its] member companies." *Id.* at 22-24, 28-30. The IFPI also complained that Musi was "circumventing the technical protection measures (TPMs) which YouTube has implemented to protect IFPI Member Content." *Id.* at 22-24. The IFPI implored Apple repeatedly to remove the Musi app from the App Store to address the alleged infringement. *See, e.g.*, *id.* at 2, 8, 12, 18-19, 24, 35. Musi maintained its position that the IFPI complaint was "without merit." *Id.* at 20-21.

On January 17, 2024, nearly six months after initiating its complaint, the IFPI told Apple that Musi "has made no material changes to the app." *Id.* at 18. Apple asked the IFPI to "provide evidence that the current version of the app infringes [the IFPI's] intellectual property rights." *Id.* at 15-16. The IFPI responded with "screenshots showing the availability of [its member's content] through the [Musi] application," citing to an example of Harry Style's hit song, "As It Was." *Id.* at 11-12. The IFPI also explained that the Musi app "includes functionalities, such as allowing users to stream IFPI Member Content from a mobile device when the user's screen is locked and non-video playback," that were not authorized by the relevant right holders. *Id.*

On April 15, 2024, the IFPI's correspondence with Apple shifted to a more adversarial tone. The IFPI argued that, based on the evidence it had provided, "Apple has the requisite knowledge of [Musi's] illegal activity as referred to in Article 6 of the EU Digital Services Act" – implying that the IFPI could hold Apple liable under EU law for Musi's alleged infringement. *See id.* at 6-8. After receiving this implied threat of legal action, Apple told Musi that if "the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store." *Id.* at 5. Yet Musi maintained its position that the Musi app does not infringe IFPI members' rights and does not breach YouTube's terms of service. *Id.* at 4.

Apparently, Musi never resolved the IFPI's complaint. The last communication in the record is a May 7, 2024, letter from the IFPI to Musi stating: "It is clear that we have reached an impasse in correspondence." Evan-Karimian Decl. Ex. 5 at 1, ECF No. 30-13.

**C. YouTube's Complaint and Apple's Removal of the Musi app**

Musi has also received complaints from YouTube, and the two companies have "engaged in sporadic conversations" since 2015. Wojnowski Decl. ¶ 6. From Musi's perspective, "Musi has repeatedly expressed its commitment to offer the Musi app in a way that complies with YouTube's Terms of Service." *Id.* When YouTube raised concerns, in some cases, Musi "adjusted the app's functionality." *Id.* ¶ 7. But in recent years, Musi has elected not to modify the Musi app, and instead maintains that the Musi app fully complies with YouTube's terms. *See id.*

In April 2021, YouTube's outside counsel wrote to Musi, claiming that the Musi app violated YouTube's terms by: (1) accessing and using YouTube's non-public interfaces, (2) using



United States District Court
Northern District of California

YouTube's services for commercial purpose, and (3) selling advertising on "any website or application" where YouTube's service was "the primary basis for such sales." Compl. ¶ 32; *see also* Elkin Decl. ¶ 2, ECF No. 10-16. In response to this complaint, Musi did not modify the Musi app. Instead, Musi sent YouTube a letter calling YouTube's complaints "unfounded." Golinveaux Reply Decl. Ex. 1 at 2, ECF No. 31-13. In this letter dated May 5, 2021, Musi did not deny selling advertising that is displayed on the Musi app while users stream content from YouTube. Instead, Musi argued that the "functionality offered by the Musi app is of sufficient value to justify Musi's advertisement sales." *Id.* Musi claims that YouTube did not respond to Musi's May 2021 letter. Elkin Decl. ¶ 2.

On March 22, 2023, YouTube again complained to Apple that the Musi app violated YouTube's terms of service. *Id.* ¶ 3; Compl. Ex. C at 6, ECF No. 1-3. Musi claims that it "promptly responded" to YouTube's complaint, and that YouTube never replied. Elkin Decl. ¶ 3; *see also* Compl. Ex. C at 2-5.

On July 15, 2024, Apple had a phone call with YouTube, including in-house counsel from both companies, "to follow up on earlier complaints YouTube itself had submitted regarding the Musi app."[1] Evan-Karimian Decl. ¶ 7. "During this phone call, YouTube confirmed its position that the Musi app violates YouTube's Terms of Service, including by misusing YouTube's Application Programming Interface ('API'). YouTube also requested the removal of the Musi app from App Store." *Id.*[2]

On August 8, 2024, Apple notified Musi that it received a complaint from YouTube on July 29, 2024, alleging that the Musi app infringes YouTube's intellectual property rights and violates its terms of service. Elkin Decl. Ex. A, ECF No. 10-17. On August 12, 2024, Musi told Apple that it has "been in communication directly with [YouTube] on this matter in order to

[1] Apple did not disclose this phone call to Musi until Apple filed its opposition to Musi's Motion. Wojnowski Reply Decl. ¶ 15; 1/9/25 Hr'g Tr. 36:2-4, ECF No. 41 ("Hr'g Tr.").

[2] Musi claims that the Musi app "does not rely on YouTube's [API], nor do Musi's servers store, process, or transmit YouTube videos. Instead, the Musi app plays or displays content based on the user's own interactions with YouTube's website via Musi's proprietary interface." Wojnowski Decl. ¶ 2.



United States District Court
Northern District of California

attempt to come to a timely resolution." Elkin Decl. Ex. B at 3, ECF No. 10-18. But this was misleading: Musi had not yet communicated with YouTube after receiving Apple's August 8, 2024, notice. Hr'g Tr. 15:12-16:2. Rather, when Musi told Apple that it had "been in communication directly" with YouTube, Musi was referring to the letter it sent in May 2021, in which Musi called YouTube's complaints "unfounded." *See* Golinveaux Reply Decl. Ex. 1 at 1.

On August 14, 2024, Apple instructed Musi again to "contact YouTube Legal immediately regarding this issue." Elkin Decl. Ex. B at 2. But Musi did not contact YouTube despite Apple's insistence. *See* Hr'g Tr. 15:12-16:2. On September 6, 2024, YouTube wrote to Apple: "Musi has not reached out to us . . . and [the Musi] app continues to violate our Terms of Service. We request that you please proceed with removing [the Musi] app from the App Store." Elkin Decl. Ex. B at 2. Finally, after receiving this email, Musi contacted YouTube directly on September 6, 2024, and repeated its position that the Musi app complies with YouTube's terms. Elkin Decl. Ex. C at 1, ECF No. 10-19.

On September 11, 2024, the National Music Publishers Association (the "NMPA") wrote to Apple that it "strongly supports YouTube's complaint against Musi" and asked Apple to remove the Musi app from the App Store "expeditiously." Evan-Karimian Decl. Ex. 6 at 2, ECF No. 30-14. The NMPA explained that the Musi app "offers an alternative user interface for accessing the entire YouTube video library, except with ads served by Musi rather than YouTube," and that "this ad manipulation serves to undermine NMPA members' various YouTube licensing structures." *Id.* at 1. NMPA members license their works to YouTube and "generate royalties according to a statutory formula tied to [YouTube's] revenue." *Id.* at 2. Thus, "by muting YouTube's ads and replacing them with its own, Musi diverts royalties from music publishers and songwriters to itself." *Id.* The NMPA letter also included analysis of Musi's code to demonstrate how "Musi lays its own ads over YouTube's ads." *Id.* at 4.[3]

[3] Apple did not disclose the NMPA letter to Musi until Apple filed its opposition to Musi's Motion. Wojnowski Reply Decl. ¶ 15; Hr'g Tr. 36:23-37:2.

United States District Court
Northern District of California

On September 18, 2024, Apple notified Musi that if the YouTube dispute "is not resolved shortly, Apple may be forced to pull your application(s) from the App Store." Elkin Decl. Ex. D at 3, ECF No. 10-20. But Musi did not commit to change the Musi app to address YouTube's complaint. Instead, Musi complained to Apple that YouTube did not provide "any details to substantiate its complaint." *Id.* at 1-2. On September 24, 2024, Apple removed the Musi app from the App Store. Apple reminded Musi that it was Musi's responsibility "to resolve the matter directly with [YouTube], or risk removal of [the Musi] app from the App Store." Elkin Decl. Ex. E at 1, ECF No. 10-21. Because Musi failed to resolve YouTube's complaint, Apple removed the Musi app from the App Store "on the basis of intellectual property infringement." *Id.* at 1.

Musi initiated this action on October 2, 2024, claiming that Apple's decision to remove the Musi app from the App Store violated the DPLA and the implied covenant of good faith and fair dealing. On October 9, 2024, Musi filed a motion for a preliminary injunction to prevent Apple "from refusing to list or otherwise making unavailable the Musi app from the App Store." Proposed Order at 2, ECF No. 10-22. After briefing concluded, the Court heard argument on January 9, 2025. At the hearing, Musi acknowledged that it has not made any attempt to resolve YouTube's complaints, and has not communicated with YouTube, since September 6, 2024. Hr'g Tr. 18:6-13.

United States District Court
Northern District of California

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

Under the Ninth Circuit's "sliding scale approach," a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply

in [the movant's] favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). To raise serious questions, the movant's claim must be more than just "plausible." *Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 863 (9th Cir. 2022). Rather, the movant must show that it has a "fair chance of success on the merits." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Republic of the Philippines v. Marcos*, 862 F.3d 1355, 1362 (9th Cir. 1988) (en banc)). Under the sliding scale approach, the movant still must show "a likelihood of irreparable injury and that the injunction is in the public interest." *Cottrell*, 632 F.3d at 1135.

## III. DISCUSSION

The crux of Musi's complaint is that Apple breached the Apple Developer Program License Agreement and the implied covenant of good faith and fair dealing when it removed the Musi app from the App Store. Musi seeks a preliminary injunction that would prevent Apple "from refusing to list or otherwise making unavailable the Musi app from the App Store."[4] Proposed Order at 2.

The Court assumes, without deciding, that Musi seeks a prohibitory injunction rather than a mandatory one. Even with this assumption, Musi's request for a preliminary injunction must be denied because Musi fails to demonstrate serious questions going to the merits of its claims, let alone a likelihood of success on the merits. The DPLA, which governs the terms of Musi's use of the App Store, affords Apple broad discretion to remove applications "at any time, with or without cause." DPLA Schedule 1 § 6.3. Furthermore, on the current record, Musi has not raised serious questions that Apple acted unreasonably or in bad faith when it removed the Musi app after receiving several third-party complaints that went unresolved for months. Finally, Musi has also failed to show that its requested injunction would serve the public interest.

[4] Although it is framed in prohibitory terms, Musi's proposed injunction would have the effect of mandating that Apple reinstate the Musi app in the App Store. The Ninth Circuit has observed that the "sliding scale" standard might not apply when the movant seeks a mandatory injunction. *Doe v. Snyder*, 28 F.4th 103, 111 n.4 (9th Cir. 2022).



United States District Court
Northern District of California

### A. Serious Questions or a Likelihood of Success on the Merits

#### 1. Breach of Contract

Musi's breach of contract claim requires "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). A contract must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. The contract's language governs if it is "clear and explicit." *Id.* § 1638.

As a condition of using Apple software and accessing the App Store platform, all third-party application developers, including Musi, agree to the DPLA. Relevant here, Musi agreed that the Musi app "will not violate, misappropriate, or infringe any Apple or third-party copyrights, trademarks, rights of privacy and publicity, trade secrets, patents, or other proprietary or legal rights." DPLA at 17. The DPLA includes the following termination clause:

> Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 6.3, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based [on] human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: (i) those Licensed Applications are not authorized for export to one or more of the regions designated by You under Section 2.1 hereof, in accordance with the Export Administration Regulations or other restrictions; (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party; (iii) the distribution and/or use of those Licensed Applications violates any applicable law in any region You designate under Section 2.1 of this Schedule 1; (iv) You have violated the terms of the Agreement, this Schedule 1, or other documentation including without limitation the App Review Guidelines; or (v) You or anyone representing You or Your company are subject to sanctions of any region in which Apple operates. An election by Apple to cease allowing download of any Licensed Applications, pursuant to this Section 6.3, shall not relieve You of Your obligations under this Schedule 1.

DPLA Schedule 1 § 6.3 (emphasis added).

Musi has not raised serious questions that Apple breached the DPLA. The plain language of the DPLA governs because it is clear and explicit: Apply may "cease marketing, offering, and allowing download by end-users of the [Musi app] at any time, with or without cause, by providing notice of termination." *Id*. Based on this language, Apple had the right to cease offering the Musi app without cause if Apple provided notice of termination to Musi. On the current record, it is undisputed that Apple gave Musi notice of termination. Apple warned Musi multiple times that "Apple may be forced to pull [the Musi app] from the App Store" if Musi failed to resolve third-party complaints. Elkin Decl. Ex. D at 3; *see also* IFPI Dispute Email at 5, 59. Accordingly, Musi has not raised a serious question that Apple breached the DPLA.

Musi contends that more was required of Apple. Musi points to other language in the DPLA, which provides that "Apple may cease allowing download by end-users . . . if Apple <u>reasonably believes</u>, based [on] human and/or systematic review," that an application infringes intellectual property rights. DPLA Schedule 1 § 6.3 (emphasis added). Musi proposes that this "reasonable belief" clause limits Apple's right to cease offering an application "at any time, with or without cause." According to Musi, Apple was required to (1) conduct a "human and/or systematic review" of YouTube's complaint, and (2) based on that review, form a reasonable belief that the Musi app infringed intellectual property rights. Mot. at 14-15.[5]

The problem with Musi's construction of the DPLA is that the "reasonable belief" clause expressly does not "limit[] the generality" of Apple's right to cease offering an application "at any time, with or without cause." DPLA Schedule 1 § 6.3. When a contract's plain language expressly states that a clause is not limiting, a court should not construe the clause as a limitation. *See FTC v. EDebitPay, LLC*, 695 F.3d 938, 943 (9th Cir. 2012) (holding that the phrase "including but not limited to" is a "phrase of enlargement" indicating that "enumerated examples following the phrase should not be construed as an exhaustive listing"). Moreover, Musi's proposed

---

[5] In its reply brief, Musi points to Section 4.1(g) of the DPLA. Reply at 8. But this provision imposes an obligation on Musi, not on Apple, and it does not waive Apple's termination rights. DPLA Schedule 1 § 4.1(g) (requiring developers "to permit Apple to share [their] contact information with the party filing [a] dispute and to follow Apple's app dispute process on a non-exclusive basis and without any party waiving its legal rights").



United States District Court
Northern District of California

construction would read the "without cause" clause, and the "without limiting" clause, out of the DPLA entirely.

Judge Cousins' opinion in *Intango, Ltd. v. Mozilla Corp.* is instructive. No. 20-cv-02688-NC, 2020 WL 12584274 (N.D. Cal. Aug. 25, 2020). In that case, the plaintiff made add-ons for Mozilla's Firefox browser. Mozilla disabled the plaintiff's add-ons because they allegedly violated Mozilla's distribution agreement by "secretly redirecting its users' internet searches and tracking its users' search activity." *Id.* at *1. Mozilla's distribution agreement provided that:

> Mozilla reserves the right (though not the obligation) to, in [Mozilla's] sole discretion, remove or revoke access to any Listed or Unlisted Add-ons. This applies, but is not limited to, Add-ons that, in [Mozilla's] reasonable opinion, violate this Agreement or the law, any applicable Mozilla policy, or is in any way harmful or objectionable. In addition, [Mozilla] may at any time remove Your Add-on from AMO; revoke Your Mozilla Certificate; blocklist an Add-on; delete your AMO account; flag, filter, modify related materials (including but not limited to descriptions, screenshots, or metadata); reclassify the Add-on; or take other corrective action.

*Id.* at *6 (emphasis added). This language, including the provision that Mozilla "may at any time remove" add-ons, gave Mozilla broad discretion to remove the plaintiff's add-on. Judge Cousins held that Mozilla's right to remove add-ons was expressly "'not limited to' situations where Mozilla found that the add-on violates Mozilla policy." *Id.* The same is true here. The DPLA provides example circumstances under which Apple may cease offering an application, and those examples do not limit the broad discretion that Apple reserved for itself.[6]

Musi cites cases that are inapposite or affirmatively unhelpful to its argument. For example, in *Marder v. Lopez*, the plaintiff argued for a narrow construction of a settlement release provision by pointing to examples of claims that she had released. 450 F.3d 445, 451 (9th Cir. 2006). The Ninth Circuit rejected the narrow construction because the settlement listed the examples "[w]ithout limiting the generality" of the release. *Id.* at 451-52.

---

[6] Musi argues that "[u]nlike Apple's conduct here, Mozilla engaged in 'extensive' discussions with Intango before blocking and disabling Intango's add-ons." Mot. at 17. But Musi's summary of *Intango* is inaccurate. The plaintiff in *Intango* alleged that Mozilla blocked its add-ons without any prior warning and then removed the add-ons again to Intango's shock. *Intango*, 2020 WL 12584274, at *1-2. In any event, Judge Cousins decided the case based on the plain language of the agreement, not based on Mozilla's course of conduct.



United States District Court
Northern District of California

Musi also relies on *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008). In that case, a company alleged that its former employee violated a confidentiality agreement by making statements about the employee's working conditions. *Id.* at 1046. The confidentiality agreement prohibited the former employee from disclosing "any information, knowledge or data of the Company." *Id.* at 1044. The court reasoned that this phrase was "susceptible of more than one interpretation," so it "must be construed in light of the kinds of protected information enumerated in the sentence that follows." *Id.* at 1046 & n.5. By contrast, the clause in the DPLA that Musi seeks to limit is unambiguous: it provides that Apple may cease offering an application "at any time, with or without cause." DPLA Schedule 1 § 6.3 ("Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You.").

Additionally, Musi has not raised serious questions going to the merits of its breach of contract claim even under Musi's own construction of the DPLA. Under Musi's construction, Apple was required to form a reasonable belief that the Musi app infringes third-party intellectual property rights. As recounted above, from July 27, 2023, through at least May 7, 2024, Apple received repeated complaints of infringement from the IFPI. *See generally* IFPI Dispute Email. The IFPI substantiated its complaint with purported evidence of infringement, IFPI Dispute Email at 11-12, and threatened that Apple could be liable for Musi's conduct. Yet Musi did not resolve the IFPI complaints.

Musi did not resolve YouTube's complaint, either. The heart of YouTube's complaint is that Musi sells its own advertising for display on the Musi app that replaces YouTube's advertising, even though Musi app users are streaming content from YouTube. *See* Compl. ¶ 32; *see also* Elkin Decl. ¶ 2. Musi does not deny the factual basis of YouTube's complaint.[7] Instead,

[7] In its briefing, Musi carefully states that it "does not interfere with any ads to the extent they are included within the publicly-available video media that is streamed by the Musi app's user." *See* Reply at 6, ECF No. 31. But this does not tell the whole story. At the motion hearing, Musi acknowledged that it does not display advertisements that YouTube serves when a user views the same content directly through YouTube's interface. Hr'g Tr. 13:13-25 (admitting that "a user will see ads when viewing videos on the YouTube website using the YouTube player that they will not see when using the Musi app"); *see also id.* at 14:9-10, 15:8-10.

Musi defends its business model: it argues that the "functionality offered by the Musi app is of sufficient value to justify Musi's advertisement sales." Golinveaux Reply Decl. Ex. 1 at 2. YouTube's complaint was substantiated by the NMPA's letter, which analyzed bits of Musi's code and explained that Musi "diverts royalties from music publishers and songwriters to itself." Evan-Karimian Decl. Ex. 6 at 2, 4. Accordingly, at the time Apple removed the Musi app from the App Store, Apple faced at least two unresolved complaints that were supported by some evidence.

To be clear, the Court is not deciding, and has not been asked to decide, the merits of any third-party complaint against Musi. The relevant question, under Musi's construction of the DPLA, is whether Apple formed a reasonable belief that the Musi app was infringing third-party intellectual property rights. At this stage, the record reflects that Apple received multiple complaints about the Musi app from different third parties. These complaints were supported by some evidence, and they went unresolved for months. The record also reflects that Musi's responses were not always diligent, and they did not assure Apple that Musi was making progress to resolve the complaints of infringement. On the current record, Musi has not raised a serious question that Apple's decision to remove the Musi app due to alleged infringement was unreasonable.

**2. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Musi also claims that Apple violated the covenant of good faith and fair dealing. "[B]reach of a specific provision of [a] contract is not a necessary prerequisite" for a claim alleging violation of the covenant of good faith and fair dealing. *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) (in bank). However, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* Therefore, the implied covenant cannot require action that contradicts the rights and obligations set forth by a contract's express terms. The Supreme Court of California has observed: "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." *Id.* at

United States District Court
Northern District of California

373-74; *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) ("Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" (quoting *Carma*, 2 Cal. 4th at 374)).

Musi has not raised a serious question or shown a likelihood of success on its claim that Apple acted in bad faith. Based on the plain language of the DPLA, Apple had the express right to remove the Musi app from the App Store "at any time, with or without cause." DPLA Schedule 1 § 6.3. The covenant of good faith and fair dealing cannot impose an obligation on Apple that contradicts this express term. *Carma*, 2 Cal. 4th at 373-74; *see also Intango*, 2020 WL 12584274, at *7 (holding that a claim for beach of the implied covenant was "precluded by the specific terms" of the agreement, which permitted defendant to remove plaintiff's browser add-ons "at any time").

Additionally, Musi's complaints of bad faith are not supported by the current record. Musi says that Apple "never explained the bases for" YouTube's complaint, Mot. at 15, but Musi was well aware of the bases for the complaints against it. When Apple notified Musi of the complaint in August 2024, Musi responded that it has "been in communication directly with [YouTube] on this matter." Elkin Decl. Ex. B at 3. Musi was referring to its prior correspondence with YouTube in 2021 regarding the same YouTube complaints, which Musi disputed. Musi complains that "Apple inserted itself into the dispute as arbiter and then had discussions with only one side." Reply at 8. Although Apple did not disclose that it had a call with YouTube or received a letter from the NMPA, these developments did not raise new bases for removing the Musi app. During the phone call, YouTube "confirmed" the position it raised in prior complaints. Evan-Karimian Decl. ¶ 7. And the NMPA letter provided purported evidence to support YouTube's familiar complaint that Musi replaces YouTube advertising with its own, to the alleged detriment of copyright owners who license their works to be displayed via YouTube.

Musi relies on two primary cases to support its position that Apple acted in bad faith by abusing its discretion. *See InfoStream Grp., Inc. v. PayPal, Inc.*, No. C 12-748 SI, 2012 WL 3731517 (N.D. Cal. Aug. 28, 2012); *Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR, 2014 WL

3950671 (N.D. Cal. Aug. 11, 2014).[8] These cases held only that the plaintiffs plausibly alleged a breach of the implied covenant, but Musi must show more than a plausible claim to obtain the extraordinary remedy of a preliminary injunction. *Where Do We Go Berkeley*, 32 F.4th at 863.

Because Musi has failed to show serious questions going to the merits, let alone a likelihood of success, the Court need not reach the other *Winter* elements. *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1126 (9th Cir. 2024) ("[I]f a movant fails to meet the threshold inquiry of likelihood of success on the merits (or serious questions going to them), a court may decide to deny a preliminary injunction without considering the other factors."); *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Likelihood of success on the merits 'is the most important' *Winter* factor; if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors" in the absence of "serious questions going to the merits." (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)). However, the Court will also address whether Musi's proposed injunction is in the public interest.

**B. The Public Interest**

"[T]he public interest inquiry primarily addresses impact on non-parties rather than parties." *hiQLabs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022) (quoting *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931-32 (9th Cir. 2003)). Here, the Court considers the public interest element because the impact of Musi's requested injunction would reach "beyond the parties, carrying with it a potential for public consequences." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

Musi's requested preliminary injunction would prohibit Apple "from refusing to list or otherwise making unavailable the Musi app from the App Store." Proposed Order at 2. The practical effect of this injunction, if entered, would be to compel Apple to continue to offer the Musi app for download by potentially millions of new users before the merits of Musi's claims are decided. *See* Wojnowski Reply Decl. ¶ 2 (discussing the Musi app's average new user growth

[8] Musi did not cite these cases in its briefing on the Motion, but rather cited them in a case management statement filed after briefing was closed. Joint Case Mgmt. Statement at 12, ECF No. 36.

United States District Court
Northern District of California

before the it was removed from the App Store). A court order to that effect would plainly implicate the rights of the third parties whose complaints catalyzed the Musi app's removal in the first place. The complaints allege that Musi unlawfully diverts royalties away from numerous artists and other rights holders through its advertising practices. Without addressing the merits of these complaints, the Court recognizes that there is a strong public interest in protecting intellectual property rights. *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019).

Musi has not presented any compelling public interest to counterbalance the potential violation of third-party intellectual property rights. Musi argues that "Apple's conduct implicates nearly 2 million third-party iOS developers," Mot. at 12-13, but there is no evidence in the record of any misconduct by Apple with respect to any iOS developer. Moreover, Musi's proposed injunction would require Apple to reinstate the Musi app; it would not confer any benefit on any developer other than Musi. Accordingly, the Court finds that a preliminary injunction is not in the public interest.

## IV. CONCLUSION

For the foregoing reasons, Musi is not entitled to the extraordinary remedy of a preliminary injunction. Musi's Motion is DENIED without prejudice to renewal. In reaching this conclusion, the Court does not express any opinion on the merits of third-party complaints against Musi, which are not before the Court. The Court also does not address whether Musi could plausibly state a claim against Apple, as that question is appropriately reserved for Apple's forthcoming motion to dismiss Musi's amended complaint.

**IT IS SO ORDERED.**

Dated: January 30, 2025

Eumi K. Lee
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| MUSI INC., | ) | C-24-06920 EKL |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| VS. | ) | JANUARY 9, 2025 |
| APPLE INC., | ) | PAGES 1-75 |
| DEFENDANT. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EUMI K. LEE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF: WINSTON & STRAWN
BY: JENNIFER A. GOLINVEAUX
SAMANTHA K. LOOKER
101 CALIFORNIA STREET, 35TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

FOR THE DEFENDANT: WILMER, CUTLER, PICKERING
HALE AND DORR
BY: JENNIFER MILICI
2100 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037

APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES (CONTINUED)

FOR THE DEFENDANT: WILMER, CUTLER, PICKERING
HALE AND DORR
BY: CHRISTOPHER W. JOHNSTONE
2600 EL CAMINO REAL, SUITE 400
PALO ALTO, CALIFORNIA 94306

BY: LYDIA TURNAGE
7 WORLD TRADE CENTER
250 GREENWICH STREET
NEW YORK, NEW YORK 10007

I THINK MUSI'S POSITION IS THAT ON THESE FACTS, WHEN THERE WAS NO SUBSTANTIVE COMPLAINT THAT WAS EVER PROVIDED TO MUSI, WHEN APPLE KNEW THAT MUSI HAD REACHED OUT TO YOUTUBE IN RESPONSE TO THAT SEPTEMBER 2024 FIVE-WORD COMPLAINT, VIOLATION OF TERMS OF SERVICE, AND SAID, HEY, I SENT YOUR OUTSIDE COUNSEL A DETAILED LETTER SEVERAL YEARS AGO, LET'S DISCUSS WHAT YOUR CONCERN IS, AND APPLE KNEW WELL THAT YOUTUBE NEVER RESPONDED, AND YET, STILL SEVERAL WEEKS LATER TOOK THE APP DOWN. THAT'S WHAT'S UNREASONABLE ON THESE FACTS, YOUR HONOR.

THANK YOU.

THE COURT: ALL RIGHT. THE COURT IS GOING TO TAKE A BRIEF RECESS. I'M INTENDING, JUST TO MOVE THINGS ALONG, TO ISSUE A RULING FROM THE BENCH WITH A WRITTEN ORDER TO FOLLOW. AFTER THAT, WE'RE GOING TO GO INTO THE CASE MANAGEMENT CONFERENCE.

IF COUNSEL HASN'T HAD AN OPPORTUNITY TO MEET AND CONFER REGARDING THE DISCOVERY, I AM INCLINED TO MOVE FORWARD WITH THE DISCOVERY IN THIS CASE. BUT I WOULD ENCOURAGE MUSI TO BE TARGETED. THERE WILL BE TIME IF THE CASE LIVES ON AND ON. BUT RIGHT NOW, I THINK THERE'S A FOCUS, AND BEING TARGETED IN TERMS OF NEXT STEPS MIGHT HELP MOVE THE CASE ALONG.

SO IF THERE HASN'T BEEN ANY MEET AND CONFERRING ABOUT THAT, IF THERE CAN BE DURING THE BRIEF RECESS, LET'S SAY -- WELL, WHY DON'T WE GO AHEAD AND DO 15 MINUTES.

ALL RIGHT. THANK YOU. THE COURT'S NOW IN RECESS.

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone: (415) 591-1000333

Jeff Wilkerson (SBN: 284044)
JWilkerson@winston.com
WINSTON & STRAWN LLP
South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

Attorneys for Plaintiff
MUSI INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MUSI Inc.,

Plaintiff,

vs.

APPLE INC.,

Defendant.

**Case No. 5:24-cv-06920-EKL**

**PLAINTIFF MUSI INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Date: January 9, 2025
Time: 2:00 P.M.
Judge: Hon. Eumi K. Lee
Place: San Jose Federal Courthouse, Courtroom 7 – 4th Floor

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Musi Seeks a Prohibitory Injunction to Reinstate the Status Quo ..... 1

B. Musi Has Established a Likelihood of Success on the Merits ..... 2

C. Musi Has Established That It Is Likely to Suffer Irreparable Harm ..... 10

D. Apple Fails to Show that the Balance of the Equities Do Not Weigh in Musi's Favor ..... 12

E. Apple Fails to Show that a Preliminary Injunction is Not in the Public Interest ..... 13

III. CONCLUSION ..... 14

Case: 26-2892, 08/21/2026, DktEntry: 12.3, (245 of 266)

## TABLE OF AUTHORITIES

Page(s)

**Cases**


*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x. 633 (9th Cir. 2013) ....12

*Anhing Corp. v. Thuan Phong Co.*, 2015 WL 4517846 (C.D. Cal. July 24, 2015) ....11

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ....1

*Bus. Casual Holdings, LLC v. YouTube, LLC*, 22-3007-cv, 2023 WL 6842449 (2d Cir. Oct. 17, 2023) ....6

*Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919 (N.D. Cal. 2021) ....1, 2

*Coral Farms, L.P. v. Mahony*, 63 Cal. App. 5th 719 (2021) ....9

*Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*, No. 14-CV-02770-WHO, 2014 WL 5361548 (N.D. Cal. Oct. 20, 2014) ....12

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664 (9th Cir. 2023) ....1, 2

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ....1

*hiQLabs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ....11

*Kifle v. YouTube, LLC*, No. 21-cv-01752-CRB, 2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) ....7

*Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770 (N.D. Cal. 2021) ....10

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008) ....9

*Optinrealbig.com, LLC v. Ironport Sys.*, 323 F. Supp. 2d 1037 (N.D. Cal. 2004) ....12

*Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012) ....10

*Schneider v. YouTube, LLC*,
649 F. Supp. 3d 872 (N.D. Cal. 2023) .......... 7

*Standard Operations, Inc. v. Montague*,
758 S.W.2d 442 (Mo. 1988) .......... 9

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) .......... 12

*Tur v. YouTube, Inc.*,
CV 06-4436 FMC (AJWx), 2007 U.S. Dist. LEXIS 50254 (C.D. Cal. June 20, 2007) .......... 7

*Viacom Int'l Inc. v. YouTube, Inc.*,
676 F.3d 19 (2d Cir. 2012) .......... 6

**Other Authorities**

14A Cal. Jur. 3d Contracts § 215 .......... 9

## I. INTRODUCTION

Apple exercises unprecedented control over the only viable marketplace for digital apps for the most significant mobile platform in the world. In doing so, Apple positions itself as exercising this power as a neutral party that does not favor one app developer over another, but Apple's Opposition (Dkt. 30, "Opp.") reveals that it used its power over the App Store as part of a larger backchannel scheme with music-industry conglomerates bent on Musi's destruction, and without even informing Musi of discussions that led to its removal. Apple asks this Court to ignore its contractual obligations and representations that it would remain neutral during the app dispute process, and in the process gift it with yet more unprecedented power over the world's most important digital app platform. Unless this Court intervenes to force Apple to do what it said it would do (follow its contractual obligations and remove an app only when it "reasonably believes" after "review" that the app infringes intellectual property), Musi's decade-long success will be abruptly ended.

## II. ARGUMENT

### A. Musi Seeks a Prohibitory Injunction to Reinstate the Status Quo

Apple's argument that because Musi's injunction seeks reinstatement of the Musi app to the App Store, it is necessarily a mandatory injunction misses the key inquiry: "whether the party seeking the injunction seeks to alter or maintain the status quo." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023). Apple makes no attempt to establish what the status quo between the parties is. And under well-established Ninth Circuit law, the status quo is that Musi was listed on the App Store—Musi seeks only to reinstate the status quo. "[Th]e 'status quo' refers to the legally relevant relationship between the parties ***before the controversy arose***." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (emphasis added). Stated otherwise, the "status quo" refers to "the last uncontested status which preceded the pending controversy[.]" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (citation omitted); *see also Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 950–51 (N.D. Cal. 2021) (where plaintiffs sought to enjoin enforcement of new immigration rule, "the last uncontested status preceding the current controversy is the status quo that existed prior to the implementation of the Rule," and the injunction was thus prohibitory in nature). Here, Musi was listed for over a decade on the App Store. Because this was

the "longstanding relationship" between the parties prior to Apple's actions upsetting the relationship, Musi's presence on the App Store is the status quo. *Fellowship of Christian Athletes*, 82 F.4th at 685 ("Here, the District's new policy of enforcing its non-discrimination rules likewise alters … a benefit that FCA enjoyed without issue for nearly 20 years…. [W]e hold that the status quo was one in which FCA enjoyed recognition."). It is Apple who chose to disrupt that status quo when it removed Musi based on improper backroom channeling. And actions "required to reinstate the status quo ante litem do not convert prohibitive orders into mandatory relief." *Centro Legal de la Raza*, 524 F. Supp. 3d at 951 (citation omitted).

### B. Musi Has Established a Likelihood of Success on the Merits

#### 1. Musi's removal was premised on an unfair process tainted by backroom conversations between Apple and music industry conglomerates, and not the process stipulated by the Developer Agreement.

Apple consistently represented to Musi that it could not and would not arbitrate disputes, and that Musi must work directly with any complainant to resolve their concerns. *See* Dkt. 30-9 at 3. This hands-off approach is baked into Apple's app dispute guidelines, which Apple repeatedly disseminated to Musi. Thus, if a third party contends that an app violates its intellectual property rights, Apple's App Store Dispute webpage instructs it to submit an "App Store Content Dispute," and states that Apple will "contact the provider of the disputed content regarding your claim and ask that they work with you directly to resolve the issue." Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), Ex. 4. Likewise, in initiating an App Store dispute process, Apple instructs the parties to "exchange correspondence directly." Dkt. 1-3 at 2.[1] And in past correspondence with Musi, Apple similarly warranted that it "cannot serve as arbiter for disputes among third parties." Dkt. 30-9 at 3.[2] The implications of Apple's repeated hands-off representations were that in arriving at the "reasonable basis" decreed in the parties' Developer Agreement, Apple would take an impartial position that did not favor either side.

---

[1] Apple also instructed Musi that it could resolve disputes through "[w]ritten assurance of rights" including "confirmation that your application does not infringe Complainant's rights" and that removal from the App Store could result from "[f]ailure to respond to the Complainant or to take steps toward resolving a dispute." Dkt. 1-3 at 6–7.

[2] Apple acknowledges as much in its Opposition. Dkt. 30 at 9 ("Apple repeatedly reiterated, and Musi acknowledged, that Apple does not adjudicate disputes amongst third parties.").

Musi took Apple at its word. Thus, when Apple informed Musi of app disputes about its app, Musi either adapted the Musi app to resolve those concerns or explained in direct correspondence to the complainant why its app dispute was without merit. *See, e.g.*, Dkt. 10-18; Golinveaux Decl., Ex. 1 (Letter to Wilson Sonsini). Recognizing the serious nature of app disputes that called into question Musi's legitimate business, Musi went above and beyond—engaging counsel to thoroughly investigate the merits of the app dispute, assuring Apple in good faith, and after a thorough legal assessment, that it does not infringe on third party intellectual property rights, and assuring Apple that it recognizes its obligation to hold Apple harmless and indemnify Apple under the Developer Agreement. *See, e.g.*, Golinveaux Decl., Ex. 1 (substantive response to YouTube); Dkt 1-6 at 1–2, 5 (providing required assurances to Apple).

But Apple's Opposition shows that, in removing the Musi app in September 2024, Apple did not act in a neutral role; did not follow the process it set up for itself in resolving app disputes, and by extension, the Developer Agreement; and instead acted as an arbiter (and without even informing Musi of this fact or providing it with an opportunity to respond). While leaving Musi in the dark, Apple, YouTube, and several music-industry conglomerates *decided* Musi's fate through backroom conversations. Indeed, Apple's Opposition reveals that Apple and YouTube were engaged in direct discussions about Musi, outside the app dispute process, shortly before Musi's removal, and *before* the YouTube app dispute that Apple pretended was the reason for its removal of the Musi app was filed. Dkt. 30-8 at ¶ 7. During those discussions, YouTube made some kind of complaint about Musi (Apple *still* does not disclose the details). *Id*. And only after that call, YouTube submitted a written, five-word app dispute calling for the Musi's app removal—these five words were the *only* details shared with Musi. Dkt. 10-17. When Musi attempted to contact YouTube directly regarding this cryptic notice, reminding YouTube of the parties' prior communications through outside counsel and inviting it to participate in a discussion, YouTube—as Apple well knew—refused to respond. Dkt. 10-18; Dkt. 10-19. And why would it? Apple's removal of the Musi app was less a question of "why" than "when."

Seeking to justify its actions, Apple references "dozens" of app disputes (over the more than a decade Musi has been available on the App Store). But putting aside that Apple never told Musi that any app dispute other than YouTube's five-word assertion led to Apple's removal of the Musi app, Apple's description of these other app disputes is riddled with inaccuracies.

Start with the International Federation of the Phonographic Industry ("IFPI"): it is true that Musi and the IFPI engaged in dialogue over several months via the app dispute process. But as Apple is aware, the IFPI expressly *disavowed* any claim under U.S. Copyright law. IFPI baldly asserted violations of European law, but as Musi's UK solicitor explained, those claims were baseless. *See* Golinveaux Decl., Ex. 3 (September 11, 2023 IFPI Letter). More important, Apple did not remove the Musi app because of the IFPI app dispute—in the European market or otherwise—but rather took no action other than following up on communication between the parties, with the last communication occurring in May 2024. Golinveaux Decl. at ¶ 4. Nor did any of IFPI's members ever initiate any legal proceedings against Musi. It is thus no surprise that Apple never asserted until its Opposition, in an apparent attempt to bolster its basis for the unjust removal of the Musi app, that any complaint from IFPI was relevant to Apple's removal of the Musi App.

Apple's new assertion that Sony Music Entertainment ("SME") app dispute was factored into Musi's removal is even more disturbing. Musi was notified that SME filed an App Store dispute in July 2023 (a complaint that, again, Apple never told Musi had anything to do with its removal). But when Musi attempted to open a dialogue with SME, SME stated that *it had no complaint*, and that the complaint belonged to IFPI. *See* Golinveaux Decl. Ex. 2. No further action was taken in regard to this complaint.

As for YouTube and the NMPA, Apple's assertion that Musi "knew" it was removed based on more than YouTube's five-word complaint is simply false. Apple admits that Musi was not privy to Apple's backchannel conversations with YouTube. And Apple's correspondence with Musi never suggested that the Musi app's removal was based on such conversations. Nor was Musi afforded any opportunity to respond to YouTube's claims (the nature of which, again, was not shared with Musi.) Declaration of Aaron Wojnowski ("Wojnowski Decl.") at ¶ 14. Apple does not and cannot dispute that YouTube *never responded to Musi's attempts at contact*, nor that Musi repeatedly informed Apple of YouTube's lack of communication. Apple instead relied on YouTube's backdoor, undisclosed, and unverified representations while discrediting Musi's direct communication, in contravention of both its repeated assertions that it could not and would not arbitrate the parties' dispute and the app dispute process Apple itself had constructed.

Musi's outside counsel substantively communicated with YouTube's counsel via a letter sent in 2021, which was the last time that YouTube ever offered to Musi any purported basis for its complaint relating to the Musi app. *See* Golinveaux Decl., Ex. 1. In that letter, Musi explained:

- The Musi app allows users to interact with YouTube's publicly available content with added functionality.
- Musi's functionality only interacts with public-facing YouTube webpages; the app does not "hack," scrape, or circumvent YouTube's interface, system, or content.
- Musi only allows users to access YouTube's content without modification, for that user's "personal, non-commercial use," in keeping with YouTube's Terms of Service.
- Musi does not store YouTube content on its servers, and YouTube content does not pass through Musi's system. Rather, content is streamed directly from YouTube to a user's device per a user's request.

*Id.* If YouTube disagreed with Musi's analysis and explanation, or had further questions, it could and should have engaged in further dialogue with Musi, or even instituted legal proceedings, where Musi would have thoroughly defended its position. YouTube did neither. In fact, YouTube simply *did not respond*—a pattern it continued in 2024 in the weeks before Apple removed the Musi app. Thus, neither at the time of earlier discussions in 2021 nor after its five-word complaint in September 2024 did YouTube ever reply to Musi's substantive explanation for why it did *not* violate YouTube's Terms of Service—a tacit admission that there was no violation. In any event, for purposes of this action, Apple's complete disregard for any representations made by Musi in the dispute process, as well as Apple's apparent failure to consider YouTube's complete lack of response to Musi—while at the same time engaging in closeted discussions with YouTube—renders baseless Apple's claim that it complied with the obligations set forth in the Developer Agreement and the app dispute process.

Apple's reliance on a letter it received from the NMPA only further illustrates Apple's dereliction of its purported commitment not to arbitrate disputes. The NMPA has never filed an app dispute against Musi or even contacted Musi whatsoever. And neither Apple nor the NMPA ever disclosed that letter or its contents to Musi (let alone informed Musi that it formed the basis for Apple's removal of the Musi

app). That letter thus could not provide any reasonable basis to remove the Musi app and, indeed, it contains several false claims:

- The Musi app has never, as the NMPA letter claims, been removed from the Google Play Store, because it has never been offered for sale on the Google Play Store.
- Musi does not, as the letter claims, rely on or access the YouTube Data/iFrame Application Programming Interface API (and therefore, Musi is not subject to the YouTube API Services Terms of Service).
- Musi does not, as the letter claims, give users the ability to "mute ads," rather Musi accesses video media directly from YouTube and does not interfere with any ads to the extent they are included within the publicly-available video media that is streamed by the Musi app's user.
- Musi does not, as the letter claims, use "multiple API-tokens" and "API-token bucketing."[3]

*See* Wojnowski Decl. at ¶¶ 15–17.

In short, when informed of app disputes, Musi has always followed Apple's clear instructions and representations regarding such disputes, and the obligations it imparts on developers as part of the Developer Agreement. But there was apparently no reason for Musi to have done so, as its fate was sealed by backroom conversations.

Setting aside the substance of any app disputes, Apple's reliance on the *number* of complaints about the Musi app is meritless. Musi was a top 200 app with millions of users— three app disputes lodged in 2024 is hardly alarming, especially where Apple claims to handle thousands of such disputes a year. Opp. at 3. Apple's suggestion otherwise is particularly rich in the context of a complaint by YouTube, which has likely received an astronomical number of copyright complaints. And unlike Musi—which has never been sued for copyright infringement—YouTube defended a years-long litigation from Viacom in the Second Circuit alleging massive copyright infringement. *See Viacom Int'l Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012).[4] But curiously, Apple never pulled YouTube from the

[3] Such "token-bucketing" would involve registering multiple API keys and distributing them to different users, thus defeating quotas or rate limits on YouTube Data/iFrame API tokens. But because Musi does not use YouTube's Data/iFrame API, it has no need for such a practice. Wojnowski Decl. at ¶ 16.

[4] YouTube has been sued for allegedly infringing IP rights in several matters over the years. *See Bus. Casual Holdings, LLC v. YouTube, LLC*, 22-3007-cv, 2023 WL 6842449 (2d Cir. Oct. 17, 2023)

App Store in the wake of that dispute. What's more, what Apple touts as "dozens" of complaints against Musi during the over ten years it was available on the App Store were all closed without legal action.

Lastly, Apple's reliance on a few hit pieces about Musi commissioned by the music industry is baseless. *See, e.g.*, Dkt. 30-6. Those articles signify nothing other than a one-sided press push by the same players involved in the backroom discussions with Apple, seeking to conjure up an image of support for Musi's removal. It's unclear from Apple's Opposition brief when it became aware of such articles, but its crediting of those arguments is just another knock to Apple's purported "neutral" status. Bottom line: The Musi app's removal from the Apple App Store was the result of a one-sided affair between Apple, YouTube, and several music industry conglomerates. It was patently unfair, carried on without any input from Musi, did not reflect any good-faith inquiry into the truth, and was not based on any reasonable conclusion that Musi was violating anyone's intellectual property rights.

**2. Apple breached its obligation to conduct a human and/or systematic review resulting in a "reasonable belief" of Musi's infringing nature.**

Surely recognizing that the facts are hard to explain, Apple claims it needs no explanation. Rather, it boasts that the Developer Agreement gifts it with "unfettered discretion" concerning the App Store's management, and that Musi is erroneously seeking to "limit" Apple's rights under the contract. Opp. at 13. Musi does no such thing. The Developer Agreement *itself* limits Apple's app-removal powers, and based on the above, Apple acted *outside* of those powers.

Schedule 1 § 6.3 states:

> Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 6.3, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: (i) those Licensed Applications are not authorized for export to one or more of the regions designated by You under Section 2.1 hereof, in accordance with the Export Administration Regulations

(involving copyright claims against YouTube related to posted videos); *Tur v. YouTube, Inc.*, CV 06-4436 FMC (AJWx), 2007 U.S. Dist. LEXIS 50254 (C.D. Cal. June 20, 2007) (same); *Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872 (N.D. Cal. 2023) (same); *Kifle v. YouTube, LLC*, No. 21-cv-01752-CRB, 2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) (involving copyright and trademark claims concerning posted videos).

> or other restrictions; (ii) those Licensed Applications and/or any end- user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party; (iii) the distribution and/or use of those Licensed Applications violates any applicable law in any region You designate under Section 2.1 of this Schedule 1; (iv) You have violated the terms of the Agreement, this Schedule 1, or other documentation including without limitation the App Review Guidelines; or (v) You or anyone representing You or Your company are subject to sanctions of any region in which Apple operates. An election by Apple to cease allowing download of any Licensed Applications, pursuant to this Section 6.3, shall not relieve You of Your obligations under this Schedule 1.

Dkt. 10-3 at 85. The first sentence grants Apple the right to "cease marketing, offering, and allowing download" of applications from the App Store "with or without cause" via termination notice. The second sets forth procedures Apple must follow before making a removal decision; specifically, it must conduct a "human and/or systematic review" based upon which it has a "reasonabl[e] belie[f]" that the Licensed Application violates the Developer Agreement's terms, including (as relevant here) intellectual property infringement. And the third requires the developer to maintain compliance with its obligations under the agreement even after its application is removed.

What is the nature of the "human and/or systematic review" required by Section 6.3? Section 4.1(g) of the Developer Agreement provides an answer: "in the event a dispute arises over the content of Your Licensed Applications or use of Your intellectual property on the App Store . . ., You agree to permit Apple to share Your contact information *with the party filing such dispute* and to follow Apple's *app dispute process* on a non-exclusive basis and without any party waiving its legal rights." *Id.* at 84 (emphasis added). Thus, by its terms, the Developer Agreement limits Apple's discretionary removal power by requiring the parties *and only the parties* to participate in the app dispute process before an application is deemed removable. Apple did not do this. Instead, Apple inserted itself into the dispute as arbiter, and then had discussions with only one side—the side of the music industry conglomerates. And it did so even though Musi *directly* informed Apple that it had been reaching out to the putative complainant, YouTube, and was not receiving a response. This is not good-faith "review," and nothing about this one-sided process could create a "reasonable belief" that Musi was violating anyone's legal rights.

Apple's Opposition makes no meaningful attempt to interpret Section 6.3's second sentence. Instead, Apple suggests that that sentence's "[w]ithout limiting the generality" clause means that it enjoys unfettered discretion and may remove an app whenever it wants, however it wants, and *regardless* of whether it conducted a "human and/or systematic review" resulting in a "reasonable belief" of the app's infringing nature beforehand. This interpretation is wrong for three reasons.

First, Apple's reading would render Section 6.3's second sentence entirely superfluous, violating the fundamental principle of California contract law that a contract must be "read as a whole, so as to give effect to every part, if reasonably practicable," in order to "avoid rendering terms surplusage." *E.g.*, *Coral Farms, L.P. v. Mahony*, 63 Cal. App. 5th 719 (2021) (citations omitted); 14A Cal. Jur. 3d Contracts § 215 (collecting cases). If Apple has unfettered discretion to remove an app, as it claims, then the references to a "human and/or systematic review," to a "reasonable belief," and to five specific and defined conditions that warrant removal would be entirely meaningless—lines and lines of carefully worded contractual requirements and conditions with no force at all.

Second, and contrary to Apple's contention, Section 6.3's use of the phrase "[w]ithout limiting the generality" does not forbid any and all limiting constructions. To the contrary, courts have applied limiting constructions to contractual provisions containing that same phrase where the provision was susceptible to further interpretation. *See, e.g.*, *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008); *see also Standard Operations, Inc. v. Montague*, 758 S.W.2d 442 (Mo. 1988).

In *Nygard*, for example, the court interpreted a confidentiality agreement in an employment contract. *Nygard*, 159 Cal. App. 4th at 1046. Specifically, the court construed the phrase "any information, knowledge or data of the Company" as *limited* to the kinds of protected information that were enumerated in the following sentence, despite a clause that the examples given were "*without limiting the generality of the foregoing.*" *Id.* at 1045 (emphasis added). Noting that all the enumerated examples related to "proprietary information or trade secrets," the court held that the plaintiffs' disclosures about his working conditions and the company's celebrity clientele did not violate the confidentiality agreement. *Id.* at 1046. Thus, despite the contract broadly covering "any information, knowledge or data of the Company," and the phrase "without limiting the generality of the foregoing," the Appellate Division applied a limiting construction to the contract's scope.

Third, if Apple's construction is correct, then Section 6.3 is facially contradictory. On Apple's interpretation, the first sentence of Section 6.3 gives Apple unfettered discretion remove apps for any reason. But the second sentence subjects Apple's removal to required procedures and a "reasonable belief" that specific conditions have occurred. If Apple is right, then these two sentences are not reconcilable, and the agreement then must be deemed ambiguous. And ambiguous contractual provisions are construed in favor of the non-authoring party: Musi. *See, e.g.*, *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1445 (2012) ("The reason for this rule is to protect the party who did not choose the language from the unintended or unfair result." (quotation omitted)).

Thus, Apple had to conduct a "human and/or systematic review" aimed at determining whether there was a "reasonabl[e] belie[f]" that the Musi app infringed the intellectual property rights of third parties by remaining neutral during the app dispute process. Apple did not do this—as Musi' motion shows, and as Apple's Opposition only emphasizes. Accordingly, Musi has shown a likelihood of success on the merits.

**C. Musi Has Established That It Is Likely to Suffer Irreparable Harm**

Apple does not dispute that the threat of being driven out of business can support a finding of irreparable harm. *See* Opp. at 19 (citing *Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 787 (N.D. Cal. 2021)). Instead, Apple takes issue with Musi's evidence being too "speculative." Not so. The threat to Musi is existential and extant. Several weeks have passed since Musi filed its motion, and it has become ever more apparent that Apple's actions are irreparably harming, and threatening to destroy, the successful business that Musi has spent over a decade building within months.

Apple appears to be stuck on Musi's size, repeatedly making references to the number of employees it believes Musi has. Opp. at 19. But a threat to a large business is no more compelling than a threat to a small one. Indeed, Musi has but ***one*** product, the Musi app, which was offered solely to users of devices for which the App Store is the only viable marketplace. With that app no longer available for download, Musi cannot attain new users, cannot long retain existing users, and cannot even make upgrades or updates to the Musi app for those users it can retain. Moreover, without the ability to make upgrades or updates to the Musi app, an update to Apple's iOS could render the Musi app inoperable even for existing users. Wojnowski Decl. at ¶¶ 8–9. This inability to grow and retain business is creating

a downward spiral that is irreparably damaging Musi's business and that threatens its very existence. *Id*. at ¶ 10; *See hiQLabs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188–89 (9th Cir. 2022) (irreparable harm established where plaintiff's business had no "viable way" to continue to operate).

Apple has no real argument to rebut Musi's showing that it cannot attain new users unless it is restored to the App Store. And Musi's user acquisition data paints a stark reality: before its removal, Musi was enjoying an average of 886,148 new users a month. Wojnowski Decl. at ¶ 2. Now, of course, that number is zero. *Id*. This inability to gain new customers also constitutes irreparable harm. *hiQ Labs*, 31 F.4th at 1189 (inability to close deals with "prospective clients" factored into finding of irreparable harm).

Unable to address this point, Apple instead focuses on Musi's existing users, claiming it has nothing to fear because those users can continue to access the app. But this argument is facile, as Apple well knows. With the Musi app no longer available for download, existing users can lose access to the app at any time, including if the app is offloaded at any time, which is typical if they start using a new phone, or, in certain cases, by updating an iPhone's iOS. Wojnowski Decl. at ¶ 2. And once a user loses access to the Musi app, they cannot get it back. *Id*.at ¶ 3. Musi has already received many inquiries from users who unknowingly lost access to the app in these two ways. *Id*. at ¶ 5–6, Exs. A, B, C, D, and E. Given how often users purchase new iPhones and routinely update their iPhone's iOS (which often requires users to offload apps to free up storage space), Musi will continue to rapidly lose its existing customer base, which has and will cause irreparable harm to Musi's business. *Id*. at ¶¶ 4, 7.

Further, as it cannot update the app, Musi is prevented from competing and has already suffered permanent economic and reputational harm. Already, users are soliciting alternative apps to replace Musi. *Id*. at ¶ 8, Ex. F. And as this litigation could take *years* to play out fully, Musi will continue bleeding both new and existing users to competitors who can offer exciting, innovative app updates. *Id*. This is backed up by Musi's user engagement data, which has plummeted since its removal from the App Store. *Id*. at ¶ 4. Indeed, Musi's daily-active user base has dropped by 1.5 million users, and its monthly user base has plummeted by 3 million. *Id*. This critical loss of customer base is exactly the kind of harm courts routinely find is incapable of monetary redress. *Anhing Corp. v. Thuan Phong Co.*, 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) ("Evidence of intangible injury, such as a loss of customers or damage to a

party's goodwill, can constitute irreparable harm."); *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x. 633, 636 (9th Cir. 2013) (similar). At the current rate of loss, and factoring in the significant likelihood that the Musi app could be rendered inoperable at a moment's notice, Musi's business will be decimated over the next 12 months. Wojnowski Decl. at ¶ 10; *Optinrealbig.com, LLC v. Ironport Sys.*, 323 F. Supp. 2d 1037, 1051 (N.D. Cal. 2004) (finding irreparable harm where defendant's conduct threatened plaintiff's continued business operations).

Since Apple removed the Musi app, at least a dozen imposter Musi apps have appeared on the App Store. Wojnowski Decl. at ¶ 11. And since moving for an injunction, Musi has received multiple inquiries from customers who mistakenly downloaded copycat apps. *Id*. at ¶ 12, Exs. G, H, I, J. Given the scam nature of these apps, it is unsurprising that users reported several quality issues and missing features that they expected from the Musi app. *Id*., Exs. G, H, I, J. Users have blamed Musi for these issues, not realizing the apps were fakes. *Id*. This too is a severe hit to Musi's goodwill and reputation, built up over more than a decade. Imposter apps were much easier to deal with before Musi's removal, as Musi appeared near the top of search results, had millions of positive user reviews, and held top chart positions, including being featured on several top-of charts. *Id*. at ¶ 13. Given the clear evidence of confusion, Apple's cited case does not apply. Opp. at 20–21, citing *Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*, No. 14-CV-02770-WHO, 2014 WL 5361548, at *7 (N.D. Cal. Oct. 20, 2014) (finding no irreparable harm where "there is ***no*** evidence of ***any*** actual or even likely customer or distributor confusion") (emphasis added). Far more applicable here is the well-settled law that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

**D. Apple Fails to Show that the Balance of the Equities Do Not Weigh in Musi's Favor**

Apple claims that "Musi's requested injunction would significantly impact Apple's ability to effectively manage" its App Store because it would "forc[e] Apple to adjudicate disputes between rights holders and app developers." Opp. at 21. That is wrong. Musi is not seeking to compel Apple to adjudicate disputes—it seeks to compel Apple only to follow the process *already enumerated* in the very Developer Agreement that Apple authored, which mandates that Apple conduct a "human and/or systematic review"

and reach a "reasonable belief" as to whether an app a violates any of the Agreement's terms before removing the app from its App Store. Indeed, the Developer Agreement *already* enumerates a rights holder-developer dispute process in Section 4.1(g). Dkt. 10-3 at 84.

Apple's purported fear of future litigation risk is also bluster. Musi has operated for over ten years on the App Store—not a single legal complaint alleging infringement has been filed against it, let alone against Apple. And Apple did not even ask Musi for its response regarding its backroom discussions with YouTube and the NMPA. Musi filed this case and moved for a preliminary injunction as quickly as possible after Apple removed the Musi app from the App Store. In short, Musi's availability on the App Store is the status quo, and does not pose any threat to Apple.[5]

**E. Apple Fails to Show that a Preliminary Injunction is Not in the Public Interest**

None of Apple's arguments that Musi's motion contradicts the public interest withstand scrutiny. *See* Opp. at 23–24.

First, Apple's argument that "[i]t is not in the public interest for the Court to force Apple to distribute an app despite *widespread* concerns that the app infringes the intellectual property of nonparties" takes liberties with the term "widespread." *See id.* at 23 (emphasis added). As Apple's opposition makes clear, it has never conducted any review of the relevant facts and has no "reasonable belief" that the Musi app violated intellectual property rights. Nor does Apple cite any other source that accurately discusses Musi's operation or how or why it would constitute a violation of any legal rights. And of course, despite over a decade of operations, no one has *ever* sued Musi for any violation of IP rights. Rather, Apple's decision was motivated by *appeasement* of a select few "organizations representing the interests of the music industry" who raised baseless accusations concerning the Musi app's functionality. *Id.* Accusations that Musi has readily disproven, now that it has been afforded the opportunity to do so.

Second, Apple states that "[t]he public has an interest in … enforcing contractual rights and obligations." Opp. 24 (quotation omitted). On this front, Musi wholeheartedly agrees: it is in the public

[5] Apple's jab about Musi's ability to indemnify Apple (Opp. at 22) is backwards. The threat to Musi's finances was created by Apple's own unfounded actions—Apple's argument is like cutting off a distance runner's legs and then, when he complains, questioning whether he was ever really that fast to begin with.

interest to compel Apple to comply with its contractual obligations. It failed to do so. And for that reason, granting Musi's motion does not "nullif[y] Apple's unambiguous contractual right[s]." Opp. at 24. Quite the opposite. It makes those rights concrete and enforceable.

Finally, Apple claims that Musi's motion contravenes the public interest because, without unfettered power, Apple supposedly cannot "provid[e] a safe and trusted user experience on iOS." Opp. at 24 (quotation omitted). Hogwash. Users cannot enjoy a "trusted user experience" if Apple is gifted with unfettered discretion concerning the governance of the App Store, particularly not when it uses that discretion to remove one of the largest apps based on bogus claims of IP infringement and without even informing the app developer of the nature of the complaints (or, in the case of the NMPA, even the existence of the complaint) or allowing any substantive response. It is Apple's own capricious and baseless exercise of what it claims is unfettered discretion that undermines trust.

Apple's removal of the Musi app was not premised on the findings of a neutral review, or even a genuine discussion. Instead, Apple removed the app because a select few music industry conglomerates saw the Musi app as a threat and, using unique access to Apple, engaged in backroom conversations to ensure that the Musi app could no longer compete on the platform. Thus, the public interest strongly supports the granting of Musi's motion. Apple's claim to unfettered discretion is only a quest for power to operate the App Store for the benefit of a few powerful stakeholders, and at the expense of small developers—exactly what happened here. Granting Musi's motion avoids that outcome.

## III. CONCLUSION

For these reasons, Musi requests that the Court grant its motion for a preliminary injunction.

Dated: December 6, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux
Jeff Wilkerson
Samantha K. Looker

Attorney for Plaintiff
MUSI INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MUSI INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | **Case No. 5:24-cv-06920-EKL**<br><br>**DECLARATION OF AARON WOJNOWSKI IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

I, Aaron Wojnowski, declare as follows:

1. I am the Co-Founder and Chief Executive Officer ("CEO") of Musi Inc. ("Musi"). I make this declaration in support of Plaintiff's Reply in Support of Motion for Preliminary Injunction based on my personal knowledge. If called upon to do so, I could and would testify competently to the facts set forth herein.

2. As explained in my Wojnowski October 9 Declaration, Musi was a successful app available on the App Store for over a decade, until Apple removed the Musi app from the App Store on September 24, 2024. Because Apple removed the Musi app from the App Store, the Musi app is no longer available for download by new users or by existing users if the app is offloaded at any time, which is typical if they start using a new phone. In the four months before Apple's removal of the Musi app from the App Store, Musi was gaining an average of 886,148 new users per month. Musi has, of course, gained no new users since September 24, 2024.

3. As noted in my Wojnowski October 9 Declaration, because of Apple's removal of the Musi app from the App Store, the Musi app is also rapidly losing its existing user base. Because the Musi app is not available on the App Store, if an existing user loses access to the Musi app for any reason, they are not able to reinstall Musi. Thus, for example, any time an existing user gets a new phone, or upgrades their iOS, the user risks losing their Musi app. In addition, if an existing Musi user gets a new phone, there is no way for that user to redownload Musi to their new phone. In the example

Case: 26-2892, 08/21/2026, DktEntry: 12.3, Page 262 of 266

of a user getting a new phone, iOS typically relies on re-downloading the user's installed apps from the App Store when a user restores their phone from a backup. In Musi's case this will fail, meaning that the user will lose access to the app and their data indefinitely. In addition, Apple phones come with an option to offload unused apps, which will automatically remove apps to free up storage space, for example when making room for an iOS update. If an existing user has previously enabled this feature and attempts to use Musi again after it has been offloaded, Musi cannot be re-accessed because the App Store does not permit that user to redownload Musi.

4. For all of these reasons, since Apple's removal of the Musi app from the App Store, Musi's daily active user base (the number of unique users who engaged with Musi over a 24-hour period) has dropped by 1.5 million users, and its monthly active user base (the number of unique users who engaged with Musi over the course of a month) has plummeted by 3 million.

5. Since Apple's removal of the Musi app from the App Store, Musi has received many inquiries from existing users who have lost access to Musi by either moving to a new phone or upgrading their iOS. A true and correct copy of exemplars of inquiries received by Musi that I have personally viewed related to this topic are attached hereto as **Exhibit A**, which is a true and correct copy of a November 18, 2024 email received by Musi, **Exhibit B**, which is a true and correct copy of a November 17, 2024 email received by Musi, and **Exhibit C**, which is a November 14, 2024 email received by Musi.

6. I have also personally seen several social media posts from existing users expressing frustration over the loss of access to Musi via new phone purchase or iOS upgrade. Some of these posts have gone viral, with thousands of customers grieving the loss of the Musi app. Representative examples that I have personally viewed are attached hereto as **Exhibit D**, which is a true and correct copy of a screenshot taken at my direction on December 5, 2024, of a Reddit.com comment thread, available at https://www.reddit.com/r/Musi_App/comments/1foro3a/musi_app_no_longer_in_app_store/ and as **Exhibit E**, which is a true and correct copy of a screenshot taken at my direction on December 4, 2024, of a TikTok video post available at https://www.tiktok.com/@gkysdude/video/7441320832258936094.

7. Given the frequency at which users tend to either buy a new phone or upgrade their

iOS, Musi's user base is rapidly declining. This, in conjunction with Musi's inability to get new users, will destroy not only Musi's financial viability as a company, but will also irreparably destroy the customer goodwill and reputation Musi spent over a decade building.

8. Further, Musi is losing its existing user base to other apps that offer similar services to Musi. Users who have lost access to Musi are now looking for alternatives. Indeed, Musi users are actively soliciting suggestions for other apps to purchase or download to replace the Musi app in light of its removal from the App Store. A representative example is attached hereto as **Exhibit F,** which is a true and correct copy of a screenshot taken at my direction on December 3, 2024 of a Reddit.com comment thread, available at https://www.reddit.com/r/Musi_App/comments/1h29gf2/hope/. This threat is heightened because Musi, as a result of Apple's removal of the Musi App from the App Store, is currently unable to push out any updates or upgrades to the Musi app, leaving Musi unable to keep up with its competition in its offerings. For example, many apps, including Musi in past years, offer yearly look-back data for users to learn what content they enjoyed the most. Because Musi is unable to update the app, it now cannot offer this for its users. It is exceedingly unlikely that Musi will be able to regain lost users a year or more down the line, after litigation has concluded, after they have switched to competing apps.

9. As detailed in my Wojnowski October 9 Declaration, Musi's inability to update the app to account for new iOS updates presents another threat, namely that Musi will become inoperable or riddled with bugs. In the past, key features of Musi have had to be updated to correspond to iOS updates. Examples of this include 1) iOS SDK changes relating to Control Center which broke the ability to skip or pause a track using headphones, and 2) changes to the way that Apple's AVFoundation library handled interruptions as they relate to the user's alarms, among others. Musi has certainty in terms of the way its app performs on current and prior iOS versions, but has no way to accommodate changes on future versions. As it stands today, Musi would be unable to update the app to address any iOS update that renders Musi inoperable or subjects it to indeterminate bugs due to platform changes not in Musi's control. This threat of complete destruction remains ever-present as long as Musi is precluded from updating the app, *i.e.*, as long as the Musi app remains removed from the App Store.

10. At the current rate at which Musi is losing daily active users, and, factoring in the significant likelihood that the Musi app could be rendered inoperable at a moment's notice, Musi's business will be decimated over the next 12 months.

11. As noted in my Wojnowski October 9 Declaration, with Musi's absence from the App Store, several imposter apps have sprung up. I am aware of at least a dozen imposter apps that were available for download on the App Store shortly after Musi's removal. Some of these apps stole Musi's brand and required a large up-front fee to scam users into thinking they were "regaining access" to Musi's services. Others used variations of Musi's brand in order to trick users into thinking there was an affiliation between the imposter app and the Musi app. Musi has vigilantly reported these apps to Apple in order to avoid further reputational harm, but imposter apps continue to pop up to leach off Musi's goodwill and the user confusion created by Apple's removal of the Musi app from the App Store.

12. Musi has received inquiries from users confused by the presence of these imposter apps, which the users mistake for the official Musi app. Attached hereto as **Exhibit G** is a true and correct copy of a November 20, 2024 user inquiry received by Musi relating to a copycat app. I am also aware of several complaints on social media relating to imposter apps. Specifically, several users have claimed to download the Musi app and complained about the quality, when in reality they must have downloaded an imposter app as Musi is not available for download. Attached hereto as **Exhibit H** is a true and correct copy of a screenshot taken at my direction on November 21, 2024, of a Reddit.com comment thread, available at https://www.reddit.com/r/Musi_App/comments/1foro3a/comment/lr2wtio/. Attached hereto as **Exhibit I** is a true and correct copy of a screenshot taken at my direction on November 21, 2024, of a Reddit.com comment thread, available at https://www.reddit.com /r/Musi_App/comments/1g04vzm/musi_eq_not_showing_up/. Attached hereto as **Exhibit J** is a true and correct copy of a screenshot taken at my direction on November 21, 2024 of a Reddit.com comment thread, available at https://www.reddit.com/r/Musi_App/comments/1ft6jvb/i_hate_ the_new_musi_update/.

13. These imposter apps are tricking Musi's users into downloading lower quality apps, which severely harms Musi's goodwill and reputation. When Musi was available on the App Store, it

was much easier for users to discern between the real Musi and imposter apps because Musi showed up near the top of the search results, had millions of positive user reviews, and held top chart positions, including on best of lists. Imposter apps continue to appear on the App Store, and Musi's removal from the App Store has made combatting this threat to Musi's prospective users and to Musi's goodwill exceedingly difficult.

14. Musi was unaware until it received Apple's Opposition that Apple and YouTube engaged in a phone conversation in July 2024 regarding the Musi app or regarding any complaint by YouTube regarding the Musi app. Nor was Musi ever asked or given any opportunity to respond to any assertions made by YouTube regarding Musi or the Musi app during that phone call. Rather, the only "comments" ever provided to Musi from YouTube regarding the complaint from YouTube that Apple stated led to its removal of the Musi app from the App Store were the five words referenced in Musi's opening brief and included in an August 8, 2024, email from Apple to Musi: "violating YouTube Terms of Service."

15. It is my understanding based on the representations made in Apple's Opposition that, on September 11, 2024, Apple received a letter from the National Music Publishers Association ("NMPA"), that this letter was purportedly submitted by the NMPA in support of YouTube's July 2024 complaint against the Musi app, and that this letter and "evidence" purportedly included with it were part of the reason for Apple's removal of the Musi app. *See* Dkt. 30-14. Neither Apple, YouTube, the NMPA, nor any other party ever disclosed the NMPA letter or its contents to Musi, told Musi that any letter from NMPA had anything to do with Apple's removal of the Musi app, nor sought any response from Musi to any assertions or "evidence" in the NMPA's letter. To be clear, Apple's Opposition is the first time that Musi was ever made aware of the NMPA letter. As far as Musi is aware, the NMPA has never filed a complaint against Musi via Apple's app dispute process.

16. I have now read the NMPA letter, and it is riddled with falsehoods. For example, the letter claims that Musi was removed from the Google Play Store. That claim is false. The Musi app was never removed from the Google Play Store because it was never offered on that platform—the Musi app has been offered only on the Apple App Store. As another example, the Musi app does not, as the NMPA letter claims, "leech[] its content offerings from YouTube's Application Programming

Interface ('API') to avoid paying copyright licensing fees." *Id.* The Musi app does not rely on or access YouTube's Data/iFrame Application Programming Interface API. To be clear, the Musi app never accesses YouTube's non-public interfaces. Instead, the Musi app plays or displays content based on the user's own interactions with YouTube's website via a functional interface. Additionally, the Musi app has never, as the NMPA letter claims, given users the ability to "mute ads." *Id.* Rather, a Musi user accesses video media directly from YouTube. Musi does not interfere with any ads to the extent they are included within the publicly-available video media streamed by a Musi user. Finally, the Musi app does not, as the NMPA letter claims, use "multiple API-tokens" or "API-token bucketing." *Id.* Such "token-bucketing" would involve registering multiple API keys and distributing them to different users, thus defeating quotas or rate limits on YouTube Data/iFrame API tokens. But, again, Musi does not use YouTube's Data/iFrame API, and thus does not, and would have no reason to, use "token-bucketing" or any other method to avoid rate limits on YouTube API tokens.

17. The NMPA letter also claims that Musi violates YouTube's API Services Terms of Service because the Musi app allows background play. *Id.* Setting aside the fact that Musi does not use YouTube's Data/iFrame API, and thus is not subject to the YouTube API Services Terms of Service, the Musi app provides the same functionality here that any web browser would. Any internet user today could open the YouTube website on a web browser (including Apple's own native web browser for the iPhone, Safari) and start playing a video. The user could then navigate away from the YouTube website. The video playback would stop, but the user could navigate to their lock screen and select play. The video would resume in the background.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this declaration on December 6, 2024 in Manitoba, Canada.

/s/ Aaron Wojnowski
Aaron Wojnowski

*I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.*